UNITED STATES DISTRICT COURT

For the Northern District of California

1
2
3
4
5
6                          UNITED STATES  DISTRICT COURT
7                         NORTHERN DISTRICT OF CALIFORNIA
8
9    SHIRLEY RAE ELLIS, LEAH HORSTMAN,
     and ELAINE SASAKI on behalf of themselves
10   and others similarly situated                        No. C 04-3341 MHP
11                    Plaintiffs,              **MEMORANDUM & ORDER**
12          v.
     COSTCO WHOLESALE CORPORATION,
13
14                    Defendant.
15   _____/
16          Shirley Rae Ellis, Leah Horstman, and Elaine Sasaki, current and former employees of defendant
17   Costco Wholesale Corporation, have brought a putative class action alleging gender discrimination in
18   defendant's promotion and management practices.  Pursuant to Title VII of the Civil Rights Act of 1964,
19   42 U.S.C. section 2000e, et seq., plaintiffs allege that defendant's promotion system has a disparate impact
20   on female employees, that Costco's management discriminates against women in promotions, and that
21   defendant has retaliated against persons seeking redress for discrimination.  In addition, plaintiffs bring
22   pendent causes of action alleging gender discrimination in violation of the Fair Employment and Housing
23   Act, California Government Code section 12940, et seq.  Now before the court is defendant's motion
24   under 28 U.S.C. section 1404(a) to transfer plaintiffs' complaint to the District of Colorado, or in the
25   alternative, to the Western District of Washington or the Southern District of California.  After considering
26   the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    BACKGROUND[1]

2    I.        The Parties

3            A.        Plaintiff Shirley Rae Ellis

4            Plaintiff Ellis has worked as an Assistant Manager at Costco since 1998.  Before her employment

5    with defendant, Ellis worked as a General Manager at Wal-Mart's Sam's Club, a position similar in

6    function and duties to Costco's General Manager position.  Ellis began her employment with defendant in a

7    Michigan warehouse, but subsequently transferred, upon her request, to a Costco facility in Colorado in

8    2000.  Def's Mot. at 3.

9            Ellis alleges that throughout her time with the company, she repeatedly advised Costco managers of

10   her interest in a promotion to General Manager, as well as a willingness to consider a promotion located

11   anywhere in the country.  Due to defendant's failure to post or otherwise notify employees of management

12   openings, Ellis was unable to apply for specific promotional opportunities.  In a letter dated August 29,

13   2002, Ellis expressed her "burning desire to help the company be successful" and to advance within the

14   company, stating that she wanted to learn how selection of General Managers worked, where she stood as

15   a candidate for promotion, and what she might need to do to become a General Manager.  Kadue Dec.

16   (Oct. 18, 2004), Exh. C.  She wrote: "If there is not an opportunity [in this region], would you consider

17   recommending me to another Regional VP.  I would love to stay in Colorado, but I love Southern

18   California and Texas as well.  I would definitely consider any promotional opportunity."  Id.  She said that

19   she was "trying to find out where [she] fit in the Costco Wholesale picture."  Id.  No promotional

20   opportunities surfaced.

21           Plaintiff filed a charge of discrimination with the EEOC on or about October 30, 2002, alleging

22   failure to promote on the basis of gender.  She received a Notice of Right to Sue in relation to the charge.

23   In 2004, she filed a second charge of discrimination with the EEOC, alleging retaliation, including a

24   disadvantageous warehouse transfer, in response to her first EEOC grievance.

25           B.        Plaintiff Leah Horstman

26           Plaintiff Horstman was hired for the position of "caller" in defendant's warehouses in 1981.  She

27   held numerous positions over the course of her twenty-three year employment with defendant, including

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  fifteen years in management positions.  The full span of her employment was within Costco's San Diego

2  Region.  Horstman EEOC Aff. at 1.  She remained an employee of defendant until 2004, most recently as a

3  Receiving Manager in the La Mesa warehouse.

4       Horstman alleges that she informed defendant of her availability and interest in promotion to the

5  position of Assistant Manager, and she may have advised Costco of her willingness to relocate outside of

6  the San Diego area or outside of California.[2]  Due to defendant's failure to post openings or use a

7  standardized application procedure, she did not apply for specific positions.  Plaintiff filed a charge of

8  discrimination with the EEOC and the California Department of Fair Housing and Employment on or about

9  October 11, 2003.

10      C.    Plaintiff Elaine Sasaki

11       In 1985, plaintiff Elaine Sasaki began her twenty-year career with Costco as a front-end cashier.

12  From 1995-96, Sasaki worked in Livermore, California as an administrative assistant to the Regional Vice

13  Presidents of the Bay Area Region.  In 1996, Sasaki was promoted to Assistant Manager, a position she

14  still holds today.  Other than a one-year stint at a warehouse in Texas, Sasaki's employment has been

15  within Costco's Bay Area Region, in several different warehouses.

16       Sasaki alleges that her upward rise at Cosco has been thwarted by gender discrimination.  Sasaki

17  has repeatedly expressed her interest in promotion to a General Manager position by speaking to Vice

18  Presidents and Senior Vice Presidents within her region as well as to management in other regions.  See

19  Sasaki Dec. at ¶ 3.  On the basis of representations that growth in the Texas region promised better

20  prospects for promotion, she transferred there in 2001.  She returned to the Bay Area Region one year

21  later, again on the basis of representations that growth would provide greater opportunities for

22  advancement.  In September, 2003, plaintiff wrote a letter to Judy Vadney, Director of Human Resources

23  located in Issaquah, Washington, expressing her concern that she was being overlooked for promotion due

24  to her gender.  Sasaki Dep. at 19:1-7.  Due to defendant's failure to post openings or use an application

25  procedure, she did not apply for specific positions.  She filed a discrimination charge with the EEOC on

26  March 1, 2005 and is presently awaiting her Notice of Right to Sue.

27  D.    Costco Wholesale Corporation

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

Defendant is a corporation headquartered in Issaquah, Washington, which operates "cash-and-carry membership warehouses" throughout the United States.  Def's Mot. (Oct. 15, 2004) at 2.  Costco's nationwide operations are divided into three divisions (Southwest, Eastern, and Northern/Midwest), each governed by an Executive Vice President.  See Zook Dec. at ¶ 2, Zook Dec., Exh. A.  These divisions are in turn divided into regions managed by Senior Vice Presidents.  Id.  Relevant to the present analysis, Costco's Southwest Division, headquartered in San Diego, encompasses the San Diego Region (which includes operations in Southern California, Colorado, Arizona, Utah, Nevada, and New Mexico), the Los Angeles Region, and the Texas Region.  Id.; Vachris Dec. ¶ 2.  Costco's Northern/Midwest Division, headquartered in Issaquah, Washington, encompasses the Bay Area Region, the Midwest Region, and the Northwest Region.  Zook Dec. at ¶ 2-3; Zook Dec., Exh. A.  Each Costco region is broken down into districts, led by District Vice Presidents, which are in turn composed of numerous Costco warehouses.  Zook Dec., Exh. A.

Each Costco warehouse is staffed with a General Manager, multiple Assistant Managers, and a team of staff level, area, and department managers.  Def.'s Mot. (Oct. 15, 2004) at 2-3.  Costco does not use postings and/or an application process for open Assistant and General Manager positions, but promotional practices are standardized across the country.  Zook Dep. at 131:8-20; 133:1-9; Hoover Dep. at 117:17-23.  The decision to promote a lower level manager to an Assistant Manager is made by a warehouse's General Manager, with the District Vice President "also involved."  See Zook Dep. at 132:8-16.  The Senior Vice Presidents are informed of the choice, though they do not actually make the "actual selection."  See Hoover Dep. at 92:5-11 (describing that as Senior Vice President, he "might put my two cents, but basically I just want to make sure they've done their homework").  Executive Vice Presidents in the divisional headquarters need not approve promotions to Assistant Manager.  See Zook Dep. at 132:18-20.

The decision to promote an Assistant Manager to a General Manager is made by the General Manager who has overseen the Assistant Manager's work and the District Vice President, with "some input and involvement" from the Senior Vice President overseeing their region.  See Zook Dep. at 133:23-134:2; Hoover Dep. at 94:7-10.  The Senior Vice President notifies the Executive Vice President

4

1    overseeing his region when a selection for General Manager has been made, but Executive Vice Presidents

2    are simply "made aware" of the choice in order to "sign off" on the decision.  Zook Dep. at 134:8, 135:10-

3    17.

4

5    II.    Procedural History

6          Plaintiff Ellis filed the present action on August 17, 2004.  Pursuant to stipulations, plaintiff filed an

7    amended complaint on November 2, 2004 adding plaintiff Leah Horstman and a second amended

8    complaint on March 23, 2005 adding plaintiff Elaine Sasaki.  On behalf of themselves and a class of

9    similarly-situated employees, plaintiffs charge that defendant has a pattern and practice of gender

10   discrimination, including failing to consider women for promotional opportunities on an equal basis to men;

11   refusing to provide timely and accurate notice of employment opportunities; relying on subjective, arbitrary,

12   and gender-based decisionmaking by a nearly all-male managerial force; promoting similarly-situated and

13   less-qualified males more rapidly; and representing inconsistent requirements for promotion.  Plaintiff Ellis

14   also alleges retaliation for filing discrimination charges.

15         Now before the court is defendant's motion to transfer this action pursuant to 28 U.S.C. section

16   1404(a).  Defendant concedes that the Northern District is a proper venue under 42 U.S.C. section

17   2000e-5(f)(3), but argues that the convenience of the parties and the witnesses favors transfer to the

18   District of Colorado, or in the alternative, the Western District of Washington or the Southern District of

19   California.

20         The court heard oral arguments in the present motion on November 29, 2004 and ordered short

21   supplemental briefs filed on the relative distribution of class members and evidence in the Northern and

22   Southern Districts of California.  On December 23, 2004, the court denied defendant's motion without

23   prejudice to its automatic renewal after limited discovery on the scope and geographic distribution of the

24   proposed class.  Plaintiffs subsequently amended the complaint, adding named plaintiff Elaine Sasaki.  The

25   court heard oral arguments again on May 16, 2005, following the renewal of defendant's motion, and it

26   enters the present decision in light of the limited discovery conducted to date and the addition of a new

27   named plaintiff.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

5

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1

2   <u>LEGAL STANDARD</u>

3       Actions arising under Title VII of the Civil Rights Act of 1964 are subject to a special venue

4   provision, 42 U.S.C. section 2000e-5(f)(3).  <u>See</u> 42 U.S.C. § 2000e-16(d) (providing that "the provisions

5   of section 2000e-5(f) through (k) of this title, as applicable, shall govern" employment discrimination

6   actions).  The section provides that Title VII actions may be brought (1) in any judicial district in the State in

7   which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in

8   which the employment records relevant to such practice are maintained and administered, or (3) in the

9   judicial district in which the aggrieved person would have worked but for the alleged unlawful employment

10  practice.  42 U.S.C. § 2000e-5(f)(3).  The section also provides that "if the respondent is not found within

11  any such district, such an action may be brought within the judicial district in which the respondent has his

12  principal office."  <u>Id</u>.  The Ninth Circuit has construed the venue provision to hold that "venue is proper in

13  both the forum where the employment decision is made and the forum in which that decision is implemented

14  or its effects are felt."  <u>Passantino v. Johnson & Johnson Consumer Products, Inc.</u>, 212 F.3d 493, 506 (9th

15  Cir. 2000).       The transfer provisions of general applicability provide that where venue is improper, a

16  district court must either dismiss the case or transfer it "in the interests of justice" to an appropriate

17  jurisdiction.  <u>See</u> Fed. R. Civ. Pro. 12(b)(3); 28 U.S.C. § 1406(a).  Where venue is proper, a court may

18  transfer any civil action to another jurisdiction where it may have been brought "for the convenience of

19  parties and witnesses, in the interests of justice."  28 U.S.C. § 1404(a).  <u>See</u> <u>Van Dusen v. Barrack</u>, 376

20  U.S. 612, 616 (1964).  In order to upset a plaintiff's choice of forum, a defendant must make a "strong

21  showing of inconvenience."  <u>See</u> <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th

22  Cir. 1986).  Analysis of suitability for transfer involves private factors, such as the ease of access to proof,

23  costs, availability of compulsory process for unwilling witnesses, and other practical considerations for an

24  efficient and expeditious trial.  <u>Id</u>.  In addition, it considers public factors such as the local public and jury

25  pool's interest in localized controversies.  <u>Id.</u>  The Title VII special venue provision does not specify

26  changes to the section 1404 or 1406 analysis, except in one respect: for purposes of sections 1404 and

27  1406, the judicial district of a defendant's principal office constitutes a district in which the action might

28

1    have been brought.  42 U.S.C. § 2000e-5(f)(3).

2

3    DISCUSSION

4          Pursuant to 28 U.S.C. section 1404(a), defendant has moved to transfer the present action to the

5    District of Colorado, the Western District of Washington, or the Southern District of California.  Before

6    turning to the relative merits of these venues, the court addresses two disputed legal issues between the

7    parties: whether the venue provision of Title VII commands greater deference to a plaintiff's choice of

8    forum and affects the section 1404(a) analysis, and whether the venue provision implicitly prohibits, or at

9    least discourages, transfers among districts within a single state.

10          As a preliminary matter, defendant is correct that the analysis prescribed for section 1404(a)

11   transfers governs in spite of the fact that a case includes Title VII allegations.  Title VII codifies a special

12   venue provision "for purposes of sections 1404 and 1406 of title 28," thus confirming the sections' general

13   applicability to Title VII cases.  See 42 U.S.C. § 2000e-5(f)(3).  While the special venue provision of Title

14   VII broadens the range of appropriate venues available to a plaintiff, ample case law supports the basic

15   proposition that the statute does not prohibit transfers away from a plaintiff's chosen forum.  See, e.g., Ross

16   v. Buckeye Cellulose Corp., 980 F.2d 648, 654, n.13 (11th Cir. 1993) (holding that Title VII is subject to

17   the transfer provisions of section 1404(a)); In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir.

18   2003) (applying section 1404(a) to a Title VII action); Harrison v. Int'l Ass'n of Machinists and Aerospace

19   Workers, 807 F. Supp. 1513, 1516-17 (D. Or. 1992) (same); Dean v. Handysoft Corp., 2005 WL

20   362662, *3 (E.D. Pa. Feb. 16, 2005) (same).  This court finds that transfers of Title VII actions are thus

21   governed by the well-settled public and private factors relevant to section 1404(a) analysis.  See Decker

22   Coal Co., 805 F.2d at 843.

23          However, plaintiffs are correct that the special venue provision must influence the contours of

24   section 1404(a) analysis.  The factors expressly identified as a basis for venue under Title VII—the location

25   of the discriminatory act or decision, the location of relevant employment records, and the location where a

26   plaintiff would have worked but for the unlawful employment practice—should therefore be key factors in

27   analyzing the "interests of justice" prong of section 1404(a) analysis.  See In Re: Horseshoe Entertainment,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

UNITED STATES DISTRICT COURT
For the Northern District of California

337 F.3d 429, 434 (5th Cir. 2003) (holding that location of relevant employment records should be given significance because it was expressly stated in the Title VII venue provision).

In addition, a plaintiff's choice of forum is entitled to greater deference where a case arises under Title VII.  Congress expanded the available fora to plaintiffs grieving civil rights violations, thereby expressing intent to broaden a Title VII plaintiff's choice of forum.  See Passatino, 212 F.3d at 504 (holding that Title VII's broad venue provision "was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances") (citations omitted).  Where venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action.  As plaintiffs point out, in the context of special venue provisions for securities litigation—and specifically, a class action—the Ninth Circuit held that "[w]ithout question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum, and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."  See Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) (internal citations and quotations omitted).  With similar Congressional intent operational here, the court finds that plaintiffs' choice of forum is indeed entitled to deference in the "interest of the justice" prong of the section 1404(a) analysis, even where a plaintiff avails herself of liberal venue standards to file in a strategic forum.

The parties also dispute whether the Title VII venue provision prohibits transfers among districts within a single state.  The statue protects a finding of venue "in any judicial district *in the State* in which the unlawful employment practice is alleged to have been committed," however it also explicitly recognizes section 1404 transfers, as discussed.  See 42 U.S.C. § 2000e-5(f)(3) (emphasis added).  Congress did not include the state-wide access language for any other basis of venue outlined in the statute, including the districts where employment records are kept, or where the employee would have worked but for discriminatory actions.  Id.  This distinction in the drafting of section 2000e-5(f)(3) would logically be explained by an intent to allow plaintiffs to assert venue outside the district where they experienced discrimination, perhaps on the assumption that Title VII plaintiffs were most likely to face hostile courts or juries in that location.  In order to acknowledge this distinction without rendering section 1404(a)

functionally inapplicable, and in order to read the "interests of justice" prong of the section 1404(a) analysis through the lens of the special venue provision, this court finds that a plaintiff's choice of forum is entitled to greater deference prior to intrastate transfer in cases where venue is based on allegations that the locus of unlawful employment practices occurred in that state, but not in that district.[3]  To hold otherwise would allow section 1404(a) to deprive the "in the State" language of section 2000e-5(f)(3) of any practical effect.  See Colautti v. Franklin, 439 U.S. 379, 392 (1979) (describing the "elementary" canon of construction that statutory interpretation should not render language inoperative or superfluous).

Taking those preliminary findings, the court turns to the section 1404(a) analysis.  A "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker, 805 F.3d at 843.  This analysis requires "an individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).  The court thus considers the private and public factors which might weigh in favor of each of these alternate venues and measures these assets against those of the plaintiffs' chosen forum, the Northern District of California.  Private factors to consider include: (1) the state that is most familiar with the governing law, (2) deference to a plaintiff's choice of forum, (3) the respective parties' contacts with the forum, (4) the contacts relating to the plaintiff's cause of action in the chosen forum, (5) the differences in litigation costs between the competing forums, (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (7) the ease of access to sources of proof, and (8) the relevant public policy of the forum state.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  Public factors to consider include the level of congestion of the local docket, the local public interest in the outcome of a case, avoidance of conflict of laws issues, and the unfairness of burdening citizens in an unrelated forum with jury duty.  See Decker, 805 F.2d at 843.

I.      District of Colorado

Defendant's original motion asserted the District of Colorado as the most appropriate venue for the present case.  Plaintiff Ellis is a resident of the state, and the majority of her years of employment with Costco have been in Colorado.  Defendant argues that as Ellis's workplace, Colorado is the center of key

UNITED STATES DISTRICT COURT
For the Northern District of California

facts, documents, and witnesses pertinent to her retaliation and failure to promote claims. Def.'s Mot. (Oct. 15, 2004) at 1-2. Witnesses located in Colorado include the hourly and salaried employees and supervising General Managers with whom Ellis worked over the course of her employment. Id. Ellis's core personnel file is located in the district, though records pertaining to employee complaints about her performance and her subsequent discipline are stored in Washington and San Diego. See Seligman Dec. (Nov. 12, 2004), Exh. A at 1-2.

Colorado is not the home of any Costco management above the level of each local warehouse's direct staff. Vachris Dec. ¶¶ 2-3. Colorado is part of defendant's "San Diego Region," and thus supervision of each warehouse in the state is located in San Diego. Id. A decision to promote a person into a General Manager position in Colorado is made in San Diego, subject to approval at the company's Washington state headquarters and after consultation with employees at a promotion candidate's warehouse. Id. at ¶¶ 27-28. Therefore, while there is significant record and testimonial evidence of Ellis's performance in Colorado, relevant to both of her claims, there were no persons in that state with the authority to actually promote her.

Defendant does not argue that Horstman or Sasaki had any contacts with Colorado, nor that there are witnesses, documents, or facts pertinent to their cases housed there. Independent of Ellis's claims, none of the Title VII bases for venue would establish venue for Horstman or Sasaki in Colorado: the alleged unlawful practices did not occur there, their employment records are not kept there, these plaintiffs have not alleged that they sought promotion in Colorado (any more than they sought promotion anywhere in the country), and defendant's principal offices are located elsewhere. See 42 U.S.C. § 2000e-5(f)(3). Furthermore, defendant's contacts with the District of Colorado are weaker than any of the competing venues. Costco has far fewer warehouses in Colorado than in the competing districts, and the state houses none of Costco's district, regional, divisional, or executive management. See Seligman Dec. (Nov. 12, 2004), Exh. 1 at 5; Seligman Dec. (Nov. 12, 2004), Exh. 2 at 1300-1303. Given the nationwide scope of the putative class as well as the distribution of decisionmakers affecting the three named plaintiffs' careers at Costco, Colorado is the least advantageous district in terms of access to proof relating to plaintiffs' causes of action.

1    In addition, transfer under section 1404 to the District of Colorado (or the Western District of

2    Washington, discussed below), would require application of California's Fair Housing and Employment Act

3    in out-of-state courts.  While this is permitted as a matter of federal policy to protect a plaintiff's choice of

4    law when a case is transferred under section 1404, a forum's familiarity with governing law is a private

5    factor to be considered.  See Van Dusen, 376 U.S. at 633; GNC Fundraising, 211 F.3d at 498-99.  The

6    pubic interest in trying plaintiffs' California claims within this state weighs against transfer to Colorado or

7    Washington.

8    It would not serve the interests of justice, judicial efficiency, or convenience to transfer this action to

9    a district where two of the named plaintiffs have no contacts, defendant has weaker contacts than in

10   competing forums, fewer relevant employment records are stored compared to competing forums, and the

11   putative class is less widely represented.

12

13   II.    Western District of Washington

14   Defendant's transfer motion also asserts that the Western District of Washington is a "strong

15   second choice" forum for the present action.  See Reply at 21, n. 55.  Issaquah, Washington is home to

16   two Costco administrative functions: it is the company's central headquarters for nationwide administration

17   and it is the headquarters of Costco's Northern Division, which encompasses the Bay Area Region.  While

18   venue would be technically proper in the district based on the existence of some personnel records

19   pertinent to all three named plaintiffs' claims and the presence of Costco's "principal office," it is not a

20   compelling candidate for section 1404(a) transfer.

21   Other than high level centralized administration, the Western District is not home to a significant

22   cadre of key witnesses in this case.  None of the three named plaintiffs lived, worked, or had contacts with

23   the district.  None of the Senior Vice Presidents, District Vice Presidents, or General Managers who had

24   knowledge of any of the three plaintiffs' work performance or expressions of interest in promotion is

25   located in the district.  The fact that Issaquah is home to the divisional headquarters encompassing plaintiff

26   Sasaki's Bay Area Region is not a strong basis for transfer, as the divisional management (Executive Vice

27   Presidents) have the limited role of approving, rather than selecting, promotions to General Manager

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    positions within the region.  See Hoover Dep. at 94:7-10, 94:21-23; Schutt Dec. at ¶ 3,5.  The parties

2    have failed to submit any evidence of warehouses or promotions in the Western District of Washington.

3           The strongest case to be made for transfer to the Western District is the presence of Judy Vadney,

4    Costco's Director of Human Resources, as well as a few senior managers with general knowledge of

5    Costco's promotion processes and organizational structure.[4]  Even coupled with the location of some of

6    plaintiffs' employment records in the district, however, these sources of proof are relatively minor in the

7    geographic distribution of evidence in this case, and they would not outweigh the advantages of other

8    proposed forums or the deference due to the  plaintiffs' choice of forum.  Key decision-makers who had

9    the authority to evaluate plaintiffs' suitability for promotion and/or select them for promotions are located

10   elsewhere.

11          A final mark against the district is that the most sound basis for venue in the Western District of

12   Washington is to be found in the residual clause of Title VII's venue provision, which permits venue in the

13   district housing a respondent's principal office "if the respondent is not found" in the district where the

14   discrimination occurred or its effects were felt.  See 42 U.S.C. § 2000e-5(f)(3).  As defendant concedes

15   since several other districts where Costco can be found satisfy the principal grounds for venue in the statute,

16   the site of Costco's principal offices is not a favored district under the terms of the statute.  If plaintiffs had

17   brought the case there based on the location of employment records, venue would have been vulnerable to

18   challenge because of the limited central record-keeping related to warehouse managers.

19          Plaintiffs rightly assert that section 1404(a) is not a mechanism by which to transfer inconvenience

20   from one party to another.  See Van Dusen, 376 U.S. at 646 ("Section 1404(a) provides for transfer to a

21   more convenient forum, not to a forum likely to prove equally convenient or inconvenient").  Thus this court

22   will not require plaintiffs to bring their claims in a district so far removed from the geographic nexus of their

23   claims and sources of proof.

24

25   III.    Southern District of California

26          The causes of action of two named plaintiffs in this action are anchored in San Diego, located in the

27   Southern District of California.  As Horstman lived and worked in San Diego throughout her career with

28

UNITED STATES DISTRICT COURT
For the Northern District of California

Costco, all witnesses and employment records pertinent to her case—other than the centralized records stored at Costco's personnel headquarters in Washington—are located in the Southern District.  Plaintiffs have not asserted any other residence for Horstman, and this court presumes that the Southern District continues to be her home forum.  While a plaintiff's residence is never a basis for venue, it is an indicator of party contacts and convenience captured by section 1404(a).  See 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1404(a).

A key witness to Ellis's claims is also located in San Diego.  Since 2004, Ron Vachris has been the Vice President of Operations for District 2 of Costco's San Diego Region, a region which includes all Costco operations in Colorado.  Vachris Dec. ¶¶ 1-2.  In February 2004, he investigated alleged complaints about Ellis's conduct as Assistant Manager of the Aurora, Colorado warehouse, making him a key witness for Ellis's claims of retaliation.  See Vachris Dec. ¶¶ 5-8; Ellis Dec. ¶¶ 6-8.  Also relevant to Ellis's case, the San Diego Regional headquarters is home to the chain of management responsible for making and approving Vachris's General Manager promotion decisions for the region, including Bob Hicok, Senior Vice President of the San Diego Region and Dennis Zook, Executive Vice President for the Southwest Division.  See Vachis Dec. ¶ 27.  Because Ellis specified San Diego as among her most desired locations for a promotion, the hiring of General Managers in the district over the relevant time period will be of special interest in her case.  See Kadue Dec. (Oct. 18, 2004), Exh. C.

Named plaintiff Sasaki does not have a significant nexus with the Southern District, however.  She spent all but one of her 23-year history with Costco in its Bay Area Region headquartered in the Northern District.  For one year, from March 2001 to March 2002, she transferred to the Texas Region, which is headquartered in Texas, overseen by the Southwestern Regional Headquarters based in San Diego.  As discussed in reference to the Western District of Washington, divisional headquarters do not represent significant contacts with plaintiffs' causes of action, because Executive Vice Presidents are weak participants in the selection process for promotions to General Managers.  See Schutt Dec. at ¶¶ 3, 5; Hoover Dep. at 94:7-10, 94:21-23.

In terms of public factors, the local public and jury pool in the Southern District of California presumably has a strong interest in the treatment of two of the named plaintiffs, due to the connections of

two plaintiffs' grievances to the district.  In addition, the Southern District is as well situated as this court to consider plaintiffs' pendent claims under California law, and thus to manage and oversee plaintiffs' intended California-based sub-class.  The Southern District's interest does not extend as forcefully to the class as a whole, as districts with the largest concentrations of Costco warehouses have an even stronger community interest in trying the class controversy and ensuring non-discriminatory management of the franchise.

Defendant has made a strong showing of the advantages of trying this case in the Southern District of California.  This showing, however, must be understood in light of Title VII's grant of venue "in any judicial district *in the State* in which the unlawful employment practice is alleged to have been committed." See 42 U.S.C. § 2000e-(f)(3) (emphasis added).  As discussed, this language aggregates judicial districts within a single state in furtherance of Congress's intent to "afford citizens full and easy redress of civil rights grievances."  See Passatino, 212 F.3d at 504.  While there is nothing that would bar this court from disaggregating those districts in the application of section 1404(a), the court does interpret the statute to weigh against such transfers and accord plaintiff's chosen forum greater significance, if (as here) venue is asserted based on unlawful employment action within the state.  This is, in effect, simply a reading of section 1404 through the lens of Title VII's special venue provision.

Taking each of these findings into account, the "convenience" and "justice" of litigating this case in the Southern District must be weighed against a section 1404(a) analysis of plaintiff's chosen forum.

IV.     Northern District of California

Defendant concedes that the Northern District is a proper venue for this suit.  Def.'s Mot. (Oct. 15, 2004) at 2, n.1.  There are three reasons why venue is indeed proper in this district: (1) this is a judicial district where Ellis, Horstman, and Sasaki allege they would have worked but for the alleged unlawful employment practices, (2) this district is within California, a state in which alleged unlawful employment practices related to all three named plaintiffs were located, and (3) this is the district housing the great majority of employment records relating to Sasaki's failure to promote claims.  See 42 U.S.C. § 2000e-5(f)(3).  Defendant argues that the Northern District should be rejected as mere forum-shopping by plaintiffs.  Def.'s Reply (May 2, 2005) at 6.

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Named plaintiffs do in fact have meaningful contacts with this district, both in terms of work history

2  and causes of action.  This is easily the most appropriate forum for adjudication of Sasaki's claims—in

3  terms of her record and testimonial evidence relating to her promotability as well as the actual decisions to

4  bypass her for promotion.[5]  Though Sasaki's warehouse assignments were in the Eastern District of

5  California, it is the Bay Area Region's headquarters which is most pivotal to her failure to promote claims.

6  Livermore, California, which is located in this district, is the home to employment records relating to

7  Sasaki's work performance (promotability), her expressions of interest in promotion, and her consideration

8  for various openings within the district.  It is also home of Dennis Hoover, Jeff Abadir, and John

9  Booth—the three most relevant witnesses to Sasaki's cause of action for gender discrimination in

10  promotions.  Furthermore, plaintiff worked for Costco's administration in Livermore from 1995-96, such

11  that all documentary and testimonial evidence relating to her employment during that time would be stored

12  in this district.

13    While plaintiffs Ellis and Horstman have limited contacts here, either of them could independently

14  establish venue in this district.  Plaintiff Ellis contacted a Regional Vice President located in the Northern

15  District to express her interest in a promotion to a General Manager position within the Bay Area Region,

16  making this district a place that she allegedly would have worked but for the unlawful promotional practices.

17  See Ellis Dep. at 38:20-39:20.  In addition, Ellis's letter specifically requesting promotion is a basis of her

18  assertion of venue here; though it did not specify this region as a place of special interest for Ellis, it is

19  nevertheless within a state in which she sought promotion.  See Kadue Dec., Exh. D.  As for plaintiff

20  Horstman, her claim of venue relies on unlawful employment practices within the state of California, as well

21  as a general interest in promotion outside San Diego.

22    Defendant has very strong contacts within this district as well, affecting both the private factor

23  analysis of party convenience and the public factor analysis of local interest in the litigation. Defendant has a

24  high concentration of employees, promotional decision-makers, and managerial openings here.  The

25  Northern District is home to 27 Costco warehouses (as opposed to 6 in the District of Colorado and 14 in

26  the Southern District[6]) as well as a regional headquarters governing 38 warehouses.  Seligman Dec., Exh.

27  A. at 3- 5.[7]  While the Southern District is also home to a Costco regional headquarters, the company's

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Bay Area Region made a total of ten promotions to General Manager since 2002, as compared to only one

2   in the San Diego Region during the same period.  Id. at 4.

3        As a result of Costco's strong presence, this district is home to a proportionately large segment of

4   the putative class, with sixty-eight potential class members as opposed to forty-four in the Southern District.

5   Drogin Dec. ¶ 7.  Courts may take into account the distribution of a putative class in assessing transfer

6   requests.  See Berenson v. Nat'l Financial Srvs., LLC, et al, 319 F. Supp. 2d 1 (D.D.C. 2004)

7   (transferring a plaintiff class out of the named plaintiff's home forum primarily on the basis that the largest

8   percentage of the putative class was located in the alternative forum).  As discussed, the fact that this

9   district lacks a divisional headquarters is not significant, because promotions to Assistant Manager do not

10  meaningfully involve this tier of governance, and promotions to General Manager require only that divisional

11  heads are "made aware" of a selection and "sign off" on the choice.  See Zook Dep. at 132:8-20; 134:8,

12  135:10-17; Schutt Dec. at ¶¶ 3,5; Vachris Dec. at ¶¶ 27-28.

13       If this case is certified as a class action, plaintiffs will no doubt scrutinize the promotional decisions

14  of all Costco regional headquarters and managerial staff in the country.  In that sense, this district is

15  similarly-situated to each federal district with a strong presence of defendant's warehouses and

16  management.  See Italian Colors Restaurant v. American Express Co., 2003 WL 2268242 (N.D. Cal.)

17  (cautioning that due to California's population, "virtually every significant class action case would need to be

18  litigated in California").  However, it has a characteristic that all of these Costco management districts

19  except the Southern District of California lack: it is the most appropriate forum for litigating the claims of at

20  least one named plaintiff.  Furthermore, it is a forum for which there has been no showing of inconvenience

21  for Costco, due to defendant's strong contacts here and the agreement of the parties to travel to witnesses'

22  own locales for purposes of discovery.

23       The Northern District is the plaintiff's chosen forum, and as such it is entitled to some deference.  In

24  class actions, this deference is reduced where a plaintiff lacks contacts with the chosen district.  See Lou v.

25  Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (holding that "when an individual brings a derivative suit or

26  represents a class, the named plaintiff's chosen forum is given less weight").  In judging the weight to be

27  accorded to the choice of forum, consideration must be given to the named plaintiffs' contacts with the

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   forum, including those relating to plaintiffs' cause of action.  Id.  "If the operative facts have not occurred

2   within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is

3   entitled to only minimal consideration."  Id.  In the present action, deference to the choice of forum for the

4   entire class should be preserved, because a named plaintiff has brought the action in the judicial district with

5   which she has had the most extensive contacts.  This is particularly true in the present case where, as

6   discussed, a liberal venue provision provides additional grounds for deferring to the plaintiffs' choice of

7   forum.

8        Other applicable factors in a section 1404(a) analysis, such as the familiarity of the court with the

9   governing law, are neutral here.  This court is as well or better equipped to apply both Title VII and the

10  California Fair Housing and Employment Act as any of the three alternate forums proposed, and plaintiffs

11  have not alleged any pendent claims arising under Colorado or Washington law.  While this court's docket

12  is more congested than that of the Western District of Washington and the District of Colorado, those

13  districts are weaker choices for the convenience of the parties generally.  Congestion in the civil docket of

14  the Southern District of California is lower than the Northern District, but that district's dramatically heavier

15  criminal docket renders the advantages of transfer on grounds of court congestion at best a marginal note in

16  favor of the Southern District.  See Def's Mot. (10-18-04), Exh. (Judicial Statistics); Def's Supp. Mot.

17  (12-1-04), Exh. A.

18       In sum, the landscape of the parties' contacts with the competing venues is as follows.  The District

19  of Colorado is the home of testimonial and record evidence of Ellis's work performance (relevant to both

20  failure to promote and retaliation claims), six Costco warehouses, and evidence relating to one promotion

21  to General Manager during the relevant time period.  The Western District of Washington houses limited

22  personnel records with respect to all three plaintiffs, divisional management of the area encompassing

23  Sasaki's Costco district, and executive and regional management of Costco operations.  The Southern

24  District of California is the home of Ellis and Horstman personnel documents, witnesses relating to Ellis and

25  Horstman's failure to promote claims, management of a large region of Costco operations, management of

26  a large division of Costco operations, fourteen warehouses, and evidence relating to one promotion to

27  General Manager during the relevant period.  The Northern District is the home of Sasaki's personnel

28

1    records, witnesses relating to Sasaki's failure to promote claims and work performance, management of a

2    region of Costco operations, twenty-seven warehouses, and testimonial and documentary evidence relating

3    to six promotions to General Manager positions during the relevant period.  The Northern District of

4    California is also plaintiffs' choice of forum.  The two California districts are better positioned to apply

5    plaintiffs' claims arising under the California Fair Housing and Employment Act.  All three forums represent

6    districts where plaintiffs allegedly would have worked but for the defendant's unlawful promotional

7    practices.

8           While each of these venues contains valuable employment records and party contacts, and each

9    poses advantages and disadvantages in the convenience litigating the present nationwide action, the court

10   finds that plaintiffs are entitled to their choice of forum.  None of the three alternative forums satisfies

11   defendant's burden to overcome the presumption in favor of a plaintiff's choice of forum.  Despite years of

12   change in the case law of forum non conveniens and section 1404(a) analysis, it remains a principle of the

13   doctrine today that: "It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,'

14   'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right

15   to pursue his remedy.  But unless the balance is strongly in favor of the defendant, the plaintiff's choice of

16   forum should rarely be disturbed."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  See Ravelo

17   Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a

18   domestic plaintiff's forum choice").  Defendant has not made a "strong showing of inconvenience" in this

19   case, and they are not entitled to a transfer disrupting the plaintiff's choice of forum. See Decker Coal Co.,

20   805 F.2d at 843.

21

22   CONCLUSION

23          For the reasons stated above, the court hereby DENIES defendant's motion to transfer this action

24   pursuant to 28 U.S.C. section 1404(a).

25

26          IT IS SO ORDERED.

27

28

18

1   Dated: May 31, 2005

2                                                   _____
                                                    MARILYN HALL PATEL
3                                                   United States District Court Judge
                                                    Northern District of California
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENDNOTES

1.  All facts herein have been taken from the plaintiffs' First Amended Complaint, unless otherwise noted.

2. Whether Horstman was willing to consider relocation in order to be promoted is a matter currently in dispute between the parties.  Compare Cardoso Dec. at ¶¶ 5-10 with Horstman Dep. at 51:11-52:1; Horstman EEOC Aff. at ¶ 3.  For the purposes of this largely pre-discovery motion concerned with the parties' contacts in competing forums, the court need not resolve this issue.  There is nothing in the record to suggest that Horstman sought promotion to positions in the Northern District of California, Western District of Washington, or District of Colorado to any extent greater than her general quest for a promotion anywhere in the country.

3. Some courts have granted section 1404(a) motions to transfer Title VII cases to districts within a single state.  See, e.g., Dhillon v. The Regents of the University of California, 1995 WL 39466 (N.D. Cal. Jan. 31, 1995); In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003); Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993).  However, these courts have failed to address the venue provision's statewide language and its potential effect on section 1404.

4. Both parties have argued (based on an unpublished order from this district) that the presence of senior management in any given district should not be a persuasive factor in assessing the convenience of the litigation in alternate forums.  See Def.'s Supp. Reply (May 2, 2005) at 2; Pls.' Supp. Opp'n (December 13, 2004) at 2.  As evident from the very fact that the parties make this contention to diminish the advantages of opposing venues, this is as best a neutral factor.  Applying the rule would discount the showing of convenience made by all of the four districts at issue here, and it would overlook the fact that in a failure to promote case, persons in management are arguably more important than hourly employees and other non-party witnesses not subject to compulsory process in the forum district.

5. This court appreciates defendant's frustration that Sasaki was a late addition to the roster of named plaintiffs in this action.  However, defendant stipulated to that addition, and there is no basis for the court to now ignore the locational center of gravity of her claims.  Though her addition after the filing of defendant's motion must at some level tip the "interests of justice" in this action, it cannot escape this court's notice that both parties to this action are engaging in aggressive litigation tactics.  This fact is conspicuously evidenced by defendant's twenty-two declarations barraging this court with the details of adverse employment incidents in Ellis's work history with Costco.  These declarations grossly exceeded their ostensible purpose of noting the locations of witnesses in this action.

6. The parties have provided no information regarding the number of warehouses in operation in the Western District of Washington.

7. The presence of these warehouses indicates high numbers of potential *candidates* for promotion as well as potential *positions* for filling via promotion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California