1   SEYFARTH SHAW LLP
    Kenwood C. Youmans (SBN 68258)
2   David D. Kadue (SBN 113578)
    2029 Century Park East, Suite 3300
3   Los Angeles, California  90067-3063
    Telephone: (310) 277-7200
4   Facsimile:  (310) 201-5219
    kyoumans@seyfarth.com
5   dkadue@seyfarth.com

    SEYFARTH SHAW LLP
    David B. Ross (admitted *pro hac vice*)
    1270 Avenue of the Americas
    Suite 2500
    New York, New York  10020
    Telephone:   (212) 218-5500
    Facsimile:   (212) 218-5526
    dross@seyfarth.com

6   SEYFARTH SHAW LLP
    Gerald L. Maatman, Jr. (admitted *pro hac vice*)
7   131 S. Dearborn Street, Suite 2400
    Chicago, Illinois  60603-5803
8   Telephone: (312) 460-5000
    Facsimile:  (312) 460-7000
9   gmaatman@seyfarth.com

    SEYFARTH SHAW LLP
    Thomas J. Wybenga (admitted *pro hac vice*)
    999 Lake Drive
    Issaquah, Washington  98027
    Telephone:   (425) 313-6794
    Facsimile:   (425) 313-7922
    twybenga@seyfarth.com

10  Attorneys for Defendant
    COSTCO WHOLESALE CORPORATION

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                (SAN FRANCISCO DIVISION)

14  SHIRLEY "RAE" ELLIS, on behalf of herself   )   Case No. C04 3341 MHP
    and all others similarly situated,          )
15                                              )   **NOTICE OF MOTION TO STRIKE**
                   Plaintiffs,                  )   **DECLARATION OF BARBARA F.**
16                                              )   **RESKIN, PH.D.; MEMORANDUM OF**
            v.                                  )   **POINTS AND AUTHORITIES IN**
17                                              )   **SUPPORT**
    COSTCO WHOLESALE CORPORATION                )
18                                              )   Date:      November 6, 2006
                   Defendant.                   )   Time:      2:00 p.m.
19                                              )   Courtroom: 15
    _____    )   Judge:     Marilyn Hall Patel

20

21

22

23

24

25

26

27

28

                                    MOTION TO STRIKE RESKIN DECLARATION
                                    Case No. C04 3341 MHP

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

I.  PLAINTIFFS MUST PROVE THEIR EXPERT TESTIMONY IS RELIABLE ............2

    A.  Flawed Expert Testimony May Be Properly Stricken At Class Certification ......2

II.  THE RESKIN DECLARATION IS INADMISSIBLE .....................................................6

    A.  The Scientific Research Underpinning Dr. Reskin's Central Opinion Is Not Relevant Or Useful In Assessing Effects Of Alleged "Subjectivity" In Relevant Promotion Decisions..............................................................................6

    B.  Dr. Reskin's Opinion Concerning Effects Of "Subjectivity" On Promotion Decisions At Costco Is Premised On A Fundamental Mistake Of Fact That Invalidates Her Conclusions......................................................................11

    C.  Lack Of Significant Gender-Related Disparities Disproves Dr. Reskins Conclusion About Stereotyping And "Subjective" Decisionmaking At Costco................14

    D.  Dr. Reskin's Opinion That Out-of-Context Quotations from Jim Sinegal Reflects Gender Stereotyping Lacks Scientific Basis............................. 16

    E.  Dr. Reskin's Comments About Costco's Policies and Practices Lack Basis In Relevant Scientific Or Fact....................................................... 20

CONCLUSION................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................4

*Astra Aktiebolag v. Andrx Pharmaceuticals,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002)...............................................7, 11, 12, 13

*Barfield v. Orange County,*
    911 F.2d 644 (11th Cir. 1990) .........................................................................18

*Bazile v. City of New York,*
    215 F. Supp. 2d 354 (S.D.N.Y. 2002).................................................................18

*Bell v. Ascendant Solutions,*
    422 F.3d 307 (5th Cir. 2005) ............................................................................4

*Brink v. Union Carbide Corp.,*
    41 F. Supp. 2d 402 (S.D.N.Y. 1997)..................................................................18

*Collier v. Bradley Univ.,*
    113 F. Supp. 2d 1235 (C.D. Ill. 2000) ........................................................18, 25

*Curtis v. Oklahoma City Public Schools Bd.,*
    147 F.3d 1200 (10th Cir. 1998) ........................................................................18

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993)..................................................................................3, 7, 15, 16

*Domingo ex rel. Domingo v. T.K.,*
    289 F.3d 600 (9th Cir. 2002) ......................................................................7, 12

*Dukes v. Wal-Mart,*
    222 F.R.D. 189 (N.D. Cal. 2004)........................................................................5

*Elcock v. Kmart Corp.,*
    233 F.3d 734 (3d Cir. 2000)........................................................................15, 16

*Gariety v. Grant Thornton, LLP,*
    368 F.3d 356 (4th Cir. 2004) ...........................................................................6

*General Elec. Co. v. Joiner,*
    522 U.S. 136 (1997)......................................................................................7, 12

*Greenwell v. Boatwright,*
    184 F.3d 492 (6th Cir. 1999) ...........................................................................12

*Guidroz-Brault v. Missouri Pac. R. Co.,*
    254 F.3d 825 (9th Cir. 2001) ......................................................................12, 14

*Guillory v. Domtar Indus.,*
    95 F.3d 1320 (5th Cir. 1996) ......................................................................12, 14

*Jerden v. Amstutz,*
    430 F.3d 1231 (9th Cir. 2005) ........................................................................21

*Jones v. GPU*,
    234 F.R.D. 82 (E.D. Pa. 2005) ............................................................................................6

*Kannankeril v. Terminix Int'l*,
    128 F.3d 802 (3d Cir. 1997) ..............................................................................................21

*Kline v. Coldwell Banker & Co.*,
    508 F.2d 226 (9th Cir. 1974) ..............................................................................................5

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................................3, 4

*Lust By & Through Lust v. Merrell Dow Pharms.*,
    89 F.3d 594 (9th Cir. 1996) ................................................................................................4

*Marmo v. Tyson Fresh Meats*,
    457 F.3d 748 (8th Cir. 2006) ..........................................................................................7, 12

*McNamara v. Bre-X Minerals Ltd.*,
    2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30, 2002) ...................................................4

*Nakajima v. GMC.*,
    857 F. Supp. 100 (D.D.C. 1994) ......................................................................................12

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ................................................................................................7

*In re PolyMedica Corp. Securities Litigation*,
    432 F.3d 1 (1st Cir. 2005) ..................................................................................................6

*In re Polypropylene Carpet Antitrust Litigation*,
    996 F. Supp. 18 (N.D. Ga. 1997) ......................................................................................5

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ..........................................................................................................7

*In re Rezulin Products Liability Litigation*,
    369 F. Supp. 2d 398 (S.D.N.Y. 2005) ................................................................................7

*Robinson v. Metro-North Commuter RR*,
    175 F.R.D. 46 (S.D.N.Y. 1997) ........................................................................................25

*Sanneman v. Chrysler Corp.*,
    191 F.R.D. 441 (E.D. Pa. 2000) ........................................................................................4

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

*Smith v. Colorado Interstate Gas Co.*,
    794 F. Supp. 1035 (D. Colo. 1992) ..................................................................................18

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) ..................................................................................15, 16

*Thomas & Thomas Rodmakers v. Newport Adhesives & Composites*,
    209 F.R.D. 159 (C.D. Cal. 2002) .............................................................................5

*Unger v. Amedisys*,
    401 F.3d 316 (5th Cir. 2005) ...................................................................................4

*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002) ...............................................................................18

*United States v. Hanna*,
    293 F.3d 1080 (9th Cir. 2002) .................................................................................7

*United States v. Miller*,
    874 F.2d 1255 (9th Cir. 1989) ...............................................................................21

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir. 2001) .................................................................................7

*Vickers v. GMC.*,
    204 F.R.D. 476 (D. Kan. 2001) ................................................................................6

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) .....................................................................................5

*Ward v. Westland Plastics*,
    651 F.2d 1266 (9th Cir. 1980) ...............................................................................18

*Wilson v. Muckala*,
    303 F.3d 1207 (10th Cir. 2002) .............................................................................18

*Windham v. American Brands*,
    565 F.2d 59 (4th Cir. 1977) .....................................................................................5

**DOCKETED CASES**

*Cruz v. Coach Stores*,
    No. 96 Civ. 8099, 1998 WL. 812045 (S.D.N.Y. Nov. 18, 1998) ........................................6

*Schwab v. Philip Morris USA, No. CV 04-1945*,
    2005 WL. 3032556 (E.D.N.Y. Nov. 14, 2005) ...................................................................5

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1

**FEDERAL STATUTES OR RULES**

2

28 U.S.C. §§ 2071-2077 .............................................................................................................4

3

Fed. R. Evid. 702 ...............................................................................................................12, 18

4

**MISCELLANEOUS**

5

6

*L. Elizabeth Chamblee, Between "Merit Inquiry" And "Rigorous Analysis": Using
Daubert to Navigate The Gray Areas Of Federal Class Action Certification* 31
Fla. St. U. L. Rev. 1041, 1090 (2004)...............................................................................4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

Please take notice that, on November 6, 2006 at 2 p.m. before the Honorable Judge Marilyn Hall Patel, United States District Court, Courtroom 15, 450 Golden Gate Ave., San Francisco, California, Defendant will seek an order striking the Declaration of Barbara Reskin, Ph.D. This motion is based on the attached memorandum of points and authorities, the accompanying declarations and exhibits, the proposed order, and any further briefing and arguments of counsel.

**INTRODUCTION**

Barbara Reskin, Ph.D., prepared a declaration to support Plaintiffs' motion for class certification, presenting a theory of "cognitive bias" to support Rule 23's requirements of commonality and typicality. Dr. Reskin argues that because the promotion process at Costco has been uniformly subjective, all of Costco's promotion decisions are necessarily based upon gender stereotypes. Plaintiffs rely upon these alleged unconscious, gender-biased decisions as the unifying, common link among a large number of otherwise diverse potential class members to support the motion for class certification.

Putting aside the controversial nature of the research on "cognitive bias" and "sex stereotyping," Dr. Reskin has no scientific basis to extrapolate the results of cognitive bias research in a laboratory to the vastly more complex workplace environment at Costco. Her proffered opinions are so unreliable that they fail to establish common questions of law or fact. First, in Dr. Reskin's cited research, the settings, subjects, and decision making are so far removed from the facts of this case that they render her opinions about the effect of subjectivity in promotion decisions at Costco entirely unreliable. Second, Dr. Reskin sidesteps the limitations of "cognitive theory" by making a fundamental mistake of fact. Her opinion rests on mistaken beliefs about the identity of the decisionmakers, a mistaken belief that invalidates her conclusion based on her own theory. Third, Dr. Reskin's theory is confounded by the admitted

- 1 -

1    absence of any objective evidence of a disparate impact on females in promotions at Costco and

2    cannot be reliably applied to the facts, as the evidence demonstrates.  Not only does "cognitive

3    bias" and "stereotyping" not produce the widespread adverse impact predicted by Dr. Reskin's

4    theory, but in fact, just the opposite is true.  Finally, Dr. Reskin is not qualified to offer an expert

5    opinion on Costco's corporate culture, job descriptions, job analyses, promotion profiles,

6    performance appraisals, and other human resources practices relating to promotion decisions.

7

8           Accordingly, the Reskin declaration should be stricken and Plaintiffs should not be

9    permitted to rely on it to provide the common thread binding putative class members in their

10   efforts to certify a class.

11                                       **ARGUMENT**

12   **I.      PLAINTIFFS MUST PROVE THEIR EXPERT TESTIMONY IS RELIABLE**

13          **A.      Flawed Expert Testimony May Be Properly Stricken At Class Certification**

14                  **1.      The Court Should Apply *Daubert* At Class Certification**

15          Where, as here, Plaintiffs critically rely on their experts, the Court should assess expert

16   reliability under the principles established in *Daubert v. Merrell Dow Pharms*[1] and *Kumho Tire*

17   *Co. v. Carmichael.*[2]  Federal Rule of Evidence 702—the subject of both *Daubert* and *Kumho*

18   *Tire*—allows expert witness testimony only if (1) the testimony is based upon sufficient facts or

19   data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has

20   applied the principles and methods reliably to the facts of the case.[3]

21          "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted

22   is not only relevant, but reliable," *Daubert*, 509 U.S. at 590, and must ensure that an expert

23   employs "the same level of intellectual rigor that characterizes the practice of an expert in the

---

[1]   509 U.S. 579 (1993).

[2]   526 U.S. 137 (1999).

[3]   *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 590.

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

relevant field." *Kumho*, 526 U.S. at 152. Courts making this determination consider such factors as (1) whether the method has gained general acceptance in the relevant scientific community, (2) whether the method has been peer-reviewed, (3) whether the method can be (and has been) tested, and (4) whether there is a known or potential rate of error. *See Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 597 (9th Cir. 1996) (citing *Daubert*'s four non-exclusive factors that assist in "the separation of inadmissible opinions based on junk science from admissible opinions developed by the scientific method").

Especially in light of the heavy stakes at the class certification stage, courts have correctly applied a full *Daubert* analysis to expert testimony offered in support of class certification. *See Bell v. Ascendant Solutions*, 422 F.3d 307 (5th Cir. 2005) (affirming district court's denial of class certification where plaintiff's expert report excluded under *Daubert*); *Unger v. Amedisys*, 401 F.3d 316, 323-24 n.6 (5th Cir. 2005) (quoting with approval district court case that applied *Daubert* at the class certification stage); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000) (applying *Daubert* analysis at class certification stage); *McNamara v. Bre-X Minerals Ltd.*, 2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30, 2002) (same).

A law review commentator correctly concludes that a full *Daubert* analysis should apply to expert testimony at the class certification stage. L. Elizabeth Chamblee, *Between "Merit Inquiry" And "Rigorous Analysis": Using Daubert to Navigate The Gray Areas Of Federal Class Action Certification* 31 Fla. St. U.L. Rev. 1041, 1090 (2004). Anything less would deprive Costco, in derogation of the Rules Enabling Act, of its due process rights to exclude inadmissible evidence. 28 U.S.C. §§ 2071-2077; *see generally Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any substantive right.") (internal citations omitted). Courts have applied the Rules

1    Enabling Act in the class action context to disallow interpretations of Rule 23 that would

2    improperly alter the substantive rights of the parties. *See Windham v. American Brands*, 565

3    F.2d 59, 72 & n.41 (4th Cir. 1977) (disallowing fluid recovery under Rule 23, as violative of

4    REA); *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 233-34 (9th Cir. 1974) (same); *cf. Schwab*

5    *v. Philip Morris USA*, No. CV 04-1945, 2005 WL 3032556 at *4 (E.D.N.Y. Nov. 14, 2005)

6    (courts must stay within bounds of due process and avoid altering substantive law in violation of

7

8    REA when shaping Rule 23 remedies).

9            **2.    Even Under A Modified *Daubert* Test, Expert Testimony Must Be
                     Relevant And Reliable For Class Certification Purposes**

10

11           Some courts apply a modified *Daubert* standard at the class certification stage.[4]  The

12   controversy between a rigorous approach and more lenient approach need not detain the Court

13   here.  The Court need not consider "statistical dueling" because Dr. Reskin's analysis fails to

14   meet even a lenient test, given the undisputed facts.

15           Even under a modified *Daubert* standard, courts must not "uncritically accept all expert

16   evidence that is offered in support of, or against, class certification," *Dukes*, 222 F.R.D. at 191,

17   and "must ensure that the basis of the expert opinion is not so flawed that it would be

18   inadmissible as a matter of law." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,

19   135 (2d Cir. 2001); *Dukes*, 222 F.R.D. at 191 (expert opinion must at least have probative value

20   to be admitted for purposes of class certification).  Thus, the Court must determine whether the

21   expert's testimony is so flawed as to be inadmissible as a matter of law by examining whether

22   the expert's method (1) comports with basic principles, (2) has any probative value, and

23

24   (3) primarily uses evidence that is common to all members of the proposed class.[5]  Where an

25

26   ─────────────────
     [4]    *E.g., Dukes v. Wal-Mart*, 222 F.R.D. 189, 191-92 (N.D. Cal. 2004); *Thomas & Thomas
            Rodmakers v. Newport Adhesives & Composites*, 209 F.R.D. 159, 162 (C.D. Cal. 2002).

27
     [5]    *See In re Polypropylene Carpet Antitrust Litigation*, 996 F. Supp. 18, 26 (N.D. Ga. 1997);
28          *Dukes*, 222 F.R.D. at 191.

                                              - 4 -
     ────────────────────────────────────────────────────────

1  expert's testimony is flawed as a matter of law, it should not be admitted even at the class

2  certification stage.[6]

3       In assessing reliability, a court may weigh evidence to decide class certification issues.

4  E.g. *In re PolyMedica Corp. Securities Litigation*, 432 F.3d 1, 5-6 (1st Cir. 2005) (district court

5  has power to weigh evidence relating to class certification inquiry); *Gariety v. Grant Thornton,*

6  *LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (district court erred in taking plaintiff's assertions at face

7  value in certifying class, court noting that "[i]f it were appropriate for a court simply to accept

8  
9  the allegations of a complaint at face value in making class action findings, every complaint

10  asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order,

11  frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for

12  conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements

13  of Rule 23 have been satisfied.") (internal citations omitted); *Jones v. GPU*, 234 F.R.D. 82, 93

14  (E.D. Pa. 2005) (denying motion for class certification due to lack of commonality and

15  
16  typicality; while court "does not normally look into the merits of the case at the certification

17  stage, the validity of the plaintiffs' proffered statistical analysis is a proper inquiry at this point");

18  7B ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE, Charles A.

19  Wright, § 1798 at 223 (3d ed. 2005) (weighing evidence on class certification is appropriate if it

20  is "directed toward examining the underlying facts to determine whether they are susceptible to

21  common proof and is not to determine the probability of success on the merits").

---

26  [6] *See, e.g., Vickers v. GMC*, 204 F.R.D. 476, 479 (D. Kan. 2001) (court cannot certify class action based on expert opinion so flawed as to be inadmissible as matter of law); *Cruz v. Coach Stores,* No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (S.D.N.Y. Nov. 18, 1998) (disregarding expert report submitted in support of motion for class certification as "fatally flawed"), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir. 2000).

1    Here, Dr. Reskin's proffered opinion is so unreliable that it is not sufficiently probative to

2  be useful in evaluating whether the requirements for class certification have been met.[7]  As such,

3  the Reskin declaration should be stricken.

4  **II.    THE RESKIN DECLARATION IS INADMISSIBLE**

5
        **A.    The Scientific Research Underpinning Dr. Reskin's Central Opinion Is Not**
6            **Relevant Or Useful In Assessing Effects Of Alleged "Subjectivity" In**
            **Relevant Promotion Decisions**
7
8        "A crucial consideration in evaluating expert testimony is whether the conclusions flow

9  reliably from the premises."  *In re Rezulin Products Liability Litigation*, 369 F. Supp. 2d 398,

10  427 (S.D.N.Y. 2005).  As a result, "[e]ven if an expert's proposed testimony constitutes scientific

11  knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of*

12  *the case*."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994).  This

13  consideration is bound up with the relevancy requirement described in *Daubert* as one of "fit."

14
   *In re Rezulin Products Liability Litigation*, 369 F. Supp. 2d at 426.
15
16        An expert's proffered scientific testimony must connect to the facts of the case to assist

17  the factfinder.[8]  Accordingly, a court may exclude expert testimony if "there is simply too great

18  an analytical gap between the [facts of the case] and the opinion proffered."[9]

19

20  [7]  In addition, to be admissible expert testimony must address an issue beyond the common
        knowledge of the average layman. *See United States v. Vallejo*, 237 F.3d 1008, 1019 (9th
21      Cir.), *amended by* 246 F.3d 1150 (9th Cir. 2001);  *United States v. Hanna*, 293 F.3d 1080,
        1086 (9th Cir. 2002).  *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 256 (1989), in
22      which a majority of the Supreme Court rejected the notion of expertise in gender
        stereotyping in evaluating the testimony of the expert psychologist presented by the plaintiff,
23      stating that, "[i]t takes no special training to discern sex stereotyping in a description of an
        aggressive female as requiring 'a course in charm school.'"  And, in a not entirely dissimilar
24      context, the Ninth Circuit has held that "cultural stereotyp[ing]" testimony"—which in many
        ways is what Dr. Reskin offers regarding Costco—"should not be dignified as expert
25      opinion." *Jinro America v. Secure Investments,* 266 F.3d 993, 1001 (9th Cir. 2001).

26  [8]  *See Daubert*, 509 U.S. at 591.

    [9]  *General Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997) (Breyer, J., concurring); *See also*
27      *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002);  See, e.g. *Marmo v.*
        *Tyson Fresh Meats,* 457 F.3d 748, 759 (8th Cir. 2006) (excluding expert based on lack of
28      fit);  *Astra Aktiebolag v. Andrx Pharmaceuticals,* 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002)

- 6 -

1    As demonstrated below, the same is true here—the scientific research on which

2  Dr. Reskin's central thesis depends is so dissimilar to the facts of record that her declaration is

3  irrelevant to this case and should be excluded.

4              1.    **Reskin's Laboratory-Based Theory Is Not Relevant To Costco**

5    Throughout her declaration, Dr. Reskin repeats a theme central to all her conclusions:

6  "subjectivity" and "discretion" in the promotions to warehouse General Manager ("GM") and

7  Assistant General Manager ("AGM"), left unchecked by bureaucratic personnel policies and

8  practices, gives rise to "cognitive errors associated with sex stereotyping and ingroup favoritism

9  [that] constrain women in their opportunity to become managers at Costco relative to those of

10  men." Reskin Decl. ¶ 89.[10] According to Dr. Reskin, when individuals such as Costco's

11  managers are allowed to make decisions based on subjective criteria, they base those decisions

12  on stereotypes, and this stereotyping explains the alleged statistical under-representation of

13
14  women in these positions.

15

16    Dr. Reskin contends that automatic cognitive bias is hardwired in the brain, so that we all

17  take cognitive shortcuts by "filling in the blanks" of what we do not know about a stranger with

18  stereotypic expectations that tend to favor persons most like us.  Reskin. Dep. 67-68, 137, Ex. Y.

19  This opinion rests almost exclusively on cognitive research conducted on college student

20  subjects in laboratories. *Id.* at 104-05, 108-09.[11]  Reporting the results of this research,

21

22
23
("where the proffered testimony is based on a methodology transposed from one area to a completely different context, and there is no independent research supporting the transposition, the 'fit' requirement may not be satisfied").

24
25  [10]  The declarations, depositions and exhibits cited herein have all been filed by Defendant in opposition to Plaintiffs' motion for class certification.

26
27  [11]  Dr. Reskin explains that her conclusions are supported by studies in which college student subjects are rapidly shown pictures of total strangers—men and women, older and younger persons, African-Americans and Whites—with whom they are asked to associate certain attributes.  Reskin Dep. 110-11, 113, Ex. Y.  From the response time that it takes subjects to respond, measured in fractions of a second, researchers believe that they can uncover and measure unconscious stereotyping (*i.e.*, automatic cognitive bias).  Landy First Decl. at 93-

28
- 7 -

1   conducted by people not testifying here, Dr. Reskin concludes that "automatic cognitive bias"

2   activates "stereotypic-expectations" concerning women (and other groups). *Id.* at 110-113, 126.

3   She opines that this "cognitive bias" is a universal physiological mechanism that makes

4   subjective decisionmaking "vulnerable to gender bias." *Id.* at 240-41.

5       Not only is Dr. Reskin's theory of "cognitive bias" controversial and not widely

6   accepted,[12] but given the fundamental limitations of cognitive research, which she acknowledges,

7   there is simply no scientific basis to extrapolate the results of cognitive experiments in

8   laboratories to the decisionmaking environment at Costco.  Dr. Reskin concedes that "work

9   organizations are vastly more complex than laboratory experiments."  Reskin Dep. 101-03, Ex.

10   Y.  College students viewing photographs in laboratories differ in significant ways from

11   experienced managers who are evaluating real people with whom they have worked for years,

12   normally in a "team" environment, and on whom they depend for their mutual success.[13]   Dr.

13   Reskin concedes, as she must, that there is no cognitive research based on an industrial setting

14

15

16

17

18

---

19       98.  These experiments are referred to as latency response tests or implicit association tests
        (IAT).  Reskin Dep. 110-11, 113, Ex. Y.  Dr. Reskin cites only one empirical study which
20       was not conducted in the laboratory, and that study involved historical analysis of entry level
        hiring for a symphony orchestra, which does not involve an industrial setting or managerial
21       jobs.  *Id.* at 110-11, 113.

22   [12]   In his First Report, Dr. Landy concludes that Dr. Reskin misrepresents the current scientific
        view of automatic cognitive processes and states: "Seen in the best light, the concept of
23       automatic cognitive processing (or implicit prejudice) is an intriguing hypothesis but it is far
        from generally accepted by the scientific psychological community" (*id.* at 51), and
24       concludes that "[n]evertheless, the scientific status of this controversial phenomenon is far
        from settled and is nothing more than inspired speculation as a foundation for 'explaining'
25       allegations of discrimination.  At this stage of investigation, the notion of automatic
        cognitive processing as an explanation for gender discrimination is little more than 'pop'
26       psychology."  *Id.* at 97-98.

     [13]   From the point of view of demographics alone, as Dr. Reskin acknowledges, the differences
27       are significant: student subjects are self-selected volunteers; they lack knowledge of the
        work place; and they differ in age and motivation from the work place manager.  Reskin
28       Dep. 103-04, Ex. Y.

- 8 -

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1    such as Costco, nor any research which compares laboratory results with the results of

2    experiments in an industrial workplace context. *Id.* at 110-11.[14]

3

         **2.  Dr. Reskin's Research Fails To Consider Critical Individuating**
4                **Information**

5         The laboratory experiments on "automatic cognitive bias" and gender stereotyping tell

6    only part of the story.  Dr. Reskin acknowledges that there is a consensus among social scientists

7    and psychologists that accurate, current "individuated information," among other factors, can

8    "prevent" or "reduce" the effects of stereotyping.[15] *Id.* at 115-16.  For example, Dr. Reskin

9
10    agrees that when a person makes "a new personal connection with a member of a previously

   devalued group, implicit attitudes towards that person may change dramatically and rapidly" (*id.*
11

12    at 114); that "the more organizations emphasize organization culture, the easier it should be to

13    expand the ingroup to encompass all employees" (*id.* at 80); and that "[o]ganizations can

14    maximize the impact of heterogeneous groupings by reinforcing ingroup indentification through

15    task interdependence, job rotation, and other collective activities."  *Id* at 80-81.  In fact, the

16
17    mitigating factors that Dr. Reskin acknowledges, including "individuated information," are

   abundantly present in the relevant decisionmaking environment at Costco in the case of GM,
18

19    AGM, and Senior Staff managers.

20         Armed with "individuated information" about employees who are candidates for

21    promotion, Costco decisionmakers do not need to take what Dr. Reskin refers to as "cognitive

22    shortcuts" to fill in the gaps in their knowledge with stereotypic expectations, because, as Dr.

23    Reskin explains, "The more systematic information you have … then you don't need to

24

25    [14]    There is certainly no research pertaining to decisionmakers at Costco.  *Id.*

26    [15]    Dr. Reskin had earlier written in a peer-reviewed publication that "individuating information" can "prevent" stereotypes and stated at her deposition that she does not repudiate that statement, but today would more cautiously use the word "reduce."  Reskin

27    Dep. 83.  In any case, Dr. Reskin acknowledges a general consensus on the effect of "individuated information," although no consensus has been reached "across the board" on all aspects of it.  Reskin Dep. 115, Ex. Y.

28

1  stereotype." *Id.* at 138.  Put another way, if "automatic cognitive bias" acts as a "distorting

2  lens," accurate, current "individuated information" about employees acts as a pair of glasses that

3  corrects a decisionmaker's distorted vision.  *Id.* at 69-71, 85.  The cognitive research that forms

4  the foundation of Dr. Reskin's opinions does not provide any opportunity to take into account

5  "individuated information" or other countervailing factors present in a workplace.[16]

6

7      Thus, Dr. Reskin can cite no empirical research to demonstrate the net effect of

8  mitigating factors in any industrial setting, much less gauge their effect at Costco.  Because she

9  is unable to translate the laboratory results into the real industrial context, Dr. Reskin concedes

10  that she cannot quantify the extent to which the purported stereotyping effect may adversely

11  impact women;  she cannot separate the effect of purported stereotyping from the effect of other

12  non-discriminatory factors, such as women's preferences; and she cannot tell in any particular

13  decision whether stereotyping has in fact occurred.  *Id.* at 117-18.  Her opinion, in effect,

14  advances a non-testable hypothesis, because there is no way to tell whether the effects of

15  stereotyping exist in a particular promotion decision.

16

17      Dr. Reskin's defective declaration is a textbook example of what happens when "the

18  proffered testimony is based on a methodology transposed from one area to a completely

19  different context, and there is no independent research supporting the transposition." *Astra*

20  *Aktiebolag*, 222 F. Supp. 2d at 488.   There is simply no scientific basis from which Dr. Reskin

21  may extrapolate the results of cognitive experiments from the laboratory to the workplace.  The

22  application of cognitive theory on stereotyping to the circumstances at Costco is speculative,

23  without any scientific basis, and cannot assist the Court in deciding the issue presented by

24

25

26  [16]  Other factors that reduce or prevent the effects of stereotyping may include the motivation
        of the subject (Reskin Dep. 132, Ex. Y), the varying degree of prejudice of the
27      decisionmaker, the cognitive capabilities of the decisionmaker, whether the decisionmaker
        has adequate time to make a decision, and the problem of multiple competing "stereotypes"
28      which militate in different directions.  *Id.* at 86-87, 133-36, Landy First Decl. at 50.

- 10 -

1    Plaintiffs' motion for class certification.  Consequently, just as in *Joiner* and numerous other

2    cases addressing similarly flawed expert opinions, this Court should strike Dr. Reskin's

3    declaration because "there is simply too great an analytical gap between the [facts of the case]

4    and the opinion proffered."  *Joiner*, 522 U.S. at 147; *Domingo ex rel. Domingo*, 289 F.3d at 607

5    (upholding exclusion of expert opinion on same basis); *Burleson*, 393 F.3d at 587 (same);

6    *Marmo*, 457 F.3d at 758 (same).

7

8    **B.    Dr. Reskin's Opinion Concerning Effects Of "Subjectivity" On Promotion
             Decisions At Costco Is Premised On A Fundamental Mistake Of Fact That
             Invalidates Her Conclusions**

9

10   "Expert testimony is inadmissible if it is ... contrary to the facts of the case."  *Marmo*, 457

11   F.3d at 758 (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir.

12   2000)).  Hence, an expert's opinion that is premised on facts that are indisputably wrong is not

13   admissible because it is not relevant, reliable, or probative.  *See* Fed. R. Evid. 702, 703.

14   Numerous courts, including the Ninth Circuit, have applied this common sense rule to exclude

15   expert opinions based on incorrect facts.  *See, e.g., Guidroz-Brault v. Missouri Pac. R. Co.*, 254

16   F.3d 825, 830-31 (9th Cir. 2001) (expert opinions should have been stricken where their

17   assumptions were unsupported by the facts as described or by other evidence in the record and

18   were therefore "not sufficiently fact based to be reliable on the question"); *Guillory v. Domtar*

19   *Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("an opinion based totally on incorrect facts will not

20   speak to the case at hand and hence will be irrelevant").[17]

21

22

23   _____

24   [17]   The Fifth Circuit in *Guillory* quickly dispatched of the argument that reliance on incorrect
            facts only went to the weight of the expert's opinion, stating, "cross-examination of Dr.
            Reed could not salvage the truth."  *See also Nakajima v. GMC.*, 857 F. Supp. 100, 105

25          (D.D.C. 1994) (where expert's opinion is based on incorrect assumption, testimony should
            not be permitted because it fails to serve its purpose of aiding the trier of fact in its

26          determination); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) ("Expert
            testimony ... is inadmissible when the facts upon which the expert bases his testimony

27          contradict the evidence"); *Astra Aktiebolag*, 222 F. Supp. 2d at 488 ("if the [expert's]
            analysis is premised upon a faulty assumption, his testimony may be excluded for lack of

28          probative value") (citations omitted).  *Id.*

- 11 -

MOTION TO STRIKE RESKIN DECLARATION

Case No. C04 3341 MHP

1     In forming her opinions, Dr. Reskin erroneously assumed that regional managers at

2  Costco are the decisionmakers in the promotions of Senior Staff managers.  Reskin Dep. 200,

3  Ex. Y.  Since regional managers do not work in the same warehouse on a daily basis with Senior

4
   Staff managers, Dr. Reskin wrongly concluded that, "the relatively small time that the promotion
5
6  decisionmakers spend with those employees" and their lack of accurate, current individuated

7  information about the Senior Staff managers made it probable that their subjective promotion

8  decisions were tainted by gender stereotyping.  *Id.* at 117-18.[18]

9     In fact it is the GMs, with the assistance of their AGMs, who effectively make the

10 decision to promote Senior Staff managers in their respective warehouses based on their

11 extensive knowledge of their Senior Staff managers.  Notwithstanding regional managers'

12
   approval of these decisions, the GMs are unquestionably the principal decisionmakers, with the
13
14 assistance of their AGMs.  Moreover, in the case of assignments to Merchandise Manager, there

15 is no involvement at any level above the warehouse.[19]

16    By wrongly assuming that the decisionmakers for Senior Staff managers promotions did

17 not work at the warehouse (Reskin Dep. 89, 200, Ex. Y), Dr. Reskin failed to consider the

18 critical individuating information and motivation of GM and AGMs in her analysis.  She did not

19
   consider, for example, how GMs and AGMs spent their time, how extensively they interacted
20
21 with the Senior Staff managers on a daily basis, and how long GMs and AGMs have typically

22 worked together with Senior Staff managers in the job pool.[20]  As explained *supra*, individuated

23
24 [18]  At deposition, Dr. Reskin conceded that she relied on the information provided to her by
   Plaintiffs' counsel, and that, "If there were facts that were provided that were incorrect, then
25 I would look at how that affected my conclusions."  Reskin Dep. 32, Ex. Y.

26 [19]  See the declarations of Costco's Regional Mangers submitted in opposition to class
   certification.

27 [20]  Dr. Reskin was unaware, for example, that the GM has an office right on the warehouse
   floor (Reskin Dep. 91, Ex. Y): "I actually don't know where the warehouse manager hangs
28 out."  *Id.* at 90.  She candidly stated: "I simply do not know where the warehouse manager
   spends what share of his time and how much is in the company of other people."  *Id.* at 92.

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1    information dramatically and rapidly changes peoples' stereotypes and may prevent or reduce the

2    effects of stereotypic-expectations, as even Dr. Reskin conceded.  For example, concerning

3    performance evaluations of Senior Staff managers made or approved by GMs and AGMs,

4    Dr. Reskin opined: "so they have worked together for some amount of time.  I wouldn't see this

5    as being anywhere near as likely to be tainted if they are being made by their immediate

6    supervisors." *Id.* at 188.  The same is obviously true for promotion decisions made by GMs and

7    AGMs from the Senior Staff managers in their warehouse.[21]

8

9         In sum, Dr. Reskin's declaration must be excluded as irrelevant, unreliable, and lacking

10   probative value because of her mistake in an essential fact—the identity of the promotion

11   decisionmakers and their relation to the Senior Staff candidates.  *See, e.g., Guidroz-Brault v.*

12   *Missouri Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (court holds that experts' opinions

13   should have been stricken where their assumptions were unsupported by the facts as described

14   and other evidence in the record and were therefore "not sufficiently fact based to be reliable on

15   the question"); *Guillory*, 95 F.3d at 1331 ("In other words, an opinion based totally on incorrect

16   facts will not speak to the case at hand and hence will be irrelevant.").

17

18

19

20

21        Dr. Reskin did not know if AGMs spent time on the warehouse floor or whether GMs and
          AGMs are motivated to select capable Senior Staff Managers.  *Id.* at 93, 100.

22   [21]  As Dr. Landy states, "Because employment decisionmaking was delegated within Costco to
          local warehouse, region and district management, actual decisionmakers have very specific

23        information about the performance of employees in their decisionmaking processes related
          to promotions.  Given the wealth of information available to managers regarding the

24        performance and capabilities of the candidates for advancement, there is no reason to expect
          that stereotypes would play any role in the decisionmaking process.  Thereby, it would be

25        expected that stereotypes would play no role in these processes.  Dr. Reskin fails to
          acknowledge the high likelihood of the effect of individuating information in the

26        promotional decisionmaking process used by Costco that would serve to eliminate gender
          bias."  Landy First Decl. 85.  Dr. Landy identifies the myriad of individuating information

27        on which Costco management relies in making promotional decisions, further supporting his
          thesis.  Landy First Decl. 86-89; Table 13.

28

- 13 -

1

C.     **Lack Of Significant Gender-Related Disparities Disproves Dr. Reskin's Conclusion About Stereotyping And "Subjective" Decisionmaking At Costco**

2

3

An expert's theory that does not produce consistent results renders the theory unreliable.[22]

4

This point is especially true where the expert refuses to modify a flawed hypothesis despite being

5

presented with its inconsistent results.[23]

6

1.     **Costco's Gender-Neutral Promotion Data Belies Dr. Reskin's Stereotyping Theory**

7

8

Application of Dr. Reskin's sex stereotyping hypothesis yields results that are not merely

9

inconsistent, but that flatly contradict her stereotyping hypothesis. If her theory of "unchecked

10

subjectivity" causes gender-related stereotyping at Costco were plausibly true, then it would find

11

support in widespread, systematic disparities throughout the promotional decisionmaking

12

process. Yet the undisputed data show just the opposite. Rather than demonstrating pervasive

13

disparities in promotion decisions, the evidence reveals no statistically significant disparities in

14

(i) the promotion of men and women to GM from the job pool of AGMs,[24] (ii) the promotion of

15

men and women to AGM in most of the regions, (even under Dr. Drogin's flawed model),[25] or

16

17

(iii) the promotion of men and women to AGM within the statute of limitations period.[26] Each

18

19

20

[22]   *See Daubert,* 509 U.S. at 590 n.9 (observing that reliability inquiry asks, "does application of the principle produce consistent results?"); *Elcock v. Kmart Corp.,* 233 F.3d 734, 747 (3d Cir. 2000) (excluding psychologist's testimony that failed to articulate methodology with objective standards and reproducible results).

21

[23]   *See, e.g., In re TMI Litig.,* 193 F.3d 613, 675-76 (3d Cir. 1999) (excluding expert testimony because "the results of [the] testing undermined [the expert's] conclusions," yet expert did not modify his hypothesis).

22

23

[24]   Drogin Decl. ¶ 23.

24

[25]   Dr. Drogin concedes this lack of statistical significance in all but three regions at Costco Drogin Dep. 29-30, Ex. Y. Moreover, Dr. Saad establishes that there is a statistically significant disparity using Dr. Drogin's model in only **two** regions, once one properly controls for employees on leave. Saad Second Decl. ¶ 42.

25

26

[26]   Again, Dr. Saad showed that even using Dr. Drogin's flawed model, which does not control for relevant job qualifications, there is no statistically significant disparity in promotions to AGM within the liability period (January 2002 through July 31, 2004). Saad Second Decl. ¶¶ 6, 45. Dr. Drogin presents no contrary analysis within this period.

27

28

- 14 -

MOTION TO STRIKE RESKIN DECLARATION

Case No. C04 3341 MHP

1  result undermines Dr. Reskin's conclusions that gender-stereotyping at Costco necessarily

2  "constrain(s) the opportunities of women at Costco compared to those of men."

3      Dr. Reskin cannot explain why her theory is inconsistent with the actual results of

4  Costco's promotions practices.  She acknowledges Dr. Drogin's findings that the promotion

5  decisions for GM positions from the candidate pool of AGMs are consistent with a random

6  selection process without evidence of systematic bias against women at that level.  Reskin Dep.

7  138.  She can only speculate as to the reasons for it.  *Id.* at 139.  After considering that Dr.

8  Drogin found no statistically significant difference in the rate of promotion of women to AGM in

9  at least five out of eight Costco regions, Dr. Reskin could state, "I don't know how much gender

10  stereotyping is going on, but I do know that one can reduce the impacts of it."  *Id.* at 212.

11  Furthermore, Dr. Reskin is puzzled by the absence of any statistically significant disparity in the

12  allegedly "subjective" performance appraisals of Senior Staff managers.  *Id.* at 225.

13
14
15      Similarly, Dr. Drogin did not dispute Dr. Saad's findings that the AGM promotion rate

16  for female Senior Staff managers with MM experience is the same as male Senior Staff

17  managers with that experience.  Drogin Dep. 84.  Yet, if Dr. Reskin's theory were valid, gender

18  stereotyping adverse to women would be evident here.  If Dr. Reskin's theory were correct, there

19  should be gender-related stereotyping in promotions to AGM adverse to women, whether they

20  had MM experience or not; but the actual statistics do not reflect this.

21
22      In short, when one tests Dr. Reskin's sex stereotyping hypothesis against Costco realities,

23  the results confound her hypothesis.  She has no explanation, other than speculation, for results that

24  differ dramatically from what her theory predicts.  The Court should exclude her opinion as

25  unreliable and entirely inadmissible.[27]

26

27  _____

    [27]  *See, e.g., In re TMI Litig.*, 193 F.3d at 675-76 (excluding expert testimony because "the results
28  of [the] testing undermined [the expert's] conclusions," yet the expert did not modify his
    hypothesis); *Soldo*, 244 F. Supp. 2d at 559 (W.D. Pa. 2003) (same); *cf. Daubert*, 509 U.S. at

    - 15 -

    MOTION TO STRIKE RESKIN DECLARATION
    Case No. C04 3341 MHP

2.      **Performance Review and Turnover Rates Further Disprove Dr. Reskin's Theory of Stereotyping**

Dr. Saad's First Declaration further undermines—with hard data—Dr. Reskin's unsubstantiated theory that gender stereotyping has had an adverse impact on women at Costco. His findings with regard to performance review and turnover data are undisputed. First, the performance appraisal data is inconsistent with Dr. Reskin's hypothesis that primarily male evaluators will tend to rate women lower than men, all else constant—in fact, women were ***rated higher*** overall than men. Saad First Decl. ¶¶ 86-91. Second, the turnover statistics belie her assumption that women would give up or leave Costco because promotion opportunities are being denied to them. In fact, women in GM, AGM and staff manager positions actually terminated at ***lower rates*** than men. Saad First Decl. ¶¶ 92-93. These real-world empirical results completely undermine the theoretical wishful thinking performed by Dr. Reskin, showing again that her declaration should be struck by the Court.

D.      **Dr. Reskin's Opinion That Out-Of-Context Quotations From Jim Sinegal Reflects Gender Stereotyping Lacks Scientific Basis**

Lifting fragments from Costco CEO Jim Sinegal's deposition, Dr. Reskin argues that he indulges in a "core sex stereotype" of women, evidencing cognitive bias and gender stereotyping in promotion decisions at Costco. Reskin Decl. ¶¶ 53-54, 56-59.[28] This proof-texting technique is not a scientific method. Numerous courts agree that expert testimony cannot be admitted simply to interpret evidence for a trier of fact where there is no scientific basis for doing so

---

590 n.9 (observing that the "reliability" inquiry asks, "does application of the principle produce consistent results?"); *Elcock*, 233 F.3d at 747, 756 n.13 (excluding psychologist's testimony that failed to articulate methodology with objective standards and reproducible results; expert testimony based on false assumptions and fictional or random data is inadmissible).

[28] Similarly, Dr. Reskin takes isolated and selective quotations out of Plaintiffs' depositions as anecdotal illustrations of sex-stereotyping and ingroup favoritism. *Id.* at ¶ 40-43, 59-60.

- 16 -

1   uniquely within the province of relevant expertise.[29]  Numerous courts agree that expert

2   testimony cannot be admitted simply to argue that certain evidence proves discrimination – that

3   is a question for the trier-of-fact. [30]

4          Dr. Reskin's use of selected statements from Mr. Sinegal is not only an example of

5
    inexpert argumentation, but hypocritically contradicts her own identical statements and views.
6
7   For example, she seems to dispute Mr. Sinegal's observation that[31] "Our experience is that the

8   women have a tendency to be the caretakers and have the responsibility for the children and for

9   the family."  Yet that is simply an accurate observation of a sociological fact, which Dr. Reskin

10  shares with her readers.  In chapter 3 of her book *"Women's Work, Men's Work"* (1986) at 73

11
    (Reskin Dep. Ex. 1525), Dr. Reskin reports:
12
_____

[29]  *See* FED. R. EVID. 702; *United States v. Finley*, 301 F.3d 1000, 1013-14 (9th Cir. 2002)
13    (expert testimony required to assist trier of fact's understanding).  In *Bazile v. City of New
      York*, 215 F. Supp. 2d 354 (S.D.N.Y. 2002), a Title VII plaintiff case tendered an expert who
14    intended to testify that based on his review of the evidence the plaintiff had been subjected
      to discrimination.  A magistrate judge excluded the expert under Rule 702 and *Daubert*, and
15    the district court judge upheld the ruling, stating, "[the expert's] testimony does not rely
      upon any theory related to discriminatory motivations, nor are there any standards which
16    control the operation of his opinions. ... The Court finds that his conclusions will be of little
      value to the finder of fact.  The average jury can assess whether or not the NYPD acted with
17    a discriminatory animus without the assistance of [the expert's] testimony."  *Id*. at 365
      (citations omitted); *Barber v. United* Airline, 17 Fed. Appx. 433, 436 (7th Cir. 2001)
18    ("cherry-picked" facts were "correctly barred [because the fact selected] fails to satisfy the
      scientific method and *Daubert*"); *Collier v. Bradley Univ.*, 113 F. Supp. 2d 1235, 1244-46
19    (C.D. Ill. 2000) (excluding expert testimony about racial stereotyping, defendant's failure to
      "accommodate" minorities, and "institutional racism" because the expert followed no objective
20    methodology and provided conclusions that could not be tested).

[30]  *See, e.g., Ward v. Westland Plastics,* 651 F.2d 1266, 1270-1271 (9th Cir. 1980) (question
21    whether gender was the basis of differential treatment is not so technical as to require the aid
      of an expert); *see also Wilson v. Muckala,* 303 F.3d 1207, 1218-19 (10th Cir. 2002)
22    (affirming the district court's refusal to allow a human resources expert to testify regarding
      the employer's response plan in cases of sexual harassment because the issue was "not so
23    impenetrable as to require expert testimony"); *Curtis v. Oklahoma City Public Schools Bd.*,
      147 F.3d 1200, 1219  (10th Cir. 1998) (jury could determine for itself whether recruitment
24    plan was evidence of retaliation); *Barfield v. Orange County*, 911 F.2d 644, 651, n.8 (11th
      Cir. 1990) (opinion testimony about whether plaintiff was a victim of discrimination would
25    not assist the trier of fact); *Brink v. Union Carbide Corp.*, 41 F. Supp. 2d 402, 405 (S.D.N.Y.
      1997) (age discrimination claim can be evaluated and understood by jury without assistance
26    of a human resources expert); *Smith v. Colorado Interstate Gas Co.*, 794 F. Supp. 1035,
      1044 (D. Colo. 1992) (expert testimony that employer substantially motivated by
27    discriminatory bias improperly circumvents fact finder's decisionmaking process).

28  [31]  Sinegal Dep. 150-51, quoted in Reskin Decl. ¶ 53, Ex. Y.

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1

2

> "[t]he custom of assigning primary responsibility for child care to women has historically restricted their participation in the work force."

3

4

5

> "Despite the increasing participation of mothers of even very young children, in the labor force in recent years, a substantial proportion of mothers do withdraw from the labor market to care for young children.   It is not unreasonable to suppose that women's family responsibilities do affect their labor market behavior." *Id.*

6   In short, Dr. Reskin shares Mr. Sinegal's historical perspective, though she fails to acknowledge

7   as much in her declaration.

8           Furthermore, while Dr. Reskin "can't say that I think that's true today," she still concedes

9

10   that she *cannot* claim "that child-rearing responsibilities that have traditionally been assigned to

11   women *have completely disappeared.*"   Reskin Dep. 167, Ex. Y.   These are in fact "societal

12   issues, not necessarily a Costco issue," as Mr. Sinegal stated, and which the foregoing statements

13   from Dr. Reskin's book frankly acknowledge.[32]   As Dr. Reskin further stated at her deposition,

14   women's "preference may play a role" in the numbers of women and men in various jobs at

15   Costco, and she does not claim that this "is entirely a product of Costco's practices."   *Id.* at 238-

16   239.

17           Given Dr. Reskin's own views on the subject, Costco's expert Dr. Stockdale is correct in

18   noting that the Sinegal statements cited by Dr. Reskin "are not groundless stereotypes – there are

19

20   real gender differences in orientation toward family vs. work.  Dr. Reskin's comments, therefore,

21   do not offer any direct evidence of the operation of these stereotyping processes occurring

22   among upper-level management."  Stockdale First Decl. at 15.

23           In a like manner, Dr. Reskin argumentatively lifts portions from the following quotation

24   from Mr. Sinegal's deposition:[33]

25

26

27   [32]   Dr. Reskin quotes Mr. Sinegal's reference to "societal issues" in her declaration at ¶ 53.

28   [33]   Sinegal Dep. 146-47, quoted in Reskin Decl. ¶¶ 55, 56, 58.

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1   I think since the beginning of time women have had a tendency to come in to our
2   business in positions that were more associated with the administrative aspect of
    the company, the front end, the marketing end, that was the way they entered our
3   business.  So many of our positions out on the sales floor in merchandizing are
    jobs like forklift drivers, and so that's been traditionally a male dominated field,
4   something that has changed and is changing over a period of time, but that has
    historically been a male oriented job.
5
6   Once again, this statement, similar to Dr. Reskin's, reflects an historical perspective of
7   circumstances that are changing but have not "completely disappeared."  In this regard, Dr.
8   Reskin states in her declaration:  "[a]lthough more men than women probably have driven a
9   forklift at Costco, it is likely not because female Costco employees cannot learn to or do not
10  want to drive forklifts."  Reskin Decl. 58.   The misleading implication here is that Costco
11  somehow discriminates against women in forklift certification, but this implication is nothing
12  more than baseless speculation, as Dr. Reskin must admit:
13
14      Q.  And are you aware that any employee can sign up for certification [on] a
        forklift?
15
        A.  That was the impression I got from reading [the Employee Agreement].
16
        Q.  Okay. You don't have any basis for a professional opinion as to whether or
17      not there is a gender bias in training and certification of forklift drivers at Costco,
        do you?
18
        A.  I have no evidence on that whatsoever.
19
20  Reskin Dep. 231-32.
21      The indisputable point here is that sociological truths about gender-differentiated choices,
22  which Dr. Reskin fully acknowledges, become invidious stereotyping only when they are applied
23  a priori in individual cases to deny opportunities to women.  Reskin Decl. ¶ 58.  And Dr. Reskin
24  has no evidence of that occurring in the forklift example.  Similarly, she cannot assert with any
25  scientific support that Mr. Sinegal's statements—closely resembling her own—are evidence that
26  Costco decisionmakers discriminate against women in promotion decisions.  Her misuse of
27
28  selective quotations from Mr. Sinegal illustrates the partisan argument that Dr. Reskin substitutes

1    for scientific method throughout her declaration.  Accordingly, her declaration cannot be useful

2    as an expert opinion and should be stricken as a matter of law.

3         **E.       Dr. Reskin's Comments About Costco's Policies And Practices Lack Basis In**
              **Relevant Scientific Expertise Or Fact**
4

5         Dr. Reskin's declaration teems with observations and commentary in essay form that do

6    not stem from empirical scientific inquiry—either verifiable experiments using scientific method

7    or statistical analysis of data.  This commentary is not expert opinion illuminating issues related

8    to class certification.  Her declaration contains nothing more than an argumentative discourse,

9
     laden with conclusory labels ("paternalism," "bureaucracy," "corporate culture") that Dr. Reskin,
10
     unencumbered by scientific method, has borrowed from an eclectic mix of historical and social
11

12   commentary.[34]  Her comments concerning Costco's policies and practices, in particular,

13   transcend her own expertise and lack the factual basis or empirical analysis that is the hallmark

14   of genuine science.[35]

15        The following examples illustrate that Dr. Reskin's declaration lacks the probative value

16   required for admissibility of expert opinion:

17

18

19

20
     ─────────────
21   [34]  *See Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806 (3d Cir. 1997) ("expert's opinion must
          be based on the methods or procedures of science rather than on subjective belief or
22        unsupported speculation"); *cf. Arnold v. Cargill*, No. 01-2086 (DWF/AJB), 2006 WL
          1716221, at *5-6 (D. Minn., June 20, 2006) (excluding expert's testimony about defendant's
23        "corporate culture" in proposed class action discrimination case because, "[o]n this record,
          the Court cannot determine what scientific method, if any [the expert] used to reach his
24        opinions.  [The expert's] understanding of [employer's] corporate culture appears to be
          based solely on his own unfounded opinion of what 'culture' means and how it affects
25        employment decisions.").
     [35]  *See Jerden v. Amstutz*, 430 F.3d 1231, 1240 (9th Cir. 2005) (district court erroneously
26        allowed expert witness to testify "when there was no testimony showing that he was
          qualified as an expert to do so"); *United States v. Miller*, 874 F.2d 1255, 1267-68 (9th Cir.
27        1989) (district court did not abuse discretion in determining that witness was unqualified as
          expert where witness lacked significant practical experience in field and had not made any
28        special study of subject).

                                            - 20 -

1    1.    Dr. Reskin's conclusions concerning the adequacy of Costco's job descriptions,

2  job analyses, performance appraisal, promotion profiles and promotion lists[36]—all documents

3  associated with the promotion process at Costco—should be stricken because she admittedly

4  lacks the appropriate background or knowledge to sustain an expert opinion on this subject:

5
- Dr. Reskin concedes that she is not an expert in Industrial Psychology, that she
6    does not know how job descriptions or job analyses were created or used at
     Costco, and that she has not done any independent research concerning job
7    descriptions or job evaluations, generally.  Reskin Dep. 172-75, 177-78, Ex. Y.
     As she stated: "I'm not an expert in industrial psychology; and I'm not judging
8    [job descriptions] by the standards of any group of industrial psychologist.  Nor
     am I judging them."  *Id.* 177-78.[37]  By contrast, Dr. Landy who is an Industrial
9    Psychologist and has the relevant expertise to opine on job descriptions,[38] states:
     "It is my professional opinion that the job descriptions for the positions of
10   Assistant Warehouse Manager and Warehouse Manager meet or exceed current
     professional standards with respect to how job descriptions should be written."
11   Landy First Decl. at 75.

12 - Dr. Reskin is not an expert on performance appraisals in industry.  She has never
     done empirical research relating to the validation of performance appraisals, has
13   never advised a company on how to develop or use them (Reskin Dep. 180-81,
     185-86, Ex. Y), does not know how appraisals are created or used at Costco (*id.* at
14   175), who at Costco performs the appraisals for Senior Staff managers, or what
     instructions or training the appraisers received in how to conduct the performance
15   appraisal.  *Id.* at 186.  In contrast, Dr. Landy, who does have the pertinent
     expertise and understands the factual background,[39] opines: "Contrary to the
16   opinion of Dr. Reskin, the performance evaluation system in place at Costco is
     defined by measurable criteria and valid ways to measure those criteria.  There is
17   no basis for Dr. Reskin's criticism of the Costco performance evaluation system.
     It clearly meets, and in many instances exceeds, all professional standards for
18   personnel practice."  Landy First Decl. at 76.

19 - Finally, Dr. Reskin did not know how promotability profiles were created and
     admitted that she was unaware that such profiles were distinct from the
20   promotability lists, when she submitted her reports.  Reskin Dep. 190-91.
     Dr. Landy, by contrast, demonstrated the correlation between the assessment on
21   promotability profiles and lists and stated: "Contrary to the views expressed by
     Dr. Reskin in her report, both the use of promotability lists and the decision to
22

23  _____

    [36]  *E.g.*, Reskin Decl. ¶¶ 25, 27, 31, 85, 89.
24
    [37]  Similarly, Dr. Reskin stated: "I am almost not a professional persons who does job
25   evaluation." Reskin Dep. 223, Ex. Y.

26  [38]  In his first report, Dr. Landy states, "I have been examining, analyzing, and creating job
     descriptions for more than 30 years and have broad experience in the evaluation of existing
     job descriptions." Landy First Decl. at 73.
27
    [39]  In his first report, Dr. Landy states, "I have been conducting research, writing textbooks,
28   testifying, and consulting in areas related to performance evaluation for well over 30 years."
     Landy First Decl. at 75 (citation omitted).

1

2      restrict knowledge of membership on these lists to senior managers are considered
       best practices in modern organizations." Landy First Decl. at 72.

3   In sum, Dr. Reskin has neither the background nor the knowledge to conclude that Costco's

4   promotion process is entirely "subjective" because of allegedly deficient in written personnel

5   policies and practices under accepted industrial or scientific standards. Her related "opinions"

6   are unreliable, not probative, and not based on scientific method so as to be useful to the Court.

7          2.      Dr. Reskin has done no studies of her own concerning Costco's culture and

8   admits that there is no accepted standard by which researchers in her field can measure a

9   corporate culture to determine what kind of culture it is. Her own personal knowledge of Costco

10  consists of a 40-minute shopping visit with a relative! Reskin Dep. 33, 40, 248-49, Ex. Y. She

11  concedes that she would not write about an organization's culture in her professional work

12  without conducting research in that organization. *Id.* at 41-42. Her running commentary on the

13  nature of Costco's "corporate culture"[40] is based solely on historical and social commentary of

14  others and self-serving interpretations of deposition testimony selected to fit her pre-determined

15  categories.[41] It is not based on any empirical studies remotely relevant to an industrial setting

16  similar to Costco.

17

18         3.      Dr. Reskin's argumentative labeling of Costco's culture as "paternalistic" lacks

19  scientific basis to assist a trier of fact and is not a even a subject of scientific inquiry.[42] For

20  example, she cites as sources for her opinions on "paternalism" (i) an historical review of

21  changes in the financial service industry in *Great Britain*, which admittedly was not cited for fact

22

23  ─────────────────────

24  [40] *E.g.,* Reskin Decl. ¶¶ 9-19.

25  [41] For example, Dr. Reskin concludes that Mr. Matthews's and Ms. Vadney's testimony that
        Costco is an "open company" in which communications flow freely does not accurately
        describe this aspect of Costco's culture because of her interpretation of an incident involving
26      plaintiff Sasaki, who did not appear to be satisfied with the results of a complaint in one
        instance. Reskin Dep. 49-56, Ex. Y. Clearly, Dr. Reskin has no special expertise in
27      evaluating such evidence, which does not constitute a scientific basis for her conclusions.

28  [42] *E.g.* Reskin Decl. ¶¶ 14, 16, 23.

- 22 -

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

or findings (*id.* at 250),[43] (ii) an article dealing with the experiences of female clerical workers in a *Japanese bank* (*id.* at 261-62),[44] and (iii) another historical article dealing with the *cotton industry in the pre-mechanized South. Id.* at 251 ("All I was doing was saying here are scholarly analyses that use paternalism. I wasn't trying to say that any of the specific findings in the industrial south have any bearing on Costco.") Similarly, in her discussion of bureaucracy, Dr. Reskin cites an article that advances theories (without empirical research) of organizational structures based in large part on *Bolshevik-era Russian bureaucracy. Id.* at 252. These excursions into social commentary on subjects quite far afield from modern reality show how Dr. Reskin's "opinions" depart from conclusions based on scientific methods relevant to the issues in Plaintiffs' class certification motion.

       4.     Similarly, Dr. Reskin has no particular expertise as to the existence or degree of "uniformity" in policies and procedures at the company—a matter which is not the subject of any cited scientific inquiry or empirical research.[45] Her conclusions that Costco has "uniform" policies and procedures are based on non-scientific and self-serving culling of examples to support her pre-determined "opinion"—but that argue for "uniformity" only in matters not relevant to the issues presented in the Plaintiffs' motion.[46] On the issues relevant to *promotions*, her testimony is just the opposite: concerning promotions data that varies across Costco's eight regions, she stated: "So there is variation across regions in organizational practices that regional

---

[43]  See Reskin Decl. n.3, citing Kerfoot, Deborah and David Knight, *Management, Masculinity and Manipulation: From Paternalism to Corporate Strategy and Financial Services in Britain,* Journal of Management Studies 30, p. 655 (1993). The complete title of this article, which Dr. Reskin does not include in her declaration, reveals its subject matter. *See also* Reskin Dep. 250.

[44]  Ogasawara, Y. 2001, *Office Ladies and Salaried Men.* Dr. Reskin agreed that this reference was culturally pretty far afield from Costco. Reskin Dep. 262.

[45]  Dr. Reskin cites the results of only one analysis (See Reskin Decl n.59, citing Kalleberg, A., D. Knoke, P.V. Marsden, and J. Spaeth, *Organizations in America*) which developed a procedure called "factor analysis" to investigate the uniformity in corporate policies or practices; but she did not apply that analysis to Costco. Reskin Dep. 200-202, Ex. Y.

[46]  *E.g.,* Reskin Decl. ¶¶ 12, 18, cite central HR practices not related to the promotion process.

- 23 -

1   managers implemented" (Reskin Dep. 212, Ex. Y), and further: "Regional managers operate

2   differently in terms of their responsiveness to goals." *Id.* at 214.

3         Several cases have excluded testimony of the sort offered by Dr. Reskin in her

4   hodgepodge collective assault on Costco's practices. In *Robinson v. Metro-North Commuter RR*,

5   175 F.R.D. 46 (S.D.N.Y. 1997), *vacated in part on other grounds*, the plaintiffs in a proposed

6   Title VII class action case offered the testimony of Dr. William Bielby, a social scientist, who

7   offered testimony much like Dr. Reskin's. In rejecting Dr. Bielby's opinion as unscientific

8

9   conjecture, the court stated:

10         As for [Dr. Bielby's] sociological opinion, even if one puts aside reservations one
           might have as to its ultimate admissibility under [*Daubert*], it consists on its face
11         of little more than rank conclusion and gross speculation. For example, the
           opinion baldly premises that negative stereotypes result in African Americans
12         being considered "inappropriate for higher level jobs by defendant's managers."
           Similarly, the opinion simply presumes that [defendant's] personnel and
13         disciplinary systems are inherently subjective and allow managers to materially
           circumvent policies that would reduce subjectivity and bias. No meaningful
14         weight can reasonably be attributed, even at this stage of the proceedings, to a
           report so facially suspect.
15

16   175 F.R.D. at 48 (internal citations omitted).[47]

17         Likewise, in *Collier v. Bradley Univ.*, 113 F. Supp. 2d 1235, 1244-46 (C.D. Ill. 2000),

18   where a Title VII plaintiff attempted to rely upon an expert to testify about racial stereotyping,

19

20   defendant's failure to "accommodate" minorities, and "institutional racism," *id.* at 1244-46, the

21   court excluded the proposed expert for failing to follow objective methodology and for providing

22   conclusions that could not be tested. *Id.* Dr. Reskin's opinions regarding corporate culture, job

23   descriptions, job analysis, performance appraisals, promotion profiles, promotion lists,

24   uniformity, and paternalism are, like those opinions excluded in *Robinson* and *Collier*,

25

26   inadmissible.

27   ―――――――――――――――

[47]   When reversing the *Robinson* decision, the Second Circuit did not question the district
28         court's rejection of Dr. Bielby's testimony. *See* 191 F.3d at 287-88.

- 24 -

MOTION TO STRIKE RESKIN DECLARATION
Case No. C04 3341 MHP

1    Insofar as the foregoing "opinions" in Dr. Reskin's declaration do not constitute

2  "scientific opinions" that may be an appropriate subject of expert testimony, they must be

3  stricken as a matter of law.

4                                    **CONCLUSION**

5    This Court should strike Dr. Reskin's declaration in its entirety because its analysis is

6  fundamentally and fatally flawed.  Her opinions are based on the controversial and unestablished

7  "cognitive bias" theory, that she herself concedes is untested outside of a laboratory, let alone in

8
9  any industrial workplace like Costco.  Even assuming that Dr. Reskin's theory had been tested in

10  an industrial workplace, however, her unsupported and results-oriented conclusory "opinions"

11  would still be fatally deficient.  Dr. Reskin's method presumes that the promotion candidates at

12
13  Costco are virtual strangers to the decisionmakers, who cannot help but "fill in the blanks" with

14  stereotyped information.  In reality, Costco's decisionmakers boast a wealth of individuated

15  knowledge when they make their promotion decisions—a factor that Dr. Reskin admits prevents

16  or reduces cognitive bias.  But even if cognitive bias were a factor, under Dr. Reskin's theory,

17  decisionmaking based on individuated information has clearly won out because there is no

18  objective evidence of a disparate impact on women in promotions at Costco.  This is yet another

19  reason for this Court to reject out of hand the "opinions" that Dr. Reskin offers outside of her

20  area of expertise, and based, not on science, but on empirically nonprobative social commentary.

21
22  For all the foregoing reasons, therefore, Defendant respectfully requests that this Court exclude

23  the expert testimony of Dr. Reskin and strike her declaration in its entirety.

24  DATED: September 29, 2006                    SEYFARTH SHAW LLP

25

26                                    By _____

27                                         David D. Kadue
                                          Attorneys for Defendant
28                                       COSTCO WHOLESALE CORPORATION

                                         - 25 -
                              MOTION TO STRIKE RESKIN DECLARATION