SEYFARTH SHAW LLP
Kenwood C. Youmans (SBN 68258)
David D. Kadue (SBN 113578)
2029 Century Park East, Suite 3300
Los Angeles, California 90067-3063
Telephone: (310) 277-7200
Facsimile: (310) 201-5219
kyoumans@seyfarth.com
dkadue@seyfarth.com

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (admitted *pro hac vice*)
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603-5803
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
gmaatman@seyfarth.com

SEYFARTH SHAW LLP
David B. Ross (admitted *pro hac vice*)
1270 Avenue of the Americas
Suite 2500
New York, New York 10020
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
dross@seyfarth.com

SEYFARTH SHAW LLP
Thomas J. Wybenga (admitted *pro hac vice*)
999 Lake Drive
Issaquah, Washington 98027
Telephone: (425) 313-6794
Facsimile: (425) 313-7922
twybenga@seyfarth.com

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION<br><br>Defendant. | Case No. C04 3341 MHP<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF MARC BENDICK, Ph.D.**<br><br>Date: November 6, 2006<br>Time: 2:00 p.m.<br>Courtroom: 15<br>Judge: Marilyn Hall Patel |

## INTRODUCTION

Currently before the Court is Defendant's Motion to Strike the Declaration of Marc Bendick pursuant to Federal Rules of Evidence Rule 702 and the Civil Local Rules of the United States District Court for the Northern District of California, Rule 7-5(b). Having read and considered all of the papers filed in connection with this motion, having considered the arguments of counsel, and having been fully informed, the Court GRANTS the Defendant's motion to strike and ORDERS that the Declaration of Marc Bendick be stricken from the record in its entirety.

## STANDARD OF REVIEW

The admissibility of expert witness testimony is governed by Federal Rules of Evidence, Rule 702. Rule 702 provides that a witness qualified by knowledge, skill, experience, training or education may testify as to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue, but only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FRE 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). Under *Daubert*, an expert's opinion is admissible only if both relevant and reliable. In addition, Civil Local Rules of the United States District Court for the Northern District of California, Rule 7-5(b) provides in pertinent part that, "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument....An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." Federal Rule of Civil Procedure Rule 56(e) provides, in pertinent part, that "Supporting and opposing affidavits shall ... set forth such facts as would be admissible in evidence ... .

## ANALYSIS

The Court must assess expert reliability under the principles established in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S.

137 (1999). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," *Daubert*, 509 U.S. at 590, and must ensure that an expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Courts making this determination consider such factors as (1) whether the method has gained general acceptance in the relevant scientific community, (2) whether the method has been peer-reviewed, (3) whether the method can be (and has been) tested, and (4) whether there is a known or potential rate of error. *See Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 597 (9th Cir. 1996) (citing *Daubert*'s four non-exclusive factors that assist in "the separation of inadmissible opinions based on junk science from admissible opinions developed by the scientific method").

Courts generally conclude that *Daubert* applies to the admissibility of expert testimony offered in support of class certification decisions. *See, e.g., Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307 (5th Cir. 2005) (affirming district court's denial of class certification where plaintiff's expert report excluded under *Daubert*); *Unger v. Amedisys, Inc.*, 401 F.3d 316, 323-24 n.6 (5th Cir. 2005) (quoting with approval an unpublished district court case that applied *Daubert* to expert testimony at the class certification stage); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000) (applying *Daubert* analysis at class certification stage); *McNamara v. Bre-X Minerals Ltd.*, 2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30, 2002) (same).[1]

The general rule that class certification decisions are not intended to be decisions on the merits of the underlying claims and defenses[2] does not mean that this Court should consider inadmissible evidence when deciding whether to certify a class. Under the Rules Enabling Act, Costco has a due process right to exclude inadmissible evidence offered against it. 28 U.S.C. §§ 2071-2077; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules

---

[1] *See also* L. Elizabeth Chamblee, *Between "Merit Inquiry" And "Rigorous Analysis": Using Daubert to Navigate The Gray Areas Of Federal Class Action Certification*, 31 Fla. St. U.L. Rev. 1041, 1090 (2004).

[2] *See* discussion in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166-167 (3rd Cir. 2001).

1  Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any
2  substantive right") (internal citations omitted).
3        Some courts have applied a modified *Daubert* standard at the class certification stage.
4  *See, e.g., Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191-92 (N.D. Cal. 2004); *Thomas & Thomas*
5  *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 162 (C.D. Cal.
6  2002).³ Even under a modified *Daubert* standard, however, courts must not "uncritically accept
7  all expert evidence that is offered in support of, or against, class certification." *Dukes v. Wal-*
8  *Mart*, 222 F.R.D. at 191. "A district court must ensure that the basis of the expert opinion is not
9  so flawed that it would be inadmissible as a matter of law." *In re Visa Check/MasterMoney*
10 *Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001); *see also Dukes v. Wal-Mart*, 222 F.R.D. at 191
11 (expert opinion must at least have probative value to be admitted for purposes of class
12 certification).⁴

### THE BENDICK DECLARATION

14       In his Declaration, Dr. Bendick describes his methodology as follows. He created
15 comparators using two different sources of data: (1) the 2000 U.S. Census and (2) EEO-1 data
16 (compiled by the Equal Employment Opportunity Commission) for the period 1999 to 2003. Dr.
17 Bendick then used these two sources of data to create five different benchmarks. First, using
18 2000 U.S. Census data, Dr. Bendick created Benchmark 1 with data for "General Merchandise
19 Stores" and Benchmark 2 with data for "All Retailers." In preparing Benchmarks 1 and 2, Dr.
20 Bendick used the occupational code for "Marketing and Sales Managers" as a comparator for
21 Costco's Senior Staff managers, even though Costco's Senior Staff managers perform a variety

---

³ Under a modified *Daubert* test, the Court examines whether the expert's methodology (1) comports with basic principles, (2) has any probative value, and (3) primarily uses evidence that is common to all members of the proposed class. *In re Polypropylene Carpet Antitrust Litigation*, 996 F. Supp. 18, 26 (N.D. Ga. 1997); *Dukes v. Wal-Mart*, 222 F.R.D. at 191.

⁴ Where an expert's testimony is flawed as a matter of law, it should not be admitted even at the class certification stage. *See, e.g., Vickers v. General Motors Corp.*, 204 F.R.D. 476, 479 (D. Kan. 2001) (court cannot certify class action based on expert opinion so flawed as to be inadmissible as matter of law); *Cruz v. Coach Stores, Inc.*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (S.D.N.Y. Nov. 18, 1998) (disregarding expert report submitted in support of motion for class certification as "fatally flawed"), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir. 2000).

of functions that are not analogous to marketing or sales. Using the EEO-1 data, which joins together all national salaried supervisors and managers as "Officials and Managers," Dr. Bendick created three more comparators— one derived from 1999 to 2003 EEO-1 data for "General Merchandise Stores" (Benchmark 3), a second derived from 1999 to 2003 EEO-1 data for "All Retailers" (Benchmark 4), and a final one derived from 2000 EEO-1 data for larger establishments (more than 50 employees) categorized as "Miscellaneous General Merchandise Stores" (Benchmark 5). Bendick Decl. ¶¶ 29-35, Table 7.

Dr. Bendick concedes in his declaration that his Benchmark comparators have numerous flaws:

- The census-based comparators (Benchmark 1 and Benchmark 2) include stores of all sizes (including local "mom and pop" stores), many of which are not analogous to Costco's warehouses. Bendick Decl. ¶ 19.
- The census-based comparators (Benchmark 1 and Benchmark 2) are national statistics, not specifically tailored to any local labor market in which Costco operates. *Id.*
- The census-based comparators (Benchmark 1 and Benchmark 2) are inaccurate to the extent other employers over- or under-utilize female managers. *Id.*
- The EEO-1-based comparators (Benchmarks 3 to 5) conjoin all supervisors and managers as "Officials and Managers," precluding any meaningful comparison to specific Costco warehouse management positions. Bendick Decl. ¶¶ 25, 28.[5]
- The EEO-1-based comparators (Benchmarks 3 to 5) include many non-analogous businesses, such as local "mom and pop" stores. Defendant submitted unrebutted evidence that Costco's warehouses typically have over 200 employees and average over $100 million in gross sales per warehouse.

In his deposition, Dr. Bendick admitted to further flaws in his methodology. He admitted he did not know how the data he used regarding 167 Costco warehouses in 2000 (i.e., data from the pre-liability period) would compare to the over 300 Costco warehouses in operation during 2004. Bendick Dep. 21. To be relevant, he would need to convert his 2000 data concerning 167 Costco warehouses (used to perform the Benchmark 5 comparisons) to the 300 Costco

---

[5] Dr. Bendick also admitted in his deposition that his benchmarks compare Costco's high-level warehouse managers to an EEO-1 category—"Officials and Managers"—that includes everything from "first-level supervisors all the way up through chairman-of-the-board-type senior executives." Bendick Dep. 81.

establishments operating in 2004 in order to draw a conclusion that would be admissible for purposes of establishing statistically significant gender discrimination during the claims period. *See* Bendick Dep. 15-17.

Dr. Bendick's methodology suffers from additional defects:

- Dr. Bendick's analysis fails to apply to the issues actually involved in this case. Ignoring the other flaws in his methodology, Dr. Bendick's analysis could theoretically be relevant in a "failure to hire" case, but this case alleges gender discrimination in *promotion practices*. Dr. Bendick's general labor market comparators could only be relevant for purposes of drawing inferences as to Costco's hiring practices in the pre-liability period. Plaintiffs in this case, however, have no standing to contest Costco's hiring practices, and instead are challenging Costco's promotion practices. As a result, Dr. Bendick's conclusions are not probative to proving Costco's alleged discriminatory promotion practices and are thus irrelevant to the legal and factual issues actually before this Court in this case.[6]

- Dr. Bendick uses an external labor pool as opposed to an internal labor pool composed of qualified applicants.

- Dr. Bendick admits that he failed to control[7] for obvious, major nondiscriminatory variables in his benchmark data, particularly job earnings. Bendick Dep. 157-

---

[6] *See, e.g., Morgan v. United Parcel Serv. of America, Inc.*, 380 F.3d 459, 465 (8th Cir. 2004) ("The relevant inquiry was whether promotions from center to division manager were racially discriminatory, taking into account the proper pool of available qualified employees. The evidence presented of overall racial imbalances and even general trends in upward mobility is insufficient"), *cert. denied*, 544 U.S. 999 (2005); *Paige v. California*, 291 F.3d 1141, 1146 (9th Cir. 2002) (plaintiffs lacked standing to challenge any practice that implicated hiring - they could compare themselves only against an internal pool of employees who, by definition, were already hired); *Washington v. Brown & Williamson Tobacco Corp.*, 756 F. Supp. 1547, 1552 (M.D. Ga. 1991) (non-hired intervenor could not rely upon timely filing of EEOC charge by employee who lacked standing to object to hiring practices and was challenging promotion and discipline procedures), *aff'd*, 959 F.2d 1566 (11th Cir. 1992).

[7] Defendant's expert contends that had Dr. Bendick controlled for job earnings, the results would have shown that the female representation in Costco management positions exceeds that in the external 2000 nationwide labor market, as measured by Benchmark 2. Saad First Report ¶ 105, Ex. 43.

158.[8] Dr. Bendick's failure to properly control for obvious, major nondiscriminatory factors such as job earnings renders his opinion of statistically significant gender discrimination irrelevant and inadmissible.[9]

- Dr. Bendick's comparators are over-inclusive in that the categories of "General Merchandise Stores" and "All Retailers" are too overbroad to be meaningful. "General Merchandise Stores" includes retailers such as Nordstrom's, Bloomingdales and Macy's which are not closely analogous to Costco warehouses.[10] Both categories include numerous businesses that are not comparable to Costco warehouses in size, gross sales, number of employees, or types of products sold. As a result, Dr. Bendick's data is not "finely tuned to compare the employer's relevant workforce with the qualified populations in the relevant labor market."[11]

- Dr. Bendick used the wrong Census Code (005 – "Marketing and Sales Managers" – as opposed to 470 – "First Line Supervisors/Managers of Retail Sales Workers") in comparing female representation in Costco Senior Staff

---

[8] Failure to control for major explanatory factors in a discrimination case makes an expert's opinion "essentially worthless." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (expert's failure to control for variables made analysis "essentially worthless," especially when "such variables *can* be controlled for") (emphasis in original); *see also*, *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (rejecting statistical analysis because "this court and others have treated skeptically statistics that fail to account for other relevant variables," especially where expert "had data about other relevant variables" such as job performance, "yet his statistical analysis makes no attempt to take these variables into account").

[9] Both the U.S. Supreme Court and the Ninth Circuit have observed that statistical proof in employment discrimination cases must control for obvious, "major" nondiscriminatory variables. *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986) ("there may, of course, be some regressions so incomplete as to be inadmissible as irrelevant"); *Morgan*, 380 F.3d at 465 (statistician's regression analysis in pay discrimination case irrelevant for failing to control for past pay, which, when controlled for, demonstrated no statistically significant disparity between white and black pay); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (expert statistical analysis flawed for failure to control for relevant variables expert admittedly could have controlled for); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) (rejecting plaintiffs' reliance on "statistics [that] failed to account for obvious variables – including education, previous position at the company, and distribution of age groups by position – that would have affected the results of the analysis").

[10] *See* Saad Second Report ¶ 31.

[11] *Alexander*, 207 F.3d at 1327-1328.

---

management positions with Benchmarks 1 and 2.[12] Dr. Bendick further admitted that he lacked sufficient knowledge to select the appropriate census code for comparative purposes.[13] The use of the wrong census code results in a significant overstatement of female representation in the external labor market comparators.[14]

- Dr. Bendick's Benchmarks fail to compare external labor markets to Costco warehouses on a region-by-region basis. A national class encompassing eight separate Costco operating regions cannot properly be certified when plaintiffs' experts do not establish a statistically significant gender disparity as to each of the Defendant's operating regions.[15]

- Dr. Bendick incorrectly assumes that gender-differentiated interest in Costco's Merchandise Manager job position is a "demand" as opposed to a "supply" factor. The Merchandise Manager position is characterized by unique factors such as non-standard early morning working hours, the amount of responsibility involved in the position, the high number of employees who must be supervised, the higher scrutiny from regional executives, the high visibility of the position, the greater pressure involved to achieve results, and the fact that the job involves the employee standing on his or her feet all day. Dr. Bendick failed to control for any of these variables. Importantly, he failed to control for hours-worked, or construct an hours-worked benchmark, even though he admitted he had access to this data and that, according to census data, women are less likely to work early

---

[12] Saad First Report ¶ 103.

[13] Bendick Dep. 192-193.

[14] *See* Saad First Report ¶ 103.

[15] *See Morgan v. United Parcel Service of Am., Inc.*, 380 F.3d 459, 464 (8th Cir. 2003) ("even a successful showing of discrimination in some districts does not prove nationwide discrimination. In fact ... proof of discrimination is some districts and not others tends to defeat the argument that discrimination was [defendant's] nationwide standard operating procedure"); *Caridad v. Metro North R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) (finding of commonality only in positions that showed statistically significant differences in discipline between African-American and Caucasian employees); *compare Dukes v. Wal-Mart*, 222 F.R.D. at 156-58 (certifying a nationwide class because regressions demonstrated statistically significant gender disparities in *all forty-one* of the defendant's operating regions).

morning shifts than men.[16] As a result, Dr. Bendick's analysis fails to consider whether the early hours or other responsibilities involved in the Merchandise Manager position impacts the supply of female labor available to fill that position, and thus ultimately, the AGM and GM positions at issue in this action.

- Dr. Bendick's analysis relies almost entirely on benchmarks and Costco data from an irrelevant time period. The issue in this case is whether Costco's promotion practices during the applicable period discriminate against women. Comparisons of data from the pre-liability period are ultimately irrelevant.[17]

The Court concludes that Dr. Bendick's methodology, as revealed in his Declaration, is so fundamentally flawed that his opinions and conclusions offered in support of Plaintiffs' Motion for class certification are inadmissible under FRE Rule 702 as a matter of law.[18] Dr. Bendick's conclusions are ultimately neither relevant nor reliable because his methodology suffers from the fatal flaws discussed above. As such, Dr. Bendick's conclusions lack any probative value in resolving the class certification issues presently before this Court. The

///

///

///

---

[16] Bendick Dep. 133-134 & 230; Bendick Second Report ¶ 10.

[17] Appropriate statistical analysis must be confined to the claims period. *Hazelwood School District v. United States*, 433 U.S. 299 (1977). Dr. Bendick ignores the fact that Plaintiffs cannot recover for any discriminatory promotional practice that preceded the liability period. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."); *Siam v. Potter*, No. C 04-0129 MHP, 2005 U.S. Dist. LEXIS 11893 (N.D. Cal. May 16, 2005) (Patel, J.) (discrete acts occurring outside limitation period are not actionable and cannot be salvaged by application of continuing violation doctrine). It is inappropriate to extend the "relevant period" for statistical analysis to include promotion (or hiring) decisions made prior to January 1, 2002. *See also Morgan v. United Parcel Service of Am., Inc.*, 380 F.3d 459, 470 n.8 (8th Cir. 2003) (affirming district court's rejection of plaintiffs' statistical analysis in § 1981/Title VII class action because no statistical disparity existed during class period).

[18] *See, e.g., Dukes v. Wal-Mart*, 222 F.R.D. at 191 (expert report must at least adhere to basic principles to be admissible at class certification stage); *Cruz*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (expert's statistical report failed to control for major nondiscriminatory factors and thus was fatally flawed and could not support class certification).

1  Declaration of Marc Bendick, and all of its contents, are therefore stricken from the record.

2

3  IT IS SO ORDERED.

4

5  DATED: _____  _____

6                                     The Honorable Marilyn Hall Patel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1 6599872.1

[PROPOSED] ORDER GRANTING MOTION TO STRIKE BENDICK DECL.
Case No.:  C04 3341 MHP