SEYFARTH SHAW LLP
Kenwood C. Youmans (SBN 68258)
David D. Kadue (SBN 113578)
2029 Century Park East, Suite 3300
Los Angeles, California 90067-3063
Telephone: (310) 277-7200
Facsimile: (310) 201-5219
kyoumans@seyfarth.com
dkadue@seyfarth.com

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (admitted *pro hac vice*)
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603-5803
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
gmaatman@seyfarth.com

SEYFARTH SHAW LLP
David B. Ross (admitted *pro hac vice*)
1270 Avenue of the Americas
Suite 2500
New York, New York 10020
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
dross@seyfarth.com

SEYFARTH SHAW LLP
Thomas J. Wybenga (admitted *pro hac vice*)
999 Lake Drive
Issaquah, Washington 98027
Telephone: (425) 313-6794
Facsimile: (425) 313-7922
twybenga@seyfarth.com

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION<br><br>Defendant. | Case No. C04 3341 MHP<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF RICHARD DROGIN, Ph.D.**<br><br>Date: November 6, 2006<br>Time: 2:00 p.m.<br>Courtroom: 15<br>Judge: Marilyn Hall Patel |

## INTRODUCTION

Currently before the Court is Defendant's Motion to Strike the Declaration of Richard Drogin pursuant to Federal Rules of Evidence Rule 702 and the Civil Local Rules of the United States District Court for the Northern District of California, Rule 7-5(b). Having read and considered all of the papers filed in connection with this motion, having considered the arguments of counsel, and having been fully informed, the Court GRANTS the Defendant's motion to strike and ORDERS that the Declaration of Richard Drogin be stricken from the record in its entirety.

## STANDARD OF REVIEW

The admissibility of expert witness testimony is governed by Federal Rules of Evidence, Rule 702. Rule 702 provides that a witness qualified by knowledge, skill, experience, training or education may testify as to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue, but only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FRE 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). In addition, Civil Local Rules of the United States District Court for the Northern District of California, Rule 7-5(b) provides in pertinent part that, "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument....An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." Federal Rule of Civil Procedure Rule 56(e) provides, in pertinent part, that "Supporting and opposing affidavits shall ... set forth such facts as would be admissible in evidence ... .

## ANALYSIS

The Court must assess expert reliability under the principles established in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). "[T]he trial judge must ensure that any and all scientific testimony or evidence

admitted is not only relevant, but reliable," *Daubert*, 509 U.S. at 590, and must ensure that an expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Courts making this determination consider such factors as (1) whether the method has gained general acceptance in the relevant scientific community, (2) whether the method has been peer-reviewed, (3) whether the method can be (and has been) tested, and (4) whether there is a known or potential rate of error. *See Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 597 (9th Cir. 1996) (citing *Daubert*'s four non-exclusive factors that assist in "the separation of inadmissible opinions based on junk science from admissible opinions developed by the scientific method").

Courts generally conclude that *Daubert* applies to the admissibility of expert testimony offered in support of class certification decisions. *See Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307 (5th Cir. 2005) (affirming district court's denial of class certification where it excluded plaintiff's expert report under *Daubert* factors); *Unger v. Amedisys, Inc.*, 401 F.3d 316, 323-24 n.6 (5th Cir. 2005) (quoting with approval an unpublished district court case that applied *Daubert* to expert testimony at the class certification stage); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000) (applying *Daubert* analysis at class certification stage); *McNamara v. Bre-X Minerals Ltd.*, 2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30, 2002) (same).[1]

The general rule that class certification decisions are not intended to be decisions on the merits of the underlying claims and defenses[2] does not mean that this Court should consider inadmissible evidence when deciding whether to certify a class. Under the Rules Enabling Act, Costco has a due process right to exclude inadmissible evidence offered against it. 28 U.S.C. §§ 2071-2077; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules

---

[1] *See also* L. Elizabeth Chamblee, *Between "Merit Inquiry" And "Rigorous Analysis": Using Daubert to Navigate The Gray Areas Of Federal Class Action Certification*, 31 Fla. St. U.L. Rev. 1041, 1090 (2004).

[2] See discussion in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166-167 (3rd Cir. 2001).

Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any substantive right") (internal citations omitted).

In the past, some courts, including this Court, have applied a modified *Daubert* standard at the class certification stage. *See, e.g., Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191-92 (N.D. Cal. 2004); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 162 (C.D. Cal. 2002).[3] Even under a modified *Daubert* standard, however, courts must not "uncritically accept all expert evidence that is offered in support of, or against, class certification." *Dukes v. Wal-Mart*, 222 F.R.D. at 191. "A district court must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001); *Dukes v. Wal-Mart*, 222 F.R.D. at 191 (expert opinion must at least have probative value to be admitted for purposes of class certification).[4]

The Court concludes that Dr. Drogin's methodology, as revealed in his Declaration, is so fundamentally flawed that his opinions and conclusions offered in support of Plaintiffs' motion for class certification are inadmissible under FRE Rule 702 as a matter of law. As shown in Defendant's motion to strike, Dr. Drogin's conclusions are ultimately irrelevant and lack any probative value because his methodology suffers from the following fatal flaws:

- Dr. Drogin failed to offer an opinion or conclusion of statistical significance based upon the relevant data. Rather, he improperly based his opinion of statistical significance on statistical studies of irrelevant promotion data from outside the limitations period. He included three years worth of promotion data –

---

[3] Under a modified *Daubert* test, the Court examines whether the expert's methodology (1) comports with basic principles, (2) has any probative value, and (3) primarily uses evidence that is common to all members of the proposed class. *In re Polypropylene Carpet Antitrust Litigation*, 996 F. Supp. 18, 26 (N.D. Ga. 1997); *Dukes v. Wal-Mart*, 222 F.R.D. at 191.

[4] Where an expert's testimony is flawed as a matter of law, it should not be admitted even at the class certification stage. *See, e.g., Vickers v. General Motors Corp.*, 204 F.R.D. 476, 479 (D. Kan. 2001) (court cannot certify class action based on expert opinion so flawed as to be inadmissible as matter of law); *Cruz v. Coach Stores, Inc.*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (S.D.N.Y. Nov. 18, 1998) (disregarding expert report submitted in support of motion for class certification as "fatally flawed"), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir. 2000).

from January 1999 to December 2001 – that falls outside of the limitations period and thus is irrelevant for purposes of establishing the disparate impact on women of Costco's promotion policies during the claims period. The proper data was available but was not used. In addition, Dr. Drogin failed to analyze the liability and pre-liability periods separately.[5] As a result, Dr. Drogin's conclusions of statistically significant gender discrimination are irrelevant and lack any probative value.

- Dr. Drogin admits that he failed to control for obvious, major nondiscriminatory variables that refute his findings of statistical significance, such as leaves of absence, prior work experience as a Merchandise Manager, and prior experience in two or more Senior Staff manager positions at Costco.[6] Had Dr. Drogin controlled for these relevant job qualifications, his own model would have shown no significant gender disparity in promotions of women to the AGM position, which he conceded in his deposition.[7] Although plaintiffs now assert that prior Merchandise Manager experience is a "tainted variable" for purposes of this analysis, they offer no evidence to establish that fact.[8] Thus, Dr. Drogin's failure to properly control for obvious, major nondiscriminatory factors renders his

---

[5] Defendants, on the other hand, presented unrebutted evidence that, if the three years worth of irrelevant promotion data is excluded, there is no statistically significant disparity between the numbers of women and men promoted to the Assistant General Manager ("AGM") position. Saad Second Report ¶¶ 6, 45.

[6] Failure to control for major explanatory factors in a discrimination case makes an expert's opinion "essentially worthless." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (expert's failure to control for variables made analysis "essentially worthless," especially when "such variables *can* be controlled for") (emphasis in original); *see also*, *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (rejecting statistical analysis because "this court and others have treated skeptically statistics that fail to account for other relevant variables," especially where expert "had data about other relevant variables" such as job performance, "yet his statistical analysis makes no attempt to take these variables into account").

[7] Drogin Dep. 83.

[8] The "tainted variable" argument fails to consider the impact of female preferences in job selection. Costco presented evidence of warehouse postings demonstrating that women's personal preferences affect their positions at Costco. *See*, *e.g.*, Saad First Report ¶ 77.

opinion of statistically significant gender discrimination irrelevant and inadmissible.[9]

- Dr. Drogin's conclusion that women spend more time in the Senior Staff positions prior to promotion to AGM than men do is also fatally flawed because Dr. Drogin once again uses irrelevant data from the pre-limitations period, and further ignores all promotion data for the January 1 to July 31, 2004 time period. Dr. Drogin conceded that he had no good reason to exclude relevant data from within the limitations period other than "to show [a] stronger pattern." Drogin Dep. 120.[10]

- Dr. Drogin improperly aggregates his AGM promotion statistics on a national level. "[A]ggregated data at the nation-wide level is highly suspect." *Dukes v. Wal-Mart*, 222 F.R.D. at 158. National aggregation of data is especially improper where, as here, promotion decisions are made locally.[11] Dr. Drogin himself only

---

[9] Both the U.S. Supreme Court and the Ninth Circuit have observed that statistical proof in employment discrimination cases must control for obvious, "major" nondiscriminatory variables. *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986) ("there may, of course, be some regressions so incomplete as to be inadmissible as irrelevant"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) (rejecting plaintiffs' reliance on "statistics [that] failed to account for obvious variables – including education, previous position at the company, and distribution of age groups by position – that would have affected the results of the analysis"); *see also Cooper v. Southern Co.*, 390 F.3d 695, 716-19 n.11 (11th Cir. 2004) (affirming district court's denial of class certification of a Title VII race claim where expert failed to consider "major" factors such as prior experience and skills); *Munoz v. Orr*, 200 F.3d 291, 300-02 (5th Cir. 2000) (rejecting plaintiffs' statistical analysis, in Title VII class action, that failed " to consider other variables" that could have been relevant to analysis, such as education and experience); *Sheehan v. Purolator, Inc.*, 830 F.2d 99, 102 (2d Cir. 1988) (affirming denial of class certification in adverse impact claim where regression analysis did not consider "various relevant non-discriminatory factors such as education and prior work experience," particularly where "[defendants] introduced evidence that these factors indeed could explain the disparities").

[10] Even this intentional manipulation of the data does not yield a result ($z=-2.43$) (Drogin Decl. ¶¶ 22-23) strong enough as that generally required to support an inference of discrimination. *See Hazelwood School Dist. v. U.S.*, 433 U.S. 299, 308, 311 n. 14, 17 (1977); *Castaneda v. Partida*, 430 U.S. 482, 496 n. 17 (1977).

[11] *See EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 350 (7th Cir. 1988) (affirming district court's rejection of EEOC statistical analysis, and noting that national aggregation of data was improper where decisions were made locally, and especially where EEOC could have analyzed data more locally, but chose not to do so); *Abram v. UPS*, 200 F.R.D. 424, 431 (E.D. Wis. 2001) (plaintiffs failed to establish commonality because there was no statistically significant disparity in pay between white and African-American employees in most districts);

found statistically significant gender discrepancies in three out of Costco's eight operating regions based on cumulative z-scores for the 1999 to 2003 time period (i.e., during an irrelevant time period). Drogin Dep. 29-30.[12] Dr. Drogin admits that he performed a region-by-region analysis (Drogin Dep. 26-30), but he fails to present regional results in any report or in his declaration. Dr. Drogin's failure to report his results on a region-by-region basis leads to an analysis that is so flawed and misleading so as to be inadmissible as a matter of law.[13] A national class encompassing eight separate operating regions cannot properly be certified when plaintiffs can only demonstrate a disparate gender impact, based on a statistically significant disparity, in two of the eight regions.[14] Plaintiffs offer no evidence to explain how policies that allegedly have a nationwide disparate impact can give rise to statistically significant gender disparities in only two of the Defendant's eight operating regions.

For the reasons set forth above, the Court concludes that the Declaration of Richard Drogin submitted by Plaintiffs in support of their motion for class certification does not satisfy the requirements of FRE Rule 702, and that the conclusions contained therein are based on a flawed methodology that renders the expert opinion testimony irrelevant and inadmissible as a

---

*Moore v. Boeing Co.*, No. 4:02CV80 CDP, 2004 WL 3202777, at *12 (E.D. Mo. Mar. 31, 2004) (improper aggregation of data could not support class certification).

[12] Replicating Dr. Drogin's model, Dr. Saad found a disparity in only two regions because Dr. Saad, unlike Dr. Drogin, did not count employees who were on a leave of absence as of the end of the year and who thus were unavailable for promotion. Saad Second Report ¶ 42.

[13] *See, e.g., Dukes v. Wal-Mart, Inc.*, 222 F.R.D. at 191 (expert report must at least adhere to basic principles, and primarily use evidence common to all members of the proposed class, to be admissible at class certification stage); *Cruz*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (expert's statistical report failed to control for major nondiscriminatory factors and thus was fatally flawed and could not support class certification).

[14] *See Morgan v. United Parcel Service of Am., Inc.*, 380 F.3d 459, 464 (8th Cir. 2003) ("even a successful showing of discrimination in some districts does not prove nationwide discrimination. In fact ... proof of discrimination is some districts and not others tends to defeat the argument that discrimination was [defendant's] nationwide standard operating procedure"); *Caridad v. Metro North R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) (finding of commonality only in positions that showed statistically significant differences in discipline between African-American and Caucasian employees); *compare Dukes v. Wal-Mart*, 222 F.R.D. at 156-58 (certifying a nationwide class because regressions demonstrated statistically significant gender disparities in *all forty-one* of the defendant's operating regions).

1  matter of law.  The Declaration of Richard Drogin, and all of its contents, are therefore stricken
2  from the record.

4  IT IS SO ORDERED.

7  DATED: _____          _____
                                   The Honorable Marilyn Hall Patel