1  SEYFARTH SHAW LLP
   Kenwood C. Youmans (SBN 68258)
2  David D. Kadue (SBN 113578)
   2029 Century Park East, Suite 3300
3  Los Angeles, California 90067-3063
   Telephone: (310) 277-7200
4  Facsimile: (310) 201-5219
   kyoumans@seyfarth.com
5  dkadue@seyfarth.com

6  SEYFARTH SHAW LLP
   Gerald L. Maatman, Jr. (admitted *pro hac vice*)
7  131 S. Dearborn Street, Suite 2400
   Chicago, Illinois 60603-5803
8  Telephone: (312) 460-5000
   Facsimile: (312) 460-7000
9  gmaatman@seyfarth.com

SEYFARTH SHAW LLP
David B. Ross (admitted *pro hac vice*)
1270 Avenue of the Americas
Suite 2500
New York, New York 10020
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
dross@seyfarth.com

SEYFARTH SHAW LLP
Thomas J. Wybenga (admitted *pro hac vice*)
999 Lake Drive
Issaquah, Washington 98027
Telephone: (425) 313-6794
Facsimile: (425) 313-7922
twybenga@seyfarth.com

10 Attorneys for Defendant
   COSTCO WHOLESALE CORPORATION

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                    (SAN FRANCISCO DIVISION)

15 SHIRLEY "RAE" ELLIS, on behalf of herself    )  Case No. C04 3341 MHP
   and all others similarly situated,           )
16                                              )  **NOTICE OF MOTION TO STRIKE**
                     Plaintiffs,                )  **DECLARATION OF RICHARD**
17                                              )  **DROGIN, PH.D.; MEMORANDUM IN**
           v.                                   )  **SUPPORT THEREOF**
18                                              )
   COSTCO WHOLESALE CORPORATION                 )
19                                              )  Date:      November 6, 2006
                     Defendant.                 )  Time:      2:00 p.m.
20                                              )  Courtroom: 15
                                                )  Judge:     Marilyn Hall Patel
21                                              )

22

23

24

25

26

27

28

                              MOTION TO STRIKE DROGIN DECLARATION
                              Case No. C04 3341 MHP

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

I.  FLAWED EXPERT TESTIMONY MAY BE PROPERLY STRICKEN FROM A
CLASS CERTIFICATION PROCEEDING .......................................................3

    A.  The Court Should Apply *Daubert* At Class Certification.......................3

    B.  Even Under A Modified *Daubert* Test, Expert Testimony Must
Be Relevant And Reliable For Class Certification Purposes....................5

II.  THE DROGIN DECLARATION IS INADMISSIBLE .....................................7

    A.  Dr. Drogin Fails To Control For Major Nondiscriminatory Factors
That Refute His Findings .........................................................................8

        1.  Importance Of Omitted Variables................................................8

        2.  Dr. Drogin's Spurious "Taint" Argument..................................10

    B.  Dr. Drogin's Analysis Is Neither Probative Nor Relevant Because He
Commingles Stale Promotions Data To Obscure The Lack Of Any
Significant Disparity .............................................................................13

        1.  Liability Cannot Rest Solely On Pre-Liability Period Data
Where, As Here, There Is No Significant Disparity
Within The Liability Period .......................................................13

        2.  No Exception Justifies Use Of Stale Data In This Case ............16

    C.  Dr. Drogin's Time-To-Promotion Analysis Wrongly Excludes
Statistics That Invalidate His Conclusion That Senior Staff
Women Take Longer To Reach AGM......................................................17

    D.  Dr. Drogin Fails To Exclude Employees On Leave Of Absence
From His Analysis Of Promotions..........................................................18

    E.  Dr. Drogin Improperly Aggregates National Data To Conceal The
Regional Disparities...............................................................................19

CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abram v. UPS,*
    200 F.R.D. 424 (E.D. Wis. 2001) ................................................................19

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................4

*Bacon v. Honda of America Mfg.,*
    205 F.R.D. 466 (S.D.Ohio 2001) ..............................................................8

*Bazemore v. Friday,*
    478 U.S. 385 (1986) ................................................................................8

*Bell v. Ascendant Solutions,*
    422 F.3d 307 (5th Cir. 2005) ....................................................................4

*Bennet v. Roberts,*
    295 F.3d 687 (7th Cir. 2002) ..................................................................11

*Berg v. California Horse Racing Bd.,*
    419 F. Supp. 2d 1219 (E.D. Cal. 2006) ..............................................15, 17

*Blades v. Monsanto Co.,*
    400 F.3d 562 (8th Cir. 2005) ....................................................................7

*Bowe v. PolyMedica Corp.,*
    432 F.3d 1 (1st Cir. 2005) ......................................................................6

*Brown v. Coach Stores,*
    163 F.3d 706 (2d Cir. 1998) ..................................................................12

*Carpenter v. The Boeing Co.,*
    456 F.3d 1183 (10th Cir. 2006) ......................................................9, 12, 13

*Castaneda v. Partida,*
    430 U.S. 482 (1977) ..............................................................................18

*Castano v. American Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ....................................................................7

*Coleman v. Quaker Oats Co.,*
    232 F.3d 1271 (9th Cir. 2000) ..................................................................8

*Cooper v. Southern Co.,*
    390 F.3d 695 (11th Cir. 2004) ..................................................................8

*Dean v. Boeing Co.,*
    2003 U.S. Dist. LEXIS 8787 (D. Kan. Apr. 24, 2003) ................................8

*Dukes v. Wal-Mart,*
    222 F.R.D. 189 (N.D. Cal. 2004) ......................................................5, 6, 7

*EEOC v. Sears, Roebuck & Co.,*
    839 F.2d 302 (7th Cir. 1988) ............................................................11, 19

*Eastland v. Tennessee Valley Auth.,*
    704 F.2d 613 (11th Cir. 1973) ..................................................................8

*Forman v. Small*,
    271 F.3d 285 (D.C. Cir. 2001) ...................................................................15, 17

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) .........................................................................6

*Gay v. Waiters' & Dairy Lunchmen's Union*,
    694 F.2d 531 (9th Cir. 1982) .......................................................................18

*Hazelwood School District v. United States*,
    433 U.S. 299 (1977)......................................................................................18

*Hemmings v. Tidyman's*,
    285 F.3d 1174 (9th Cir. 2002) ......................................................................9

*Johnston v. HBO Film Mgmt.*,
    265 F.3d 178 (3d Cir. 2001).........................................................................7

*Jones v. GPU*,
    234 F.R.D. 82 (E.D. Pa. 2005).................................................................6, 15

*Kline v. Coldwell Banker & Co.*,
    508 F.2d 226 (9th Cir. 1974) .........................................................................5

*Lamumba Corp. v. City of Oakland, No. C 05-2712 MHP*,
    2006 U.S. Dist. LEXIS 45022 (N.D. Cal. Jun. 30, 2006)...................................16

*Lust By & Through Lust v. Merrell Dow Pharms.*,
    89 F.3d 594 (9th Cir. 1996) ..........................................................................4

*Lyons v. England*,
    307 F.3d 1092 (9th Cir. 2002) .....................................................................15

*McLaurin v. National R.R. Passenger Corp.*,
    311 F. Supp. 2d 61 (D.D.C. 2004)................................................................10

*McNamara v. Bre-X Minerals Ltd.*,
    2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30, 2002) ..................................4

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) .........................................................................8

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)..........................................................................14, 15, 17

*Paige v. California*,
    291 F.3d 1141 (9th Cir. 2002) .........................................................16, 21, 22

*In re Polypropylene Carpet Antitrust Litigation*,
    996 F. Supp. 18 (N.D. Ga. 1997)................................................................6, 7

*Pottenger v. Potlatch Corp.*,
    329 F.3d 740 (9th Cir. 2003) .........................................................................8

*Sanneman v. Chrysler Corp.*,
    191 F.R.D. 441 (E.D. Pa. 2000).....................................................................4

*See EEOC v. Joe's Stone Crab*,
    969 F. Supp. 727 (S.D. Fla. 1997) ...............................................................14

*Siam v. Potter, No. C 04-0129 MHP,*
    2005 U.S. Dist. LEXIS 11893 (N.D. Cal. May 16, 2005) ................................14

*Smith v. Western Elec. Co.,*
    770 F.2d 520 (5th Cir. 1985) ........................................................15, 17

*Stastny v. Southern Bell Tel. & Tel. Co.,*
    628 F.2d 267 (4th Cir. 1980) ..............................................................20

*Ste. Marie v. Eastern RR. Ass'n,*
    650 F.2d 395 (2d Cir. 1981)..........................................................15, 17

*Stender v. Lucky Stores, Inc.,*
    803 F. Supp. 259 (N.D. Cal. 1992) .................................................10, 18

*Stout v. Potter,*
    276 F.3d 1118 (9th Cir. 2002) ............................................................12

*Szabo v. Bridgeport Machines,*
    249 F.3d 672 (7th Cir. 2001) .................................................................7

*Tagatz v. Marquette Univ.,*
    861 F.2d 1040 (7th Cir. 1988) ...........................................................10

*Thomas & Thomas Rodmakers v. Newport Adhesives & Composites,*
    209 F.R.D. 159 (C.D. Cal. 2002) ...........................................................5

*Unger v. Amedisys,*
    401 F.3d 316 (5th Cir. 2005) ................................................................4

*United Airlines v. Evans,*
    431 U.S. 553 (1977).............................................................................17

*Vickers v. General Motors Corp.,*
    204 F.R.D. 476 (D. Kan. 2001).............................................................6

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001).............................................................5, 7

*Wagner v. Taylor,*
    836 F.2d 578 (D.C. Cir. 1987) .............................................................7

*Watson v. Fort Worth Bank & Trust,*
    487 U.S. 977 (1988).............................................................................11

*West v. Prudential Sec.,*
    282 F.3d 935 (7th Cir. 2002) ................................................................7

*Windham v. American Brands,*
    565 F.2d 59 (4th Cir. 1977) ..................................................................5

1

### NOTICE OF MOTION

2     Please take notice that, on November 6, 2006 at 2 p.m., before the Honorable Judge

3 Marilyn Hall Patel, United States District Court, Courtroom 15, 450 Golden Gate Ave., San

4 Francisco, California, Defendant will seek an order striking the Declaration of Richard Drogin,

5 Ph.D.  This motion is based on the attached memorandum of points and authorities, the

6 accompanying declarations and exhibits, and further briefing and arguments of counsel.

7

### INTRODUCTION

8     Dr. Drogin submitted a declaration to support Plaintiffs' motion for class certification,

9 arguing a statistically significant gender-related disparity in (i) the rate of  promotion to

10 warehouse Assistant Manager ("AGM") and (ii) the time it takes a Senior Staff manager to be

11 promoted to AGM.  But Dr. Drogin ignores the *absence* of any such disparity within the liability

12 period (beginning December 2003, or at least no earlier than December 28, 2001).  Instead of

13 focusing on the relevant period, Dr. Drogin uses a procrustean method that arbitrarily stretches or

14 cuts off the temporal scope of his analysis in order to make the body of statistics fit a

15 predetermined result.  As to the promotion rate numbers, he stretches the time frame back three

16 years to capture stale data in 1999, 2000, and 2001.  As to the time-to-promotion numbers, he

17 inexcusably cuts off the data for January through July 2004.[1]   Dr. Drogin thus systematically

18 conceals the  absence of any disparate impact occurring within the liability period.

19     In like manner, Dr. Drogin fails to control for the obvious objective factor of prior job

20 experience, which would eliminate any gender-related disparity in the AGM promotion rate if it

21 were considered.

22     Finally, even though Costco promotes at the regional level or below, after performing a

23 region-by-region promotion analysis, Dr. Drogin suppressed the results in his declaration.  In,

24 fact, there is no statistical disparity in promotions within the liability period in any one of the

25 eight regions (nor on a cumulative basis in all regions).   The analysis that Dr. Drogin failed to

26

27 [1]   Dr. Drogin also, as to both sets of numbers, wholly ignores post-July 2004 data, on the ground that they are tainted by the filing of this lawsuit.  Our criticisms of his approach exist independent of this particular omission of relevant facts.

28

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

1  report shows that, even using stale data going back to 1999, there is no significant disparity in

2  the promotion rate in five or six of the eight Costco regions.

3      In short, the Drogin declaration, by arbitrarily slicing and dicing the numbers to reach a

4  predetermined result, lacks probative value as to the class certification issues before the Court

5  and is so deeply flawed as to be inadmissible as a matter of law.

6                          **FACTUAL BACKGROUND**

7      For at least fifteen years, Dr. Drogin has worked on the plaintiff's side in employment

8  discrimination cases, on behalf of The Impact Fund on several occasions, and for Plaintiffs'

9  attorney Brad Seligman "possibly a dozen times." Drogin Dep. 19-20, 23-24, Ex. X.[2]  In their

10  initial telephone conversation on this case, attorney Seligman framed the issue for Dr. Drogin as

11  the percentage of women and men promoted by Costco to AGM from a job pool of Senior Staff

12  managers. Dr. Drogin applied an "aggregate Z-score" model to the Senior Staff manager pool,

13  just as Mr. Seligman had suggested in that first phone call, and aside from refining the data for

14  analysis, never really changed his model thereafter. Drogin Dep. 34, 35, Ex. X.

15      Dr. Drogin's deviations from any objective scientific inquiry appear throughout his

16  analysis. For example, he fails to control for a critical variable: experience in multiple Senior

17  Staff management positions, particularly the Merchandise Manager ("MM") position. The

18  importance of this factor was highlighted by Dr. Drogin himself: "[o]ver 85% of those promoted

19  into AGM have prior experience as a Merchandizing [sic] Manager." Drogin Decl. ¶ 12. Even

20  this finding is based on job experience going back only to 1999. As Dr. Drogin concedes,

21  including pre-1999 biographical data would reveal an even higher percentage of AGM

22  promotees with MM experience (Drogin Dep. 77, Ex. X), over 90%, as it turns out, in fact. Saad

23  Second Decl., ¶ 35.[3]

---

24  [2]  The declarations, depositions and exhibits cited herein have all been filed by Defendant in
25  opposition to Plaintiffs' motion for class certification.

26  [3]  By including promotions from "Assistant Merchandise Manager," a job at the same pay
   level as Merchandise Manager designed to provide Merchandise Manager experience for
27  Senior Staff managers when there is no vacancy in the Merchandise Manager position, Dr.
   Drogin concedes that the percentage of AGM's with prior senior merchandising manager
   experience would be, "plausibly," even higher. Drogin Dep. 79-80, Ex. X.

28
                          MOTION TO STRIKE DROGIN DECLARATION
                          Case No. C04 3341 MHP

-2-

1    None of this was a real surprise to Dr. Drogin (Drogin Dep. 77-78, 79-80, Ex. X), who

2 admits that he may have seen the written list of qualifications for AGM on the Costco Job

3 Analysis, which states: "Merchandise Manager experience preferred" (CRE 000245, Drogin

4 Dep. 81, Ex. X-5). Dr. Drogin even agrees with Dr. Reskin that the Merchandise Manager

5 position is a "key port of entry job" into higher management. Drogin Dep. 81-82, Ex. X ("it's

6 empirically required in the sense that almost everybody who is promoted would have such

7 experience").

8    With the importance of MM experience to promotions thus undisputed, any objective

9 analyst would report the results controlling for (a) MM experience and (b) experience in two or

10 more Senior Staff management positions. Yet Dr. Drogin does neither. In fact, his model fails

11 to report results that controlled for these—or any other—job qualifications. He did not even

12 exclude from the job pool employees who were on leave, although employees on leave are not

13 available for promotions. Matthews Decl. ¶ 22. Dr. Drogin acknowledged that controlling for

14 nondiscriminatory variables may affect whether there is a statistically significant disparity

15 (Drogin Dep. 60, Ex. X), but used a model that meaningfully controls for only one variable:

16 gender. Had he objectively controlled for key nondiscriminatory variables, or analyzed

17 promotion data within the liability period, his Z-scores would have shown no statistically

18 significant gender-related disparity.

## ANALYSIS

### I. FLAWED EXPERT TESTIMONY MAY BE PROPERLY STRICKEN FROM A CLASS CERTIFICATION PROCEEDING

#### A. The Court Should Apply *Daubert* At Class Certification.

Where, as here, Plaintiffs critically rely on their experts, the Court should assess expert

reliability under the principles established in *Daubert v. Merrell Dow Pharms.* and *Kumho Tire*

*Co. v. Carmichael.*[4] Federal Rule of Evidence 702—the subject of both *Daubert* and *Kumho*

*Tire*— allows expert witness testimony only if (1) the testimony is based upon sufficient facts or

---

[4]    509 U.S. 579 (1993) and 526 U.S. 137 (1999).

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-3-

1    data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has

2    applied the principles and methods reliably to the facts of the case.[5]

3         "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted

4    is not only relevant, but reliable," *Daubert*, 509 U.S. at 590, and must ensure that an expert

5    employs "the same level of intellectual rigor that characterizes the practice of an expert in the

6    relevant field." *Kumho*, 526 U.S. at 152.  Courts making this determination consider such factors

7    as (1) whether the method has gained general acceptance in the relevant scientific community,

8    (2) whether the method has been peer-reviewed, (3) whether the method can be (and has been)

9    tested, and (4) whether there is a known or potential rate of error.[6]

10        Especially in light of the heavy stakes at the class certification stage, courts have

11   correctly applied a full *Daubert* analysis to expert testimony offered in support of class

12   certification. *See Bell v. Ascendant Solutions*, 422 F.3d 307 (5th Cir. 2005) (affirming district

13   court's denial of class certification where plaintiff's expert report excluded under *Daubert*);

14   *Unger v. Amedisys*, 401 F.3d 316, 323-24 n.6 (5th Cir. 2005) (quoting with approval an

15   unpublished district court case that applied *Daubert* at class certification stage); *Sanneman v.*

16   *Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000) (applying *Daubert* analysis at class certification

17   stage); *McNamara v. Bre-X Minerals Ltd.*, 2002 U.S. Dist. LEXIS 27473 (E.D. Tex. Sept. 30,

18   2002) (same).

19        A law review commentator correctly concludes that a full *Daubert* analysis should apply

20   to expert testimony at the class certification stage. L. Elizabeth Chamblee, *Between "Merit*

21   *Inquiry" And "Rigorous Analysis":  Using* Daubert *to Navigate The Gray Areas Of Federal*

22   *Class Action Certification*, 31 Fla. St. U.L. Rev. 1041, 1090 (2004).  Anything less would

23   deprive Costco, in derogation of the Rules Enabling Act, 28 U.S.C. §§ 2071-2077, of its due

24   process rights to exclude inadmissible evidence. *See Amchem Prods. v. Windsor*, 521 U.S. 591,

25   _____

     [5]   *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 590.

26   [6]   *See Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 597 (9th Cir. 1996)
         (citing *Daubert*'s four non-exclusive factors that assist in "the separation of inadmissible

27       opinions based on junk science from admissible opinions developed by the scientific
         method").

28
                                              MOTION TO STRIKE DROGIN DECLARATION
                                              Case No. C04 3341 MHP

                                           -4-

613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any substantive right.") (internal citations omitted).  Courts have applied the Rules Enabling Act in the class action context to disallow interpretations of Rule 23 that would abridge the substantive rights of the parties.  *See Windham v. American Brands,* 565 F.2d 59, 72 & n.41 (4th Cir. 1977) (disallowing fluid recovery under Rule 23, as being in violation of Rules Enabling Act); *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 233-34 (9th Cir. 1974) (same); *cf. Schwab v. Philip Morris USA,* No. CV 04-1945, 2005 WL 3032556 at *4 (E.D.N.Y. Nov. 14, 2005) (courts must stay within bounds of due process and avoid altering substantive law in violation of Rules Enabling Act when shaping the remedies in Rule 23(b) actions).

> **B.    Even Under A Modified *Daubert* Test, Expert Testimony Must Be Relevant And Reliable For Class Certification Purposes.**

Some courts apply a modified *Daubert* standard at the class certification stage.  *E.g.,* *Dukes v. Wal-Mart,* 222 F.R.D. 189, 191-92 (N.D. Cal. 2004) (without mentioning the Rules Enabling Act); *Thomas & Thomas Rodmakers v. Newport Adhesives & Composites,* 209 F.R.D. 159, 162 (C.D. Cal. 2002).  This controversy between a rigorous approach and a more lenient approach, important as it is as a matter of principle, need not detain the Court here.  The Court need not supervise a "statistical dueling" because Dr. Drogin's analysis fails to meet even a lenient test, as is apparent on the face of his declaration, given the undisputed facts and the unrebutted conclusions of other experts.

Even under a modified *Daubert* standard, courts must not "uncritically accept all expert evidence that is offered in support of, or against, class certification." *Dukes*, 222 F.R.D. at 191. Even under a modified standard, "[a] district court must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001); *Dukes*, 222 F.R.D. at 191 (expert opinion must at least have probative value for purposes of class certification).  Under this modified standard, the Court must determine whether the expert's testimony is so flawed as to be inadmissible as a matter of law by examining whether the expert's methodology (1) comports

1  with basic principles, (2) has any probative value, and (3) primarily uses evidence that is

2  common to all members of the proposed class.  *See In re Polypropylene Carpet Antitrust*

3  *Litigation*, 996 F. Supp. 18, 26 (N.D. Ga. 1997); *Dukes*, 222 F.R.D. at 191.[7]  Where an expert's

4  testimony is flawed as a matter of law, it should not be admitted even at the class certification

5  stage.[8]  *See, e.g., Vickers v. General Motors Corp.*, 204 F.R.D. 476, 479 (D. Kan. 2001) (court

6  cannot certify class action based on expert opinion so flawed as to be inadmissible as matter of

7  law); *Cruz v. Coach Stores, Inc.*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (S.D.N.Y. Nov.

8  18, 1998) (disregarding expert report submitted in support of motion for class certification as

9  "fatally flawed"), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir.

10  2000).

11        In assessing an expert's reliability, a court may weigh evidence to decide class

12  certification issues.  *E.g., Bowe v. PolyMedica Corp.*, 432 F.3d 1, 5-6 (1st Cir. 2005) (district

13  court has power to weigh evidence relating to class certification inquiry); *Gariety v. Grant*

14  *Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (district court erred in taking plaintiff's

15  assertions at face value in certifying class, because if court simply accepted complaint "at face

16  value in making class action findings, every complaint asserting the requirements of Rule 23(a)

17  and (b) would automatically lead to a certification order, frustrating the district court's

18  responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis'

19  of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied")

20  (internal citations omitted); *Jones v. GPU*, 234 F.R.D. 82, 93 (E.D. Pa. 2005) (denying motion

21  for class certification due to lack of commonality and typicality; while court "does not normally

---

[7]  In *Dukes*, while ultimately finding Dr. Drogin's analysis admissible, the court performed an extensive substantive analysis of the issues raised by Wal-Mart, including Dr. Drogin's method of aggregation, his selection of variables, his internal data analysis, and his choice of applicant pools.  *Dukes*, 222 F.R.D. at 156-64.

[8]  *See, e.g., Vickers v. General Motors Corp.*, 204 F.R.D. 476, 479 (D. Kan. 2001) (court cannot certify class action based on expert opinion so flawed as to be inadmissible as matter of law); *Cruz v. Coach Stores*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (S.D.N.Y. Nov. 18, 1998) (disregarding expert report submitted in support of motion for class certification as "fatally flawed"), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir. 2000).

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-6-

1 │ look into the merits of the case at the certification stage, the validity of the plaintiffs' proffered

2 │ statistical analysis is a proper inquiry at this point"); 7B ARTHUR R. MILLER & MARY KAY KANE,

3 │ FEDERAL PRACTICE & PROCEDURE, Charles A. Wright, § 1798 at 223 (3d ed. 2005) (weighing

4 │ evidence on class certification is appropriate if it is "directed toward examining the underlying

5 │ facts to determine whether they are susceptible to common proof and is not to determine the

6 │ probability of success on the merits").[9]

7 │ **II. THE DROGIN DECLARATION IS INADMISSIBLE**

8 │   Dr. Drogin's declaration is so fundamentally flawed as to be inadmissible as a matter of

9 │ law: it lacks objective statistical analysis, probative value, reliability, and relevance to the class

10 │ certification issues before the Court. *See, e.g., Cruz*, No. 96 Civ. 8099, 1998 WL 812045, at *4

11 │ n.3 (statistical expert's opinion so flawed as to be inadmissible as matter of law); *In re Visa*

12 │ *Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001); *see also Dukes*, 222

13 │ F.R.D. at 191 ("Rather, the question is whether the expert evidence is sufficiently probative to be

14 │ useful in evaluating whether class certification requirements have been met.") (citing *In re*

15 │ *Polypropylene Carpet Antitrust Litig.*, 996 F.Supp. 18, 26 (N.D. Ga. 1997) (at class certification

16 │ stage, expert's methodology must (a) comport with basic principles, (b) have probative value,

17 │

18 │ [9] *See also Blades v. Monsanto Co.,* 400 F.3d 562, 566-67 (8th Cir. 2005) (consideration of
class certification may require court to resolve disputes going to factual setting of case, and
19 │ such disputes may overlap with merits); *West v. Prudential Sec.,* 282 F.3d 935, 938 (7th Cir.
2002) ("Tough questions [at class-certification stage] must be faced and squarely decided, if
20 │ necessary by holding evidentiary hearings and choosing between competing perspectives.");
*Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 189 (3d Cir. 2001); *Szabo v. Bridgeport*
21 │ *Machines,* 249 F.3d 672, 675-76 (7th Cir. 2001) ("judge should make whatever factual and
legal inquiries are necessary under Rule 23" even if "judge must make a preliminary inquiry
22 │ into the merits"); *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996) ("A
district court certainly may look past the pleadings to determine whether the requirements of
23 │ Rule 23 have been met. Going beyond the pleadings is necessary, as a court must
understand the claims, defenses, relevant facts, and applicable substantive law in order to
24 │ make a meaningful determination of the certification issues"); *In re Visa Check/Master*
*Money Antitrust Litig., supra* ("the court must ensure that the basis of the expert opinion is
25 │ not so flawed that it would be inadmissible as a matter law."); *Wagner v. Taylor,* 836 F.2d
578, 587 (D.C. Cir. 1987) ("While, of course, a court does not possess 'any authority to
26 │ conduct a preliminary inquiry into the merits of a suit in order to determine whether it may
be maintained as a class action,' it is evident that some inspection of the circumstances of
27 │ the case is essential to determine whether the prerequisites of Federal Civil Rule 23 have
been met.").

28 │

and (c) primarily use evidence that is common to all members of proposed class); *Bacon v.*

*Honda of America Mfg.*, 205 F.R.D. 466, 470-71 (S.D.Ohio 2001) ("'For common questions to

exist, plaintiffs' statistical evidence must logically support the inference of discrimination against

the class asserted'") (citation omitted), and *Dean v. Boeing Co.*, 2003 U.S. Dist. LEXIS 8787 at

*33-35 (D. Kan. Apr. 24, 2003) (at class certification stage, court should determine whether

expert testimony is so fatally flawed as to be inadmissible as matter of law)).

> **A.    Dr. Drogin Fails To Control For Major Nondiscriminatory**
> **Factors That Refute His Findings**
>
> **1.    Importance Of Omitted Variables**

Dr. Drogin improperly fails to control for major nondiscriminatory factors that, if

considered, would refute his analysis and negate his results. The Supreme Court and Ninth

Circuit have both observed that statistical proof in employment discrimination cases must control

for obvious, "major" nondiscriminatory variables.[10]

Courts frequently hold in the class certification context that a purported showing of

discrimination that does not account for relevant "major factors" is not sufficient to support a

finding of "commonality" or "typicality." In *Cooper v. Southern Co.*, 390 F.3d 695, 716-19 n.11

(11th Cir. 2004), the court affirmed the denial of class certification in a Title VII race case

because the plaintiffs' statistician failed to consider "major" factors such as prior experience and

skills. *See also Munoz v. Orr*, 200 F.3d 291, 300-02 (5th Cir. 2000) (rejecting plaintiffs'

statistical analysis, in Title VII class action, that failed " to consider other variables" that could

have been relevant to analysis, such as education and experience); *Eastland v. Tennessee Valley

Auth.*, 704 F.2d 613, 622-25 (11th Cir. 1973) (limiting scope of class certification, because

---

[10]    *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986)  ("there may, of course, be some regressions so incomplete as to be inadmissible as irrelevant"); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (affirming summary judgment, noting "this court and others have treated skeptically statistics that fail to account for other relevant variables," especially where expert "had data about other relevant variables" such as job performance, "yet his statistical analysis makes no attempt to take these variables into account"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) (affirming summary judgment, noting plaintiffs' reliance on "statistics [that] failed to account for obvious variables – including education, previous position at the company, and distribution of age groups by position – that would have affected the results of the analysis").

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-8-

1   plaintiffs' multiple regression analysis was insufficient to establish *prima facie* case because it

2   failed adequately to reflect job comparability, years of experience, and other important factors);

3       To achieve his desired result, Dr. Drogin based his entire analysis of Senior Staff

4   manager promotions on gender alone (Drogin Dep. 69, Ex. X), without controlling for (i) MM

5   experience and (ii) experience in two or more Senior Staff manager positions, even though he

6   knew "that almost everybody who is promoted would have such experience."[11] *Id.* at 82: Even

7   after Dr. Saad pointed out Dr. Drogin's failure to control for either factor, Dr. Drogin chose to

8   control for neither.  Instead, he expanded his model in his August 10, 2006 rebuttal report to

9   control for the number of years of Senior Staff manager experience (Drogin Decl., Table 7b), an

10  irrelevant analysis that dodges Dr. Saad's criticism by not actually controlling for the major job

11  qualifications at issue.

12      Dr. Saad's criticism of Dr. Drogin's analysis is not merely academic. *cf. Dukes,* 222

13  F.R.D. at 137 (determining that criticism of Dr. Drogin's report is misplaced because defendant

14  fails to show that "curing the alleged flaws would also cure the statistical disparity" (quoting

15  *Hemmings v. Tidyman's,* 285 F.3d 1174, 1188 (9th Cir. 2002)).  Had Dr. Drogin taken the

16  relevant job qualifications into account, his own model would show no significant gender

17  disparity in promotion of women to AGM, as he conceded at his deposition (Drogin Dep. 83, Ex.

18  X).[12] In this case, Dr. Drogin's failure to account for two obvious objective factors—(i)

19  experience in the Merchandise Manager position and (ii) two Senior Staff positions—materially

20  effects his conclusions and therefore invalidates his entire analysis. *See Carpenter v. The Boeing*

21  *Co.,* 456 F.3d 1183, 1196 (10th Cir. 2006) (rejecting discrimination analysis where statistics fail

22

23

---

24  [11]  As with MM experience, Dr. Drogin concedes that a large majority of AGMs have held two
        different Senior Staff manager positions before promotion to AGM.  Drogin Decl. ¶¶ 10-12,
25      Table 5a.

26  [12]  For example, Dr. Saad showed that there was no statistically significant difference in the
        rate of promotion to AGM of men and women who have had MM experience; and
27      conversely, there is no statistically significant difference between the promotion rate of men
        and women who lack MM experience.  Dr. Drogin does not challenge these findings.
28      Drogin Dep. 83-84, Ex. X.

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

1    to analyze *qualified* individuals, and accordingly do not relate to proper population) and other

2    cases cited *supra*.

3         Failure to control for obvious explanatory factors in a discrimination case makes an

4    expert's opinion "essentially worthless."[13]   Because Dr. Drogin fails to control for obvious,

5    major nondiscriminatory factors, his analysis has no probative value and his declaration must be

6    stricken.

7         **2.    Dr. Drogin's Spurious "Taint" Argument**

8         Dr. Drogin lamely defends his failure to control for MM experience on the ground that it

9    "may have been influenced by gender discrimination" and would thus be a "tainted variable."

10   Drogin Dep. 88, 96, Ex. X; Drogin Decl. ¶ 18.[14]   He so contends notwithstanding the absence of

11   any pleading by Plaintiffs that Costco has blocked women from advancing into MM jobs.[15]   Dr.

12   Drogin's attack on this job-related, nondiscriminatory variable is meritless for several

13   fundamental reasons.

14        First, Plaintiffs must produce evidence to show—and not merely assert—that a facially

15   nondiscriminatory variable is tainted if they are to exclude it from consideration.  Plaintiffs have

16   produced no such evidence.  Indeed, their own expert, Dr. Reskin, acknowledges that the non-

17   discriminatory factor of women's preferences "may play a role" in the numerical distribution of

---

[13]   *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (expert's failure to control for variables made analysis "essentially worthless," especially when "such variables *can* be controlled for") (emphasis in original).

[14]   "A 'tainted variable' is one whose value is affected by discrimination and has the effect of concealing disparities due to discrimination." *McLaurin v. National R.R. Passenger Corp.*, 311 F. Supp. 2d 61, 65 (D.D.C. 2004) (quoting *Butler v. Home Depot*, 1997 WL 605754 at *10, 1997 Dist. LEXIS 16296, at *37 (N.D. Cal. Aug. 29, 1997)).

[15]   As set forth in detail *infra* at 16-17, Plaintiffs present no evidence that Costco discriminated against female employees in promotion to the AGM position during the liability period. Accordingly, there is no basis for expanding the "feeder pool" of candidates beyond the candidate pool of incumbent AGMs at Costco.  *Butler* and *Stender v. Lucky Stores, Inc.,* 803 F.Supp. 259, 323 (N.D. Cal. 1992) do not alter this analysis because they are distinguishable from the instant case.  In both *Butler* and *Stender*, the court considered an expanded feeder pool because the plaintiffs presented (a) evidence of discrimination of initial placement of employees within feeder positions, and (b) anecdotal and other evidence of discrimination. Because Plaintiffs can offer no evidence of discrimination in Costco's promotion to AGM positions during the liability period, any analysis based on an expanded feeder pool is unwarranted.

1   men and women in jobs at Costco.  Reskin Dep. 238, Ex. Y.  Dr. Drogin's rejection of the MM

2   variable thus conflicts with Dr. Reskin's testimony and, more importantly, with legal precedent

3   requiring rigorous analysis rather than merely a self-serving assertion that discrimination might

4   be at work.[16]

5          Second, Dr. Drogin's speculation exceeds his area of expertise.  He has no expertise to

6   opine on the factors that affect the number of women in the MM job or whether their numbers

7   result from discriminatory or non-discriminatory factors.  He admits that he lacks expertise in

8   economics, sociology, and psychology; he has not relied on the expertise of others; and he

9   cannot opine as to why people gravitate to one job or another, "what peoples' interest are, what

10  their preferences are" (Drogin Dep. 88, 96, Ex. X);  nor can he say that there is gender

11  discrimination in the filling of MM positions.  As he testified: "I don't have an opinion about

12  discrimination.  My opinion is based – is a statistical opinion."  Drogin Dep. 87, 89, Ex. X.[17]

13  Moreover, according to Plaintiffs' theory, the gender stereotyping resulting from subjective

14  decisionmaking should show statistical bias in the decisions to promote female Senior Staff

15  managers to AGM, whether they had MM experience or not.  Dr. Drogin obviously chose not to

16  control for MM experience because he did not like the results, which refute Plaintiffs' theory of

17  liability.

18         At most, Plaintiffs merely point to a bottom-line gender disparity in the MM position, but

19  their expert, Dr. Reskin, admits that this disparity would not entirely result from Costco's

20  practices.  Reskin Dep. 238-39, Ex. Y.  A mere disparity in the percentage of female MM would

21  prove nothing about sex discrimination.  *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977,

22

---

[16]  *See, e.g., Bennet v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) (rejecting statistical analysis
that purportedly showed discrimination in hiring within suburban Chicago school district
because plaintiff's expert did not control for interest of potential candidates); *EEOC v.
Sears, Roebuck & Co.*, 839 F.2d 302, 324-25 (7th Cir. 1988) (EEOC failed to explain
satisfactorily how analyses incorporating variables adequately controlled for interest of
female applicants, in Title VII suit brought against employer based on allegation that it
discriminated against women in hiring for commission sales positions).

[17]  An expert's choice of variables deserves little weight where he "is not an expert in labor
economics, has no expertise in the area of retail sales, and has no direct knowledge of
[defendant]." *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 326 (7th Cir. 1988).

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-11-

992 (1988) ("It is completely unrealistic to assume that unlawful discrimination is the sole cause

of people failing to gravitate to jobs and employers in accord with the laws of chance.  It would

be equally unrealistic to suppose that employers can eliminate, or discover and explain, the

myriad of innocent causes that may lead to statistical imbalances in the composition of their

work forces.  Congress has specifically provided that employers are not required to avoid

'disparate impact' as such.");  *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) (finding no

prima facie case, the court stated:  "Whether disparate impact was shown must address the

results of the interview screening decisions, not simply the bottom line promotion decisions.");

*Carpenter*, 456 F.3d at 1194 ("not enough for Plaintiffs to show simply that more overtime

assignments go to men than to women, or even that men get a higher percentage of those

assignments than their percentage in the workforce"); *Brown v. Coach Stores*, 163 F.3d 706, 712

(2d Cir. 1998) (finding no prima-facie case, the court stated:  "Allegations which contend only

that there is a bottom line racial imbalance in the work force are insufficient.").  In short,

Plaintiffs do not come close to a sufficient showing that MM experience is a "tainted variable."

Costco, on the other hand, has presented substantial evidence—including hundreds of

warehouse postings for warehouse manager positions—showing that differential gender

preferences affect the number of females in the MM position and related merchandise

management jobs that have similar working hours and job conditions.  Saad First Decl. ¶ 77.

While Dr. Drogin criticizes Dr. Saad's posting analysis, Dr. Drogin does not explain why

the limitations he argues should systematically alter the results; and he offers no contrary

analysis himself.[18]  *See, e.g., Dukes*, 222 F.R.D. at 160 (noting that attack on statistical expert for

---

[18]   First, Dr. Drogin complained that Dr. Saad wrongly included "generic postings" in his
analysis, but did not examine whether excluding "generic postings" would affect Dr. Saad's
conclusions.  Dr. Saad ran his analysis again, this time excluding "generic postings" and
found it made no difference to the results.  Saad Second Decl. ¶¶ 67-70.  Second, Dr. Drogin
complained that Dr. Saad's analysis of job postings was not representative of female
interest.  However, as Dr. Saad notes: "In response to Dr. Drogin's assertion that the posting
materials are non-representative with respect to female job interest, I performed a number of
analyses that compared the group of warehouses that provided posting materials, to those
that did not provide such materials.  Comparisons were made of the warehouses themselves,
the gender makeup in those warehouses, the distribution of postings by Staff Manager jobs,
the distribution of the postings over time, and the distribution of the postings by region."
Saad Second Decl. ¶ 59.  Dr. Saad concluded that his comparisons "suggest that the

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-12-

1   supposedly flawed methodology is insufficient unless it shows that curing the flaws would also

2   result in a meaningfully different conclusion).   Meanwhile, Plaintiffs' expert, Dr. Reskin, not

3   only agrees that the non-discriminatory factor of women's "preference may play a role," but also

4   states that she would not claim the under-representation of women "is entirely a product of . . .

5   Costco's practices."  Reskin Dep. 238-39, Ex. Y.[19]  In this light, Dr. Drogin's "tainted variable"

6   rationale rings as a hollow pretext to cover a results-oriented bias.

7          Dr. Drogin's failure to consider obvious, major nondiscriminatory factors renders his

8   declaration supporting class certification so flawed as to be inadmissible.  *See, e.g., Cruz*, No. 96

9   Civ. 8099, 1998 WL 812045, at *4 n.3 (expert's statistical report failed to control for major

10  nondiscriminatory factors such as education, prior job history, or job level, and thus was fatally

11  flawed and could not support class certification).  Once the relevant job-experience factor is

12  considered, the alleged statistical significance of Dr. Drogin's findings disappears.

13          **B.**    **Dr. Drogin's Analysis Is Neither Probative Nor Relevant**
                     **Because He Commingles Stale Promotions Data To Obscure**
14                   **The Lack Of Any Significant Disparity**

15                   **1.**    **Liability Cannot Rest Solely On Pre-Liability Period**
                             **Data Where, As Here, There Is No Significant Disparity**
16                           **Within The Liability Period**

17          Although the liability period begins no earlier than December 28, 2001, Dr. Drogin

18  aggregates stale promotion data dating from 1999 to calculate a cumulative Z-score for the entire

19  period of 1/1/99 – 7/31/04.  Drogin Decl.  ¶ 20, Table 7a.  This is the only way he can

20  manufacture a statistically significant gender-related disparity in promotion rates to AGM.

21  Because Dr. Drogin does not separately present any cumulative Z-score during the liability

22  circumstances surrounding the promotions for which postings are not available are probably
23  quite similar in character to those for the posting group.  Thus, it is reasonable to infer that
    the expressions of interest contained in the posting materials are likely to be broadly
24  representative of the expressions of interest generally among women looking at moving into
    Staff Manager jobs at Costco."  Saad Second Decl. ¶ 66.  Dr. Drogin does not respond to Dr.
25  Saad's analysis on this issue.

26  [19]  Reskin could not explain how much of the distribution of women in Costco management is
    due to alleged stereotyping and how much is due to non-discriminatory preferences of
27  women.  Reskin Dep. 239.  It is Plaintiffs' burden, not Costco's, to do so.  *See Carpenter*,
    456 F.3d at 1193-96 (rejecting plaintiffs' statistical analysis because they failed to establish
28  that disparity in number of overtime assignments was caused by employees' gender).

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

1   period alone, the Court cannot tell from his analysis that there is, in fact, no statistically

2   significant gender-related disparity in promotions to AGM within the liability period, even

3   without controlling for job qualifications. Dr. Saad, however, demonstrates that the cumulative

4   Z-score for female promotions to AGM during the period 12/28/01 -7/31/04 is not statistically

5   significant (Saad Second Decl. ¶¶ 6, 45), using Dr. Drogin's own model.[20] Dr. Drogin nowhere

6   presents a contrary finding, as he does not analyze the liability and pre-liability periods

7   separately.[21]

8          Dr. Drogin's analysis is neither probative nor relevant, because Plaintiffs cannot base

9   "commonality" or "typicality" solely on disparate impacts preceding the liability period when

10  there is no disparate impact within the period itself. Dr. Drogin ignores that Plaintiffs cannot

11  recover for any discriminatory promotional practice that preceded December 28, 2001.[22]

12  [20] Table R-32 to Saad's Second Declaration shows a cumulative Z-score for promotions to
        AGM in the statutory period of Z= -1.73 using Dr. Drogin's model without his so-called
13      "regional controls." Alternatively, Table R-1 to Saad's Second Declaration shows a
        cumulative Z-score in the same period of Z= -1.60 using Dr. Drogin's model with his
14      "regional controls." In either case there is clearly no statistically significant disparity. Dr.
        Saad properly excludes employees on leave of absence from the promotion pool in this
15      analysis, as explained *infra.* Since Dr. Drogin does not present any analysis for the liability
        period alone, Dr. Saad's findings stand unrebutted. Nevertheless, for the sake of
16      completeness, it should be pointed out that even *including* employees on leave, the
        cumulative z-score for the liability period using Dr. Drogin's model would be only -2.20
17      (Saad's Second Report, Table R-39), less than the test of significance which this Court and
        others have found persuasive. *See* note 26, infra at 18. Furthermore, the cumulative z-score
18      in this instance is not practically meaningful because if only two promotions of men instead
        of women during the period were the result of non-discriminatory factors, this would reduce
19      the Z-score below two standard deviations. Drogin Dep. 110-12, Saad Second Report ¶ 84.
        Given Dr. Reskin's opinion that female preferences play a role, that the numbers of women
20      in jobs is not "entirely a product of Costco's practices" (Reskin Dep. 238-39), and the
        anecdotal evidence confirming this fact (*See* Kadue Decl. ¶ 6 (Employees Sometimes Defer
21      Rotation and Other Promotional Opportunities for Personal Reasons)), non-discriminatory
        factors indisputably account for some of the promotions of men instead of women.

22  [21] Although Dr. Drogin includes data before the liability period in his analysis, he notably fails
        to consider data after July 31, 2004. *See EEOC v. Joe's Stone Crab,* 969 F. Supp. 727, 737
23      (S.D. Fla. 1997) (post-charge statistics have probative value because plaintiffs allege that
        discriminatory conduct continued after charge), *vacated on other grounds,* 220 F.3d 1263
24      (11th Cir. 2000).

25  [22] *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002) ([D]iscrete
        discriminatory acts are not actionable if time-barred, even when they are related to acts
26      alleged in timely filed charges."); *Siam v. Potter,* No. C 04-0129 MHP, 2005 U.S. Dist.
        LEXIS 11893, at *25 (N.D. Cal. May 16, 2005) (Patel, J.) (discrete acts occurring outside
27      limitation period are not actionable and cannot be salvaged through application of
        continuing violation doctrine).

28
                                    MOTION TO STRIKE DROGIN DECLARATION
                                    Case No. C04 3341 MHP

1        Under these circumstances, where Plaintiffs can identify no statistically significant

2  disparity in promotions during the liability period, it is inappropriate to extend the "relevant

3  period" for statistical analysis to include promotion decisions made before 12/28/01. *See Morgan*

4  v. *UPS*, 380 F.3d 459, 470 n.8 (8th Cir. 2004) (affirming district court's rejection of plaintiffs'

5  statistical analysis in § 1981/Title VII class action because no statistical disparity existed during

6  class period); *Smith v. Western Elec. Co.*, 770 F.2d 520, 528 n.8 (5th Cir. 1985) (affirming

7  district court's rejection of statistical analysis in class action because "plaintiffs' statistical

8  studies are based primarily on facts that occurred outside the liability period"); *Ste. Marie v.*

9  *Eastern RR. Ass'n*, 650 F.2d 395, 401-02 (2d Cir. 1981) (reversing district court's reliance on

10  statistical analysis in class action that reflected significant gender disparities only in pre-

11  limitations periods); *Jones v. GPU*, 234 F.R.D. 82 (E.D. Pa. 2005) (denying class certification

12  where "plaintiffs have presented no statistical evidence of promotions at GPU *during the*

13  *relevant time period*") (emphasis added); *Moore v. Boeing Co.*, No. 4:02CV80 CDP, 2004 WL

14  3202777, at *12 (E.D. Mo. Mar. 31, 2004) (denying Title VII class certification, and noting that

15  "[p]laintiff's statistical argument contains at least two major problems: it relies on data from time

16  periods outside the limitations period, and it aggregates data inappropriately").[23]

17        Although some courts have held that evidence of discriminatory conduct occurring before

18  the liability period may be used as "background information *in support of a timely claim*,"

19  *Morgan*, 536 U.S. at 115 (emphasis added), it is axiomatic that time-barred conduct may *not* be

20  considered as "background information" where – as here – plaintiffs fail to identify any

21  discriminatory act or statistical disparity during the liability period.  *See Lyons v. England*, 307

22  F.3d 1092, 1107-8 n.7 (9th Cir. 2002) (time-barred discriminatory acts cannot bolster acts within

23

24  [23] *See also Forman v. Small*, 271 F.3d 285, 294 (D.C. Cir. 2001) (statistical evidence showing
age-based disparity in promotions before liability period was insufficient to establish prima
25  facie claim of age discrimination because plaintiffs demonstrated no link between time-
barred promotions and any timely promotion decision); *Berg v. California Horse Racing*
26  *Bd.*, 419 F. Supp. 2d 1219, 1227 (E.D. Cal. 2006) (reliance on pre-limitations events is
improper if no discrimination is demonstrated during limitations period); LINDEMAN &
27  GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1725 n.181 (3d ed. 1996) (citing cases
holding relevant time period for statistical analysis is same as liability period).

28

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-15-

1   limitation period unless "the [later] acts are independently discriminatory and charges addressing

2   those acts are themselves timely filed") (internal citations omitted); *Lamumba Corp. v. City of*

3   *Oakland*, No. C 05-2712 MHP, 2006 U.S. Dist. LEXIS 45022, at *23-24 (N.D. Cal. Jun. 30,

4   2006) (Patel, J.) (declining to consider untimely discriminatory acts as "background information"

5   because "plaintiff must allege and timely file an action for current discrimination in order to be

6   able to draw from prior incidents of discrimination.  Here, there are no specific allegations

7   demonstrating that any discrimination occurred during the statute of limitations period.").

8                   **2.       No Exception Justifies Use Of Stale Data In This Case**

9           Plaintiffs will defend Dr. Drogin by citing dictum in *Paige v. California*, 291 F.3d 1141

10   (9th Cir. 2002), that authorizes use of pre-liability period data in an adverse impact case *if*

11   *promotional practices remain similar over a long period of time.   Id.* at 1149.   This limited

12   exception does not apply here, because Costco's challenged promotional practices underwent a

13   major overhaul in 2001 with its adoption of what is now called the Rothman Plan.  Coincident

14   with that Plan, Costco instituted numerous reforms, including:

- Posting all management-level job vacancies in the warehouses, up through the level of Senior Staff manager;

- Annual two-way performance evaluations for all warehouse employees, featuring use of goals and timetables and a special Career Development section designed to require conversations between managers and subordinates about career planning;

- A performance evaluation measure for all managers regarding the evaluatee's performance in taking steps to "promote a more diverse organization";

- Explicit adoption of "diversity" as a corporate goal; and,

- Adoption of numerical diversity promotion goals for senior-level operations managers.

23   Omoss Decl. ¶ 16-19; Matthews Decl. ¶ 9.

24           During 2001 and 2002, Costco publicized the Rothman Plan throughout its warehouses,

25   through its employee publications and by postings on warehouse bulletin boards.  Dr. Drogin

26   ignores this significant development when he aggregates 1999-2001 data with data from the

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

1  liability period.  This aggregation is inappropriate because only liability period data reflects the

2  impact of the Rothman Plan.

3  　　On these facts, *Paige*—no matter how broadly read[24]—does not permit use of pre-

4  liability period statistics.  Rather, given the difference in the pre- and post-liability period

5  promotional practices, it was erroneous as a matter of law for Dr. Drogin to have included pre-

6  liability period statistics in his analysis.  *See, e.g., Smith*, 770 F.2d at 528 n.8; *Ste. Marie*, 650

7  F.2d at 401-02 (noting that data from 1972 was irrelevant because "it is undisputed that since

8  1972 significant progress has been made in eradicating discrimination from that organization");

9  *Forman*, 271 F.3d at 294; *Berg*, 419 F. Supp. 2d at 1227; *Moore*, No. 4:02CV80 CDP, 2004 WL

10  3202777, at *12.

11  　　**C.**　　**Dr. Drogin's Time-To-Promotion Analysis Wrongly Excludes**
　　　　**Statistics That Invalidate His Conclusion That Senior Staff**
12  　　　　**Women Take Longer To Reach AGM**

13  　　Analyzing the promotions to AGM *even within Dr. Drogin's expanded time frame* of

14  1999 through July 31, 2004, there is no statistically significant disparity in the time that women

15  in Senior Staff manager positions wait to reach AGM.  Saad First Decl. ¶ 57; Exhibit 18A.  Dr.

16  Drogin does not dispute these results.  Drogin Decl. ¶¶ 22.   Instead, Dr. Drogin reports a

17  statistically significant disparity in Senior Staff manager tenure of female AGMs only by

18  arbitrarily manipulating his time frame: he excludes the promotion data from 1/1/04 – 7/31/04 –

19  the seven months prior to the filing of the lawsuit that are within the liability period.  Drogin

20  Decl. ¶¶ 22-23.  While reporting a statistically significant disparity (Z= -2.43) in the number of

21  years that women spend in Senior Staff positions after "excluding promotions in 2004" (Drogin

22

23  [24]  The implicit finding of *Paige* is that reliance on pre-liability period data may be appropriate

24  where (a) the promotion policies were similar over time and (b) the liability-period data are
too sparse to be meaningful, thus justifying borrowing from a broader timeframe.   Here,
neither condition applies.  Any proposed reading of *Paige* that would routinely allow the

25  imposition of Title VII liability based on time-barred statistics (like those offered by Dr.
Drogin), would conflict directly with Supreme Court authority:  "[a] discriminatory act

26  which is not made the basis for a timely charge is the legal equivalent of a discriminatory act
which occurred before the statute was passed." *United Airlines v. Evans*, 431 U.S. 553, 558

27  (1977).  This rule applies with particular force in a failure-to-promote cases such as this one.
*See Morgan*, 536 U.S. at 113-15.

28  

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

Decl. ¶ 22), Dr. Drogin concedes that he has no good reason for his exclusion of post-2003 data other than "to show the stronger pattern" by choosing an earlier time frame. Drogin Dep. 120, Ex. X. In other words, Dr. Drogin admits that he truncated the time period to achieve the statistical results that he needed.[25] This impermissible omission of post-2003 data renders his declaration so flawed as to be inadmissible as a matter of law. *See, e.g., Cruz*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3.[26]

### D. Dr. Drogin Fails To Exclude Employees On Leave Of Absence From His Analysis Of Promotions.

Employees on leave of absence are obviously not able to be promoted until they return from leave. Matthews Decl. ¶ 22. Dr. Drogin makes no effort to account for leaves of absence, notwithstanding that this is easy to do, as Dr. Saad demonstrates. Based on data available to the plaintiffs, Dr. Saad simply excluded from the job pool of Senior Staff managers in each calendar year employees who were on leave at the end of that year. Saad First Report ¶ 41 n.8, 43. Eliminating employees on leave of absence makes an important difference: Costco's leave of absence data reveals that, between April 1999 and May 2005, 25.16% of female Senior Staff managers took one or more leaves of absence, only 10.16% of male Senior Staff managers took leave over the period. Saad First Report at ¶ 80. A chi-square test indicates that these differences are statistically significant – the p-value is less than .0001. *Id.* This means that over the time period studied, female managers were significantly more likely to take leave. *Id.* The

---

[25] Dr. Drogin also reports a difference in the tenure of women and men promoted to AGM from their date of hire but does not state that this difference is statistically significant. Drogin Decl. ¶ 22.

[26] Even Dr. Drogin's arbitrary manipulation of the time period in this instance yields a Z-score that this less than the statistical significance frequently required by courts. *See Castaneda v. Partida*, 430 U.S. 482, 496-97 n.17 (1977); *Hazelwood School District v. United States*, 433 U.S. 299, 308 n. 14, 311 n.17 (1977) (requiring disparity of two or three standard deviations to support inference of discrimination). Furthermore, "the Ninth Circuit has advised that courts must be 'extremely cautious' about drawing inferences from statistical deviations in the range of one to three." *Stender v. Lucky Stories, Inc.*, 803 F. Supp. at 259 (N.D. Cal. 1992) (citing *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 551 (9th Cir. 1982)). In fact, this Court determined that Dr. Drogin's Z-score of -2.58 did not reflect a statistically significant disparity in promotions in *Stender*, 803 F. Supp. at 297 ("Dr. Drogin did not find statistically significant disparities for the liability period in promotions of women to Third Person (Z-value of -2.58), Assistant Store Manager or Store Manager.").

1   average duration of leaves for female Senior Staff managers was 136.2 days, while the average

2   for male Senior Staff managers was 82.7 days.  Saad First Decl. at ¶ 81.  The leave of absence

3   data demonstrate that women take more and longer leaves than men.  Saad First Report at ¶ 85.

4       Taking leaves of absence into account has a demonstrable effect on the analysis of

5   disparity in promotions from the job pool because, as Dr. Saad also shows (*see supra*), women in

6   Senior Staff manager positions take more and longer leaves of absence than men.  The difference

7   in both the length and number of leaves of women compared to men is, in fact, statistically

8   significant.  Saad First Decl. ¶¶ 78-85.

9       **E.**    **Dr. Drogin Improperly Aggregates National Data To Conceal**
                   **The Regional Disparities**

10      Dr. Drogin's statistical analysis is also improper because he aggregates the AGM

11  promotion statistics on a national level.  The *Dukes* court observed that "aggregated data at the

12  nation-wide level is highly suspect."  222 F.R.D. at 158.  That suspicion is especially well-

13  founded here as none of the promotion decisions at issue occur at the national level.  Instead, the

14  challenged decisions have occurred at the regional level or below.

15      Courts have, understandably, rejected such national aggregation on similar facts.[27]   Even

16  *Caridad,*[28] the case generally cited for its prohibition of "statistical dueling" at the class

17  certification stage, supports limits to national aggregation.  In *Caridad*, the plaintiffs' expert

18  provided disaggregated data to the district court, 191 F.3d at 289, and the court found

19  commonality only as to positions where the analysis showed statistical significance with respect

20  to discipline.  *Id.* at 292; *cf.* Daniel S. Klein, *Bridging the Falcon Gap: Do Claims of Subjective*

21  *Decisionmaking in Employment Discrimination Class Actions Satisfy the Rule 23(A)*

22  *Commonality and Typicality Requirements?*, 25 REV. LITIG. 131, 170 ff. (2006) (arguing for use

---

23  [27]  *EEOC v. Sears*, 839 F.2d at 350 (affirming district court's rejection of EEOC statistical
24      analysis, and noting that national aggregation of data was improper where decisions were
      made locally, and especially where EEOC could have analyzed data more locally, but chose
25      not to do so); *Abram v. UPS*, 200 F.R.D. 424, 431 (E.D. Wis. 2001) (plaintiffs failed to
      establish commonality because there was no statistically significant disparity in pay between
26      white and African-American employees in most districts); *Moore*, 2004 WL 3202777, at
      *12 (improper aggregation of data could not support class certification).

27  [28]  191 F.3d 283, 291 (2d Cir. 1999).

28

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

1  of disaggregated statistics in class certification determinations to level of decisionmaker and

2  noting, that *Caridad* ultimately made its certification decision based on disaggregated data).

3      Dr. Drogin admits that he performed a region-by-region analysis (Drogin Dep. 26-30, Ex.

4  X), but failed to present regional results in any report or in his declaration.  His excuse for this

5  omission is an assertion — made without any pretense of a scientific rationale — that he

6  "believe[d] such an analysis is not called for and would tend to obscure the overall pattern of

7  promotion rates."  Drogin Decl. ¶ 21 n.21.  It is easy to understand why Dr. Drogin did not want

8  to present the results of a region-by-region analysis to the Court, as that data presents an

9  inconvenient truth damaging to Plaintiffs' case:  Even applying Dr. Drogin's flawed model,[29] Dr.

10 Saad has demonstrated that there was a statistically significant disparity in the promotions of

11 women to AGM in only *two* of the eight Costco regions.  Saad Second Decl. ¶ 42.  The Drogin

12 declaration presents no findings to contest these results.[30]

13     Of course, if all eight Costco regions had significant gender disparities in AGM

14 promotions, then Plaintiffs might appropriately argue for the commonality necessary for nation-

15 wide certification.  *See Dukes*, 222 F.R.D. at 156-58; *Stastny v. Southern Bell Tel. & Tel. Co.*,

16 628 F.2d 267, 278 (4th Cir. 1980) (rejecting certification of state-wide class, noting that such a

17 grouping might be appropriate where there is "statistical data showing comparable disparities in

18 treatment ... at a sufficient number of the separate facilities to justify the inference that it reflects

19 a system-wide policy or practice").  Alert to this possibility, given that few Costco regions show

20 a disparity, Dr. Drogin reports in a footnote that "all regions except Texas ... had cumulative

21 negative shortfalls for women prior to the filing of this lawsuit in 2004."  Drogin Decl. ¶ 21 n.21.

22 This statement is highly misleading, as the truth – unreported in Dr. Drogin's declaration but

---

[29]  As noted, Dr. Drogin's model improperly included three years of pre-liability period data and failed to control for objective job qualifications.

[30]  Dr. Drogin, at his deposition, reports finding a statistically significant disparity during 1999-2003 for three of eight Costco regions, which he could not then identify; but his declaration fails to present even these results.  Drogin Dep. 29-30.  Replicating Dr. Drogin's model, Dr. Saad found a disparity in only two regions because Dr. Saad, unlike Dr. Drogin, did not count employees who were on a leave of absence as of the end of the year and who thus were unavailable for promotion.  Saad Second Decl. ¶ 42.

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-20-

1    admitted at his deposition – is that Dr. Drogin only found *statistically significant* shortfalls in

2    three out of eight regions based on cumulative Z-scores for the entire period.  Drogin Dep. 29-

3    30, Ex. X.[31]

4    In light of these undisputed facts, which Dr. Drogin fails to report, his national

5    aggregation lacks probative value, given the level of management on which Costco makes the

6    challenged promotion decisions.  His failure to report the results on a region-by-region basis

7    leads to an analysis that is so flawed and misleading so as to be inadmissible as a matter of law.

8    *See, e.g., Cruz*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n.3 (expert's statistical report failed to

9    control for major nondiscriminatory factors and thus was fatally flawed and could not support

10    class certification).   A national class encompassing eight regions cannot properly be certified

11    when plaintiffs can demonstrate a disparate impact, based on a statistically significant disparity,

12    in only two of eight regions. *See Morgan*, 380 F.3d at 464 ("even a successful showing of

13    discrimination in some districts does not prove nationwide discrimination.  In fact … proof of

14    discrimination is some districts and not others tends to defeat the argument that discrimination

15    was [defendant's] nationwide standard operating procedure"); *Caridad*, 191 F.3d at 292 (finding

16    of commonality only in positions that showed statistically significant differences in discipline

17    between black and white employees).

18    Finally, neither *Paige* nor *Dukes* justifies Dr. Drogin's national aggregation.  In *Paige*,

19    the plaintiffs' statistician aggregated data from various promotion examinations rather than

20    viewing each examination on its own, and aggregated all non-white plaintiffs as a single group

21    rather than viewing each race separately.  291 F.3d at 1148.  The court permitted these

22    aggregations because "aggregated statistical data may be used *where it is more probative than*

23

---

24    [31]    Dr. Drogin similarly misleads the Court when he states in the same footnote that he did not
      present regional results "given the relatively small number of promotions in each of the

25    eight regions." Drogin Decl. ¶ 21 n.21.  Tellingly, he stops short of stating that the numbers
      in each region were not large enough for statistical analysis. Dr. Drogin admits that the

26    number of AGM promotions in all regions (except Texas) ranged from 50 to slightly over
      100.  Drogin Dep. 30.  Accordingly, in virtually all regions except Texas, the numbers are

27    completely adequate for statistical testing using Dr. Drogin's own model; and Dr. Saad has
      done that analysis.

28

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-21-

1  *subdivided data." Id.* (citation omitted, emphasis added). *Dukes,* for its part, supports only the

2  unremarkable proposition that national aggregation of statistics may be appropriate where

3  plaintiffs can establish statistically significant disparities in *all* regions. *Dukes,* 222 F.R.D. at

4  156-58 (certifying nationwide class because regressions demonstrated "statistically significant

5  gender based disparities for all in-store classifications *in all forty-one Wal-Mart regions*")

6  (emphasis added). *Dukes* does not support Dr. Drogin's aggregation of statistics on a national

7  level, because it is undisputed here that challenged GM and AGM promotion decisions are made

8  no higher than the regional level. In *Dukes,* by contrast, aggregation was appropriate because

9  there was a legitimate dispute over whether Wal-Mart made or influenced local decisions from a

10  regional level.[32]

11        Plaintiffs offer no evidence that Costco makes or influences AGM selections at a national

12  level, and the highly variegated regional data disproves any meaningful national pattern.

13  Plaintiffs make no showing, for example, how policies or practices at the national level produce

14  statistically significant disparities in promotions of women in two regions, but not in the other

15  six.[33] Thus, Dr. Drogin's national aggregation is not "more probative than subdivided data," and

16  should be deemed inadmissible for the class certification issues before the Court. *See Paige,* 291

17  F.3d at 1148; *Dukes,* 222 F.R.D. at 158.

18                                    **CONCLUSION**

19        Dr. Drogin's declaration is fatally flawed because it deviates from basic statistical

20  principles, lacks probative value, and fails to meet the requirements of relevance and reliability.

21  He cripples the credibility of his analysis by failing to control for major, nondiscriminatory

22  factors, by inappropriate over- and under-inclusion of data, and by improperly aggregating data

---

[32]  Indeed, Dr. Drogin presented the results of his statistical analysis in *Dukes* on a regional basis, see 222 F.R.D. at 158, while statistically declining to do so here.

[33]  When asked what she inferred from the fact that there is no statistically significant disparity in promotion of women to AGM in five Costco regions, plaintiffs' expert, Dr. Reskin, stated: "So there is variation across regions in organizational practices that regional managers implemented." Reskin Dep. 212. She went on to state: "I don't know how much gender stereotyping is going on, but I do know that one can reduce the impacts of it ... regional managers operate differently in terms of their responsiveness to goals." *Id.* at 212, 214.

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

-22-

on a nationwide basis.  These multiple failures materially affect his analysis such that, if corrected, his data would fail entirely to show any significant gender-related disparity. Accordingly, his declaration is not probative to any issue to be considered in determining whether to certify a class, and should be stricken in its entirety.

DATED: September 29, 2006

SEYFARTH SHAW LLP

By _____
    David D. Kadue
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

MOTION TO STRIKE DROGIN DECLARATION
Case No. C04 3341 MHP

LA1 6600095.5