Brad Seligman (State Bar No. 083838)
Jocelyn D. Larkin (State Bar No. 110817)
Julia Campins (State Bar No. 238023)
THE IMPACT FUND
125 University Avenue
Berkeley, CA  94710
Telephone:  (510) 845-3473
Facsimile:  (510) 845-3654

Bill Lann Lee (State Bar No. 108452)
James M. Finberg (State Bar No. 114850)
Daniel M. Hutchinson (State Bar No. 239458)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Steve Stemerman (State Bar No. 067690)
Elizabeth A. Lawrence (State Bar No. 111781)
Sarah Varela (State Bar No. 234640)
DAVIS, COWELL & BOWE, LLP
595 Market Street, #1400
San Francisco, CA  94105
Telephone:  (415) 597-7200
Facsimile:  (415) 597-7201

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, LEAH HORSTMAN and ELAINE SASAKI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No.  C-04-3341 MHP<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION**<br><br>Date:      November 7, 2006<br>Time:      9:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT .....................................................................................2

    A.    PLAINTIFFS HAVE ESTABLISHED RULE 23(a)(2)
        COMMONALITY ....................................................................2

        1.    Costco Does Not Dispute that the Central Elements of Its
            Promotion System Are Uniform and Adopted at the Highest
            Level ..................................................................................3

        2.    Costco's Opposition Highlights Additional Common
            Questions of Law and Fact ................................................4

        3.    There Are No Meaningful Regional Differences............................5

        4.    Costco's Statistical Arguments Do Not Undermine
            Commonality........................................................................7

            a.    Geographic Aggregation ..........................................7

            b.    Time Period................................................................8

            c.    "Hypothetical Feeder Pool" ....................................8

            d.    Tainted Variable.......................................................9

            e.    Job Posting Data to Support Differential Interest
               Claim........................................................................9

            f.    External Benchmarks ......................................................10

        5.    Expert Testimony Regarding the Potential Influence of
            Cognitive Bias and Stereotyping Further Supports
            Commonality........................................................................10

    B.    THE PROPOSED CLASS DEFINITION IS NARROWER THAN
        THE SCOPE OF THE ELLIS EEOC CHARGE....................................11

    C.    THE NAMED PLAINTIFFS HAVE TYPICAL CLAIMS....................13

    D.    PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES ..........15

    E.    PLAINTIFFS HAVE ESTABLISHED THE REQUIREMENTS OF
        RULE 23(b) ..............................................................................16

        1.    Certification Under Rule 23(b)(2) is Appropriate Because
            Injunctive Relief Predominates....................................................16

            a.    Costco Misstates the Applicable Standard in the
               Ninth Circuit............................................................16

            b.    Injunctive Relief Predominates..........................................16

            c.    Punitive and Compensatory Damages Are
               Consistent with Rule 23 (b)(2)............................................17

        2.    Individual Stage II Hearings Are Not Required ............................19

        3.    Plaintiffs' Trial Plan Is Appropriate ……………………………..20

III.  CONCLUSION................................................................................20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adams v. Pinole Point Steel Co.,*
  1994 WL 515347 (N.D. Cal. 1994) ...................................................................13

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975)........................................................................................18

*Allen v. Int'l Truck & Engine Corp.,*
  358 F.3d 469 (7th Cir. 2004) ..........................................................................20

*Allison v. Citgo Petroleum Corp.,*
  151 F.3d 402 (5th Cir. 1998) ..........................................................................16

*Arnold v. United Artists Theatre Cir., Inc.,*
  158 F.R.D. 439 (N.D. Cal.1994).....................................................................15

*Barefield v. Chevron,*
  1988 WL 188433 (N.D. Cal. 1988) .................................................................17

*Bates v. United Parcel Service, Inc.,*
  2006 WL 2864438 (9th Cir. 2006) ..................................................................15

*Bates v. UPS,*
  204 F.R.D. 440 (N.D. Cal. 2001) ....................................................................18

*Butler v. Home Depot, Inc.,*
  1996 WL 421436 (N.D. Cal. 1996)..................................................................15

*Cal. State Employees' Assn  v. State of California,*
  1985 WL 397 (N.D. Cal. 1985) .......................................................................12

*Carnegie v. Household Int'l Inc,*
  376 F.3d 656 (7th Cir. 2004) ..........................................................................19

*Corti v. Storage Tech. Corp.,*
  304 F.3d 336 (4th Cir. 2002) ..........................................................................18

*Drayton v. W. Auto Supply Co.,*
  203 F.R.D. 520 (M.D. Fla. 2000).....................................................................15

*Dukes v. Wal-Mart Stores, Inc.,*
  222 F.R.D. 137 (N.D. Cal. 2004)............................................................. passim

*EEOC v. W & O, Inc.,*
  213 F.3d 600 (11th Cir. 2000) ........................................................................18

*Ellison v. Brady,*
  924 F.2d 872 (9th Cir. 1991) ..........................................................................19

*Eubanks v. Billington,*
  110 F.3d 87 (D.C. Cir. 1997) ..........................................................................19

*Gen. Tel. Co. v. Falcon,*
  457 U.S. 147 (1982)........................................................................................13

*Gratz v. Bollinger,*
  539 U.S. 244 (2003)........................................................................................15

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,*
  397 F. 3d 1217 (9th Cir. 2005) .......................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................2, 13

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ........................................................................14

*Hemmings v. Tidyman's, Inc.,*
   285 F.3d 1174 (9th Cir. 2002) .......................................................................3

*Hilao v. Estate of Marcos,*
   103 F.3d 767 (9th Cir. 1996)........................................................................18

*Jauregui v. City of Glendale,*
   852 F.2d 1128 (9th Cir. 1988) ......................................................................10

*Kolstad v. Am. Dental Ass'n,*
   527 U.S. 526 (1999)....................................................................................18

*Kraszewski v. State Farm General Insurance Co.,*
   1986 WL 11746 (N.D. Cal.1986) ..................................................................19

*Latino Officers Assn. v. City of New York,*
   209 F.R.D. 79 (S.D.N.Y. 2002) ...................................................................18

*Lemon v. Operating Eng'rs Local 139,*
   216 F.3d 577 (7th Cir. 2000)........................................................................19

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ...........................................................16, 17, 18

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002)....................................................................................18

*Neal v. Moore,*
   No. 93-2420 (D.D.C. Dec. 23, 1994) .............................................................18

*Nev. Dep't. of Human Res. v. Hibbs,*
   538 U.S. 721 (2003).....................................................................................2

*Paige v. State of California,*
   291 F.3d 1141 (9th Cir. 2002) .......................................................................8

*Pollar v. Judson Steel Corp.,*
   1984 WL 968 (N.D. Cal. 1984) ....................................................................13

*Provencher v. CVS Pharmacy,*
   145 F.3d 5 (1st Cir. 1998) ...........................................................................18

*Robinson v. Metro-North RR,*
   267 F.3d 147 (2d Cir. 2001).............................................................16, 18, 19, 20

*Robinson v. Sears, Roebuck & Co.,*
   111 F. Supp. 2d 1101 (E.D. Ark. 2000).........................................................18

*Sengupta v. Morrison-Knudsen Co.,*
   804 F.2d 1072 (9th Cir. 1986) ......................................................................10

*Sosa v. Hiraoka,*
   920 F.2d 1451 (9th Cir. 1990) ......................................................................11

*State Farm Mut. Auto. Ins. v. Campbell,*
   538 U.S. 408 (2003)....................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Staton v. Boeing,*
  327 F.3d 938 (9th Cir. 2003) ......................................................................6, 13

*Stender v. Lucky Stores, Inc.,*
  1990 WL 192734 (N.D. Cal. 1990) ..................................................3, 5, 12, 13

*Taylor v. D.C. Water & Sewer Authority,*
  205 F.R.D. 43 (D.C.D.C. 2002) .........................................................................18

*Timm v. Progressive Steel Treating, Inc.,*
  137 F.3d 1008 (7th Cir. 1998) ...........................................................................18

*Verzosa v. Merrill Lynch, Inc.,*
  589 F.2d 974 (9th Cir. 1978) ................................................................................9

*Wagner v. Nutrasweet Co.,*
  95 F.3d 527 (7th Cir. 1996) ...............................................................................14

*Watson v. Fort Worth Bank & Trust,*
  487 U.S. 977 (1988)...................................................................................3, 10

*Wetzel v. Liberty Mut. Ins. Co.,*
  508 F.2d 239 (3d Cir. 1975)...............................................................................15

*Wilfong v. Rent-A-Center, Inc.,*
  2001 WL 1795093 (S.D. Ill. Dec. 27, 2001).......................................................18

*Williams v. Boeing, Co.,*
  225 F.R.D. 626 (N.D. Cal. 2005).......................................................................13

**STATUTES**

42 U.S.C. 2000e-5(g)(1) ..............................................................................................9

**RULES**

Federal Rule of Civil Procedure
  Rule 23 .............................................................................................. *passim*
  Rule 30(b)(6)...........................................................................................11, 14

## I.      **INTRODUCTION**

Although it has inundated the Court with a deluge of paper, Costco fails to refute the fundamental facts that support class certification.  It has a uniform system for making promotions into the highest paying positions in its warehouses -- a classic 'tap on the shoulder.'  The company has no written selection criteria and does not post openings for the GM and AGM jobs, but instead relies on lists of candidates whom regional executives subjectively identify as promotable.  The system is the product of decisions made by the company's CEO who, with his senior and regional executives, exercises oversight of every decision for an AGM or GM promotion.  These essential facts form the predicate for certification under Rule 23.

Unable to refute these facts, Costco launches a scattershot attack on the merits of plaintiffs' claims, seeking to divert the Court from the issues of class certification.  Conspicuously missing from its argument is any discussion of senior management focus groups that confirm the lack of clear promotion criteria, confusion among employees regarding the path to promotion, and the persistence of gender stereotyping in Costco's promotion process.  *See* Plaintiffs' Motion for Class Certification ("Opening Brief") at 16-17.  Costco barely mentions the 2001 management focus groups that led to the recommendation for job posting of GM and AGM jobs.  *See* Opening Brief at 13-16.  Similarly absent is any discussion of CEO Jim Sinegal's role in preventing the implementation of job posting and other proposals to address the adverse impact of the promotion system on female managers.  *See* Opening Brief at 15.

Costco's effort to dispute how its promotion system operates – warehouse walks, diversity initiatives, culture—merely highlights additional uniform corporate policies and common questions of fact.  It seeks to explain the statistical disparities in promotion with the assertion that women are not interested in these positions because of their family responsibilities and unwillingness to work early morning hours.  To support this claim, Costco does not rely on data about the *actual* interest or availability of its own female (or male) employees because it has never systemically collected it.[1]  What actual data show is that Costco's women managers

---

[1] Although Costco offers eleventh-hour declarations from scores of women, none asserts that women are any less interested or available for promotion than male managers.  At best, the testimony of these women confirms common questions of fact as to the unwritten promotion

1  regularly work the early morning shifts, but do so in the less advantageous Receiving Manager

2  position.  Moreover, actual data reveal that women are not, as CEO Sinegal suggests,

3  disproportionately leaving the workforce to care for their families; the attrition rate for Costco

4  female managers is lower than for men.  As the Supreme Court has recognized:

> Stereotypes about women's domestic roles are reinforced by
> parallel stereotypes presuming a lack of domestic responsibilities
> for men. . . . These mutually reinforcing stereotypes created a self-
> fulfilling cycle of discrimination that forced women to continue to
> assume the role of primary family caregiver, and fostered
> employers' stereotypical views about women's commitment to
> work and their value as employees.

9  *Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003) (explaining purposes underlying

10  FMLA).  Whether Costco's differential interest defense is meritorious or merely a manifestation

11  of this well-recognized stereotype is a common question that supports certification.

12  Costco makes predictable accusations about the motives and integrity of the three

13  named plaintiffs, despite their 46 years of combined service to the company.  None of these

14  claims undermines the conclusion that this case is properly certifiable under Rule 23(b)(2)

15  because plaintiffs' primary motive is to reform Costco's promotion process for top level jobs.

16  The proposed trial plan will ensure that the case is manageable.

17  **II.   ARGUMENT**

18  **A.   PLAINTIFFS HAVE ESTABLISHED RULE 23(a)(2) COMMONALITY**

19  While Costco vigorously disputes that plaintiffs have satisfied commonality, it can

20  do so only by ignoring the permissive standard for commonality in this Circuit.  *See Hanlon v.*

21  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).[2]  The record before this Court, which

22  should be evaluated as a whole, establishes numerous common questions that easily satisfy this

23  standard.

24  criteria, the role of merchandising experience, and the schedules of staff managers.  As set forth
   in a separate motion to strike, plaintiffs have moved to exclude improper legal conclusions from
25  these declarations and to strike declarations from witnesses who were not previously disclosed.
   The Court has also ordered that the declarants appear at the class certification hearing in order to
26  determine if Costco gathered the declarations in an appropriate fashion.

27  [2] Costco does not dispute that the class is sufficiently numerous for class certification nor does it
   question the propriety of appointing plaintiffs' counsel as counsel for the class.
28

1.     **Costco Does Not Dispute that the Central Elements of Its Promotion System Are Uniform and Adopted at the Highest Level**

Costco does not deny that its promotion practices for Senior Staff rotation and for AGM and GM selection are not in writing and include neither posting of openings nor an application process. Costco also does not dispute that its managers pre-select "promotable" employees, and does not dispute the existence of promotion lists or Costco's confidential "Green Room" at corporate headquarters where high level managers review the promotable "bench." *See* Opening Brief at 10-11. Although it argues that there are some "objective" elements of this process, Costco's Opposition to Plaintiffs' Motion for Class Certification ("Opp. Brief") at 10, it neither disputes the existence of subjective factors, nor suggests any systematic weighting of objective and subjective criteria. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 989 (1988) (holding that a process that is both subjective and objective should be considered subjective); *Stender v. Lucky Stores, Inc.*, 1990 WL 192734, at *4-5 (N.D. Cal. 1990). Costco's 'tap on the shoulder' promotion process establishes commonality and will be a central focus of the trial. *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 149 (N.D. Cal. 2004) (failure to post promotional opportunities "supports a finding of commonality"); *see also Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174 (9th Cir. 2002), 1187 n.17 (9th Cir. ("Failure to post vacancies and the use of subjective promotion practices . . . may be evidence of discrimination.").

Likewise, it ignores entirely the 2005-2006 focus groups and dismisses the 2001 efforts as involving just "certain employees" who "speculated about opportunities." Opp. Brief at 8-9.[3] Nor does Costco dispute that it has not changed its promotion process to AGM or GM positions and for lateral assignments to Staff Manager positions, or that the promotion rates for AGM and GM positions improved only with the filing of this action. See Drogin Decl. ¶ 20.[4]

---

[3] In fact, the effort was orchestrated by senior Costco officials; its results were reported to the Executive Committee. See Opening Brief at 13-15. Ironically, while Costco is dismissive of the reports and findings of the process, it trumpets changes that followed from it as evidence that diversity policies were implemented. Opp. at 8-9. Yet, none of the 2001 changes altered the process for AGM and GM promotions, or for lateral movements among Senior Staff jobs. Not surprisingly, the statistical pattern of disparities in promotion rates for women showed no improvement after changes were implemented in 2001. *See infra* note 16.

[4] Consistent with this post-suit improvement, more than one third of the class member declarants offered by Costco have been promoted since 2004. Declaration of Jocelyn D. Larkin in Support

1

## 2.    Costco's Opposition Highlights Additional Common Questions of Law and Fact

2

In its opposition, Costco itself highlights many other uniform company-wide policies or practices that it claims are part of its promotion process.  While plaintiffs dispute how effective these policies or practices are, they plainly present common questions that make class certification appropriate.  They include:

- the use of warehouse walks to assess candidate promotability (Opp. Brief at 11);[5]

- the use of the annual performance evaluation process to assess candidate promotability (Opp. Brief at 9 - 10);[6]

- the role of seniority as a factor in deciding among candidates for promotion (Opp. Brief at 3);[7]

---

of Reply Brief on Class Certification ("Larkin Reply Decl.") ¶ 18.  The two current female regional managers were promoted in 2005 and 2006.  Sinegal Dep. 191:9–192:6, Declaration of Jocelyn D. Larkin in Support of Motion for Class Certification ("Larkin Decl."), Ex. 1.  Women were added to the Costco Executive Committee for the first time in 2006.  Sinegal Dep. 81:6–83:3, Larkin Decl., Ex. 1.

[5] The primary purpose of the "walk" is to ensure that the warehouse is properly merchandised.  Webb Dep. 63:1-66:7, Larkin Reply Decl., Ex. 41.  Although Costco argues that the walk is also used to evaluate potential candidates for future promotions, senior managers keep *no notes of their assessments* of warehouse employees made during the walks nor do they apply any consistent criteria.  Gaherty Dep. 52:7-24, Larkin Reply Decl., Ex. 42; Omoss Dep. at 90:13-91:22, Larkin Reply Decl., Ex. 43; Zook Dep. 90:23-91:20, Larkin Reply Decl., Ex. 44.  Moreover, only a few select warehouse management employees typically accompany senior management on the walk:  the GM, the AGM and the Merchandising Manager, positions held disproportionately by men.  Davis Dep. 80:3-19, Larkin Reply Decl., Ex.45; DiCerchio Dep. 17:2-15, 22:4-23:3, Larkin Reply Decl., Ex. 46; Sinegal Dep. 16:23-17:25, Larkin Reply Decl., Ex. 47; Reskin Decl. ¶ 28; Drogin Decl. ¶ 6 Table 1a; *see also* Olson Decl. ¶ 10.

[6] Costco seems to be arguing that its generic annual written performance evaluation form is equivalent to written selection criteria for the GM and AGM positions.  Opp. Brief at 9 (regions "use well-developed systems to evaluate promotional candidates through written criteria").  In fact, it is not.  Dennis Zook, the 30(b)(6) witness on promotions, testified that performance evaluations were only "one factor in the mix."  Zook Dep. 96:9–20, Larkin Reply Decl., Ex. 44.  The written criteria listed in the performance evaluations are not the same as the criteria Costco claims it uses to make promotions.  *Compare* Sample Performance Evaluation, Horstman Decl., Ex. 6 *with* Zook Dep. 94:24–95:14, Larkin Reply Decl., Ex. 44.  Some managers concede that they do not routinely consult performance evaluations in making promotion decisions.  *See, e.g.*, Gaherty Dep. 149:11-13, Larkin Reply Decl., Ex. 42; Webb Dep. 127:16-19, Larkin Decl., Ex. 7.

[7] The role of seniority appears, at best, to be minimal.  *See, e.g.*, Gaherty Dep. 99:6-22, Larkin Reply Decl., Ex. 42 (it was "not very often" that seniority played a role); Zook Dep.115:4-12, Larkin Decl., Ex. 3 (could not recall instance when seniority was a factor).  The presence of a

1  •  the Senior Staff Manager rotation policy (Opp. Brief at 6);

2  •  Costco's company wide "Diversity Initiatives," including the adoption of

3     numerical diversity goals in 2005 at the direction of Costco's Operations

4     Committee  (Opp. Brief at 8-9);[8]

5  •  the Open Door policy, the Employee Agreement, and the Code of Ethics,

6     which it describes as elements of Costco's company culture (Opp. Brief at

7     3); and

8  •  the "promotion from within" policy (Opp. Brief at 10).

### 3.   There Are No Meaningful Regional Differences

While there is overwhelming evidence establishing that Costco's promotion

practices are uniform across the company, Costco nonetheless questions commonality by

asserting that there are "[r]egional differences" in the promotion process and that decisions about

movement into Assistant General Manager openings are made primarily by the General Manager

at the store level.  Opp. Brief at 10.[9]  Neither the facts nor the law support these claims.

First, Costco fails to identify a single promotion practice that varies by region and,

not surprisingly, produces no internal company document that evidence these "differences."[10]  It

---

similar "break the tie" seniority factor did not rescue an otherwise subjective promotion system in *Stender*, 1990 WL 192734, at *4-5.

[8] The goals were set as part of a company-wide policy. *See* Operations Committee Minutes, January 25, 2005, Larkin Reply Decl., Ex. 50 (CRE 0130061).  To the extent that diversity goals were set, senior managers chose targets on their own without reference to any data, plan or timeline. Gaherty Dep. ¶ 124:3-125:17, Larkin Reply Decl., Ex. 42 (Midwest SVP set goal of one female GM in each district but with no timeline for accomplishing); DiCerchio Dep. 58:21–59:6, Larkin Reply Decl., Ex. 46.  The company did not monitor or track the achievement of those goals. DiCerchio Dep. 58:6–20, Larkin Reply Decl., Ex. 46.  Most importantly, none of the managers were held accountable for the goals, when they failed to meet them.  No Costco executive or manager has ever had either his salary or bonus affected by failure to meet his diversity goals.  DiCerchio Dep. 31:21–32:4; 36:25–37:3; 40:3–20, Larkin Reply Decl., Ex. 46.

[9] Costco's arguments about purported regional variations in the statistical evidence are further discussed in Section II.A.4.(a) below.  Its statistical expert concedes he is unaware of any regional differences in promotion policies. Saad Dep. 208:4–13; 211:7–212:9, Larkin Reply Decl., Ex. 48.

[10] Costco relies upon the declaration of Midwest Regional VP Richard Webb, who claims to use a "mental pipeline" rather than a written talent pool for promotion decisions. Opp. at 10, n.14; Webb Decl. ¶ 6. While this difference is too trivial for serious consideration, it is also not true. The Midwest Senior Operations Vice President John Gaherty—Mr. Webb's boss—testified in his deposition that the Midwest Region has had and used a written promotable list since at least 2002:

PLAINTIFFS' REPLY BRIEF ISO CLASS CERTIFICATION

likewise offers no support for its claim that Costco operations have "de-centralized" into eight

regions.  Opp. Brief at 2-3.  In fact, Costco's regional and divisional operations managers meet

every four weeks at corporate headquarters.  Zook Dep. 21:11–19, Larkin Decl., Ex. 3.  The CEO

communicates to them the criteria he expects them to apply in making selection decisions.

Sinegal Dep. 42:4–44:5, Larkin Decl., Ex. 1.[11]

Costco also argues that decisions about AGM selections are made primarily by

GMs, rather than regional or seniors VPs.  Opp. Brief at 10.  Even if Costco's claim were true, it

would not undermine commonality, since it is beyond dispute that common policies and practices

pervade the Costco promotion process.  *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 956 (9th Cir.

2003) ("The unsurprising fact that some employment decisions are made locally does not allow a

company to evade responsibility for its policies."); *Dukes*, 222 F.R.D. at 150-51 (although local

store managers make most pay decisions, commonality satisfied).

In fact, there is ample evidence of higher level corporate involvement in the AGM

promotion process.  Costco concedes that regional and senior vice presidents are part of the

"team" that makes AGM promotion decisions.[12]  Opp. at 10; *see also* Letter from David Kadue to

Brad Seligman, at 5, Larkin Decl., Ex. 25 ("For AM promotions, the persons personally informed

before final decision would be District VP, Senior VP, Executive VP").  SVP Gaherty testified

---

Q.  And when you and Mr. Webb . . . meet [to discuss promotions], you work off that written promotable list in terms of making decisions about assistant manager?

A.  When we have an opening, we're talking about people that were on that list to fill the position.

Gaherty Dep. 59:5–9, Larkin Decl., Ex. 12.

[11]   EVP Joseph Portera testified unequivocally in his deposition that the company maintained corporate-wide standards for promotion.  Portera Dep. 110:12-111:4, Larkin Decl., Ex. 9.  In his declaration, he clarifies that these standards did not preclude regional managers from "exercis[ing] managerial professional judgment."  Portera Decl. ¶ 3.  Such vague testimony, contradicting prior deposition testimony, does not establish a regional difference of any kind.

[12]  Costco does not dispute that GM selections must be approved all the way up the hierarchy to the CEO, Jim Sinegal.  See Opening Brief at 9.  Indeed, Costco's opposition further underscores the highly centralized nature of personnel decisions at the company, when it notes that Costco policy "requires high-level management approval to dismiss employees with more than two years of service."  Opp. Brief at 3.

1    that he gives final approval to AGM selections based on recommendations from his Regional

2    Operations Managers.  *See* Gaherty Dep. 39:10-12, 56:6-57:12, Larkin Reply Decl., Ex. 42;

3    Webb Decl. ¶ 6 (referring to himself as the "primary decision-maker" for AGM promotions).

4    This testimony is confirmed by Costco's internal documents.  Many of the promotable lists,

5    which are created and maintained *at the regional level*, include the names of senior staff

6    managers who have the potential to advance to Assistant General Manager.  Sample Promotable

7    Lists, Larkin Reply Decl., Ex. 51.[13]

8    ### 4.   Costco's Statistical Arguments Do Not Undermine Commonality

9    Plaintiffs' experts offer a variety of statistical analyses to raise an inference of a

10   pattern or practice of discrimination in promotion and to demonstrate adverse impact.  Costco

11   responds with a host of classic merits-based attacks, arguing that the data should be disaggregated

12   by time period or geography, that the analysis should incorporate different variables or take into

13   account the alleged differential interest of men and women, or that different external benchmarks

14   should be used.[14]  However, Costco's expert, Dr. Saad, concedes that Costco merely seeks to rely

15   upon "an alternative hypothesis."  Saad First Decl. ¶ 19.  At most, these arguments confirm

16   common questions of fact and law exist.  Defendant's statistical arguments, "which go to the

17   weight of the evidence, merely highlight the presence of a significant issue affecting all class

18   members which supports, rather than defeats, granting class certification."  *Dukes*, 222 F.R.D. at

19   164.

### a.   Geographic Aggregation

20   Costco disputes Dr. Drogin's use of statistics aggregated company-wide, asserting

21   that there are regional differences in practices and outcomes.  Costco's claim that the practices

22

---

23   [13] The declarations from GMs offered by Costco do not support the conclusion that GMs are the
24   primary decision-makers either.  Instead, they describe their role as "nurtur[ing] people," Peterson
     Decl. ¶ 15, giving "input," Loveland Decl. ¶ 20, "suggestions," D. Greek Decl. ¶ 17,
25   "comment[s]," Peterson Decl. ¶ 15, and "recommendations," D'Agostino Decl. ¶ 30.  They affirm
     that "[u]ltimately, it is up to the Regional Manager to make the decision on who gets promoted."
26   Peterson Decl ¶ 15; *see also* D. Greek Decl. ¶ 17; D'Agostino Decl. ¶ 30.

27   [14] Costco makes most of the same statistical arguments in its Motions to Strike Drogin and
     Bendick Declarations.  To avoid burdening the Court, plaintiffs incorporate their opposition to
28   these motions ("Opp. to Mot. to Strike") by this reference and only here address Rule 23 issues.

differ by region does not withstand scrutiny.  See Section II.A.3.  Nor do the statistical data

support an inference that there are major differences in the regions either.  Dr. Drogin found—as

did defendant's expert—that in every region, except Texas where there were very few

promotions, there was a negative shortfall in the promotion of women prior to the filing of this

action.  Drogin Decl. ¶ 20; Saad Second Decl., Exs. R2–R8.[15]  Given the common promotion

policies and practices, aggregation of this data was appropriate in order to illuminate the pattern

of discrimination.  Drogin Decl. ¶ 21 & n.21.  Whether data is best viewed in aggregated or

disaggregated form is a class wide merits issue, demonstrating the propriety of class certification.

*See Paige v. State of California*, 291 F.3d 1141, 1149 (9th Cir. 2002) ("Right or wrong,

[plaintiffs] are entitled to attempt to prove their case.").

### b.    Time Period

Costco argues that pre-limitations period statistics must be disregarded.  This

contention is a variation on the aggregation-disaggregation debate.[16]  Costco acknowledges that

*Paige* permitted reliance on pre-liability data, but argues that the earlier data should be

disregarded because "Costco launched major diversity initiatives in late 2001."  Opp. Brief at 18.

These company-wide "initiatives" had little to do with the positions at issue nor did their

implementation alleviate the disparities for women moving into these jobs.  *See supra* notes 3, 16.

Moreover, the effectiveness of these initiatives raises common questions of law and fact.

### c.    "Hypothetical Feeder Pool"

Somewhat opaquely, Costco argues that Dr. Drogin cannot extrapolate a

hypothetical pool of women who lost GM positions, because it claims that the first lost AGM

promotion that is actionable did not occur until 2003.  Opp. Brief at 18.  Costco's argument

incorrectly assumes that the AGM class period starts in 2003, two years later than the class period

---

[15] In *Dukes*, Dr. Drogin also summarized regional analyses which showed a pattern of shortfalls.
Because of the enormous number of promotions at issue in that case (over 45,000), regional
analyses were mostly statistically significant.  Drogin Supp. Decl. ¶ 16.

[16] Costco's expert confirms that, even if the pre-limitations data were excluded, Dr. Drogin's
analysis would show statistical significance for the period up to the filing of this action, and for
year 2003 alone.  Saad Second Decl. ¶ 78 & Ex. R39.  So, even if Costco's theory is accepted,
plaintiffs' statistics would still support a finding of a pattern or practice of discrimination.

1    for GM promotions. *See infra* Section II.B. Costco also confuses liability with remedy. If

2    liability is established, the monetary remedy is not limited to the charge filing period. Back pay

3    may be awarded for a period up to two years prior to the EEOC charge. *See* 42 U.S.C. 2000e-

4    5(g)(1). In calculating back pay, the Court may also take into account a denial of promotion that

5    occurred prior to the two-year period. *See Verzosa v. Merrill Lynch, Inc.*, 589 F.2d 974, 976

6    (9th Cir. 1978).

7              **d.**      **Tainted Variable**

8          Costco argues that Dr. Drogin failed to control for what he considered the tainted

9    variable of Merchandise Manager experience, and provided a 'time to promotion' analysis into

10    AGM that went up to the start of 2004, instead of to July 31, 2004. Opp. to Mot. to Strike at 5-6.

11    Whether the use of tainted variables inappropriately masks discrimination in a statistical analysis

12    is a common question of law and fact.

13              **e.**      **Job Posting Data to Support Differential Interest Claim**

14          Costco argues that shortfalls in promotion to AGM are the result of differential

15    male/female interest in promotion. Opp. Brief at 6. To make this claim, Costco relies, in part, on

16    a database created by its expert of job postings for promotion *to* Staff Manager positions. The

17    database does *not* include job postings for either promotions to AGM or lateral assignments of

18    Senior Staff Managers. Drogin Decl. ¶ 8; Drogin Supp. Decl. ¶ 5; Saad Dep. 55:25-56:12,

19    208:22-209:2, Larkin Reply Decl., Ex. 48. Costco's expert concedes that his posting database

20    cannot be used to "draw inferences about the job interests of Staff Managers." Saad Second Decl.

21    ¶ 52; *see also id.* ¶ 53 ("The data does not relate to the interests of sitting senior staff once they

22    are senior staff."). In other words, the database simply does not address the issue in this case—

23    whether female Staff Managers, the pool from which AGM promotions are drawn, are disparately

24    denied promotion. Drogin Supp. Decl ¶¶ 5-15.[17]

---

25    [17] Dr. Saad conceded at his deposition that his database was not a random sample; as such, it
cannot be used to generalize about gender interests. Saad Dep. 34:7-35:5, Larkin Reply Decl.,

26    Ex. 48; *see* Drogin Supp. Decl ¶ 6. Even as to lower level employees, the database is woefully
incomplete, including, according to Dr. Saad, less than thirty percent of promotions to Senior

27    Staff positions. Saad Second Decl. ¶ 57; *see Dukes*, 222 F.R.D. at 162-63 (N.D. Cal. 2004)
(rejecting incomplete application database).

28

f.   **External Benchmarks**

Costco's challenges to Dr. Bendick's comparative analyses similarly highlight that common questions exist.  Dr. Bendick's benchmarks show that there is likely a large pool of women at Costco available, interested and qualified for promotion.  Dr. Saad's analysis merely offers a contrary alternative view.

5.   **Expert Testimony Regarding the Potential Influence of Cognitive Bias and Stereotyping Further Supports Commonality**

Dr. Reskin's testimony explains how Costco's unwritten subjective system for promotion is vulnerable to bias.  Reskin Decl. ¶ 31.  She highlights commonly-held stereotypes that exist about female managers as well as the failure of Costco to implement changes to personnel practices that would mitigate these biases.  Reskin Decl. ¶ 9, 50-51, 53-59.  While courts have long recognized the risk posed by subjective personnel systems, *Watson*, 487 U.S. at 990; *Jauregui v. City of Glendale*, 852 F.2d 1128, 1135-36 (9th Cir. 1988); *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986), Dr. Reskin's declaration elucidates this known risk by connecting social science research on cognitive bias to Costco's specific policies and practices.

Costco's experts dispute this conclusion and argue instead that the reason there are fewer female Merchandise Managers than other Senior Staff Managers is because of the hours for this position—usually starting at 4 a.m.  Stockdale First Decl. at 39; Mulligan Decl. ¶ 65; *see* Matthews Decl. ¶ 21.  They do not rely on actual data of the preferences or availability of Costco employees, since no such data exist.  Instead, they generalize from largely irrelevant and outdated studies that do not reflect the characteristics of Costco female managers.  Reskin Supp. Decl. ¶¶ 29, 30.  Moreover, Costco's theory does not explain the fact that the percentage of female Receiving Managers, who work the same early morning schedule, Matthews Decl. ¶ 20-21, is much higher than among Merchandising Managers.  Drogin Decl. ¶ 7, Table 2a.  Nor does the explanation account for the fact that Dr. Saad's data show that fully forty-eight percent of women Senior Staff have no children younger than age 18.  Reskin Supp. Decl. ¶ 34.  Moreover, Costco's expert could not explain why, if lack of interest explains the shortfall of women in AGM and GM

1    positions, the promotion rates for women suddenly increased after the filing of the lawsuit.  Saad

2    Dep. 201:19-23, Larkin Reply Decl., Ex. 48.

3              This expert debate confirms the existence of a common question that must be

4    resolved at trial.[18]

5         **B.     THE PROPOSED CLASS DEFINITION IS NARROWER THAN THE
               SCOPE OF THE ELLIS EEOC CHARGE**

6              Rae Ellis filed the earliest class charge of discrimination on October 30, 2002.

7    Ellis Decl. ¶ 13 & Ex. 4.[19]  The class membership date is January 3, 2002—300 days prior to this

8    charge filing date.  The class claims, and time periods covered by the class definition, do not

9    exceed the scope of the Ellis class charge.

10             "The jurisdictional scope of a Title VII claimant's court action depends upon the

11   scope of both the EEOC charge and the EEOC investigation."  *Sosa v. Hiraoka*, 920 F.2d 1451,

12   1456 (9th Cir. 1990).  Ms. Ellis's charge, which Costco conspicuously never quotes, alleges

13   broad, company-wide claims regarding *all* salaried management positions, not just promotion to

14   GM.  It specifically alleges that while women "make up the majority of hourly employees at

15   Costco, they hold a substantially smaller portion of salaried management positions, *such as area

16   managers, senior managers, assistant and general manager*."  Ellis Decl., Ex. 4 (emphasis

17   added).  The charge also states:

18

19

_____

20   [18] Costco's differential interest theory is not supported by the testimony of its principal Rule
     30(b)(6) witness.  EVP Zook testified that there was no reason to believe that women were less
21   interested than men in promotion to AGM.  Zook Dep. at 130:16-23, Larkin Decl., Ex. 3.
     Following the deposition, Costco's counsel proposed to "correct" his testimony as follows:  "I
22   assume you are not asking about my anecdotal knowledge of particular women deciding not to
     pursue promotion because of family issues."  Zook Deposition Corrections, Larkin Reply Decl.,
23   Ex. 52.  Plaintiffs' counsel objected to this and the other 37 proposed corrections to Zook's
     testimony.  April 26, 2005 E-Mail, Larkin Reply Decl., Ex. 53.  Where deposition errata are used
24   to contradict prior sworn testimony in a "tactical attempt" to avoid an unfavorable ruling, the
     Ninth Circuit has concluded that they violate Rule 30(e) and may be stricken.  *Hambleton Bros.*
25   *Lumber Co. v. Balkin Enters., Inc.*, 397 F. 3d 1217, 1225-26 (9th Cir. 2005) ("A deposition is not
     a take home examination.").
26

27   [19] In the opening brief, plaintiffs misstated the date that the Ellis charge was filed. Opening Brief
     at 23 n.25.  The EEOC received the charge on October 30, 2002, not on October 22, 2002.  Thus,
28   the class membership period commences on January 3, 2002, rather than December 28, 2001.

> Costco does not post assistant manager or General Manager positions, and relies upon unspecified subjective criteria in making its selections. *Even for lower level management positions*, Costco has only implemented a rudimentary form of posting, but this posting process is frequently circumvented.

*Id.* (emphasis added).

      The EEOC investigation was likewise not limited to GM positions. The EEOC requested, and received, statistical and other information about the full range of salaried positions, including Senior Staff (which the EEOC referred to as Senior Area Managers), AGMs and GMs. *See* EEOC letter to Kadue, Larkin Reply Decl., Ex. 54. Costco was quite obviously on notice of the broad scope of the charge and the investigation since it provided statistical information about *all* these positions. See Kadue Letter to EEOC, Larkin Reply Decl., Ex. 55. Thus, both the scope of the charge and the investigation that ensued are in fact *broader* than the subset of management claims alleged in this case.[20]

      But even if GM were the only position addressed in Ellis's charge, the AGM and Senior Staff claims would nonetheless be properly before this Court because they are "like or reasonably related to the allegations of the EEOC charge." *Cal. State Employees' Assn v. State of California*, 1985 WL 397, at * 2 (N.D. Cal. 1985) (*quoting Brown v. Puget Sound Electrical Apprentiship & Training Trust*, 232 F.2d 726, 729 (9th Cir. 1984). Claims of denial of AGM and Staff Manager promotions (including Merchandise Manager assignments) rest on the same theory and types of evidence as the claim of denial of GM promotions: reliance on unwritten, subjective criteria, lack of job posting and gender stereotyping. Many of the same decisionmakers have input in these decisions. Opening Brief at 7, 9; Opp. Brief at 10; *see Stender*, 1990 WL 192734, at *3-4 (plaintiffs who sought management positions could represent class members with initial assignment claims where all claims based on subjective criteria).

---

[20] The Second Amended Complaint incorporates by reference the allegations of the Ellis charge and further alleges that Costco's discriminatory practices include "[d]enying female employees the training and assignments that would enhance their promotability." Second Amended Complaint at ¶¶ 28g, 35.

C.       **THE NAMED PLAINTIFFS HAVE TYPICAL CLAIMS**

All three plaintiffs assert claims based on Costco's failure to post openings, and reliance on unwritten, unclear and subjective criteria. Their legal and factual theory is the same as that of class members denied rotation to favorable Staff Manager jobs or promotion to AGM or GM positions. Thus, the claims of the class representatives are typical of those advanced by the class as all "were injured in the same fashion by a general policy of employment discrimination." *Dukes*, 22 F.R.D. at 167 (N.D. Cal. 2004) (*citing Staton*, 327 F.3d at 957); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 n.15 (1982).

Because all plaintiffs proceed under the same theory of discrimination, their claims are typical of those advanced by the class. *See Adams v. Pinole Point Steel Co.*, 1994 WL 515347, at *6-7 (N.D. Cal. 1994) (class representative may represent actual and deterred applicants); *Stender*, 1990 WL 192734, at *3-4 (N.D. Cal. 1990) (plaintiffs denied management jobs have claims typical of class members denied favorable initial assignments because of same subjective criteria); *Pollar v. Judson Steel Corp.*, 1984 WL 968, at *2 (N.D. Cal. 1984) (actual and deterred applicants).

Defendant asserts that the named plaintiffs are not typical because they have "unique claims," Opp. Brief at 24, notwithstanding that the Ninth Circuit has held that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (9th Cir. 1998); *Dukes*, 222 F.R.D. at 167. Neither Sasaki nor Horstman allege unique claims.[21] Nor is Ellis's claim of retaliation separate and apart from her claim of sex discrimination for the purposes of typicality. *See Williams v. Boeing, Co.*, 225 F.R.D. 626, 629, 631 (N.D. Cal. 2005) (typicality requirement met even where some named plaintiffs also had

---

[21] Contrary to Costco's assertion, neither Horstman nor Sasaki have pled sexual harassment claims, nor does Ellis assert a breach of contract claim. All three plaintiffs assert senior managers offered shifting reasons for not promoting them and denied them promotions and assignments that would enhance promotability. Ellis Decl. ¶ 8; Horstman Decl. ¶¶ 6, 17, 24, 33, 35; Sasaki Decl. ¶ 36 & Ex. 9. Costco's claim that they raise no issues regarding merchandising experience misses the point—the claims in this case, whether concerning merchandising assignments or denial of promotion to AGM and GM, relate to lack of clear criteria and a posting process, and the discretionary decisions of senior managers.

1    retaliation claims against employer).  To allow typicality to be negated by retaliation arising from

2    the filing of a charge of discrimination would create a perverse incentive to retaliate against any

3    employee filing an EEOC charge in order to preclude her from serving as a named plaintiff in a

4    class action.

5            Finally, Costco's claim that it has defenses unique to each Plaintiff does not defeat

6    typicality.  *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (typicality "should be

7    determined with reference to the company's actions, not with respect to particularized defenses it

8    might have against certain class members").  Costco's defenses are nothing more than disguised

9    merits arguments as to the validity or strength of each plaintiff's claims.  Moreover, a defense

10   does not undermine typicality even if it may affect a plaintiff's ultimate right to recover, unless

11   that defense becomes a major focus of the litigation.  *Hanon v. Dataproducts Corp.*, 976 F.2d

12   497, 508-09 (9th Cir. 1992).

13           The "unique defenses" asserted against each plaintiff are, moreover, dubious.

14   Horstman did not, as Costco claims, turn down a promotion to Assistant Warehouse Manager.

15   Horstman Decl. ¶ 30.[22]  Costco's "unique defenses" against Ellis are similarly unavailing.  First,

16   Ellis was assured that her move to Colorado would not affect her chances at promotion.  Ellis

17   Decl. ¶ 9.  She was willing and able to relocate anywhere.  Ellis Decl. ¶¶ 10, 15.  Since Costco

18   had no systematic way of determine an employee's willingness to relocate, her managers simply

19   relied on outdated assumptions about her availability.  Sinegal Dep. 126:23-127:19, Larkin Reply

20   Decl., Ex. 47; Webb Dep. 234:15–235:1, Larkin Reply Decl., Ex. 41 ("Once she left our region, I

21   never – it never even crossed my mind that Shirley might want to come back to Detroit or

22   _____

23       [22]  Horstman turned down a Front End Manager position, the hours of which were not
     compatible with her family responsibilities, because she had earlier been assured that her prior
24   service as an Assistant Front End Manager was sufficient for promotion.  Horstman Decl. ¶ 24-
     35.  Horstman wrote in her evaluations that she would remain in her current position not because
25   she did not want the promotion to AGM, but because she believed her GM would not promote her
     unless she served as Front End Manager.  Horstman Decl. ¶ 30.  If anything, Ms. Horstman's
26   story underscores the way in which unwritten, unclear and subjective criteria are used to justify
     failure to promote qualified women.  Costco also cites divorce records to show Horstman had
27   some geographical limitations.  Yet, its 30(b)(6) witness denies such limitations would have
     disqualified anyone for promotion.  Zook Dep. 107:21-108:9, Larkin Reply Decl., Ex. 44.

28

569138.3                              - 14 -                    CASE NO. C-04-3341 MHP

1   Chicago.").  Second, Ellis disputes claims about her conduct and has filed retaliation charges

2   concerning the disciplinary actions taken against her after she filed her discrimination charge

3   against Costco.  Ellis Decl. ¶¶ 19-21.  Plaintiffs have asked that this retaliation claim be severed

4   from class claims.[23]  Finally, Costco has no "unique defenses" against Sasaki—it merely disputes

5   her promotability.  The written record establishes that Costco considered Sasaki promotable until

6   she complained about the "subjective" promotion system.  *See* Sasaki Decl. ¶¶ 18, 27-28 & Ex. 9.

7   **D.    PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES**

8          All plaintiffs seek the same relief for themselves and the class, and are united in

9   their goal of making Costco a non-discriminatory employer.  It is undisputed that plaintiff Sasaki

10  is a current employee and that plaintiff Ellis was a current employee when this case was filed and

11  thus each may sue on behalf of a class of current employees.[24]  Moreover, courts have repeatedly

12  concluded that former employees, such as Ellis and Horstman, can adequately represent current

13  employees.  *See Drayton v. W. Auto Supply Co.*, 203 F.R.D. 520, 528 (M.D. Fla. 2000); *see also*

14  *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *cf. Butler v. Home Depot, Inc.*,

15  1996 WL 421436, at *4 (N.D. Cal. 1996).  Former employees, who maintain they quit because

16  their advancement was blocked as Ellis and Horstman do, have standing to represent current

17  employees.  *See Bates*, 2006 WL 2864438, at *6 (plaintiff had standing to seek injunctive relief

18  even if not "currently employed in a position from which he is eligible to bid" where challenged

19  conduct "stood in the way of his desired advancement."); *cf. Gratz v. Bollinger*, 539 U.S. 244,

20  260-62 (2003) (plaintiff denied admission to school who went on to another school has standing

21  based on willingness to re-apply once school had changed its discriminatory policy).

22

23  _____

    [23] Costco's assertion that Ellis lied about her Wal-Mart employment is disputed and, even if true,
    would not have made any difference.  Gaherty Dep. 211:15-213:8, Larkin Reply Decl., Ex. 42.

24

25  [24] *See Bates v. United Parcel Service, Inc.*, 2006 WL 2864438, at *5 (9th Cir. 2006) (only one
    plaintiff must establish standing to seek injunctive relief).  Plaintiff Ellis was employed by Costco
    when she filed suit, and only later quit because her working conditions became intolerable.  Ellis

26  Decl. ¶¶ 13, 23.  Under Costco's approach, an employer could moot representativeness by forcing
    a plaintiff to quit.  No case law supports this perverse notion.  *Cf. Arnold v. United Artists Theatre*

27  *Cir., Inc.*, 158 F.R.D. 439, 455-56 (N.D. Cal.1994) (developments after filing of suit do not
    undermine Rule 23(b)(2) status).

28

E.    **PLAINTIFFS HAVE ESTABLISHED THE REQUIREMENTS OF RULE 23(b)**

1.    **Certification Under Rule 23(b)(2) is Appropriate Because Injunctive Relief Predominates**

a.    **Costco Misstates the Applicable Standard in the Ninth Circuit**

Costco argues that Rule 23(b)(2) certification is inappropriate here because claims of punitive and compensatory damages are not "incidental damages" as that phrase was used by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). Opp. Brief at 26. The Ninth Circuit, however, expressly rejected the *Allison* "bright line" rule. *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003) ("[W]e refuse to adopt the approach set forth in *Allison*."); *see Robinson v. Metro-North RR*, 267 F.3d 147, 163-64 (2d Cir. 2001) (rejecting *Allison*). Instead, the Court adopted a case-specific approach in which the "specific facts and circumstances of each case" are examined to determine whether monetary relief predominates over injunctive relief. *Molski*, 318 F.3d at 950. The focus is "on the language of Rule 23(b)" and "the *intent* of the plaintiffs in bringing the suit." *Id.* (emphasis added). As argued below, none of the arguments raised by Costco undermine the conclusion that certification under Rule 23(b)(2) is appropriate here.

b.    **Injunctive Relief Predominates**

Costco contends that injunctive relief cannot predominate because no plaintiff has standing to seek injunctive relief. Opp. Brief at 26–27. This argument ignores that *Molski* focuses on the *intent* of the plaintiffs in bringing the action, not on their legal entitlement to injunctive relief. Even if it were relevant, standing to seek injunctive relief is satisfied. *See supra* Section II.D.

Dismissing their declarations as "self-serving," Costco accuses the named plaintiffs of caring more about money than about eliminating Costco's discriminatory policies and practices. Beyond its snide rhetoric, Costco offers *no evidence* to doubt the sincerity of their intentions.[25] Plaintiffs' complaint sets forth a detailed summary of the specific injunctive relief

---

[25] Leah Horstman, for example, testified in her deposition as to her goals:

Q.   What is it that you are hoping to accomplish with this lawsuit you are pursuing?

1   sought.  Second Amended Complaint, Prayer for Relief, ¶ 5.[26]

2           Costco suggests that, merely by seeking classwide punitive and compensatory

3   damages, plaintiffs, by definition, are more interested in monetary than injunctive relief.  Opp.

4   Brief at 29 - 30.  This argument ignores that the *Molski* standard specifically rejects such a "bright

5   line" test and mandates consideration of the individual circumstances presented in each case.

6   *Molski*, 318 F.3d at 950.  The entire record in this case—including the declarations of the

7   plaintiffs—fully supports a finding that injunctive relief predominates.

### c.   Punitive and Compensatory Damages Are Consistent with Rule 23 (b)(2)

8/9

10          A request for an award of punitive damages to the class does not undermine

11  Rule 23(b)(2) certification.  "[T]he predominance test turns on the primary goal of the litigation,

12  not the potential size of a punitive damage award."  *Dukes*, 222 F.R.D. at 171.  Because punitive

13  damages are subject to a very rigorous burden of proof and the likelihood of their being awarded

14  is uncertain, they could hardly be the primary reason that plaintiffs brought this action.  *Id.*

15  Costco points to no evidence to suggest otherwise.

16          Nor is the presumption of cohesiveness necessary to Rule 23(b)(2) certification

17  undermined by the inclusion of punitive damages.  *See Barefield v. Chevron*, 1988 WL 188433, at

---

18  A.   To change the policies of this company so that women don't have to go through what
     I went through.

19  Q.   What is the policy you think should be changed?

20  A.   I think there needs to be some structured form of finding out who's qualified to be an
21       assistant warehouse manager so that you don't have to beat your head against the
         perpetual wall, so you don't have to do positions over and over because they move
22       someone in and move someone else, and it shouldn't have to be that way. . . .

23  Q.   Okay.  Any other reason that you are pursuing this lawsuit?

24  A.   You know what, I have two daughters, and God willing, they won't ever have to go
         through the crap that I had to go through.

25  Horstman Dep. 359:19 – 360:11, Larkin Reply Decl., Ex. 49.

26  [26] Costco also ignores the significant fact that the plaintiffs chose reputable counsel, including
27  The Impact Fund, as counsel to bring the lawsuit on behalf of the class.  The Impact Fund, a non-
    profit foundation, has a well-established track record in supporting institutional change through
28  public interest litigation.  Seligman Decl. ¶¶ 3, 4.

*3 (N.D. Cal. 1988) ("A class claim for punitive damages does not detract from the homogeneity or cohesiveness of the class."); *see also State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 416 (2003) ("[P]unitive damages . . . are aimed at deterrence and retribution"); *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535 (1999) (holding that the "focus" of the punitive damage inquiry under Title VII is the employer's state of mind).[27]

Although less common than classwide punitive damages, plaintiffs similarly propose to seek classwide compensatory damages, without the necessity of individual hearings. Rule 23(b)(2) classes have been certified where compensatory damages are sought consistent with Title VII's mandate to "make whole" victims of discrimination.[28] *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975). Indeed, *Robinson v. Metro North*, cited by *Molski*, involved a claim for compensatory damages. *See Robinson*, 267 F.3d at 155. Including such claims in this case is particularly appropriate, because the class is reasonably small, the alleged injuries from denial of upper level promotions are similar, and expert testimony and other common proof can

---

[27] Defendant misreads the Supreme Court jurisprudence on punitive damages. Opp. Brief at 34. Punitive damages need not be predicated on an award of compensatory damages. *Corti v. Storage Tech. Corp.*, 304 F.3d 336, 342- 43 (4th Cir. 2002) (punitive damage award supported by evidence and judge's back pay award); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) (jury may award punitive damages, even if no award of compensatory or nominal damages); *Provencher v. CVS Pharmacy*, 145 F.3d 5, 11-12 (1st Cir. 1998) (punitive damage award can be supported by back pay or nominal damages alone), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *EEOC v. W & O, Inc.*, 213 F.3d 600, 615 (11th Cir. 2000).

[28] *Latino Officers Assn. v. City of New York*, 209 F.R.D. 79, 92-93 (S.D.N.Y. 2002) (following *Robinson,* class certified under Rule 23(b)(2) despite compensatory damages claim); *Wilfong v. Rent-A-Center, Inc.*, 2001 WL 1795093, at *7-8 (S.D. Ill. Dec. 27, 2001) (permitting class members to opt out of Rule 23(b)(2) hybrid certification); *Bates v. UPS*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) (certifying nationwide class of hearing impaired employees under 23(b)(2) including claims for class damages); *Neal v. Moore*, No. 93-2420, slip op. at 1-3 (D.D.C. Dec. 23, 1994), Larkin Reply Decl., Ex. 56 (certifying and bifurcating sexual harassment and retaliation claims under 23(b)(2)): *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1127 (E.D. Ark. 2000) (certifying the class under (b)(2) for both monetary and equitable remedies and providing all class members with personal notice "as though the class was certified under Rule 23(b)(3)"); *see Taylor v. D.C. Water & Sewer Authority*, 205 F.R.D. 43, 52 (D.D.C. 2002) (denying motion to dismiss class claims and concluding that certification was available under 23(b)(2), 23(b)(3), hybrid or partial approach, despite presence of compensatory damages); *cf. Hilao v. Estate of Marcos*, 103 F.3d 767, 780-81 (9th Cir. 1996)

1   prove the kinds of injuries class members are reasonably likely to have suffered in this context.

2   *Cf. Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991) (sexual harassment measured against the

3   standard of a reasonable woman).  "Rule 23 allows district courts to devise imaginative solutions

4   to problems created by the presence in a class action litigation of individual damages issues."

5   *Carnegie v. Household Int'l Inc*, 376 F.3d 656, 661 (7th Cir. 2004).[29]

6                      **2.    Individual Stage II Hearings Are Not Required**

7              In arguing that individual Stage II hearings are required, Costco simply ignores the

8   cases approving a class-wide determination of damages where individual hearings would lead to a

9   "quagmire of hypotheticals."  *See* Opening Brief at 28.  Its reliance on *Kraszewski v. State Farm*

10  *General Insurance Co.*, 1986 WL 11746 (N.D. Cal.1986) is misplaced.  In that case, which

11  involved hiring into a single entry level position, the *plaintiffs* requested that the district court

12  order individual hearings.  *Id.* at *1.  Far from mandating individual hearings in all cases, the

13  *Kraszewski* court contrasted the case before it, which involved very large monetary claims, with

14  cases – such as the instant case -- involving promotion claims into "upper level positions."  *Id.* at

15  *2.

16             Costco insists that a formula cannot be used to award back pay because there are

17  no actual applications—due, of course, to its decisions to maintain a 'tap on the shoulder' system

18  and not to post or accept applications for GM and AGM jobs from interested class members.

19  Opp. Brief at 33.  But, unlike the circumstances in *Dukes,* where over 45,000 promotions were

20  involved for a myriad of positions, here there are a limited number of promotions at issue and

21  only a few job positions.  Drogin Supp. Decl. ¶ 16.  Moreover, Costco managers consistently

22  testified that they presumed that all Staff Managers and AGMs wanted to be promoted.  Sinegal

23  Dep. 44:23-45:4, Larkin Decl., Ex. 1; Zook Dep. 129:12-130:23, Larkin Decl., Ex. 3; *see also*

24  Opening Brief at 28 n.30.

25

26  _____
    [29] A "hybrid" certification would also be proper.  Opening Brief at 26-27.  Far from being
    controversial, Opp. at 31, many circuits have endorsed this approach to certification.  *See*

27  *Robinson*, 267 F.3d at 167; *Lemon v. Operating Eng'rs Local 139,* 216 F.3d 577, 581 (7th Cir.
    2000); *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997).

28

1

      **3.**    <u>**Plaintiffs' Trial Plan Is Appropriate**</u>

2

      While Costco claims that the trial plan would result in multiple juries re-evaluating

3

the same issues in violation of the Seventh Amendment, it never articulates what those

4

overlapping issues are, or admits that under plaintiffs' trial plan there would be no need for

5

multiple juries.  In any event, the Court can manage the proceedings to avoid any potential

6

Seventh Amendment conflict.  *See Robinson*, 267 F.3d at 169 n.13; *cf. Allen v. Int'l Truck &*

7

*Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004) ("Certifying a class for injunctive purposes,

8

while handling damages claims individually, does not transgress the seventh amendment.").

9

**III.**    <u>**CONCLUSION**</u>

10

      This case presents a straightforward glass ceiling challenge that is ideally suited to

11

class treatment.  This Court should certify the class as proposed.

12

13

Dated: October 20, 2006

14

                       THE IMPACT FUND

By: _____
            Jocelyn D. Larkin

15

16

Brad Seligman (State Bar No. 083838)
Jocelyn D. Larkin (State Bar No. 110817)
Julia Campins (State Bar No. 238023)

17

THE IMPACT FUND

18

Bill Lann Lee (State Bar No. 108452)
James M. Finberg (State Bar No. 114850)

19

Daniel M. Hutchinson (State Bar No. 239458)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

20

21

Steve Stemerman (State Bar No. 083838)
Elizabeth A. Lawrence (State Bar No. 111781)

22

Sarah Varela (State Bar No. 234640)
DAVIS, COWELL & BOWE, LLP

23

*Attorneys for Plaintiffs and the Proposed Class*

24

25

26

27

28