1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY RAE ELLIS, LEAH HORSTMAN,
and ELAINE SASAKI on behalf of
themselves and others similarly situated,

                 Plaintiffs,

     v.

COSTCO WHOLESALE CORPORATION

                 Defendant.

_____/

No. C 04-03341 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Class Certification and**
**Appointment of Lead Plaintiff and Lead**
**Counsel**

     Shirley Rae Ellis, Leah Horstman, and Elaine Sasaki, current and former employees of

defendant Costco Wholesale Corporation ("Costco"), have brought a putative class action alleging

gender discrimination in Costco's promotion and management practices.  Pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. section 2000e, et seq., plaintiffs allege that Costco's promotion

system has a disparate impact on female employees, that Costco's management discriminates against

women in promotions, and that defendant has retaliated against persons seeking redress for

discrimination.  In addition, plaintiffs bring pendent causes of action alleging gender discrimination

in violation of the Fair Employment and Housing Act, California Government Code section 12940,

et seq.[1]  Plaintiffs Shirley Rae Ellis et al. seek certification of a nationwide class consisting of

current and former female Costco employees who were denied promotion to General Manager

("GM") or Assistant General Manager ("AGM") positions or promotion to certain Senior Staff

positions since January 3, 2002.  Now before the court is plaintiffs' motion for class certification

pursuant to Federal Rule of Civil Procdure 23 including plaintiffs' request for appointment of lead

counsel and approval of their proposed trial plan.  In response, defendant has filed a motion to strike

1    plaintiffs' expert declarations.  After considering the parties' arguments and submissions and for the

2    reasons set forth below, the court rules as follows.

3    <u>BACKGROUND</u>[2]

4    I.       The Parties

5             A.       <u>Plaintiff Shirley Rae Ellis</u>

6             Plaintiff Ellis has worked as an Assistant Manager at Costco since 1998.  Before her

7    employment with Costco, Ellis worked as a General Manager at Wal-Mart's Sam's Club, a position

8    similar in function and duties to Costco's General Manager position.  Ellis began her employment

9    with defendant in a Michigan warehouse, but subsequently transferred, upon her request, to a Costco

10   facility in Colorado in 2000.

11            Ellis alleges that throughout her time with the company, she repeatedly advised Costco

12   managers of her interest in a promotion to General Manager as well as a willingness to consider a

13   promotion located anywhere in the country.  Due to defendant's failure to post or otherwise notify

14   employees of management openings, Ellis was unable to apply for specific promotional

15   opportunities.  In a letter dated August 29, 2002, Ellis expressed her "burning desire to help the

16   company be successful" and to advance within the company, stating that she wanted to learn how

17   selection of General Managers worked, where she stood as a candidate for promotion, and what she

18   might need to do to become a General Manager.  Kadue Dec. (Oct. 18, 2004), Exh. C.  She wrote:

19   "If there is not an opportunity [in this region], would you consider recommending me to another

20   Regional VP?  I would love to stay in Colorado, but I love Southern California and Texas as well.  I

21   would definitely consider any promotional opportunity."  <u>Id</u>.  She said that she was "trying to find

22   out where [she] fit in the Costco Wholesale picture."  <u>Id</u>.  No promotional opportunities surfaced.

23            Plaintiff filed a charge of discrimination with the EEOC on or about October 30, 2002,

24   alleging failure to promote on the basis of gender.  She received a Notice of Right to Sue in relation

25   to the charge.  In 2004, she filed a second charge of discrimination with the EEOC, alleging

26   retaliation, including a disadvantageous warehouse transfer, in response to her first EEOC grievance.

27

28

<b>UNITED STATES DISTRICT COURT</b><br><b>For the Northern District of California</b>

B.      Plaintiff Leah Horstman

Plaintiff Horstman was hired for the position of caller in defendant's warehouses in 1981. She held numerous positions over the course of her twenty-three year employment with Costco, including fifteen years in management positions.  The full span of her employment was within Costco's San Diego Region.  Horstman EEOC Aff. at 1.  She remained an employee of defendant until 2004, most recently as a Receiving Manager in the La Mesa warehouse.

Horstman alleges that she informed Costco of her availability and interest in promotion to the position of Assistant Manager, and she may have advised Costco of her willingness to relocate outside of the San Diego area or outside of California.  Due to defendant's failure to post openings or use a standardized application procedure, she did not apply for specific positions.  Plaintiff filed a charge of discrimination with the EEOC and the California Department of Fair Housing and Employment on or about October 11, 2003 and subsequently received a Notice of Right to Sue in relation to the charge.

C.      Plaintiff Elaine Sasaki

In 1985, plaintiff Elaine Sasaki began her twenty-year career with Costco as a front-end cashier.  From 1995–96, Sasaki worked in Livermore, California as an administrative assistant to the Regional Vice Presidents of the Bay Area Region.  In 1996, Sasaki was promoted to Assistant Manager, a position she still holds today.  Other than a one-year stint at a warehouse in Texas, Sasaki's employment has been within Costco's Bay Area Region, in several different warehouses.

Sasaki alleges that her upward rise at Cosco has been thwarted by gender discrimination. Sasaki has repeatedly expressed her interest in promotion to a General Manager position by speaking to Vice Presidents and Senior Vice Presidents within her region as well as to management in other regions.  See Sasaki Dec. ¶ 3.  On the basis of representations that growth in the Texas region promised better prospects for promotion, she transferred there in 2001.  She returned to the Bay Area Region one year later, again on the basis of representations that growth would provide greater opportunities for advancement.  In September 2003 Sasaki wrote a letter to Judy Vadney, Director of Human Resources in Issaquah, Washington, expressing her concern that she was being

3

1   overlooked for promotion due to her gender.  Sasaki Dep. at 19:1–7.  Due to defendant's failure to

2   post openings or use an application procedure, she did not apply for specific positions.  She filed a

3   discrimination charge with the EEOC on March 1, 2005 and received a Notice of Right to Sue in

4   relation to the charge.

5   D.      Costco Wholesale Corporation

6           Defendant is a corporation headquartered in Issaquah, Washington, which operates "cash-

7   and-carry membership warehouses" throughout the United States.  Def's Mot. (Oct. 15, 2004) at 2.

8           1.      Costco's Organization Structure and Management Hierarchy

9           Costco's nationwide operations are divided into three divisions (Southwest, Eastern, and

10  Northern/Midwest), each governed by an Executive Vice President.  See Zook Dec. ¶ 2, Zook Dec.,

11  Exh. A.  These divisions are in turn divided into regions managed by Senior Vice Presidents.  Id.

12  Each Costco region is broken down into districts, led by District Vice Presidents, which are in turn

13  composed of numerous Costco warehouses.  Zook Dec., Exh. A.  Each Costco warehouse is staffed

14  with a General Manager, multiple Assistant Managers, and a team of staff level, area, and

15  department managers.  Def.'s Mot. (Oct. 15, 2004) at 2–3.

16          2.      Costco's Promotion Practices

17          Plaintiffs allege that Costco does not use postings and/or an application process for open

18  Assistant and General Manager positions, but promotional practices are standardized across the

19  country.  Zook Dep. at 131:8–20, 133:1–9; Hoover Dep. at 117:17–23.  The decision to promote a

20  lower level manager to an Assistant Manager is made by a warehouse's General Manager, with the

21  District Vice President "also involved."  See Zook Dep. at 132:8–16.  The Senior Vice Presidents

22  are informed of the choice, though they do not make the "actual selection."  See Hoover Dep. at

23  92:5–11 (describing that as Senior Vice President, he "might put [in] my two cents, but basically I

24  just want to make sure they've done their homework").  Executive Vice Presidents in the divisional

25  headquarters need not approve promotions to Assistant Manager.  See Zook Dep. at 132:18–20.

26          The decision to promote an Assistant Manager to a General Manager is made by the General

27  Manager who has overseen the Assistant Manager's work and the District Vice President, with

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

4

"some input and involvement" from the Senior Vice President overseeing their region.  See Zook
Dep. at 133:23–134:2; Hoover Dep. at 94:7–10.  The Senior Vice President notifies the Executive
Vice President overseeing his region when a selection for General Manager has been made, but
Executive Vice Presidents are simply "made aware" of the choice in order to "sign off" on the
decision.  Zook Dep. at 134:8, 135:10–17.


II.      Procedural History

         Plaintiff Ellis filed the present action on August 17, 2004.  Pursuant to stipulations, plaintiff
filed an amended complaint on November 2, 2004 adding plaintiff Leah Horstman and a second
amended complaint on March 23, 2005 adding plaintiff Elaine Sasaki.  On behalf of themselves and
a class of similarly-situated employees, plaintiffs charge that defendant has a pattern and practice of
gender discrimination, including failing to consider women for promotional opportunities on an
equal basis with men; refusing to provide timely and accurate notice of employment opportunities;
relying on subjective, arbitrary, and gender-based decisionmaking by a nearly all-male managerial
force; promoting similarly-situated and less-qualified males more rapidly; and representing
inconsistent requirements for promotion.  Plaintiff Ellis also alleges retaliation for filing
discrimination charges.  The court denied defendant's motion to transfer this action pursuant to 28
U.S.C. section 1404(a) on May 31, 2005.

         Now before the court is plaintiffs' motion for class certification pursuant to Rules 23(a) and
23(b)(2) or, in the alternative, for a hybrid class.  As part of their motion, plaintiffs request that the
court exercise its discretion to permit class members to opt-out of the class and direct that class
members be provided notice.  Additionally, plaintiffs request approval of their proposed trial plan
and appointment of class counsel.  In response, defendant filed motions to strike the declarations of
plaintiffs' experts, Dr. Bendick, Dr. Drogin, and Dr. Reskin.

UNITED STATES DISTRICT COURT
For the Northern District of California

5

1  LEGAL STANDARD

2  I.      Motion for Class Certification

3          A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule

4  23(a), as well as at least one of the requirements of Rule 23(b).  Under Rule 23(a), the party seeking

5  class certification must establish: (1) that the class is so large that joinder of all members is

6  impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to

7  the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e.,

8  typicality); and (4) that the class representatives will fairly and adequately protect the interests of

9  other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a).  In addition to

10 satisfying these prerequisites, parties seeking class certification must show that the action is

11 maintainable under Rule 23(b)(1), (2) or (3).  See Rule 23(b); Amchem Products, Inc. v. Windsor,

12 521 U.S. 591, 614 (1997).  Rule 23(b)(2) permits class actions for declaratory or injunctive relief

13 where the party opposing the class "has acted or refused to act on grounds generally applicable to

14 the class." Rule 23(b)(2).

15         The party seeking class certification bears the burden of establishing that the requirements of

16 Rules 23(a) and 23(b) have been met.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

17 1188 (9th Cir.  2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976

18 F.2d 497, 508 (9th Cir. 1992).  However, in adjudicating a motion for class certification, the court

19 accepts the allegations in the complaint as true so long as those allegations are sufficiently specific

20 to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.

21 See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).

22 The merits of the class members' substantive claims are generally irrelevant to this inquiry.  Eisen v.

23 Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d

24 475, 480 (9th Cir. 1983).

25

26 II.     Motion to Strike

27         Though a "rigorous examination" of 23(a) factors is required for class certification,  General

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982), the district court is not to inquire into

2  the merits of the suit during the certification process.  Eisen, 417 U.S. at 177.  However, the court

3  may properly consider the merits to the extent that they overlap with class certification issues.  See

4  In re Initial Public Offering Sec. Litig., No. 05-3349-CV, 2006 WL 3499937 (2d Cir. Dec. 5, 2006).

5  An evidentiary hearing on class certification is not required,  Bouman v. Block, 940 F.2d 1211, 1232

6  (9th Cir. 1990), but the court should assess all relevant evidence to determine whether each of the

7  Rule 23 requirements have been met.  At this early stage, robust gatekeeping of expert evidence is

8  not required; rather, the court must should ask only if expert evidence is "useful in evaluating

9  whether class certification requirements have been met."  Dukes v. Wal-Mart, Inc., 222 F.R.D. 189,

10  191 (N.D. Cal. 2004) (Jenkins, J.) (Dukes II).  The requirements of relevance and reliability set forth

11  in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), serve as useful guideposts but

12  the court retains discretion in determining how to test reliability as well as which expert's testimony

13  is both relevant and reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

14

15  DISCUSSION

16

17  I.      Motion for Class Certification

18          Plaintiffs seek certification of a nationwide class of current and former female employees

19  who have been denied promotion to GM or AGM or denied Senior Staff jobs important to AGM

20  promotion since January 3, 2002.[3]  They ask the court to certify their claims for damages as well as

21  injunctive relief under Rule 23(b)(2).

22

23          A.      Subject Matter Jurisdiction

24          In various parts of its opposition to plaintiffs' motion for class certification, Costco raises

25  two arguments to suggest that the court does not have subject matter jurisdiction over various

26  aspects of plaintiffs' claims.  The court addresses Costco's exhaustion and standing arguments as an

27  initial matter.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1            1.      Exhaustion

2          The court may only assert jurisdiction over Title VII claims where plaintiff has exhausted her

3    administrative remedies by filing an EEOC charge.  Serpe v. Four-Phase Sys., Inc., 718 F.2d 935,

4    936 (9th Cir. 1983).  Defendant alleges that plaintiffs have not exhausted their EEOC claims with

5    respect to claims made on behalf of employees denied Marketing Manager positions because

6    plaintiff Ellis's EEOC charge did not include such allegations.  Ellis's EEOC charge included

7    allegations about gender discrimination in promotions to area manager, senior manager, assistant

8    manager and general manager positions.  Ellis Dec., Exh. 4.  Plaintiff argues that the EEOC

9    investigation was not limited to GM positions but to promotion decisions concerning senior area

10   managers, AGMs and GMs.  See Kadue Letter to EEOC, Larkin Reply Dec., Exh. 55.  Plaintiffs also

11   contend that even if the Ellis charge was limited to promotions to GM, these other promotion

12   decisions are reasonably related to the allegations contained in the EEOC charge. Under Ninth

13   Circuit precedent, the court is required to construe the EEOC charge "with the utmost liberality."

14   EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) (quoting Kaplan v. International

15   Alliance of Theatrical & Stage Employees, 525 F.2d 1354, 1359 (9th Cir.1975)).  In this case, Ellis's

16   EEOC charge provided "adequate notice" to Costco that the EEOC investigation would include

17   promotion decisions concerning all area managers, including Senior Staff positions such as

18   Merchandising Managers ("MMs") as well as AGMs and GMs.  Farmer Bros., 31 F.3d at 899.

19   Indeed, the EEOC charge alleged discriminatory promotion processes in all "salaried management

20   positions."  Ellis Dec., Exh. 4.  Ellis's claim of discrimination in promotion to GM is like and

21   reasonably related to the claims of gender discrimination in promotion to MM and AGM.  Brown v.

22   Puget Sound Elec. Apprenticeship and Training Trust, 732 F.2d 726, 729 (9th Cir. 1984).  Defendant

23   also claims that certification of a class of plaintiffs who were denied AGM promotions before

24   December 6, 2003 would be improper because that claim was not exhausted until plaintiff

25   Horstmann filed her charge.  Because the Ellis charge included these promotion decisions, the court

26   rejects this argument.  Therefore, the court concludes that plaintiff has properly exhausted

27   administrative remedies and the court has jurisdiction to hear the class certification motion.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2.      <u>Standing</u>

2          Buried in its opposition on Rule 23 grounds, Costco makes two standing arguments.  First, it

3    suggests that none of the named plaintiffs has standing to bring a suit for injunctive relief.

4    According to Costco, Ellis and Horstmann, as former Costco employees, do not have standing to

5    bring a suit for injunctive relief which would affect only current employees.  <u>See</u> Opp. to Class Cert.

6    at 24.  The Ninth Circuit recently rejected a similar argument in <u>Bates v. UPS, Inc.</u>, No. 04-17295,

7    2006 WL 2864438, at *6 (9th Cir. Oct. 10, 2006).  "An individual thus influenced by an allegedly

8    discriminatory policy to avoid humiliating circumstances—here, languishing in a dead-end

9    position—is still aggrieved by that policy if [s]he maintains a continuing interest in the benefit to

10   which access has been denied—here, the opportunity to be individually assessed for the [GM]

11   position." <u>Id.</u>  To hold that employees must continue to work in jobs where they face discrimination

12   in order to challenge the discrimination would pervert Article III's injury-in-fact requirement.

13          Costco further contends that Sasaki, who is currently an AGM, does not have standing to

14   bring a claim for injunctive relief to help class members attain positions as AGMs.  The court finds

15   this argument unpersuasive.  Courts have repeatedly held that "an unsuccessful applicant for one

16   particular job can presumably challenge discriminatory hiring for different job categories where the

17   primary practices used to discriminate in the different categories are themselves similar." <u>Hartman v.

18   Duffey</u>, 19 F.3d 1459, 1471 (D.C. Cir. 1994); <u>see also</u> <u>Dukes I</u>, 222 F.R.D. at 167.  Therefore,

19   Sasaki has standing to challenge the promotion practices for the AGM position.

20          Costco also makes the argument that Sasaki lacks standing with respect to GM promotions,

21   because Costco has shown that there is no gender disparity in promotions to GM.  Costco further

22   contends that none of the plaintiffs have standing because the only women who are under-promoted,

23   according to Costco's analysis, are women who lacked MM experience.  None of the named

24   plaintiffs suffered this fate, and so Costco argues they do not have standing.  Def's Opp. Class Cert.

25   at 24.  These arguments would require the court to delve into the merits of the evidence on gender

26   disparity at the GM level. Such an inquiry is improper at the class certification stage. <u>See</u> <u>Eisen</u>, 417

27   U.S. at 177. To establish standing, Sasaki must satisfy the Article III requirements of injury-in-fact,

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

causation, and redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61(1992) (holding that a plaintiff must fulfill three requirements—injury-in-fact, causation, and redressability—to establish Article III standing).  Here, Sasaki has alleged that she has not been promoted to GM as a result of gender discrimination in the promotion process at Costco.  SAC ¶ 48–49.  This satisfies the injury-in-fact requirement.  She further alleges that the injury is caused by Costco's subjective promotion processes, thus satisfying the causation requirement.  Finally, she contends that a grant of injunctive relief would address her complaint. Therefore, the court finds that Sasaki has standing to challenge the GM promotion process.

> B.    Rule 23(a) Requirements

As noted above, a party seeking class certification must establish that the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met. The court addresses each of these requirements below.

> 1.    Numerosity

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.  See 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004).   Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement.  See Freedman v. Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1762 (3d ed. 1995).  Plaintiffs allege that the potential class size is greater than 700 people, including all women employed by Costco in Senior Staff and Assistant General Manager positions since the end of 2001.  Mot. for Class Cert. at 23.  They base these estimates on the information supplied by defendant.  Drogin Dec. ¶ 5.  Defendants do not contest this assertion. Certainly, this large number of putative class members makes joinder impracticable.  The court finds that plaintiffs have satisfied their burden, and thus, this requirement of Rule 23 is satisfied.

UNITED STATES DISTRICT COURT
For the Northern District of California

2.     Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole.  Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all.  See Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964).  Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).[4]  To the extent that the parties' commonality arguments overlap with the merits, the court has evaluated all relevant evidence to determine whether commonality has been established.

The parties have staged a battle of the experts over the issue of commonality.  Plaintiffs offer various types of evidence in support of their commonality argument.  First, they offer the declaration of Dr. Richard Bendick to show that women throughout Costco are underrepresented in the challenged positions relative to female employees in similar positions at comparable companies.  Second, they rely on the declaration of Dr. Richard Drogin to demonstrate that female employees at Costco are promoted at a slower rate and are underrepresented at the AGM and GM levels relative to their male peers.  Third, they present the analysis and conclusions of Dr. Barbara Reskin to show that Costco has a pervasive culture of gender stereotyping and paternalism.  Fourth, they offer evidence to demonstrate the uniform nature of the promotion practices for AGM and GM positions and how these processes disadvantage women as well as the anecdotal experiences of the named plaintiffs to show this effect.  Finally, they present evidence to suggest that Costco itself considers the underrepresentation of women in senior management an issue common to the entire company.

In response, Costco offers declarations of its own experts.  Dr. Ali Saad's declaration, according to Costco, demonstrates that women are not underrepresented at Costco and that any gender disparities, if they exist, are confined to two regions of Costco, thus undermining plaintiff's claims of commonality.  Costco argues, based on the declarations of Dr. Margaret Stockdale and Dr. Casey Mulligan, that gender disparities, if they exist, are based upon factors, such as women's lack

of interest in jobs requiring early morning hours, which are unrelated to Costco's culture and promotion processes. Finally, Costco moves to strike the declarations of plaintiffs' three experts and offers the declarations of Dr. Landy, Dr. Saad, and Dr. Mulligan to challenge the relevance and reliability of plaintiffs' experts' conclusions. The court will review each of these arguments in turn.

To demonstrate commonality, plaintiffs must show at least one significant issue of fact or theory of law common to the entire class. Hanlon, 150 F.3d at 1020. On the basis of the evidence presented, the court is satisfied that plaintiffs have done so. The court examines the experts' opinions not to engage in a merits evaluation of the opinions but only to determine whether their testimony is probative of an inference of discrimination. Id. First, plaintiffs have provided sufficient evidence of gender disparities in the promotion of women to GM and AGM to raise a common issue of triable fact. Plaintiffs have presented two categories of statistical evidence which raise the inference of gender-based disparities in management positions throughout Costco. First, Dr. Bendick's analysis, while not without its flaws, presents a sufficient foundation for his conclusion that women are underrepresented at these positions relative to women at comparable companies. He bases his conclusion primarily on statistical benchmarking analysis in which he compares the representation of women in Costco's management positions to that at other retailers. Bendick Dec. ¶¶ 7 & 9. He suggests that Costco's representation of women managers is lower than its peers based on each of five bench-marking studies and that "women are available for, qualified for, and interested in Costco-like retail management jobs in substantial numbers." Id. ¶¶ 30–31, 34. Second, Dr. Drogin performed regression analyses based upon a feeder pool of qualified female candidates for the AGM and GM positions. Drogin Dec. ¶ 3. He concluded that there were statistically significant internal gender-based disparities in both the AGM and GM positions based on his analysis of aggregate, nationwide data. Drogin Dec. ¶ 25. Costco challenges the propriety of using aggregate data; however, as noted *infra*, these arguments attack the weight of the evidence and not its admissibility. Dr. Drogin further concludes that female employees at Costco take longer to be promoted to AGM; however, as the court notes below, the analysis on which this conclusion is based is unreliable and therefore stricken from the record. The court has not considered this

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    argument.

2         In response, Costco offers the testimony of Dr. Saad to demonstrate that no gender disparities

3    exist in promotions to AGM and GM.  Dr. Saad performed a similar statistical analysis to that of Dr.

4    Drogin with certain differences, primarily that Dr. Saad's analysis was based on regional rather than

5    national data and that Dr. Saad's analysis controlled for certain variables including Senior Staff

6    experience and leaves of absence. Saad Dec. ¶¶ 34, 43, 50–52, Exh. 11.  Dr. Saad concludes that

7    there are no statistically significant gender disparities in the GM and AGM positions at Costco.  As a

8    threshold matter, the court concludes that Dr. Saad's analysis is relevant and reliable for the

9    purposes of commonality and notes that plaintiffs have not raised any significant challenges in this

10   regard.  However, Dr. Saad's analysis has presented an alternative approach but it has not

11   discredited Dr. Drogin's results or methods. <u>See</u> <u>Barefield v. Chevron U.S.A., Inc.</u>, No. C 86-2427,

12   1987 WL 65054 (N.D. Cal. Sept. 9, 1987) (Henderson, J.) (rejecting challenge to plaintiffs' statistics

13   at class certification stage when objection went to the merits of the case).  Plaintiffs expert

14   declarations, while questioned by defendants, are strong enough to establish commonality on this

15   issue.  Therefore, the plaintiffs have presented compelling evidence of gender disparities at this time

16   sufficient to demonstrate class-wide impact.

17        Plaintiffs also argue that this class-wide impact is caused by uniform promotion practices and

18   Costco's common culture of gender stereotyping and paternalism.  First, plaintiffs argue that

19   Costco's promotion process is based on company-wide standards and policies.  Costco has a

20   consistent promotion-from-within policy.  Costco has no written selection criteria for promotion to

21   GM and AGM nor any formal notification or application procedures for those positions.  This

22   process involves decision-making by central management, including the maintenance of a Green

23   Room at corporate headquarters where the photographs of potential promotees are displayed.

24   Indeed, there was a conscious decision made not to post vacancies for GM and AGM.  <u>See</u> Sinegal

25   Dep. 123:22–124:2, 124:9–16, Exh. 1. Defendants argue that promotion decisions to AGM and GM

26   vary by region and that promotion decisions to AGM are made at the store level.  However, these

27   assertions are unsupported and do not undermine commonality.  Rather, the evidence before the

28

13

court indicates that officers at the regional and corporate levels are involved in promotion decisions. The absence of written criteria for promotion as well as other evidence that the process is subjective satisfies the court that there is a policy common to the class in this regard.  See Bates v. UPS, 204 F.R.D. 440, 448 (N.D. Cal 2001) (Henderson, J.).

Plaintiffs further argue that this subjectivity has a gender-differentiated impact on the promotion to AGM and GM.  To support this contention, they offer the conclusions of Dr. Barbara Reskin, who concludes that Costco's unwritten, subjective system for promotion is vulnerable to bias.  She relies on social science research on cognitive bias to connect these findings to Costco's specific policies and practices. Resnik Dec. ¶¶ 3 & 9.  She further concludes that Costco has a common and "unifying" culture based on gender stereotypes, in-group preferences and paternalism. Id. ¶¶ 12, 15, 45, 60.   Plaintiffs also provide declarations from the named plaintiffs, each of whom explain, in her view, how the Costco culture and subjective promotion processes discriminate against women. See, e.g., Sasaki Dec. ¶¶ 36, 41, 42.  Costco disputes the relevance and reliability of Dr. Reskin's study and proffers its own view of Costco's culture. As the court discusses more fully infra, the defendants' objections to Dr. Reskin's study do not convince the court that it is irrelevant or unreliable.  To support its view of Costco's culture, Costco offers the analysis of two experts—Dr. Frank Landy and Dr. Casey Mulligan.  Dr. Landy's declaration serves primarily to attack the relevance and reliability of Dr. Reskin's analysis, which the court addresses infra.  Dr. Landy also offers a different view of Costco's promotion practices.  He argues that the aspects of the process which Dr. Reskin characterizes as subjective are in fact representative of best practices in the industry.  Landy Dec. ¶¶ 9–12.

In addition to criticizing the applicability of Dr. Reskin's study to Costco's promotion practices, Costco argues that gender disparities, if they exist, are attributable to the gender-differentiated supply in the pool of qualified employees for AGM and GM positions.  This supply issue is not related to gender discrimination at Costco but is reflective of women's differential interest in jobs requiring works hours incompatible with family responsibilities.  Mulligan Dec. ¶¶ 80–82, 126.  Costco's expert, Dr. Stockdale, concludes on the basis of her review of the literature on

14

job attribute preferences and her knowledge of Costco's culture that "[g]ender differences in interest expressed for the merchandise manager position [a position considered to be a de facto requirement for promotion to AGM] is a plausible explanation for the under-representation of women in upper level warehouse management at Costco."  Stockdate Dec. at 5.  What defendant has presented is an argument that is common to the class, and, if anything, supports the commonality factor.  In evaluating all of the evidence presented, the court finds that plaintiffs have presented strong evidence of a common culture at Costco which disadvantages women.

Finally, plaintiffs argue that Costco's senior management had knowledge of the gender disparity in the AGM and GM promotion processes and treated this disparity as a company-wide issue.  Plaintiffs document the BOLD Initiative at Costco, which was a 2000 company-wide program to address the company-wide disparity in promotion to senior management.  Matthews Dep. at 111:20–113:24, see also 2001 BOLD Initiative Focus Group Notes, Pl's Mot. for Class Cert., Exh. 3.  Moreover, there is some evidence that Costco responded to the recommendations made as a result of the diversity studies, including posting for lower level management positions but not AGM and GM positions.  Sinegal Dep. 118:1–11.  Defendant has not disputed this assertion.  Costco's treatment of gender disparities in promotion to Senior Staff as well as AGM and GM positions as a company-wide issue establishes a common question of fact.

In sum, plaintiffs have satisfied the court that there are common issues of fact and theories of law as to gender disparities in promotions to AGM and GM, the nature of Costco's culture and its effect on women.  Therefore, the court finds that plaintiffs have satisfied the commonality requirement.

        3.     Typicality

Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class.  To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong.  See Hanlon, 150 F.3d at 1020.  Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as

the class members. See Falcon, 457 U.S. at 156.

Costco argues that the named plaintiffs lack typicality because each of them presents unique claims that are atypical of the class and because Costco intends to present a defense unique to the gender discrimination claim of each of the named plaintiffs. At the outset, the court rejects Costco's contention that the named plaintiffs have unique claims. There are no allegations in the complaint that would suggest that Sasaki or Horstman have brought sexual harassment claims as part of this action nor that Ellis has asserted a breach of contract claim. Ellis's claim of retaliation is part of and related to her sex discrimination claim and therefore "reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Nor are Costco's allusions to unique defenses sufficient to defeat typicality. The court need not address the merits of each of the proposed defenses; rather, it is enough to say that as a general matter, individualized defenses do not defeat typicality. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508–09 (9th Cir. 1992).

The class representatives have demonstrated that they will present the same type of legal and remedial theory as the unnamed class members, namely that the subjective processes for promotion to AGM and GM positions discriminate against female employees. The experiences of each of the named plaintiffs with the promotion processes at Costco are typical.

Thus, plaintiffs satisfy the requirements of Rule 23(a)(3).

### 4.   Adequacy of Representation

Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them. See Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" See Hanlon, 150 F.3d at 1020.

Costco argues that Ellis and Horstmann, as former Costco employees,[5] are inadequate class

16

UNITED STATES DISTRICT COURT
For the Northern District of California

representatives because they have little incentive to seek injunctive relief on behalf of current employees.  Similarly, Costco contends that Sasaki, who is currently an AGM, has little incentive to seek injunctive relief that would benefit class members seeking promotions to AGM positions.  To serve as representatives, the named plaintiffs must have similar but not identical interests to those in the class.  Dukes I, 222 F.R.D. at 168.  Were the class representatives to include only former employees, who would not stand to benefit from injunctive relief, the representatives might have a conflict of interest with members of the class.  Cf. Wagner v. Taylor, 836 F.2d 578, 595 (D.C. Cir. 1987) (finding inadequate representation where the sole named plaintiff, a supervisor, purported to represent a class of both supervisory and non-supervisory employees).  However, the named plaintiffs include both current and former employees.  While their interests are not identical, Costco has not presented any arguments to suggest that their interests are adverse to those of the unnamed class members.  The court, therefore, concludes that there are no conflicts of interest between the class representatives and the other members of the class.

Costco also attacks Ellis's credibility on the basis of reports of her alleged mistreatment of employees at Costco and alleged misrepresentation on her job application.  It is within the court's discretion to determine that plaintiff is not credible and that as a result certification should be denied.  Hall v. Nat. Recovery Sys., Inc. No. 96-132-CIV-T-171, 1996 WL 467512, at *5 (M.D. Fla. Aug. 9, 1996).  The allegations against Ellis, if proven true, would not rise to the level of prejudice to the unnamed class members.  In the Hall case, the court looked to the totality of the evidence presented, including convictions for grand theft and armed robbery, to determine that the plaintiff would lack credibility.  There, the court had additional concerns about the named plaintiff's transient nature—the plaintiff had been in and out of jail—and his ability to reliably perform the duties of a named plaintiff.  Even if defendant's allegations against Ellis were proven, they would not support a finding of inadequacy of representation.

Ellis, Hartsmann and Sasaki have indicated that they are willing to take on representation of the class.  Moreover, it is clear that plaintiff's counsel is competent, nor does defendant dispute this.  Therefore, the court concludes that plaintiff has satisfied the adequacy of representation

requirement.

### C.     Rule 23(b)(2) Requirements

In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief appropriate.  Fed. R. Civ. P. 23(b)(2).  Class actions certified under Rule 23(b)(2) are "not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages" where the claim for injunctive relief is the primary claim.  Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986).  Rule 23(b)(2) certification of a class seeking both injunctive relief and damages is proper only where the claim for injunctive relief is the predominant form of relief sought by the class.  The court addresses these requirements below.

Plaintiffs seek compensatory damages, punitive damages, injunctive relief, declaratory relief and backpay.  SAC ¶¶ 2, 4–8.  Costco argues that plaintiffs' claims for compensatory damages require individualized determinations which preclude certification under Rule 23(b)(2)'s predominance requirement.  However, the Ninth Circuit has explicitly rejected such an argument in Molski v. Gleich, 318 F.3d 937, 950 (9th Cir. 2003).[6]  There, the court refused to adopt the theory that a claim for compensatory damages would necessarily predominate for the purposes of Rule 23(b)(2).  Indeed, the court specifically noted that such a proposition "holds troubling implications for the viability of future civil rights actions, particularly those under the Civil Rights Act of 1991." Id. (citation omitted).  Instead, the Ninth Circuit required a case-by-case determination of predominance, focusing on the motives of the named plaintiffs and the nature of the defendants' actions.

For a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice." Walters v. Reno, 145 F.3d 1032, 1047

18

UNITED STATES DISTRICT COURT
For the Northern District of California

(9th Cir. 1998).  To determine whether the claim for injunctive relief predominates, the court must look to the language of Rule 23(b)(2) in light of the individual circumstances presented in the case as well as the intent of the plaintiffs in bringing the suit. See Molski, 318 F.3d at 950.  The Second Circuit elaborated further in Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001), a case which the Ninth Circuit cited with approval in Molski, 318 F.3d at 950, n.15.

> [A] district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

Robinson, 267 F.3d at 164.  Here, the named plaintiffs have satisfied the court that their primary motivation in filing this action is injunctive relief.  The statements made by plaintiff Horstmann satisfy the court that reasonable plaintiffs in general and these named plaintiffs in particular would bring this suit to obtain injunctive relief even in the absence of monetary recovery. See Horstmann Dep. at 359:10–360:11 (describing Horstmann's intentions in pursuing this litigation); Ellis Dec. ¶ 26 (outlining Ellis's primary goals in her decision to become named plaintiff); Sasaki Dec. ¶ 44 (offering Sasaki's reasons for joining the lawsuit).  Costco argues that the court should disregard self-serving declarations but offers no other way of discerning plaintiff's intent in bringing the suit as required by the Ninth Circuit. Molski, 318 F.3d at 950.  In addition to the declarations, plaintiffs' request for injunctive relief provides evidence of their primary motivation: to change the promotion practices at Costco.  The injunctive relief sought by the plaintiffs in this case would produce far-reaching changes at Costco and benefit class members in the same way.  SAC ¶ 5.  The equitable relief resulting from plaintiffs' claims for back-pay would similarly benefit the members of the class.  Moreover, injunctive relief would be both necessary and appropriate should the plaintiffs succeed in proving their Title VII claims.  Awarding damages to employees who have experienced sex discrimination would be futile if the promotion processes were not changed.  Plaintiffs have satisfied the Molski requirements with respect to their claims for injunctive relief.

The court has discretion to certify plaintiffs' claims for compensatory and punitive damages claims under Rule 23(b)(2).  Costco claims that the compensatory damages claims would require

19

1   individual determinations as to the harm suffered by each individual class member and thus preclude

2   class certification under Rule 23(b)(2).  However, courts have certified claims for compensatory

3   damages under Rule 23(b)(2).  See, e.g., Bates, 204 F.R.D. at 449 (certifying damages claims under

4   Rule 23(b)(2) and bifurcating liability and damages stages for trial to permit individual

5   determinations of damages to the extent necessary).  The need for individualized determinations of

6   compensatory damages need not defeat certification under Rule 23(b)(2); rather, the court can

7   accommodate this need by bifurcating the trial into different phases.

8        The court similarly rejects Costco's argument that punitive damages must be based on actual

9   harm to the plaintiffs and therefore require individualized determinations.  Punitive damages claims

10  are suitable for certification under Rule 23(b)(2) because such a claim focuses on the conduct of the

11  defendant and not the individual characteristics of the plaintiffs. See Barefield v. Chevron, No. C

12  86-2427, 1988 WL 188433, *3 (N.D. Cal. Dec. 06, 1988) (Henderson, J.).  Accordingly, the court

13  finds that the plaintiffs have satisfied the requirements for certification of their claims for damages

14  and injunctive relief under Rule 23(b)(2).  Therefore, the court concludes that there is no reason to

15  consider plaintiffs' request for certification of a hybrid class.

16       D.    Notification and Opt-Out Option for Potential Class Members

17       Plaintiffs argue that this court should use its discretion to certify the class under Rule

18  23(b)(2) with an option for potential class members to opt out of the class.  Rule 23(d) gives the

19  court discretion to make orders

20
        (2) requiring, for the protection of the members of the class or otherwise for the fair
21      conduct of the action, that notice be given in such manner as the court may direct to
        some or all of the members of any step in the action, or of the proposed extent of the
22      judgment, or of the opportunity of members to signify whether they consider the
        representation fair and adequate, to intervene and present claims or defenses, or
23      otherwise to come into the action . . . (5) dealing with similar procedural matters.

24

25  Fed. R. Civ. Proc. 23(d)(2), 23(d)(5).  Like the instant action, Molski, 318 F.3d at 947, contemplated

26  certification for a class of plaintiffs under 23(b)(2) who sought injunctive relief and damages.  Id.  In

27  Molski the district court certified the class under 23(b)(2) but did not provide notice or an opt-out

28

20

option to other potential class members.  Id.  The court found that the lack of notice and an opt-out

option presented due process concerns.  Id.  The court considered this issue in the context of the

Supreme Court's holding of Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), which suggested, but

stopped short of adopting a per se rule that any action seeking monetary damages is only certifiable

under Rule 23(b)(3).  Id. at 948–49.  Because the Ninth Circuit still allows "incidental" monetary

damages claims in 23(b)(2) actions, the application of a per se rule for such damages is

inappropriate.  Id. at 949.  Consequently, this court pursuant to its discretion under Rule 23(d),

hereby orders notice and the opportunity to opt out of the class be provided to potential class

members.

> E.      Trial Plan

The parties' request for the court to approve a trial plan is premature at this point.  Rather, it

is necessary for the parties to establish a date for completion of discovery.  The court requests that

the parties submit a proposed joint discovery plan for the court's approval.

In sum, the court grants plaintiffs' motion for class certification under Rule 23(a) and

23(b)(2) for their claims for damages and injunctive relief.  It further orders that potential class

members be given notice of their ability to opt-out of the class, and it declines to rule on the parties'

proposed trial plans at this time.


II.      Motion for appointment of class counsel

Federal Rule 23(g) requires the court to appoint plaintiffs' counsel in a class action.  Fed. R.

Civ. P. 23(g).  Plaintiffs request that Brad Seligman and Jocelyn Larkin of the Impact Fund; Bill

Lann Lee and James Finberg of Lieff, Cabraser, Heimann & Bernstein and Steven Stemerman and

Elizabeth Lawrence of Davis, Cowell & Bowe represent plaintiffs' class in this action.  The court is

confident in the collective and individual abilities of Mr. Seligman, Ms. Larkin, Mr. Stemerman, Ms.

Lawrence, Mr. Lee and Mr. Finberg to fairly and adequately represent the class.  Together counsel

have decades of class action and employment discrimination experience, and adequate resources to

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

pursue an action of this nature. Seligman Dec. at 2–5.  Mr. Seligman has intimate knowledge of the issues in this litigation as he has represented named plaintiff Shirley "Rae" Ellis since 2002 when she first filed a complaint against Costco with the EEOC.  Seligman Dec. at 5.  The court appoints Mr. Seligman, Ms. Larkin, Mr. Stemerman, Ms. Lawrence, Mr. Lee and Mr. Finberg as lead counsel in this action.

Accordingly, the court grants plaintiffs' motion for appointment of lead counsel.

III.    Motions to Strike Experts' Declarations

Plaintiffs have offered the declarations of three experts—Dr. Marc Bendick, Dr. Richard Drogin, and Dr. Barbara Reskin—in support of their motion for class certification to demonstrate commonality.  Costco has moved to strike the declarations of each of these experts on various grounds.  The court denies these motions with respect to the Bendick and Reskin Declarations and grants in part and denies in part the motion to strike the Drogin Declaration for the following reasons.

A.    Dr. Marc Bendick

Labor economist Dr. Marc Bendick, Jr., Ph.D. is one of the experts retained by plaintiffs.  Dr. Bendick took data provided by plaintiff's expert statistician, Dr. Richard Drogin, regarding the representation of women in four levels of manager positions at Costco, and compared that data to external benchmarks based on comparable positions at comparable companies (though how comparable the comparator positions and companies are to Costco is a matter of debate).  Dr. Bendick used data from the 2000 Census and from EEO-1 Reports compiled by the EEOC, and concluded that women are not employed by Costco in managerial positions at a rate comparable to Costco's competitors.  Dr. Bendick based this conclusion on the fact that Costco's rate of representation of women managers fell short of its competitors in all five benchmarks.  Dr. Bendick concluded that this shortfall is due to Costco's corporate culture and human resources practices, and is not due to the unavailability of qualified and interested women.

UNITED STATES DISTRICT COURT
For the Northern District of California

In support of class certification, and specifically the issue of commonality of the class, plaintiffs have filed a declaration by Dr. Bendick that contains substantially all of Dr. Bendick's benchmarks and analysis, which Costco has moved to strike. Plaintiffs subsequently filed a supplemental declaration by Dr. Bendick with their opposition to defendant's motion to strike. Dr. Bednick's initial declaration contained five benchmarking studies; Dr. Bendick's supplemental declaration, which contains mostly rebuttal arguments to Costco's experts, contains two new benchmarking studies. Expert briefing has already been extensive, and class certification discovery has closed; thus the court does not consider these two new benchmarking studies, as defendant has had no opportunity to determine the basis for these studies through deposition or other discovery methods. See generally Wong v. Regents of the Univ. of Cal., 379 F.3d 1097, 1104–05 (9th Cir. 2004) (trial court properly denied the addition of expert witnesses after the disclosure deadline where necessity of the witnesses should reasonably have been anticipated).

Dr. Bendick has testified in numerous employment discrimination actions, and his credentials as an expert are unassailed here. However, each of his benchmarking studies is attacked by defendant. Defendant's concerns with Dr. Bendick's benchmarks are based on three fundamental arguments: (1) that Dr. Bendick compared Costco with overbroad comparator categories that do not account for Costco's unique characteristics; (2) that Dr. Bendick failed to control for earnings when comparing managers at Costco and elsewhere; and (3) that Dr. Bendick overlooked the purported lack of interest of women generally for jobs that require early morning hours, such as Costco's Merchandise Manager position.

### 1.   Overbroad Comparators

Dr. Bendick's benchmarks are based upon two sets of data: the 2000 Census and EEO-1 Reports. EEO-1 Reports are annual reports filed with the EEOC by all private employers with 100 or more employees. In Benchmarks 1 and 2, Dr. Bendick compared Costco's proportions of female managers to those of General Merchandise Stores and All Retailers as defined by the 2000 Census. In Benchmarks 3 and 4, Dr. Bendick compared Costco's proportions of female managers to those of General Merchandise Stores and All Retailers as defined in EEO-1 Reports from 1999 through 2003.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   Dr. Bendick's fifth Benchmark is based on EEO-1 data for individual establishments, including 167

2   separate Costco retail establishments, and compares Costco's proportions of female managers to all

3   other General Merchandise Stores in the same labor markets as those 167 Costco establishments.

4       Costco asserts that General Merchandise Stores and All Retailers are inapt to present

5   relevant comparisons for purposes of commonality under Rule 23.  General Merchandise Stores sell

6   multiple types of merchandise, and include department stores as well as other general merchandisers

7   such as Wal-Mart and Target.  All Retailers is a more expansive category, which in addition to

8   general merchandisers includes both specialized retailers selling only one type of merchandise and

9   the small "mom and pop" retailer.  Defendant points to certain factual differences between Costco

10  and each of these categories and suggests that a comparison to the twenty largest national retail

11  chains would be more appropriate.

12      Certainly Costco is distinct in some respects from most other retailers, notwithstanding

13  statements made by Costco that it considers general merchandisers its most direct competition, and

14  the whole of the retail world its competitor in some sense.  Bendick Dec. ¶¶ 10–12.  But defendant

15  fails to demonstrate that Dr. Bendick's benchmarks deviate substantially from basic scientific

16  principles, nor that these benchmarks have no probative value.  Census figures and EEO-1 data are

17  regularly applied in employment discrimination cases, and defendant does not contend otherwise.

18  See Hazelwood Sch. Dist. v. United States, 433 U.S. 299 (1977) (properly qualified census figures

19  useful); Dukes II, 222 F.R.D. at 189 (applying EEO-1 data at class certification stage).  External

20  benchmarking is an appropriate method of analysis.  Dukes I, 222 F.R.D. at 164.  While a narrower

21  comparison of Costco and its nearest competitors may prove useful, it hardly renders Dr. Bendick's

22  analysis "junky."  Kumho Tire, 526 U.S. at 159 (Scalia, J., concurring).

23      Additionally, Costco claims that the EEO-1 category of Officials and Managers is far too

24  broad for comparisons with the particular types of managers at issue in this case.  For instance, the

25  Officials and Managers category contains a wide range of management positions within Costco,

26  including lower-level managers not at issue in this case.  Costco also quibbles that, in Benchmarks 1

27  and 2, Dr. Bendick has applied the wrong corresponding census job title to one of the four levels of

28

24

UNITED STATES DISTRICT COURT
For the Northern District of California

1  managers at Costco.  But disputes about whether the EEO-1 category applied is not particularly

2  penetrating or whether the census job title of First Line Supervisors of Sales Workers is more

3  comparable to Costco's Staff Managers than the census job title of Marketing and Sales Managers

4  go to the weight and not the admissibility of this evidence.  Even in the context of a full-blown

5  <u>Daubert</u> hearing, the duty of the trial court "is to analyze not what the experts say, but what basis

6  they have for saying it."  <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1316 (9th Cir. 1995)

7  (<u>Daubert II</u>).  Defendants have not shown, and the court cannot say, that Dr. Bendick's benchmarks

8  are not "derived by the scientific method."  <u>Daubert</u>, 509 U.S. at 590.

9          2.      <u>Failure to Control for Earnings</u>

10        Dr. Bendick's five benchmarks do not control for the level of income earned by the managers

11  at the comparator companies, although such data is available through the census for Benchmarks 1

12  and 2.  Costco asserts that this failure to control for income results in a comparison between

13  managers earning far less than Costco's managers—managers who are, according to Costco, far less

14  skilled and with fewer responsibilities than Costco's better-compensated managers.  Dr. Bendick

15  counters that using a higher pay scale would eliminate the managers at many of Costco's closest

16  competitors from comparison and would include executive managers at retail firms who do not

17  actually work in stores.

18        Costco produces substantial evidence that earnings bear heavily on the skill and productivity

19  of the employee.  The failure to control for earnings may render Dr. Bendick's benchmarks

20  unconvincing at trial.  But while controlling for earnings may be an accepted practice in the relevant

21  scientific community, defendant has not persuaded the court that a failure to control for earnings

22  renders Dr. Bendick's benchmarks completely out of step with the relevant scientific community.

23  Again, the court cannot say that Dr. Bendick's benchmarks are devoid of scientific merit;

24  accordingly, failing to control for earnings does not render the benchmarks inadmissible as a matter

25  of law.

26          3.      <u>Supply factors</u>

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  Costco also asserts that Dr. Bendick's benchmarks should be inadmissible as a matter of law

2  because the benchmarks fail to account for the relative unwillingness of women to work at jobs that

3  are as demanding as Costco's managerial jobs.  Thus, the argument goes, there are fewer women

4  vying for managerial positions at Costco, and consequently they are underrepresented in

5  management.  However, the premise that a lack of supply is the sole explanation for

6  underrepresentation of women in management is hardly uncontroverted in the relevant scientific

7  community.  Further, Dr. Bendick's benchmarks compare female managers at Costco to female

8  managers at Costco's competitors; thus, presumably a lack of supply at Costco would manifest in a

9  lack of supply at Costco's competitors.  Defendant's argument presents yet another controverted

10  issue of fact, and does not demonstrate that Dr. Bendick's alleged failure to control for supply

11  factors is a failure to apply methods accepted in the relevant scientific community.

12  While defendant's arguments may be persuasive at trial, they do not demonstrate that Dr.

13  Bendick's analysis lacks probative value or is based on "junk science."  Lust v. Merrell Dow

14  Pharms., Inc., 89 F.3d 594, 597 (9th Cir. 1996).

15  Accordingly, defendant's motion to strike the declaration of Dr. Bendick is denied.

16  B.    Dr. Richard Drogin

17  

18  Dr. Richard Drogin, Ph.D. is retained by plaintiffs as an expert in statistics.  Dr. Drogin

19  reviewed Costco's internal payroll and personnel data, and based on this data conducted statistical

20  analyses of gender disparities in various managerial positions.  Based on these analyses, Dr. Drogin

21  concluded that there is a statistically significant shortfall in the number of women promoted to the

22  AGM position, resulting in lower female representation in the AGM and GM positions; that women

23  tend to have a longer tenure and more senior experience than men prior to promotion to AGM; that

24  women tend to have a longer tenure than men prior to promotion to GM; that women are

25  significantly less likely to have Merchandise Manager experience; that the number of women

26  promoted to AGM and GM positions increased after the filing of this lawsuit; and that there is no

27  job posting data for AGM and GM promotions, and little data for Senior Staff openings.  Drogin

28

1    Dec. ¶ 25.

2        Defendant does not attack Dr. Drogin's expertise as a statistician.  Defendants argue that Dr.

3    Drogin's analyses are flawed in the following respects: (1) Dr. Drogin used data from before the

4    liability period in question in this action, and has excluded another range of time that is not

5    favorable to plaintiffs; (2) Dr. Drogin has failed to control for MM experience and experience in two

6    or more Senior Staff positions; (3) Dr. Drogin failed to exclude employees on leaves of absence

7    when analyzing promotion trends; and (4) Dr. Drogin used aggregated national data where regional

8    data is preferred.  As a result, according to defendant, Dr. Drogin's declaration is so flawed as to

9    have no relevance nor reliability to the issue of commonality.

10           1.    Dates of Data

11

12       Defendant alleges two improprieties with the data set used by Dr. Drogin.  First, defendant

13   argues that, by using data from 1999 through 2005, Dr. Drogin is using stale data far outside the

14   liability period, which in this action begins no earlier than December 28, 2001.  Second, defendant

15   argues that Dr. Drogin has arbitrarily excluded data in certain analyses from January 1, 2004 through

16   July 31, 2004—the seven months prior to the filing of this action—in order to derive results more

17   favorable to plaintiffs' allegations.

18       Defendant asserts that because plaintiffs cannot demonstrate a statistical disparity in

19   promotions during the liability period, plaintiffs have no evidence of discrimination during the

20   liability period.  This assertion ignores the anecdotal evidence plaintiffs have presented of liability

21   period discrimination.  Defendant concedes that "some courts"—most notably the United States

22   Supreme Court—recognize that in claims based on discrete acts, background information outside the

23   liability period may be used to support a timely claim.  National R.R. Passenger Corp. v. Morgan,

24   536 U.S. 101, 113 (2002).  Thus, were plaintiffs' claims based on the acts within the liability period

25   plaintiffs have identified, this evidence would likely be admissible background information.

26       More significantly, plaintiffs' claims are based on a pattern or practice of discrimination.

27   Defendant cites numerous cases for the proposition that pre-liability period data is objectionable in

28

27

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Title VII cases but fails to note that this rule has not been applied to pattern and practice claims. Lyons v. England, 307 F.3d 1092, 1107 n.8 (9th Cir. 2002) (noting that the question of what constitutes timely filing—and by extension relevant evidence—of a pattern and practice claim is unanswered). The court finds no legal bar to the use of pre-liability period evidence in this case, and finds Dr. Drogin's analysis relevant to plaintiffs' claims.

Defendant entreats the court to analyze the extent of an alleged "overhaul" of Costco's promotional practices in 2001. Costco claims that these changes render any pre-overhaul data irrelevant. However, whether the overhaul of Costco's promotional practices effected significant change is disputed by the parties and is a factual matter the court is not empowered to determine at this stage. Costco's change in promotional practices does not render Dr. Drogin's analysis irrelevant for purposes of class certification.

Costco also claims that Dr. Drogin truncated the data he used to analyze the amount of time that women spend in Senior Staff positions before promotion to AGM, excluding data from January through July of 2004. Plaintiffs argue that Costco began to focus on this issue early in 2004, before the filing of plaintiffs' complaint, and that therefore there is a reasonable basis for the exclusion of data from the first half of 2004. The court notes that Dr. Drogin consistently incorporated data from the first half of 2004 in his other analyses, and thus is left to wonder why, if this data should be excluded, it was not consistently excluded by Dr. Drogin. It appears that, as defendant argues, Dr. Drogin has truncated the time period analyzed in order to reach the conclusion that a statistically significant disparity exists in the average number of years men and women take to be promoted from Senior Staff positions to AGM positions. Dr. Drogin's conclusion appears not properly based in scientific method, and plaintiffs offer no viable alternative explanation. Accordingly, the court will strike Dr. Drogin's analysis of the average years to reach AGM found in ¶ 22 and Table 8 of the Drogin Declaration. The court notes that striking this conclusion does not destroy commonality.

2.      Failure to Control for Prior Experience

UNITED STATES DISTRICT COURT
For the Northern District of California

Defendant claims that Dr. Drogin has failed to control for major non-discriminatory factors in his analysis. As a result, according to defendant, Dr. Drogin's analysis is flawed as a matter of law. Plaintiffs counter that the factors defendant claims Dr. Drogin should have accounted for are tainted variables and that generally any failure to include variables affects the weight but not admissibility of the analysis.

The parties do not dispute that the position of Merchandise Manager is the most common Senior Staff position held prior to promotion to AGM, and that rotation through two or more Senior Staff positions is an important indicator for promotion to AGM. Costco claims that plaintiffs have failed to show that the MM variable is tainted, and as such, the failure to control for it renders Dr. Drogin's analysis inherently unreliable. See Pottenger v. Potlatch Corp., 329 F.3d 740, 748 (9th Cir. 2003) (failure to account for "relevant variables" insufficient to raise triable issue of pretext).

However, plaintiffs are not required at this stage to prove that MM is a tainted variable. Plaintiffs have presented substantial evidence, beyond mere allegations, that raises the inference that MM is tainted by Costco's preference for hiring men for that position. That this alleged taint is controverted is not significant. The court cannot say that, as a matter of law, Dr. Drogin was required to control for this variable. The omission of this variable does not render Dr. Drogin's analysis "so incomplete as to be inadmissible as irrelevant." Bazemore v. Friday, 478 U.S. 385, 400 n.10 (1986).

Further, the court notes that "objections to a study's completeness generally go to 'the weight, not the admissibility of the statistical evidence[.]'" Obrey v. Johnson, 400 F.3d 691, 695 (9th Cir. 2005) (quoting Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1476 (9th Cir. 1995)). In Title VII cases, statistical studies are typically held inadequate to support a prima facie case of discrimination, but these problems rarely render statistics inadmissible under Federal Rule of Evidence 702. Id. at 696. Defendant's arguments regarding the control of relevant variables are geared towards the weight of plaintiffs' evidence and do not establish that Dr. Drogin's analysis is inadmissible as a matter of law.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.     Leaves of Absence

Defendant argues that because Dr. Drogin failed to exclude employees who were on leave of absence at the end of the year, his analysis is unreliable, as employees on leave are ineligible for promotion.  This is pertinent, defendant suggests, because the evidence shows that women managers at Costco are more likely to take leaves of absence, of greater length, than men.  Plaintiffs counter that accounting for leaves of absence has no impact on promotion disparities, an assertion defendant does not refute.

This inquiry is again one based on the merits of each analysis.  Costco points to no authority, based either in case law or in statistical science, suggesting that accounting for leaves of absence is requisite to an accurate analysis.  The court finds that, according to the evidence, Dr. Drogin's failure to account for leaves of absence is immaterial, and does not render his analysis irrelevant or unreliable.

### 4.     Aggregation of Data

Dr. Drogin analyzed Costco's management data on a national, aggregate level.  Defendant argues that aggregated data is disfavored, and that when disaggregated data is used it demonstrates statistically significant gender disparities in only two of the seven regions analyzed (the eighth Texas region does not contain enough samples for analysis).  Plaintiffs argue in response that aggregated data is appropriate both legally and scientifically.

Defendant presents no evidence that aggregate data is not used in the relevant scientific community.  Rather, defendant's argument is premised on the assumption that disaggregated data is favored—if not required—by law.  However, aggregated data is acceptable where "more probative than subdivided data." Paige v. California, 291 F.3d 1141, 1148 (9th Cir. 2002).  Plaintiffs suggest that aggregated data is more probative because of the relatively small sample size involved and the alleged involvement of Costco's national-level management in promotion decisions.  See Drogin Supp. Dec. ¶ 16 (distinguishing the present analysis from Dr. Drogin's regional analysis in Dukes I, 222 F.R.D. at 160–61, which involved a much greater number of promotions—over 45,000

compared to under a thousand in the present case—and lower-level promotion decisions). Defendants do not refute plaintiffs' rationale for using aggregate data, but instead argue that disaggregated data is more probative because it demonstrates statistically significant disparities in only two regions.  In essence, both sides seem to argue that their selected method is more probative because it supports their allegations or defenses.

Defendant fails to show that, as a matter of law, disaggregated data is required in this case. Plaintiffs have suggested a reasonable scientific rationale for using aggregated data, and disaggregated data, while often preferred, is not a *per se* legal requirement.  Further, defendant's argument has a problematic circularity.  If aggregated data were inadmissible, plaintiffs would be required to use regional data to prove allegations of nationwide decision-making.  But plaintiffs' theory is that promotion decision-making is overseen on a national level, and "[r]ight or wrong, they are entitled to attempt to prove their case." Paige, 291 F.3d at 1149.  Defendant is free to produce evidence to counter plaintiffs' theory, but this does not mean that aggregated data should be inadmissible.  Given plaintiffs' allegations, aggregated data is probative and should be considered in determining commonality under Rule 23.

Defendant's arguments again are, on the whole, better directed to the weight of plaintiffs' evidence than its admissibility.  Aside from Dr. Drogin's analysis of the comparative time to reach the AGM position, which arbitrarily cuts off the date range analyzed, defendant has not demonstrated that Dr. Drogin's methods are unreliable, nor that his analyses are irrelevant. Defendant has not demonstrated that, as a matter of law, pre-liability period data should be inadmissible, the MM position is untainted as a control, or that aggregation of data is non-probative.

Accordingly, defendant's motion to strike Paragraph 22 and Table 8 of the Drogin Declaration are granted, and defendant's motion to strike the Drogin Declaration is otherwise denied.

C.      Dr. Barbara Reskin

31

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Plaintiffs submit Dr. Reskin's sociological analysis in order to establish that plaintiffs have

2   experienced gender discrimination based on a common culture of sex stereotyping and paternalism.

3   Defendant moves to strike Dr. Reskin's declaration for three reasons.  Defendant alleges that Dr.

4   Reskin's proffered opinions are (1) irrelevant because her opinions are based on laboratory studies

5   and not actual Costco practices, and they fail to consider the mitigating effects of individuating

6   information on stereotyping behavior; (2) unreliable because they are premised on the erroneous

7   understanding that regional managers are the decision-makers in the promotions of senior staff

8   managers and (3) unreliable because if Dr. Reskin's theories were true, then gender disparities

9   disfavoring women would be evident in all promotion practices and performance reviews, which

10  defendant denies.  Defendant also appears to challenge Dr. Reskin's qualifications as an expert and

11  her overall research methodology.  Mot. to Strike at 1, 21–25.[7]  The court evaluates each argument

12  in turn.

13  The court first addresses Costco's challenge to Dr. Reskin's qualifications and its contention

14  that her research methodology is unreliable.  Costco claims that Dr. Reskin is not an expert in

15  industrial psychology, that she has no knowledge of Costco employment practices and has not

16  performed any independent research into job descriptions or job evaluations.  Mot. to Strike at

17  21–24.  It also contends that Dr. Reskin is not an expert on performance appraisals in industry and

18  that she does not know crucial information about "promotability profiles."  Id. at 21.  Costco defines

19  Dr. Reskin's methodology as controversial and it repeatedly asserts that she does not have a

20  scientific basis for her opinions.  Id. at 1.

21  Dr. Reskin has demonstrated to the court that she has a sufficient educational and

22  professional background, and experience in employment litigation, to qualify as an expert for the

23  purposes of establishing the commonality of plaintiffs' claims.  Reskin Dec. at 2–4; See Daubert,

24  509 U.S. at 582–584 (illustrating sufficient expert qualifications).  The type of sociological study in

25  which Dr. Reskin relies has been considered by courts in Title VII cases.  Price Waterhouse v.

26  Hopkins, 490 U.S. 228, 235–36 (1989) (utilizing expert evidence on sex stereotyping by a

27  sociologist to find that a promotion decision was gender discrimination); Dukes II, 222 F.R.D. at

28

192 (court relying upon similar sociological sex stereotyping data in consideration of plaintiffs'
commonality arguments).  Dr. Reskin arrived at her opinion by reviewing materials pertaining to
personnel policies and practices of Costco in addition to deposition testimony of Costco employees.
Reskin Dec. at 4.  Dr. Reskin claims that she evaluated this information in the context of "a large
body of social scientific research on sex stereotyping and ingroup bias . . . [which] appears in peer
reviewed journals or edited volumes of the highest scholarly caliber."  Id.  Defendant has not
proved, therefore, that Dr. Reskin's research methodology deviates from similar research
methodology accepted by courts in Title VII cases or is otherwise "junk science."  Lust, 89 F.3d at
597.  Therefore, as a threshold matter, the court finds Dr. Reskin's expert qualifications sufficient
and her research methodology reliable for Rule 23 purposes.

> 1.    Laboratory Studies

Defendant contends that Dr. Reskin's opinion is based on laboratory studies that are not
transferrable to the decisionmaking environment at Costco.  Certain decisionmaking factors
pertinent to the industrial setting, defendant asserts, are missed in the laboratory studies on which
Reskin relies.  Furthermore, Costco alleges that Dr. Reskin did not account for the mitigating effect
of individuating information used in making promotion decisions.  Defendant claims that such
information reduces the likelihood that decisions were based on sex stereotyping.

Defendant is challenging the relevance of the laboratory studies to the ultimate question of
whether or not sex stereotyping exists in the promotion practices at Costco.  While defendant may
raise valid criticisms of the laboratory studies, these criticisms address the weight that the studies
should be afforded.  Dukes II, 222 F.R.D. at 192.  Assuming defendant is correct that the laboratory
studies did not replicate the exact Costco environment or take into account all mitigating
circumstances, the studies may be probative nonetheless in making a commonality determination.
The court does not find defendant's criticisms so substantial as to render the studies wholly
irrelevant and therefore inadmissible.

> 2.    Regional Managers

UNITED STATES DISTRICT COURT
For the Northern District of California

33

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Defendant asserts that Dr. Reskin based her opinions about Costco's decisionmaking

2    practices on the incorrect understanding that regional managers make promotional decisions.  The

3    effect of this erroneous assumption is, Costco contends, Dr. Reskin's failure to consider mitigating

4    individuating information that GMs, the actual decisionmakers, have when making their promotion

5    decisions.  Defendant's argument about the invalidity of Dr. Reskin's opinion fails for the same

6    reasons as above.  First, it appears from defendant's own motion that regional managers do play a

7    role in promotional decisionmaking.  Mot. to Strike at 12 (explaining that regional managers

8    ultimately approve the GMs' decision to promote senior staff managers).  Therefore Dr. Reskin's

9    assertions cannot be entirely unreliable in this regard.  Defendant's motion demonstrates, however,

10   that the role of regional managers in the decisions to promote is a key factual issue to be determined

11   at trial.  Second, even if regional managers play no role in certain decisions, defendant does not

12   prove that this fact was the lynchpin of Dr. Reskin's opinion.  Although Dr. Reskin's opinion may

13   be based in part on disputed factual information, it does not invalidate her study.  The mistake in Dr.

14   Reskin's study, if a mistake at all, goes to its weight, but does not render her study completely

15   unreliable so that it lacks any probative value.

16              3.      Gender Disparities

17          Defendant challenges the validity of Dr. Reskin's analysis on the basis that if her opinions

18   regarding sex stereotyping at Costco were accurate, gender disparities would be evident in all

19   promotion decisions and performance evaluations.  Defendant asserts that there are no significant

20   disparities in the promotion of men and women to AGMs, no disparities in the promotion of men

21   and women from AGMs to GMs, and no disparities in the promotion of men and women to AGMs

22   within the limitations period.  Mot. to Strike at 14–15.  Plaintiffs, however, claim that gender

23   disparities do exist in these categories.  See Drogin Dec. at 17.  The same is true of defendant's

24   argument that women are rated higher in performance evaluations therefore disproving Dr. Reskin's

25   hypothesis.  Plaintiffs say that performance reviews are conducted in a different manner than

26   promotional decisions.  Opp. at 18.  Such differences support Dr. Reskin's hypothesis, plaintiffs

27   claim, because performance reviews are conducted according to written criteria that hold managers

28

34

accountable for their decisions.  Id.  Therefore, it is consistent with Dr. Reskin's theories that women receive favorable treatment in performance reviews but not in promotional decisions because promotional decisions are made according to subjective criteria which allow for sex stereotyping. Id.

Sound arguments by plaintiffs and defendant on this point further illustrate that the interpretation of statistical data on promotional decisions and performance reviews is an issue to be determined at trial.  At the certification stage, the court will not make determinations on the merits of whether such disparities do exist and what any disparities mean. Eisen, 417 U.S. at 177–78.  The court rejects defendant's argument that Dr. Reskin's opinion is unreliable because there are no gender disparities in certain categories.

In conclusion, the court acknowledges defendant's arguments as viable attacks on the weight of Dr. Reskin's opinion.  However, the court determines that Dr. Reskin's opinion is based on valid principles and acceptable methodology.  Defendant has not proved that Dr. Reskin's opinions are so unreliable or irrelevant that they are fatally flawed and thus inadmissible as a matter of law.  The court finds Dr. Reskin's opinion probative on the question of commonality and therefore denies defendant's motion to strike her declaration.

In sum, the court grants in part defendant's motion to strike the declaration of Dr. Drogin with respect to his analysis of gender disparity in the number of years to reach AGM position and denies the motion with respect to the other portions of Dr. Drogin's declaration.  The court denies defendant's motions to strike the declarations of Dr. Reskin and Dr. Bendick.

CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that:

1) Plaintiffs' motion to certify a class is GRANTED.

2) The class consists of all current and former female Costco employees nationwide who have

35

1  been denied promotion to GM or AGM or denied promotion to Senior Staff positions since January

2  3, 2002.

3     3) The named class representatives are: Shirly Rae Ellis, Leah Horstman, and Elaine Sasaki..

4     4) The counsel of named plaintiffs is counsel for the class.

5     5) Defendant's motion to strike Dr. Drogin's declaration is GRANTED in part and DENIED in

6  part.

7     6) Defendant's motions to strike declarations of Dr. Reskin and Dr. Bendick are DENIED.

8

9

10      IT IS FURTHER ORDERED that counsel shall confer and submit a proposed class notice in

11  compliance with this order within thirty (30) days of the date of this order.

12

13

14

15      Dated:        January 10, 2007

16

17

18  _____

19  MARILYN HALL PATEL
    United States District Court Judge
20  Northern District of California

21

22

23

24

25

26

27

28

36

1

<u>ENDNOTES</u>

2

3

4

1.  As plaintiffs' counsel clarified at the hearing on November 7, 2006, plaintiffs have brought individual FEHA claims and do not seek certification of a class for these claims.

5

6

2.  All facts herein have been taken from the plaintiffs' Second Amended Complaint ("SAC"), unless otherwise noted.

7

8

3. Plaintiff Ellis filed an EEOC charge against Costco on October 30, 2002. Therefore, the class membership date is January 3, 2002.  Ellis Dec. ¶ 13 & Exh. 14.

9

10

11

4.The parties have called the courts attention to a recently decided case under federal securities laws, <u>In re Initial Public Offering Securities Litigation</u>, No. 05-3349-CV, 2006 WL 3499937 (2d Cir. Dec. 5, 2006).  While that case by reasons of statutes and facts is distinguishable, this court's holding is consistent with respect to the requirements for a Rule 23 showing.

12

5.The court notes that Ellis was a current employee at the time this action was commenced.

13

14

15

6.The Ninth Circuit disapproved of class certification in <u>Molski</u> for reasons wholly inapposite here. <u>Molski</u> did not alter the longstanding rules about predominance under Rule 23.  In that case, damages were released without adequate due process, and the court confronted a consent it found to be unfair and inadequate for absent class members. 318 F.3d 937 at 951–55.

16

17

7.  While defendant also contends that Dr. Reskin's opinions are unreliable because her assessment of the Costco CEO's statements, and Costco's policies and practices are not based in scientific fact these claims are part of a larger attack on Dr. Reskin's methodology.

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California