THE IMPACT FUND
Jocelyn D. Larkin (SBN: 110817)
125 University Ave., Suite 102
Berkeley, CA 94710
Telephone: (510) 845-3473
Facsimile: (510) 845-3654
jlarkin@impactfund.org

LEWIS, FEINBERG, LEE,
   RENAKER & JACKSON, P.C.
Bill Lann Lee (SBN: 108452)
Lindsay Nako (SBN: 239090)
476 9th Street
Oakland, CA 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
blee@lewisfeinberg.com

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, LEAH HORSTMAN, and ELAINE SASAKI on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>           Defendant. | Case No.: C-04-3341 EMC<br><br>**FOURTH AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Individual and Representative Plaintiffs Shirley "Rae" Ellis, Leah Horstman, and Elaine Sasaki (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## INTRODUCTION

1. Plaintiffs Elaine Sasaki, a current Costco employee, and Shirley "Rae" Ellis and Leah Horstman, two former Costco employees, bring this class action against Costco Wholesale Corporation ("Costco") on behalf of themselves and all similarly situated current and former female employees of Costco who have been or will be subjected to Costco's continuing policies and practices of gender discrimination with respect to promotion into two warehouse management positions:  Assistant General Manager ("AGM") and General Manager ("GM").

2. Plaintiffs charge that Costco discriminates against its female employees by using a uniform, corporate-directed selection system mandated by a CEO who believes that women are "caretakers" who "have the responsibility for the children and for the family" and are not interested in these promotions.  Costco's selection system fails to promote equally or better qualified women into the AGM and GM management positions.

3. This class action seeks to end Costco's discriminatory practices and to provide monetary relief to those who have been affected by these practices.

4. This action was originally filed on August 17, 2004, alleging that Costco discriminated against its female employees with respect to promotion into warehouse management positions.  On January 11, 2007, the district court certified a class of women challenging Costco's system for promotion into AGM and GM positions in its retail warehouse stores in the United States.  On September 16, 2011, the Ninth Circuit resolved Costco's appeal of the class certification order, affirming in part, vacating in part and remanding to the district court for further proceedings.

//

//

//

1

## JURISDICTION AND VENUE

2      5.      Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

3  §§ 2000(e), et. seq.  This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 1331

4  and 1343(a)(4).  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

5  claims under the California Fair Employment & Housing Act, Government Code § 12940, et. seq.

6  Jurisdiction is proper in this Court because the claims of Plaintiffs Sasaki and Horstman arose in

7  California.  Plaintiffs expressed interest in positions in California, and some of the positions that

8  Costco denied Plaintiffs were in California.

9      6.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §

10  1391(b) & (c).  The claims of Plaintiffs Sasaki and Horstman arose in California.  In addition,

11  some of the positions that Costco denied Plaintiffs were in California.  Members of the class

12  reside throughout the United States, including Northern California.  Many of the acts alleged in

13  this Third Amended Complaint occurred in this District and gave rise to the claims alleged.

14

## PARTIES

15      7.      Plaintiff Shirley "Rae" Ellis was employed by Costco Wholesale Corporation until

16  November 2004.  She resides in Arvada, Colorado.

17      8.      Plaintiff Leah Horstman was employed by Costco Wholesale Corporation until

18  July 2004.  She resides in Descanso, California.

19      9.      Plaintiff Elaine Sasaki is currently employed by Costco Wholesale Corporation in

20  its Bay Area Region.  She resides in Fresno, California.

21      10.      Defendant Costco Wholesale Corporation is a Washington corporation and

22  Fortune 500 company with approximately 433 warehouses in the U.S., including over 100 stores

23  in California.  Costco's corporate headquarters are in Issaquah, Washington.  During its last

24  reported fiscal year, ended August 31, 2011, Costco reported almost $88.9 billion in revenues.

25

## CLASS ALLEGATIONS

26      11.      Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

27  Procedure on behalf of:  (a) all women who are currently employed or who will be employed at

28  any Costco warehouse in the United States ("Injunctive Relief Class"); and (b) all women who

- 2 -

have been employed at any Costco warehouse store in the United States since January 3, 2002 ("Monetary Relief Class"), who have been or will be subject to Costco's system for promotion to Assistant General Manager and/or General Manager positions (collectively, the "Classes").

12.     The members of the Injunctive Relief Class and the Monetary Relief Class are sufficiently numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the membership of the Classes exceeds 700 former and current female employees.

13.     There are questions of law and fact common to the Classes, central to the resolution of the case, and capable of classwide resolution.  Answers to these common questions will advance this litigation significantly. Such common questions capable of generating common answers apt to drive this litigation include, but are not limited to, the following:

(1) whether Costco's promotion system for Assistant General Manager and General Manager positions discriminates against female employees in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq.;

(2) whether Costco has engaged in a pattern and practice of disparate treatment adverse to female employees with its use of the selection system for promotion into Assistant General Manager and General Manager;

(3) whether Costco's selection system for promotion into Assistant General Manager and General Manager has a disparate impact on female employees;

(4) whether elements of Costco's selection system for promotion into Assistant General Manager and General Manager are capable of separation for analysis;

(5) whether the disparate impact resulting from the selection system for promotion into Assistant General Manager and General Manager is justified by business necessity;

(6) whether the disparate impact constitutes a violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq.;

(7) whether injunctive relief and other equitable remedies are warranted for the Injunctive Relief class; and

(8) whether declaratory relief, other equitable remedies, back pay, front pay, punitive and compensatory damages are warranted for both Classes.

14.     The answers to these common questions will be the same for all Plaintiffs and the members of the Classes, and will establish (or not establish) the elements of Plaintiffs' and the Classes' claims.

15.     The claims alleged by Plaintiff Elaine Sasaki are typical of the claims of the Injunctive Relief Class.

16.     The claims alleged by Plaintiffs Shirley Rae Ellis, Leah Horstman, and Elaine Sasaki are typical of the claims of the Monetary Relief Class.

17.     Plaintiff Elaine Sasaki will fairly and adequately represent the interests of the Injunctive Relief Class.

18.     Plaintiffs Shirley Rae Ellis, Leah Horstman, and Elaine Sasaki will fairly and adequately represent the interests of the Monetary Relief Class.

19.     The Injunctive Relief Class is properly maintainable under Federal Rule of Civil Procedure 23(b)(2) because defendant has acted or refused to act on grounds generally applicable to this class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to this class as a whole.  Alternatively, claims for injunctive and declaratory relief for the Injunctive Relief Class are properly certified under Federal Rule of Civil Procedure 23(c)(4) because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

20.     The Monetary Relief Class is properly certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

21.     Alternatively, class wide liability claims are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the Classes because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

22.     Punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of Costco and not the individual characteristics of the Plaintiffs and are an allowable form of incidental monetary relief.

1

## **GENERAL ALLEGATIONS**

2

*Senior Management and Executive Hierarchy*

3       23.     James Sinegal is Costco's co-founder and was the company CEO from its

4 founding until January 1, 2012.   Mr. Sinegal remains a member of the company's Board of

5 Directors.  W. Craig Jelinek, a long-time Costco executive, was appointed to the position of CEO

6 when Mr. Sinegal stepped down.

7       24.     For the entire class period, Mr. Sinegal has wielded great influence over Costco's

8 senior management and executives.

9       25.     Costco's U.S. operations are divided into three geographic divisions, each led by

10 an Executive Vice President (EVP).  Each Costco Executive Vice President reports to Costco's

11 Chief Operating Officer, who in turn reports to Costco's CEO.

12       26.     Each division is divided into regions managed by a Senior Vice President (SVP).

13 There are currently eight regions.  Each region is ordinarily comprised of two or more districts.

14 Districts are headed by a District Manager, although that person's title changes to Assistant Vice

15 President after a year in the job, and to Vice President after two years.

16       27.     Costco's regional and divisional vice presidents meet every four weeks at

17 corporate headquarters.

18       28.     Costco's Executive Committee is comprised of the top 33 company officers,

19 including its divisional operations Executive Vice Presidents.  Only two members of the

20 Executive Committee are female and neither oversees U.S. warehouse operations.  At the time

21 that Plaintiffs filed their complaint and for some time after, there were no women on Costco's

22 Executive Committee. Costco's corporate office sets and implements the personnel policies that

23 govern all retail warehouse employees.

24       29.     Costco's personnel policies are contained in Costco's Employee Agreement,

25 which applies to all Costco employees.

26 *Warehouse Management Hierarchy*

27       30.     Costco has a uniform management hierarchy in each warehouse.  Within each

28 Costco warehouse, the management structure consists of a General Manager, two to three

Assistant General Managers, and three to four Senior Staff Managers.  Costco's Senior Staff Managers are divided into four categories:  Front End Managers, Administrative Managers, Receiving Managers, and Merchandise Managers.

31.    Costco's Corporate Office establishes salary ranges for each of the management jobs within the warehouse.

32.    General Managers are responsible for the operation of their warehouses.  They make an average salary over $116,000 and are eligible for bonuses and potentially lucrative stock options.  General Managers report to District Manager/Vice Presidents.  As of January 2005, women held 16 percent of General Manager positions and a lower percentage in earlier years.

33.    Assistant General Managers are second in command within each warehouse and earn an average salary of approximately $73,000, plus stock and bonuses.  One becomes a GM almost always by promotion from the position of AGM.

*Pre-Selection By Means of Promotable Lists and the Green Room*

34.    Costco has a uniform selection system for promotions into AGM and GM that does not vary by region.

35.    Costco promotes AGMs and GMs almost entirely from within its organization.

36.    Costco has a uniform system of pre-selection and grooming of AGM and GM candidates directed from the top.  At the direction of former CEO Jim Sinegal, District and Regional Vice Presidents prepare lists of the top candidates for promotion into AGM and GM in their regions.  These senior executives then forward the lists of "promotables" to the Divisional Vice Presidents.   The lists are created and maintained at the regional level.

37.    Employees are not consistently informed that they are on the promotable list or even that promotable lists exist.

38.    There are no legitimate, validated or business-related criteria for the selection of candidates to the promotable list by District and Regional Vice Presidents.

39.    Costco displays the photographs and biographies of future promotables in the confidential "Green Room" in the Corporate Headquarters.   Costco limits access to the "Green Room" to the company's top executives.  Plaintiffs are informed and believe that the "Green

1    Room" is now maintained in an electronic format and that access is still limited to senior

2    executives.  Senior executives use the Green Room to assess the promotable "bench."

3        40.    Costco invites those placed on the top of the promotable list to the company's

4    annual managers meeting.  Individuals on the promotable list are introduced to senior executives

5    when those officials visit and inspect warehouse stores.  These opportunities to create personal

6    relationships with higher level executives further reinforce the advantages of the pre-selected

7    favorites.

8        41.    Costco's Regional and Divisional Operations Managers meet frequently and

9    receive instructions from Costco's CEO regarding the criteria he expects them to apply in making

10   selection decisions.

11       42.    Costco's former CEO has expressed stereotyped perceptions about the roles for

12   women and men in the warehouse.

13       43.    Although Costco's female managers actually have lower turnover than their male

14   counterparts, former CEO Sinegal has assumed that female managers prefer more family-friendly

15   jobs rather than warehouse management because  "women have a tendency to be the caretakers

16   and have the responsibility for the children and for the family."

17       44.    CEO Sinegal believes that women prefer front end and administrative positions,

18   rather than merchandising positions (stocking) and turn down opportunities for these positions

19   more than their male counterparts.  He testified, "I think since the beginning of time women have

20   had a tendency to come in to our business in positions that were more associated with the

21   administrative aspect of the company, the front end, the marketing end, that was the way they

22   entered our business.  So many of our positions out on the sales floor in merchandising are jobs

23   like forklift drivers, and so that's been traditionally a male dominated field,  something that has

24   changed and is changing over a period of time, but that has historically been a male oriented job. .

25   . . It's been true at Costco. . . ."

26       45.    Mr. Sinegal has communicated his biased and stereotyped opinions of women's

27   roles in the workplace to the executives who worked under him, which have influenced how

28   selections are made for AGM and GM.

*Selections for General Manager*

46.     Costco does not post openings for promotion into General Manager.

47.     Costco does not have any procedure to apply for promotion into General Manager.

48.     Costco does not require decision-makers to interview candidates for promotion into General Manager or to consider more than one candidate.

49.     Costco does not have any written criteria for promotion into General Manager.

50.     Costco does not have any minimum qualifications for promotion into General Manager, other than experience as an Assistant General Manager.

51.     Costco provides nothing in writing to its employees that explains the qualifications or the process for promotion to General Manager.

52.     Costco does not require decision-makers to maintain any records concerning General Manager promotions, such as the candidates considered, the criteria used, or the reasons for selecting a particular candidate.

53.     Costco employs unvalidated criteria to select General Managers, including the promotable lists described above.

54.     Costco's former CEO has confirmed that the criteria used to select General Managers are the same throughout Costco's U.S. Operations.  In addition to prior service as an Assistant General Manager, they are "people skills," "merchandising skills," and "adroit with the numbers . . . and the whole financial aspect of their business."  Costco has no guidelines or instructions about how to assess, apply or weight these criteria.

55.     The regional Senior Vice President recommends a candidate for selection as General Manager, but that recommendation must be approved by the Executive Vice President, the Chief Operating Officer, and the CEO.

56.     Costco's CEO personally approves every General Manager selection.

*Selections for Assistant General Manager*

57.     Costco does not post openings for Assistant General Manager.

58.     Costco does not have any procedure to apply for promotion into Assistant General Manager.

- 8 -

59.     Costco does not require decision-makers to interview candidates for promotion into Assistant General Manager or to consider more than one candidate.

60.     Costco does not have any written criteria for promotion into Assistant General Manager.

61.     Costco does not have any minimum qualifications for promotion into Assistant General Manager, other than experience in Senior Staff Manager positions.

62.     Costco provides nothing in writing to its employees that explains the qualifications or the process for promotion to Assistant General Manager.

63.     Costco does not require decision-makers to maintain any records concerning Assistant General Manager promotions, such as the candidates considered, the criteria used, or the reasons for selecting a particular candidate.

64.     Costco employs unvalidated criteria to select Assistant General Managers, including the promotable lists described above.

65.     According to the former CEO, the criteria used to select Assistant General Managers are uniform throughout Costco's U.S. Operations.  These  are "people skills," "merchandising skills," and "adroit with the numbers … and the whole financial aspect of their business."  Costco has no guidelines or instructions about how to assess, apply or weight these criteria.

66.     Selections for Assistant General Manager are made by District Vice Presidents, and will not take effect until the Senior Vice President has been informed.

*No Changes to Selection System Since Original Class Certification Order*

67.     On information and belief, Costco has not changed its policies or procedures for promotion into AGM or GM positions since the district court's class certification order in January 2007.

*Discriminatory Impact of Selection System for AGM and GM Promotions*

68.     Statistical proof demonstrates that women were disadvantaged to a statistically significant degree by this process.

69.     For the period 1999 to 2005, there was a statistically significant disparity in the

- 9 -

1 selection of women for AGM positions compared to men.

2     70.    In 2006, although women held about 28% of the Senior Staff positions, their

3 representation at AGM and GM levels dropped to roughly 16% (AGM) and 13% (GM).

4     71.    In every Costco region, except Texas where there were very few promotions, there

5 was a negative shortfall in the promotion of women into AGM prior to the filing of this action.

6     72.    Under-promotion of women into AGM had the effect of diminishing the pool of

7 eligible women for promotion to General Manager positions, since promotions to such positions

8 are usually drawn from the Assistant General Manager ranks.

9     73.    As a result of Costco's discriminatory policies and practices, it has lagged behind

10 its competitors in the representation of women in management positions.

11 *Admissions of Biases in Selection System and CEO's Decision to Veto Changes to System*

12     74.    In 2001, the company convened interviews and focus groups among its managers

13 (knows as "the BOLD Initiative") to review barriers to the advancement of women.

14     75.    In these meetings, Costco managers identified that its promotion policies led to

15 stereotyping and disadvantaged women.   Participants identified the "'good old boys' network,"

16 "type casting people (stereotypes)" and "[p]rejudices" as potential barriers.  Barriers included

17 "[l]ack of consistent application of systems dealing with promotions, training, reviews, etc.,"

18 "[r]elying on the use of 'word of mouth' to evaluate talent" and "[s]tereotyping." Promotions

19 were "[d]one as special favors at times or based on relationships," and "[i]t depend[s] on who you

20 know as to whether you get the training needed to be promoted."

21     76.    In a May 2001 report, the internal project team identified some of the "barriers that

22 have prevented the company from benefiting from a diverse management team" and concluded

23 that "[i]nconsistencies in the promotion practices allow for favoritism and individual biases to

24 enter into the process."

25     77.    In response to the BOLD Initiative and the managers' recommendations, Costco

26 adopted the Rothman Workplan.

27     78.    The Workplan was adopted in response to criticisms that Costco's inconsistent

28 promotion practices allowed for favoritism and individual biases.  The Rothman Workplan only

1    changed promotion practices as to the four Senior Staff jobs, but did not change those practices

2    relating to promotions to the higher level Assistant General Manager and General Manager

3    positions.

4           79.    In 2001 or 2002, the CEO personally blocked the recommendation to make

5    changes to the promotion policies and practices for Assistant General Manager and General

6    Manager that were intended to eliminate barriers for women.

7           80.    At a company meeting, CEO Sinegal publicly dismissed job posting as "bullshit."

8           81.    Four years later, in August 2005, Costco launched a second series of focus groups

9    on potential barriers to the advancement of women and minorities.

10          82.    The barriers identified by Costco's managers mirrored the earlier comments made

11   by the 2001 focus groups.  Managers again cited the lack of written guidelines and the lack of

12   clarity in promotion criteria as barriers to the promotion of women. They noted the need for

13   "consistent criteria for promotion," and for "identifying what skills and behaviors are necessary

14   and communicating the expectations consistently."  "Employees when questioned do not know

15   the path to promotion…"  Others observed that getting promoted depended partly on "[w]ho you

16   know," the "tendency to promote people like us" and "[s]tereotypes."  Participants also reported

17   that barriers included employees "not knowing of job opportunities across the country (job

18   postings)," and "lack of knowledge about upcoming opportunities."

19          83.    The focus groups indentified specific barriers to women obtaining merchandise

20   experience, including the "[p]erception of stockers as big strong men," and the "unconscious

21   stereotype that women can't be Merchandise Managers or forklift drivers."  They recognized that

22   women were blocked by lack of rotation into merchandising positions.  "[A]s rotation has slowed

23   this has affected our female managers.  Many of them have started in areas such as Marketing,

24   Admin, and Front End.  In many cases, they have occupied these roles and have not been rotated

25   on to the floor, which is a requisite for advancement."

26   //

27   //

28   //

1    *Anti-Discrimination, EEO and Diversity Policies have been Ineffective*

2         84.    Costco's Anti-Discrimination, EEO and Diversity Policies have been ineffective in

3    preventing discrimination including the discriminatory effects of the promotion policies and

4    practices for AGM and GM.

5              a.   Costco has had written EEO and diversity policies that prohibit discrimination

6                   for a number of years that pre-dated the BOLD initiative and the 2005 manager

7                   focus groups.

8              b.   In 2001, Costco managers participating in the BOLD Initiative identified that

9                   its promotion practices led to bias and favoritism and recommended that the

10                  company adopt written criteria and other measures to ameliorate the adverse

11                  effects on women employees.  Costco failed to adopt these steps for the AGM

12                  and GM positions.

13             c.   In its 2001 report, the BOLD team observed:  "Corporate wide diversity has

14                  not been seen as a top priority issue or key to success of the company."

15             d.   Four years later, in 2005, manager focus groups again identified the absence of

16                  written criteria and information as leading to stereotyping and barriers for

17                  women in obtaining promotion to AGM and GM.   The presence of a written

18                  EEO policy had not changed the discriminatory elements of the selection

19                  system for AGM or GM nor mitigated its discriminatory effects.

20             e.   Between these two efforts, in 2003, plaintiff Elaine Sasaki complained to

21                  Costco's Director of Human Resources, Judy Vadney, about the the company's

22                  promotion system, specifically highlighting "the subjective application of

23                  standards" and "the appearance … of gender bias."  Ms. Vadney did not

24                  investigate these systemic claims.

25             f.   The presence of its written EEO policy did not prevent the discriminatory

26                  elements of the selection system for AGM or GM nor did it mitigate the

27                  discriminatory effects of the selection system.

28

g.   Costco has failed to take prompt, effective corrective action in response to
complaints of discrimination.

85.   Costco has pursued policies and practices on a continuing basis which have had the effect of denying equal job opportunities to qualified women.  Such policies and practices include, without limitation:

a.   Pre-selection and grooming of candidates for promotion into AGM and GM
through  promotable lists and the Green Room, based upon unvalidated
criteria;

b.   Reliance upon unvalidated criteria for making promotion decisions into AGM
and GM;

c.   Failing and refusing to consider females for promotion into AGM and GM on
the same basis as males are considered;

d.   Failing and refusing to promote females into AGM and GM positions on the
same basis as male are promoted;

e.   Failing to provide females with accurate and timely notice of promotional
opportunities;

f.   Establishing and maintaining unvalidated requirements for promotions which
have the effect of excluding qualified women and which have not been shown
to have any significant relationship to job performance or be necessary to the
safe and efficient conduct of Costco's business; and

g.   Failing and refusing to take adequate steps to eliminate the effects of its past
discriminatory practices.

### CLAIMS OF NAMED PLAINTIFF SHIRLEY "RAE" ELLIS

86.   Plaintiff Shirley "Rae" Ellis, a female, was hired by Costco as an Assistant Manager in 1998.

87.   Prior to being recruited to join Costco, Ms. Ellis had extensive management experience.  At the time Costco hired Ms. Ellis, she was working as a General Manager for Wal-Mart's Sam's Club, one of Costco's main competitors.  The position of General Manager at

- 13 -

Sam's Club is similar in function and job duties to the General Manager position at Costco.

88.     Ms. Ellis agreed to take a step down in pay and seniority and join Costco as an Assistant General Manager rather than a General Manager because she was told that Costco did not hire General Managers from the outside and that she would be eligible for promotion to General Manager within a year.  Promotion to General Manager would have brought increased salary and substantial bonuses that would have raised her compensation above what she was then earning at Sam's Club.  Ms. Ellis repeatedly told Costco during the interview process that, due to her age (45) and experience, she did not want to come to Costco just to be an Assistant General Manager.  Costco assured her that she would not have to wait long for promotion to General Manager.

89.     In Ms. Ellis's first year with Costco, she transferred locations twice in order to further her goal of promotion to GM.  During this time, several GM positions became available but she did not learn of them until after they were filled.

90.     After joining Costco, Ms. Ellis received excellent performance reviews and was told that she was eligible for promotion and that promotion was imminent.  She repeatedly told Costco of her interest in promotion to General Manager.  Ms. Ellis advised Costco of her willingness to move anywhere Costco desired to fill a General Manager position in a California warehouse.  However, despite the fact that Costco has at least 100 warehouses in California and that there were numerous openings for General Manager in these warehouses and others during the relevant time, Ms. Ellis was not offered a position in any of them.

91.     In 2002, Ms. Ellis sent a letter to her supervisors expressing a "burning desire" to help Costco be successful and advance within the company, asking how the GM selection process worked, where she stood as a candidate for promotion, and what she needed to do to become a GM.

92.     Ms. Ellis was prevented from applying for specific openings in these warehouses because Costco does not post or otherwise notify employees of these openings.

93.     Instead, Ms. Ellis is informed and believes that these openings were filled mostly with males with less experience and inferior qualifications.

- 14 -

94.     On or about October 24, 2002, Ms. Ellis filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Attached to this Complaint as Exhibit A, and incorporated herein by reference, is a copy of that charge.  Ms. Ellis received a Notice of Right to Sue from the EEOC and timely filed this action.  Under a "work-sharing" agreement between the EEOC and the California Department of Fair Employment and Housing, charges filed with the EEOC are to be automatically cross-filed with the DFEH.

95.     In 2004, after Ms. Ellis filed her charge of discrimination with the EEOC, Costco retaliated against Ms. Ellis by, among other things, subjecting her to differential discipline, and moving her from her warehouse in Aurora, Colorado to a remote location, requiring a multi-hour commute.  On or about April 23, 2004, Ms. Ellis filed a retaliation charge with the EEOC. Attached as Exhibit B and incorporated by reference is a copy of the charge of retaliation that Ms. Ellis filed.  Ms. Ellis has received a Notice of Right to Sue from the EEOC and has timely filed this action.

96.     In November 2004, Ms. Ellis resigned her employment with Costco because the ongoing retaliation made her position untenable.

97.     Costco has discriminated against Ms. Ellis on account of her gender as follows:

    a.  By failing and refusing to consider her for promotional opportunities on the same basis as males are considered;

    b.  By failing and refusing to provide her with timely and accurate notice of employment opportunities;

    c.  By relying on a centralized system of pre-selection through the promotable lists and Green Room;

    d.  By relying on unvalidated criteria to make promotion decisions;

    e.  By promoting similarly-situated and less qualified males more rapidly that her;

    f.  By failing to change a system for pre-selection and selection that Costco knew was disadvantaging and discriminating against women; and

    g.  By retaliating against her for filing a charge of discrimination with the EEOC.

98.     Ms. Ellis is informed and believes that Costco discriminated against her in the same manner that it discriminates against the Classes generally.  Her primary intention with regard to this case is to end Costco's pattern and practice of discrimination.

**CLAIMS OF NAMED PLAINTIFF LEAH HORSTMAN**

99.     Plaintiff Leah Horstman, a female, was hired by Costco as a "caller" in May 1981.  When she left Costco in July 2004, Ms. Horstman held the position of Receiving Manager at Costco's La Mesa, California warehouse.

100.     Ms. Horstman was a Costco employee for 23 years.  She began working for Costco as a student and continued working for Costco after she received her college degree.  She served in numerous positions with Costco including approximately 15 years in management positions.

101.     During her tenure at Costco, Ms. Horstman consistently received excellent performance reviews and was told that she was eligible for promotion and that promotion was imminent.  She repeatedly informed senior managers and executives at Costco of her interest in being promoted to senior store management positions such as Assistant General Manager.  Ms. Horstman advised Costco of her willingness to move outside of California for an Assistant Manager position.  Despite the fact that Costco opened many new warehouses across the United States, Ms. Horstman was not offered an Assistant General Manager position in any of them.  Ms. Horstman was prevented from applying for specific openings in these warehouses because Costco does not post or otherwise notify employees of these openings and has no application procedure for such positions, instead, Plaintiff is informed and believes that these openings were filled mostly with males with less experience and inferior qualifications.

102.     Ms. Horstman ceased working for Costco in July 2004 because she became convinced that despite her excellent performance, her 23 years of service, and her repeated requests, Costco would never promote her to Assistant General Manager.

103.     On or about October 11, 2003, Mr. Horstman filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH").  Attached to this Complaint as Exhibit

C, and incorporated herein by reference, is a copy of that charge.  Ms. Horstman has received a Notice of Right to Sue from the EEOC and has timely filed this action.

104.    Costco has discriminated against Ms. Horstman on account of her gender as follows:

    a.   By failing and refusing to consider her for promotional opportunities on the same basis as males are considered;

    b.   By failing and refusing to provide her with timely and accurate notice of employment opportunities;

    c.   By relying on a centralized system of pre-selection through the promotable lists and Green Room;

    d.   By relying on unvalidated criteria to make promotion decisions;

    e.   By promoting similarly-situated and less qualified males more rapidly that her;

    f.   By failing to change a system for pre-selection and selection that Costco knew was disadvantaging and discriminating against women;

    g.   By giving her shifting and inconsistent requirements for promotion;

    h.   By discouraging her from seeking promotion; and

    i.   By promoting similarly-situated and less qualified males more rapidly than her.

105.    Ms. Horstman is informed and believes that Costco has discriminated against her in the same manner that it discriminates against the Classes generally.  Her primary intention with regard to this case is to end Costco's pattern and practice of discrimination.

## CLAIMS OF NAMED PLAINTIFF ELAINE SASAKI

106.    Plaintiff Elaine Sasaki, a female, was hired by Costco as a front end cashier in 1985.  She is currently an Assistant General Manager at Costco's Clovis, California warehouse.

107.    Ms. Sasaki has been a Costco employee for 27 years.  Within five years of being hired, Ms. Sasaki was promoted to staff-level manager and subsequently held every staff level position in the Clovis, California warehouse.  After a brief stint as Administrative Assistant to the Regional Vice President in the Bay Area Region, she was promoted to the position of Assistant Manager and was assigned to the Chico, California store in November 1996.  In March 2001 she

became an Assistant Manager in the Texas Region and then transferred to the Visalia, California store in Costco's Bay Area Region as Assistant Manager in March 2002.

108. Throughout her time at Costco, Ms. Sasaki has received excellent performance reviews and has been repeatedly told she was eligible for promotion. In 2000, she was told that she was on the "promotable list." From the time of her promotion to Assistant Manager in 1996, Ms. Sasaki has repeatedly told Costco that she is interested in a promotion to General Manager. Despite her desire to stay in the Bay Area region, in March 2001, she transferred to the Texas region because she was informed and believed that there would be more opportunity for promotion to General Manager in that region. In March 2002, Ms. Sasaki returned to Northern California after being told she would be considered for a General Manager position within the next one to two years either in the Visalia, California warehouse or in one of the half-dozen soon-to-be-opened Costco warehouses. However, despite the fact that Costco has at least 100 warehouses in California and that there have been numerous openings in these and other warehouses in the Bay Area Region during the relevant time, Ms. Sasaki has not been offered a position in any of them.

109. Ms. Sasaki has been prevented from applying for specific openings in these warehouses because Costco does not post or otherwise notify employees of these openings. Instead, Ms. Sasaki is informed and believes that many of these openings have been filled with males with less or similar experience and inferior qualifications.

110. In September 2003, Ms. Elaine Sasaki complained in writing to Costco's Director of Human Resources, Judy Vadney, about the company's promotion system, specifically highlighting "the subjective application of standards" and "the appearance … of gender bias." She wrote: "I want to be evaluated on facts. I want to be held to the same standards as my peers, but it does not help that these standards seem to shift with each meeting."

111. On or about March 1, 2005, Ms. Sasaki filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which, plaintiffs are informed and believe, was cross-filed with the California Department of Fair Employment & Housing ("DFEH"). Attached to this Third Amended Complaint as Exhibit D, and incorporated

by reference, is a copy of that charge.  Plaintiffs have received a right to sue letter for this charge.

112.   Between approximately September 2003 and the present, after Ms. Sasaki filed an internal complaint and filed her charge of discrimination with the EEOC, Costco retaliated against Ms. Sasaki by, namely, refusing to consider her for numerous Warehouse Manager openings both in her region and across the country.  Despite having positive annual reviews, expressing her continued interest in a promotion, and communicating her willingness to relocate for a promotion, Ms. Sasaki's last promotion to Assistant Warehouse Manager occurred in 1996. On or about March 6, 2013, Ms. Sasaki filed a retaliation charge with the EEOC.  Attached as Exhibit E and incorporated by reference is a copy of the charge of retaliation that Ms. Sasaki filed.  Ms. Sasaki has received a Notice of Right to Sue from the EEOC and has timely amended this action to add her individual retaliation claim.

113.   Costco has discriminated against Ms. Sasaki on account of her gender as follows:

a.   By failing and refusing to consider her for promotional opportunities on the same basis as males are considered;

b.   By failing and refusing to provide her with timely and accurate notice of employment opportunities;

c.   By relying on a centralized system of pre-selection through the promotable lists and Green Room;

d.   By relying on unvalidated criteria to make promotion decisions;

e.   By promoting similarly-situated and less qualified males more rapidly that her;

f.   By failing to change a system for pre-selection and selection that Costco knew was disadvantaging and discriminating against women;

g.   By promoting similarly-situated and less qualified males more rapidly than her; and

h.   By retaliating against her for filing an internal complaint and a charge of discrimination with the EEOC.

//
//

114. Ms. Sasaki is informed and believes that Costco has discriminated against her in the same manner that it discriminates against the Classes generally. Her primary intention with regard to this case is to end Costco's pattern and practice of discrimination.

**FIRST CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000(3), et. seq. on behalf of the Title VII class)**

115. Plaintiffs incorporate Paragraphs 1 through 114.

116. This claim is brought on behalf of Plaintiffs and the Classes.

117. The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e), et. seq.

118. Plaintiffs have received Right to Sue letters from the EEOC and have commenced this action in a timely manner. Plaintiffs have therefore exhausted their administrative remedies and fulfilled all conditions precedent to suit.

119. Costco has maintained a system for making decisions about promotions into AGM and GM positions that relies on a system of pre-selection and grooming through the Promotable Lists and the Green Room, as well as unvalidated selection criteria, and lacks any meaningful posting and application process. This system has a disparate impact on female employees.

120. Costco's promotion system for Assistant General Manager and General Manager is not justified by business necessity or, if it could be justified, there are less discriminatory alternatives to it.

121. Costco's promotion system for Assistant General Manager and General Manager is not capable of separation for purposes of analysis.

122. Costco's discriminatory practices described above have resulted in a loss of past and future wages and other job benefits.

123. Plaintiffs request relief as provided for below in the Prayer.

//

//

//

//

- 20 -

**SECOND CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964**
**42 U.S.C §§ 2000 (e), et. seq. on behalf of Title VII class)**

124.    Plaintiffs incorporate Paragraphs 1 through 114.

125.    This claim is brought on behalf of Plaintiffs and the Classes.

126.    The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e), et. seq.

127.    Costco has engaged in a pattern and practice of intentional discrimination against the class and has denied women the same opportunities for promotion afforded to similarity situated male employees.

128.    Costco's discriminatory practices described above have resulted in a loss of past and future wages and other job benefits, and have caused Plaintiffs to suffer humiliation, embarrassment and emotional distress.

129.    Costco acted with malice or reckless indifference to the protected rights of Plaintiffs and the members of the Classes. Plaintiffs and the members of the Classes are thus entitled to recover punitive damages in an amount to be determined according to proof.

130.    Plaintiffs request relief as provided for below in the Prayer.

**THIRD CLAIM FOR RELIEF**
**(California Fair Employment and Housing Act,**
**Govt. Code §§ 12940, et. seq. on behalf of Plaintiffs only)**

131.    Plaintiffs incorporate Paragraphs 1 through 114.

132.    This claim is brought on behalf of the Plaintiffs only.

133.    The foregoing conduct violates the California Fair Employment and Housing Act, Government Code §§ 12940 et. seq. Plaintiffs have received a right to sue letter from the DFEH and have commenced this action in a timely manner.

134.    Defendant's discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiffs to suffer humiliation, embarrassment, and emotional distress.

135.    Costco acted with oppression, fraud and malice. Plaintiffs are thus entitled to recover punitive damages in an amount to be determined according to proof.

**FOURTH CLAIM FOR RELIEF**
(Title VII of the Civil Rights Act of 1964
42 U.S.C. §§ 2000(e), et. seq.  for Retaliation Against Plaintiff Ellis)

136.    Plaintiff Ellis incorporates Paragraphs 1 through 98.

137.    This claim is brought on behalf of Plaintiff Shirley "Rae" Ellis individually for her retaliation claim.

138.    Defendant discriminated against Plaintiff Ellis on the basis of her gender by refusing to promote her and by retaliating against her for filing a charge of discrimination with the EEOC.

139.    Defendant's discriminatory and retaliatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff Ellis to suffer humiliation, embarrassment, and emotional distress.

140.    Costco acted with malice or reckless indifference to the protected rights of Plaintiff Ellis.  Plaintiff Ellis is thus entitled to recover punitive damages in an amount to be determined according to proof.

141.    Plaintiff Ellis therefore requests relief as provided for below in the Prayer.

**FIFTH CLAIM FOR RELIEF**
(Title VII of the Civil Rights Act of 1964
42 U.S.C. §§ 2000(e), et. seq.  for Retaliation Against Plaintiff Sasaki)

142.    Plaintiff Sasaki incorporates Paragraphs 1 through 114.

143.    This claim is brought on behalf of Plaintiff Elaine Sasaki individually for her retaliation claim.

144.    Defendant discriminated against Plaintiff Sasaki on the basis of her gender by refusing to promote her and by retaliating against her for filing an internal complaint and a charge of discrimination with the EEOC.

145.    Defendant's discriminatory and retaliatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff Sasaki to suffer humiliation, embarrassment, and emotional distress.

146.    Costco acted with malice or reckless indifference to the protected rights of Plaintiff Sasaki.  Plaintiff Sasaki is thus entitled to recover punitive damages in an amount to be

determined according to proof.

147.    Plaintiff Sasaki therefore requests relief as provided for below in the Prayer

## RELIEF ALLEGATIONS

148.    Plaintiff Sasaki and the Injunctive Relief Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiff Sasaki and the Injunctive Class are now suffering and will continue to suffer irreparable injury from Costco's discriminatory acts and omissions.

149.    The actions on the part of Costco have caused and will continue to cause Plaintiffs and members of the Classes substantial losses in earnings, promotional opportunities, and other employment benefits, and have caused Plaintiffs and members of the Classes to suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

## PRAYER FOR RELIEF

Plaintiffs and the Classes pray for relief as follows:

1.    Certification of the Injunctive Relief class, designation of Plaintiff Elaine Sasaki as representative of the Injunctive Relief Class, and designation of her counsel of record as Class Counsel;

2.    Certification of the Monetary Relief class, designation of Plaintiffs Shirley "Rae" Ellis, Leah Horstman, Elaine Sasaki as representatives of the Monetary Relief Class, and designation of their counsel of record as Class Counsel;

3.    All damages which the Plaintiffs and the Classes have sustained as a result of Costco's conduct, including back pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of Costco, and for the emotional distress, humiliation, embarrassment, and anguish, according to proof;

4.    For Plaintiffs' individual claims, all damages they have sustained as a result of Defendant's conduct, including back pay, front pay, general and specific damages for lost

compensation and job benefits they would have received but for the discriminatory practices of defendant, and damages for emotional distress, according to proof;

5.     Exemplary and punitive damages for the Classes in an amount consistent with the law;

6.     A preliminary and permanent injunction against Costco and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, that requires the following:

    a.  desisting from engaging in each of the unlawful practices, policies, customs, and usages set forth in this complaint;

    b.  adopting non-discriminatory and objective promotion standards;

    c.  creating a transparent and non-discriminatory job posting and application process for Assistant General Manager and General Manager positions;

    d.  instituting an affirmative action policy to ensure that women receive the share of Assistant General Manager and General Manage positions they would have obtained were it not for Costco's discriminatory practices; and

    e.  creating a monitoring and reporting system to ensure that injunctive relief is fully implemented.

7.     A declaratory judgment that the challenged practices are unlawful under 42 U.S.C. §§ 2000(e), et. seq., Title VII of the Civil Rights Act of 1964.

8.     An order assigning Plaintiffs and the Classes to those jobs they would have held but for Defendant's discriminatory practices;

9.     An adjustment of the wage rates, benefits, and seniority rights for Plaintiffs and the Classes to that level which Plaintiffs and the Classes would be enjoying but for Defendant's discriminatory practices;

10.    For prejudgment interest to the extent permitted by law;

11.    For costs and expenses of suit incurred, including reasonable attorneys' fees to the extent available by law; and

//

1        12.    For such other legal and equitable relief as the Court may deem just and proper.

2    Dated:  March 28, 2013

3                                By:   /s/ Jocelyn D. Larkin
                                  Jocelyn D. Larkin

4                               THE IMPACT FUND
Jocelyn D. Larkin (SBN: 110817)

5    125 University Ave., Suite 102
Berkeley, CA 94710

6    Telephone: (510) 845-3473
Facsimile: (510) 845-3654

7    jlarkin@impactfund.org

8

9    Additional Counsel for Plaintiffs

10   LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

11   Kelly Dermody (SBN: 171716)
Daniel Hutchinson (SBN: 239458)

12   Embarcadero Center West
275 Battery Street, 30th Floor

13   San Francisco, CA 94111-3339
Telephone: (415) 956-1000

14   Facsimile: (415) 956-1008
kdermody@lchb.com

15

16   DAVIS, COWELL & BOWE LLP
Steve Stemerman (SBN:067690)

17   Elizabeth A. Lawrence (SBN:111781)
595 Market Street, #1400

18   San Francisco, CA 94105
Telephone: (415) 597-7200

19   Facsimile: (415) 597-7201
eal@dcbsf.com

20   ALTSHULER BERZON LLP
James M. Finberg (SBN: 114850)

21   Eve H. Cervantez (SBN: 164709)
177 Post Street, Suite 300

22   San Francisco, CA 94108
Telephone: (415) 421-7151

23   Facsimile: (415) 362-8064
jfinberg@altshulerberzon.com

24

25

26

27

28

- 25 -

1

## JURY TRIAL DEMAND

2          Plaintiffs and the Classes they represent demand jury trial on all claims where such trial is

3   authorized by law.

4   Dated:  March 28, 2013

                                                By:     /s/ Jocelyn D. Larkin_____
5                                                           Jocelyn D. Larkin

6                                               THE IMPACT FUND
                                                Jocelyn D. Larkin (SBN: 110817)
7                                               125 University Ave., Suite 102
                                                Berkeley, CA 94710
8                                               Telephone: (510) 845-3473
                                                Facsimile: (510) 845-3654
9                                               jlarkin@impactfund.org

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28