THE IMPACT FUND
Jocelyn D. Larkin (SBN: 110817)
Robert Schug (SBN: 249640)
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  (510) 845-3473
Facsimile:  (510) 845-3654
jlarkin@impactfund.org

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
Bill Lann Lee (SBN: 108452)
Lindsay Nako (SBN: 239090)
476 9th Street
Oakland, CA  94607
Telephone:  (510) 839-6824
Facsimile:  (510)  839-7839
blee@lewisfeinberg.com

Kelly M. Dermody (SBN: 171716)
kdermody@lchb.com
Daniel M. Hutchinson (SBN: 239458)
dhutchinson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

DAVIS, COWELL & BOWE, LLP
Steve Stemerman (SBN: 067690)
Elizabeth A. Lawrence (SBN: 111781)
595 Market Street, #1400
San Francisco, CA  94105
Telephone:  (415) 597-7200
Facsimile:  (415) 597-7201
eal@dcbsf.com

ALTSHULER BERZON LLP
James M. Finberg (SBN: 114850)
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
jfinberg@altshulerberzon.com

Attorneys for Plaintiffs and Certified Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, et al., | Case No.  C04-3341 EMC |
| Plaintiffs, | Assigned to Hon. Edward M. Chen |
| v. | **NOTICE OF MOTION AND MOTION FOR (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF CLASS NOTICE AND NOTICE PLAN; AND (3) SETTING OF SCHEDULE FOR FINAL APPROVAL** |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | |
| | Hearing Date:     February 6, 2014<br>Hearing Time:     1:30 p.m.<br>Courtroom:          5 (17th Floor) |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION; RELIEF SOUGHT ....................................................... 1

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.      RELEVANT FACTUAL AND PROCEDURAL HISTORY................................. 2

          A.    The Complaint......................................................................................... 2

          B.    Plaintiffs Have Explored their Claims and Positions through Extensive Discovery........................................................................ 2

          C.    Both Parties Asserted their Positions through Extensive Motion Practice....................................................................................... 3

               1.    Costco's Motion to Transfer Venue................................................ 4

               2.    Plaintiffs' Motion for Class Certification ....................................... 4

               3.    Costco's Appeal to the Ninth Circuit Court of Appeals ................. 4

               4.    Plaintiffs' Second Motion for Class Certification........................... 5

    II.     SETTLEMENT NEGOTIATIONS ................................................................ 6

    III.    THE TERMS OF THE PROPOSED SETTLEMENT ....................................... 8

          A.    Programmatic Relief ................................................................................. 8

               1.    Job Analysis and Selection Criteria .............................................. 8

               2.    Posting and Registration of Interest ............................................. 10

               3.    Merchandising Class ..................................................................... 11

               4.    Promotion Process ......................................................................... 11

               5.    Training and Communication ......................................................... 11

               6.    Recordkeeping and Compliance .................................................... 12

               7.    Term ............................................................................................. 12

          B.    Monetary Relief ..................................................................................... 12

               1.    $8 Million Settlement Fund ......................................................... 12

               2.    The Claims Process ...................................................................... 13

               3.    Context Briefs .............................................................................. 13

               4.    Claim Formats .............................................................................. 13

                     a.    Claims by Written Submission.......................................... 14

                     b.    Claims by Formal Arbitration .......................................... 14

               5.    Adjustment of Awards and Confidentiality ................................... 15

          C.    Scope of the Release ............................................................................... 15

          D.    Resolution of the Named Plaintiffs' Claims ............................................ 16

          E.    Attorneys' Fees and Costs....................................................................... 16

ARGUMENT ..................................................................................................................... 16

**TABLE OF CONTENTS**
**(continued)**

Page

I.      PRELIMINARY APPROVAL SHOULD BE GRANTED ................................. 16

     A.      The Legal Standards for Preliminary Settlement Approval ..................... 16

     B.      The Proposed Settlement Falls Within the Range of Possible Approval and There are No Obvious Deficiencies ................................... 17

     C.      The Proposed Settlement was the Product of Serious, Informed, Non-Collusive Negotiations by Experienced Counsel............................ 20

     D.      The Proposed Settlement is Reasonable in Light of the Risks, Expense, and Delay Inherent in Continued Litigation .............................. 21

     E.      The Resolution of the Named Plaintiffs' Claims is Reasonable .............. 23

     F.      The Proposed Awards of Attorneys' Fees, Costs, and Plaintiff Service Payments are Reasonable ........................................................... 23

II.     THE PROPOSED NOTICE AND NOTICE PLAN SHOULD BE APPROVED.......................................................................................................... 24

III.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ................. 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## Cases

*Bond v. Ferguson Enters., Inc.*,
   2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ........................................................ 21, 22

*Carter v. Anderson Merchandisers, LP*,
   2010 WL 1946784 (N.D. Cal. May 11, 2010) ........................................................ 20

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................. 24

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................ 16

*Dukes v. Wal-Mart Stores, Inc.*,
   No. C01-02252 (N.D. Cal.) ....................................................................................... 4

*Duling v. Gristede's Operating Corp.*,
   2013 WL 3146772 (S.D.N.Y. June 19, 2013) ........................................................ 23

*E.E.O.C. v. Morgan Stanley & Co.*,
   256 F.R.D. 124 (S.D.N.Y. 2004) ............................................................................ 23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................................... 5

*Evans v. Linden Research, Inc.*,
   2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ........................................................ 24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................... 16, 17

*Harris v. Vector Marketing Co.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................. 17, 20

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 17

*Jaffe v. Morgan Stanley*,
   No. 06 Civ. 39303 (N.D. Cal. Feb. 7, 2008) .......................................................... 23

*Lo Re v. Chase Manhattan Corp.*,
   1979 WL 236 (S.D.N.Y. May 25, 1979) ................................................................ 23

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ................................................................................ 20

*Nielson v. The Sports Authority*,
   2013 WL 3957764 (N.D. Cal. July 29, 2013) ........................................................ 20

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 16, 17

*Riker v. Gibbons*,
   2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................................... 20

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................ 20

*Teamsters v. United States*,
   431 U.S. 324 (1977) ................................................................................................ 19

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Vasquez v. Coast Valley Roofing, Inc.,*
        670 F. Supp. 2d 1114 (E.D. Cal. 2009) ......................................................................... 21
4
     *Wal-Mart Stores, Inc. v. Dukes,*
5        131 S.Ct. 2541 (2011)................................................................................... 3, 5, 19, 22

6                                         **Statutes**

     California Fair Employment & Housing Act,
7        Government Code §§ 12940 *et seq.*.................................................................... 2, 23

8    Title VII of the Civil Rights Act of 1964,
         42 U.S.C §§ 2000(e) *et seq.* ................................................................................... 2
9
                                            **Rules**

10   Fed. R. Civ. P. 23(b)(2) ............................................................................................ 4, 5

11   Fed. R. Civ. P. 23(c)(2) ............................................................................................. 24

     Fed. R. Civ. P. 23(e) .................................................................................................. 1
12
     Fed. R. Civ. P. 23(f)............................................................................................. 3, 4, 6
13
                                          **Treatises**

14   Manual for Complex Litigation (Fourth)
         § 21.632 ................................................................................................................ 16
15
     Manual for Complex Litigation (Fourth)
16       § 21.634 ................................................................................................................ 16

     Manual for Complex Litigation (Second)
17       § 30.44 (1985)...................................................................................................... 17

18

19

20

21

22

23

24

25

26

27

28

- iv -

1

## NOTICE OF MOTION AND MOTION; RELIEF SOUGHT

2      Please take notice that, on February 6, 2014 at 1:30 p.m. before the Honorable Judge

3  Edward M. Chen, United States District Court, 450 Golden Gate Ave., San Francisco, CA,

4  Plaintiffs will seek an order granting preliminary class action settlement approval.

5      Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs request that the Court: (1) grant preliminary

6  settlement approval; (2) approve a proposed notice and notice plan; and (3) set a schedule for

7  final settlement approval.  (*See* Proposed Order.)

8

## INTRODUCTION

9      This action, filed in August 2004, alleges that Costco Wholesale Corporation

10  discriminates against female employees by using a uniform, corporate-directed system that fails

11  to promote equally or better qualified women into the positions of Assistant General Manager and

12  General Manager.  Over nearly ten years of litigation, the Named Plaintiffs and their counsel have

13  worked diligently to prosecute the claims of the class members.  Likewise, Costco has

14  consistently denied the allegations, and has aggressively asserted its defenses.

15      The parties have now reached a proposed agreement to resolve this dispute.  The proposed

16  class action settlement agreement is the product of over five months of good-faith negotiations,

17  aided by an experienced and well-respected mediator.  It was reached by experienced counsel,

18  and informed through extensive discovery, motion practice, and expert analysis.  If approved, the

19  settlement will provide class-wide programmatic relief addressing the alleged practices at issue in

20  this litigation, and will also create a formal, expedited claims procedure through which the

21  individual claims of the class members may be finally resolved.  In exchange, Costco will receive

22  a release from the settlement class members of all claims for individual and class-wide

23  declaratory, injunctive, and monetary relief.

24      The proposed settlement is fair, adequate, and reasonable.  It was reached through serious,

25  informed, non-collusive negotiations, falls within the range of possible approval, and contains no

26  obvious defects.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary

27  settlement approval; (2) approve the proposed notice and notice plan; and (3) set a schedule for

28  final settlement approval.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

**I.      RELEVANT FACTUAL AND PROCEDURAL HISTORY**

**A.      The Complaint**

Plaintiff Shirley "Rae" Ellis filed a class charge of discrimination with the EEOC on October 30, 2002.  (ECF No. 1 at 18-22.)  She filed this lawsuit on August 17, 2004.  (*Id.*)  In the Fourth Amended Complaint, Ms. Ellis, along with Named Plaintiffs Leah Horstman and Elaine Sasaki, bring claims against Defendant Costco Wholesale Corporation on behalf of themselves and all others similarly situated, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000(e) *et seq.*  (ECF No. 718.)  Plaintiffs allege that Costco discriminates against female employees by using a uniform, corporate-directed system that fails to promote equally or better qualified women into Assistant General Manager ("AGM") and General Manager ("GM") positions.  (*Id.* ¶¶ 115-130.)  In addition to the class claims, the Named Plaintiffs bring individual discrimination claims under the California Fair Employment & Housing Act, Government Code §§ 12940 *et seq.*  (*Id.* ¶¶ 131-135.)  Ms. Ellis and Ms. Sasaki also allege individual Title VII retaliation claims.  (*Id.* ¶¶ 136-147.)

**B.      Plaintiffs Have Explored their Claims and Positions through Extensive Discovery**

The Named Plaintiffs vigorously pursued their claims and the claims of the classes through extensive discovery spanning over nine years of litigation.

During the period leading up to Plaintiffs' first class certification motion (2004 through 2006), Class Counsel served six sets of document requests containing 143 separate requests for production, and also served 19 interrogatories.  (Larkin Decl. ¶ 5.)  Class Counsel took the depositions of twelve fact witness, as well as three depositions of Costco pursuant to Fed. R. Civ. P. 30(b)(6).  (*Id.*)  Counsel also assisted the Named Plaintiffs in responding to Costco's requests for production, interrogatories, and requests for admissions.  (*Id.*)  Class Counsel defended the depositions of the three Named Plaintiffs (twice each) and five class members.  (*Id.*)

Plaintiffs also obtained more than 39,000 pages of documents, as well as electronic personnel and payroll data regarding Costco warehouse employees.  (ECF No. 134 ¶ 4; Larkin

1   Decl. ¶ 6.)  Plaintiffs spent many hours reviewing this information and data in preparation for the

2   2006 class certification motion.  (Larkin Decl. ¶ 6.)  Plaintiffs retained three expert witnesses—a

3   statistician, a sociologist, and a labor economist—each of whom provided extensive analysis of

4   the employment practices at issue.  (*Id.*)  Costco deposed each of Plaintiffs' expert witnesses, and

5   Class Counsel also deposed three of Costco's four experts.  (*Id.*)

6        Following the Ninth Circuit's remand of the initial class certification decision and this

7   Court's September 2012 certification order, the parties resumed discovery in preparation for

8   dispositive motions and trial.  (*See* ECF No. 704.)  Plaintiffs served four additional sets of

9   document requests containing 45 requests for production, and served nine interrogatories.

10  (Larkin Decl. ¶ 7.)  Class Counsel also assisted the Named Plaintiffs in responding to Costco's

11  additional document requests, interrogatories, and requests for admissions.  (*Id.*)  Plaintiffs

12  obtained several hundred thousand additional pages of documents from Costco, including

13  personnel files and electronically stored information.  (*See* ECF No. 720; Larkin Decl. ¶ 7.)  In

14  addition, Costco produced supplemental personnel and payroll data (updated through mid-2013),

15  which the parties and their statistical experts used to reevaluate their respective positions in

16  preparation for dispositive motions, trial, and settlement negotiations.  (Larkin Decl. ¶ 7.)

17       Under the most recent pretrial order, the cut-off for non-expert discovery was set for

18  October 31, 2013, the deadline for dispositive motions was January 30, 2014, and trial was set to

19  begin on March 17, 2014.[1]  (ECF No. 746.)

20       **C.**    **Both Parties Asserted their Positions through Extensive Motion Practice**

21       The parties also engaged in extensive motion practice.  These efforts included a contested

22  motion for class certification that was fully briefed and decided, appealed to the Ninth Circuit

23  under Fed. R. Civ. P. 23(f), and subsequently re-briefed in this Court following the Supreme

24  Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  When the proposed

25  settlement was reached, both parties were preparing to file summary judgment and *Daubert*

26  motions, and Costco was planning to file a motion for decertification.

27  _____

[1] The parties requested and received two extensions of the pretrial deadlines in order to focus
28  their efforts on mediation.  (ECF Nos. 731, 745.)

NOTICE OF MOTION AND MOTION FOR
                                                                                PRELIMINARY APPROVAL
                                                                                C04-3341 EMC

1

### 1. **Costco's Motion to Transfer Venue**

Shortly after the filing of the Complaint, Costco filed a motion to transfer venue on October 15, 2004, arguing that the litigation should be moved to the District of Colorado, the Western District of Washington, or the Southern District of California.  (*See* ECF Nos. 6, 65, 66, 70, 74.)  The Court denied the motion without prejudice, subject to renewal by Costco after discovery on the scope and geographic distribution of the proposed class.  (ECF No. 77.)  The parties subsequently conducted discovery and submitted additional briefing.  (*See* ECF No. 81.)  On May 31, 2005, the Court denied the motion to transfer.  (ECF No. 98.)

### 2. **Plaintiffs' Motion for Class Certification**

On August 28, 2006, Plaintiffs filed their motion for class certification.  (ECF No. 127.)  Not surprisingly, the motion was vigorously contested.  Costco opposed the motion, and also filed motions to strike the declarations of each of Plaintiffs' three expert witnesses.[2]  (ECF Nos. 433, 435, 436, 447.)  On January 11, 2007, the Court granted Plaintiffs' motion and certified a class under Fed. R. Civ. P. 23(b)(2) of "all current and former female Costco employees nationwide who have been denied promotion to GM and AGM or denied promotion to Senior Staff positions since January 3, 2002."  (ECF No. 494.)  The parties later stipulated to a slightly narrower class definition.  (ECF No. 509 ¶ 1.)

### 3. **Costco's Appeal to the Ninth Circuit Court of Appeals**

Costco sought permission to appeal the class certification order under Fed. R. Civ. P. 23(f), and the Ninth Circuit granted the petition on May 11, 2007.[3]  (Case No. 07-15838, ECF No. 1.)  Briefing was completed in late 2007, and oral argument was held on April 14, 2008.  (Case No. 07-15838, ECF No. 47.)  However, the Ninth Circuit's decision was delayed by the appellate proceedings in *Dukes v. Wal-Mart Stores, Inc.*, No. C01-02252 (N.D. Cal.).

On February 13, 2009, the Ninth Circuit granted Wal-Mart's petition for rehearing en banc in *Dukes*, and the en banc opinion was issued on April 26, 2010.  On July 8, 2010, the Ninth

---

[2] In addition, a dispute arose regarding approximately 200 declarations from current and former female Costco employees submitted by Costco in support of its opposition.  (*See* ECF No. 482.)

[3] The parties agreed to stay discovery during the pendency of the appeal.  (ECF No. 509 ¶ 11.)

1  Circuit ordered the parties in this case to submit supplemental briefs addressing what effect, if

2  any, the *Dukes* decision had on the *Ellis v. Costco* appeal.  (Case No. 07-15838, ECF No. 65.)  On

3  December 6, 2010, the United States Supreme Court granted *certiorari* in the *Dukes* litigation.

4  Accordingly, on December 8, 2010, the Ninth Circuit deferred submission of *Ellis v. Costco*

5  pending the outcome in *Dukes*.  (Case No. 07-15838, ECF No. 75.)

6       The Supreme Court issued its decision in *Dukes* on June 20, 2011.  *See Wal-Mart Stores,*

7  *Inc. v. Dukes*, 131 S.Ct. 2541 (2011).  Three days later, the Ninth Circuit ordered the parties in

8  this case to file simultaneous briefs setting forth their respective positions on the application of

9  the Supreme Court's decision.  (Case No. 07-15838, ECF No. 76.)

10       The Ninth Circuit issued its decision in *Ellis v. Costco* on September 16, 2011.  *See Ellis*

11  *v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011).  In light of *Dukes*, the Ninth Circuit

12  affirmed in part, vacated in part, and remanded.  *See id.* at 974-75.  Specifically, the Ninth Circuit

13  vacated and remanded with respect to the initial class certification rulings on commonality,

14  typicality, adequacy (as to Ms. Ellis and Ms. Horstman), and the certification of claims for

15  monetary relief under Fed. R. Civ. P. 23(b)(2).  *See id.*

16           **4.      Plaintiffs' Second Motion for Class Certification**

17       On remand, the parties agreed that Plaintiffs would file a Third Amended Complaint to

18  reflect the intervening change in the law.  (ECF No. 535 at 5.)  Costco filed a motion for an order

19  eliminating class claims challenging Plaintiffs' certification theory on May 4, 2012.  (ECF No.

20  543.)  Plaintiffs responded, and also filed an affirmative motion for class certification.  (ECF No.

21  664.)  On September 25, 2012, the Court granted Plaintiffs' motion and, in a lengthy opinion

22  analyzing the impact of *Dukes* and the Ninth Circuit's opinion in this case, certified an Injunctive

23  Relief Class defined as:

24       All women who are currently employed or who will be employed at any Costco
         warehouse in the U.S. who have been or will be subject to Costco's system for
25       promotion to Assistant General Manager and/or General Manager positions.

26  (ECF No. 693 at 85.)  The Court also certified a Monetary Relief Class (back pay, compensatory,

27  and punitive damages) defined as:

28       All women who have been employed at any Costco warehouse store in the U.S.

since January 3, 2002 who have been subject to Costco's system for promotion to Assistant General Manager and/or General Manager positions.

(*Id.*)

The Court set a tentative two-stage trial plan.  (*Id.* at 86.)  In part one of the first stage, a jury would decide whether Costco engaged in a pattern or practice of discrimination (liability for disparate treatment), whether Costco's conduct met the standard for punitive damages, and Costco's liability to the three Named Plaintiffs.  (*Id.*)  The Court would decide whether the employment practices alleged had an adverse impact on the class.  (*Id.*)  In part two of the first stage, the Court would decide whether Costco's employment practices were justified by business necessity and, if so, whether there was a less discriminatory alternative.  (*Id.*)  The Court would then issue appropriate injunctive relief.  (*Id.*)  In the second stage, individual hearings would be held to determine instatement, back pay, and damages, and also to adjudicate individual defenses. (*Id.*)  If necessary, the aggregate amount of punitive damages would also be decided in stage two. (*Id.*)

Costco again sought permission from the Ninth Circuit to appeal under Fed. R. Civ. P. 23(f).  The petition was denied on January 16, 2013.  (Case No. 12-80188, ECF No. 5.)  Court-approved notice was issued in December 2012.  (*See* ECF. No. 717.)  Approximately 100 of the original class members opted out of the litigation.  (Larkin Decl. ¶ 18.)  The parties estimate that there are approximately 1,300 current class members; 1,125 current Costco employees, and 175 former employees.  (*Id.*)

As already explained in detail above, after class certification the parties engaged in extensive additional discovery in preparation for dispositive motions and trial.  At the time the proposed settlement was reached, both parties were preparing to file multiple summary judgment and *Daubert* motions, and Costco was preparing a motion to decertify the classes.  (*See, e.g.*, ECF Nos. 697, 747.)

## II.    SETTLEMENT NEGOTIATIONS

The parties devoted substantial time and effort to reaching a proposed settlement.  At all times, the negotiations were conducted at arms' length and on a bifurcated basis: the parties

1   negotiated class programmatic and monetary relief first, and only when substantial agreement was

2   reached on these issues did the parties discuss relief for the Named Plaintiffs and attorneys' fees.

3   (Larkin Decl. ¶ 20.)

4          In 2004, Class Counsel attempted to resolve this matter prior to filing a lawsuit, but the

5   parties were unable to reach a settlement.  (*See* ECF No. 136 ¶ 12.)  In 2005, after the venue

6   motion was resolved, the parties held two mediations sessions (September 21st and November

7   10th) with Mark Rudy, a respected and experienced mediator.  (ECF No. 99.)  These early

8   mediations were also unsuccessful.  (Larkin Decl. ¶ 22.)

9          In 2013, the parties scheduled another formal mediation session with Mr. Rudy.  (ECF

10  No. 733.)  In advance of that session, two members of Class Counsel's litigation team flew to

11  Costco's headquarters in Issaquah, Washington to discuss the prospect of settlement with high-

12  level Costco executives, in-house counsel, and litigation counsel.  (Larkin Decl. ¶ 23.)

13  Thereafter, the parties prepared extensive mediation briefs and the mediation took place on

14  July 11, 2013.  (*Id.* ¶ 24.)  Although no settlement was reached, progress was made, and the

15  parties scheduled a second session.  (*Id.*)  The parties also prepared and exchanged draft language

16  for certain aspects of a possible agreement.  (*Id.*)

17         The parties met again on August 5, 2013.  (*Id.* ¶ 25.)  After this follow-up session,

18  Mr. Rudy circulated a mediator's proposal regarding two important aspects of a potential

19  settlement.  (ECF No. 737.)  As a result of the proposal, the parties made significant progress in

20  resolving several major settlement issues.  (ECF No. 744.)  Over the course of the next two

21  months, the parties continued their negotiations directly through a series of regular conference

22  calls and email correspondence.  (Larkin Decl. ¶ 26.)  Mr. Rudy also made himself available as

23  needed to resolve disputes as they arose.  (*Id.*)

24         After making substantial further progress through informal efforts, the parties scheduled a

25  final mediation.  (*Id.* ¶ 27.)  In advance of the session, counsel for both parties attended two days

26  of in-person negotiations in Los Angeles, California.  (*Id.*)

27         The final mediation took place on Saturday, October 5, 2013.  (*Id.* ¶ 28.)  On October 11,

28  2013, the parties reached an agreement on the principal terms of a class-wide settlement, which

was submitted to the Court *in camera*.  (*See* ECF No. 749.)  A final settlement agreement was signed on December 17, 2013.  (*See* Larkin Decl. ¶ 28.)

### III.    THE TERMS OF THE PROPOSED SETTLEMENT

The terms of the proposed settlement are summarized below.  The settlement provides class-wide programmatic relief tailored to the Title VII violations alleged, and also creates a formal claims procedure through which the discrimination claims of the class members may be finally resolved.  In exchange, Costco will receive a release from the settlement class of all claims for individual and class-wide declaratory, injunctive, and monetary relief.  The proposed settlement has the full support of each of the three Named Plaintiffs.  (*See* Ellis Decl. ¶¶ 6-8; Horstman Decl. ¶ 5; Sasaki Decl. ¶¶ 6-7.)

### A.    Programmatic Relief

The proposed programmatic relief is designed to address the specific gender promotion issues alleged in this litigation.  (Larkin Decl., Ex. A ("Agreement").)  This relief includes: (1) use of an industrial organizational psychologist to conduct job analyses, evaluate promotion processes, and develop selection criteria and tools for AGM and GM promotions; (2) a posting process for AGM promotions; (3) a registration of interest system for GM promotions; (4) a merchandising training class for Senior Staff managers; (5) a promotion process for AGM positions, including comprehensive records maintenance; and (6) internal training and communication concerning the implemented programs.  The agreement also contains compliance procedures, including annual reporting by Costco.  (*See id.*)

### 1.    Job Analysis and Selection Criteria

Costco will use an independent industrial organizational psychologist ("Independent Consultant") to conduct job analyses, evaluate promotion processes, and develop selection criteria and assessment tools for AGM and GM promotions.[4]  (*Id.* § 4.1.)  Class Counsel may communicate with the Independent Consultant concerning this work without restriction.  (*Id.*)

---

[4] All fees and expenses of the Independent Consultant will be paid by Costco, except that up to $100,000 of any funds not awarded to class members through the monetary claims process may also be used to pay the Independent Consultant.  (*Id.* § 4.1.4.)

*Job Analyses:*  The Independent Consultant will work with Costco's subject matter experts to prepare job analyses for the positions of AGM and GM.  (*Id.* § 4.2.1.)  The agreement expressly provides that:

- The Job Analyses will identify the knowledge, skills, abilities, experiences, and competencies associated with AGMs and GMs whom Costco deems successful in those positions.  The Parties anticipate that preparation of Job Analyses will entail structured interviews of Costco's subject-matter experts, review of relevant Costco personnel practices, and observations of a sample of AGMs and GMs at work.  (*Id.*)

- The Independent Consultant will provide the completed Job Analyses to the Parties.  Absent a good-faith concern, Costco will accept the Job Analyses.  If Class Counsel dispute Costco's good faith in raising a concern, then the Parties and the Independent Consultant will confer in an effort to resolve the issues that prompted Costco's stated concerns.  (*Id.* § 4.2.2.)

- Costco will make available to its U.S. warehouse management staff revised job descriptions reflecting any accepted Job Analyses.  (*Id.* § 4.2.3.)

*Selection Criteria:*  The Independent Consultant will use the job analyses that Costco has accepted to develop proposed selection criteria and assessment tools, which may include modifications to the AGM selection process if necessary.  (*Id.* § 4.2.4.)  The selection criteria and assessment tools may also contain proposed changes to the GM selection process.  (*Id.*)  The agreement provides:

- The proposed Selection Criteria will be developed based on the Independent Consultant's professional judgment.  To the extent that Costco adopts Selection Criteria, they will be in writing, non-discriminatory, and job-related.  (*Id.* § 4.2.5.)

- To the extent that the proposed Selection Criteria take into account performance evaluations, "Ready Now" ratings, or other similar evaluative tools, then these tools will also incorporate non-discriminatory, job-related selection criteria.  (*Id.* § 4.2.6.)

- If the proposed Selection Criteria take into account an employee's merchandising experience, then women will have the same opportunity for merchandising training and experience that are available to similarly situated male employees.  (*Id.* § 4.2.7.)

- If the proposed Selection Criteria take into account an employee's willingness to relocate, then Costco will apply any relocation criteria in a non-discriminatory, job-related manner.  (*Id.* § 4.2.8.)

- 9 -

*Promotion Process:*  Costco will, absent a good-faith concern, implement any selection criteria and assessment tools that the Independent Consultant proposes for promotions into AGM positions.  (*Id.* § 4.2.9.)  Costco will incorporate implemented proposals, where and as appropriate, into the job descriptions, performance evaluations, and promotion process for AGM.  (*Id.*)  Costco will, in good faith, also consider for implementation any proposed selection criteria and assessment tools for GM promotions, but retains discretion not to adopt those recommendations.  (*Id.* § 4.2.10.)

## 2. <u>Posting and Registration of Interest</u>

*Posting of AGM Positions:*  Costco will post each AGM opening it intends to fill with a promotion no fewer than ten (10) days before filling it, absent compelling business reasons for using a shorter posting period.  (*Id.* § 4.3.1.1.)  Under the agreement:

- Each job posting will contain the location of the opening, job description, selection criteria, and the designated minimum qualifications for the opening.  (*Id.*)

- An open AGM position that Costco intends to fill with a promotion will be posted within a district or other objectively defined area, to be broad enough to encompass at least 10 warehouses or a 50-mile radius.  The posting will be available to be viewed by all U.S. warehouse Senior Staff managers (i.e., each Front End Manager, Administration Manager, Receiving Manager, and Merchandise Manager) within that area, whether or not they meet the minimum qualifications for the position.  (*Id.* § 4.3.1.2.)

- Costco will provide a mechanism for an employee who meets the posted minimum qualifications to apply for the posted AGM position.  Costco will audit U.S. warehouses for compliance with the job posting policy, including the retention of documents recording the names of qualified candidates who apply for each AGM opening.  (*Id.* § 4.3.1.3.)

- Each qualified employee who exercised the right to apply for a posted AGM opening in a particular warehouse will be informed of the identity of any individual who is selected for that opening.  (*Id.* § 4.3.1.4.)

*Registration of Interest for GM Positions:*  Costco will implement a system that allows AGMs to directly register interest in GM positions that may become available at any U.S. warehouse location. (*Id.* § 4.3.2.1.)  More specifically, under the agreement:

- An AGM can register this interest twice per year: (1) in connection with each annual performance review, and (2) six months thereafter.  Registration will be accomplished by the AGM providing his or her personal email address in that connection.  Each registration of interest will

expire after one year unless renewed. Costco will act in good faith to put the registration system into electronic form by the Implementation Date. (*Id.*)

- Costco, in filling a GM position by promoting an AGM, will review the list of AGMs deemed qualified for promotion who have registered interest in that position.  Costco will notify registered AGMs of the identity of individuals selected for those positions.  Notice of these identities will not be required if Costco already is publicizing those individuals to all current AGMs through other means.  (*Id.* § 4.3.2.2.)

### 3.    Merchandising Class

Costco will offer a merchandising training class for its Senior Staff managers who have not obtained merchandising experience in their current or prior positions.  (*Id.* § 4.3.3.)

### 4.    Promotion Process

Costco will use any selection criteria and assessment tools adopted under the proposed settlement agreement.  (*Id.* § 4.4.1.)  Costco ordinarily will conduct personal or telephonic interviews with all applicants who meet the posted minimum qualifications for an open AGM position.  (*Id.* § 4.4.2.)  Costco may limit the number of interviews to five based upon non-discriminatory criteria.  (*Id.* § 4.4.3.)  The criteria used to limit the interview pool will be communicated to eligible applicants who were not interviewed.  (*Id.*)

In addition, Costco will maintain records of every AGM promotion, including the identities of qualified applicants (those who met posted minimum qualifications), the identities of the applicants interviewed, the identities of decision-makers, the identities of candidates who received offers, the identity of the candidate who received the position, and the reason for the selection.  (*Id.* § 4.4.4.)  Costco will also maintain information about selection criteria and assessment tools on its intranet, accessible to warehouse management employees.  (*Id.* § 4.4.5.)

### 5.    Training and Communication

Costco will train managers responsible for AGM and GM selections regarding the AGM job posting system, the GM registration of interest system, and any selection criteria and assessment tools that are adopted.  (*Id.* § 4.5.)  Costco will also inform U.S. Senior Staff warehouse management and AGMs about the AGM job posting system, the GM registration of interest system, and any selection criteria and assessment tools that are adopted.  (*Id.* § 4.6.)

6.      **Recordkeeping and Compliance**

Costco will maintain records necessary to monitor its compliance with the terms of the proposed settlement agreement.  (*Id.* § 4.7.)  The parties will also follow a compliance procedure, which includes: (1) a Court-appointed Compliance Special Master to oversee the implementation of the terms of the proposed agreement, with all fees and costs of the Special Master to be paid by Costco, (*id.* §§ 13.1, 13.8); (2) submission by Costco, on each anniversary, of a report to Class Counsel including status information on the work of the Independent Consultant, as well as statistical information, by gender, of applicants for AGM positions, candidates interviewed for AGM positions, and employees selected for AGM and GM positions, (*id.* § 13.2); and (3) submission by Costco of information that it prepares in the normal course of business on attrition by gender from the AGM and GM positions, (*id.*).  The agreement also contains procedures to ensure that Costco is at all times acting in good faith with respect to its obligations, including review by the Compliance Special Mater and, if necessary, the Court.  (*See id.* § 13.)

7.      **Term**

The terms of the programmatic relief will remain in effect for two years after the date that Costco first implements any selection criteria and assessment tools, initiates the AGM posting program, or activates the registration of interest program, *whichever is later*.  (*Id.* § 4.10.)

B.      **Monetary Relief**

The proposed settlement agreement also provides extensive monetary relief to the members of the class.  This includes a claims process to distribute an $8 million settlement fund, with the bulk of any remaining amounts going to educational programs addressing the advancement of women to leadership roles in retail management.

1.      **$8 Million Settlement Fund**

Costco will pay a gross settlement of $8 million on a non-reversionary basis.  (*Id.* § 3.1.) The fund will be used to pay out claims made by class members who prevail under the claims process, and will also cover settlement administration costs and any service payments awarded by the Court to the Named Plaintiffs.  (*Id.* §§ 3.3, 3.4.)  The $8 million will not be used to pay attorneys' fees and costs, fees and costs of the claims arbitrators, or the claims of the Named

Plaintiffs, unless they choose to participate in the claims process.  (*Id.* § 3.6.)

Any funds not awarded to claimants who prevail in the claims process will be used as follows: (1) the first $100,000, or fraction thereof, will be used to pay the Independent Consultant to the extent that those fees exceed $100,000; (2) any remainder will be donated to an educational program or programs addressing the advancement of women to leadership roles in retail management.  (*Id.* § 3.5.)

### 2.  The Claims Process

Under the claims process, each claimant may challenge up to three promotions, depending on their length of tenure.  (*See id.* § 5.3.)  The claimant has the burden to prove by a preponderance of the evidence that she was interested in and qualified for each promotion that she challenges.  (*Id.* § 5.7.)  If the claimant meets her burden, then Costco will have the burden to prove by a preponderance of the evidence that gender was <u>not</u> a motivating factor in her non-selection for the promotion in question.  (*Id.*)  Claimants who prevail in the claims process will be entitled to economic damages, including salary, bonus, and stock-grant value, plus interest.  (*Id.* § 5.5.2.)  Evidence of damages will be resolved through stipulations by counsel, without requiring expert foundation.  (*Id.* § 5.5.6.)

### 3.  Context Briefs

At the outset of the claims process, the parties will submit simultaneous 30-page briefs to the arbitrator(s) to describe the relevant policies and practices and any claimed context of the decision-making that either side wishes to advance.  (*Id.* § 5.9.1.)  Each side will have an opportunity to respond in an additional 15-page brief.  (*Id.*)

### 4.  Claim Formats

Claimants may submit claims in one of two formats: (1) a claim by written submission; or (2) a claim by formal arbitration.  (*Id.* §§ 5.10, 5.11.)  Claims will be decided by neutral arbitrators, jointly selected by the parties, who are experienced in litigating employment discrimination disputes.  (*See id.* § 5.1.)  Costco will pay all arbitrator fees and costs.  (*Id.* § 5.1.7.)  Claimants will receive legal consultation without charge concerning the claims process from Class Counsel and may also elect to be represented by Class Counsel in making a claim at

1    *no cost* to themselves.  (*Id.* § 5.6.)  A Claimant may also hire her own lawyer.  (*Id.*)

2                              **a.      Claims by Written Submission**

3          If a claimant chooses to make a claim by written submission, the claimant will submit a

4    twenty-five page position statement and supporting materials to the arbitrator.  (*Id.* § 5.10.3.)

5    Costco will then submit a twenty-five page opposition and supporting materials.  (*Id.*)  The

6    claimant may submit a fifteen page reply, and Costco may submit a fifteen page sur-reply.  (*Id.*)

7    Documentary evidence will be limited to the claimant's personnel file, the contested male's

8    personnel file, and other documents that the arbitrator finds relevant to the claimant's or the

9    selectee's promotability to the contested position.  (*Id.* § 5.10.2.)

10         Under the written claim procedure, a claimant prevailing on an AGM promotion claim

11   may receive an award of up to $150,000, and a claimant prevailing on a GM promotion may

12   receive an award of up to $300,000.  (*Id.* § 5.10.4.)  Current Costco employees will also have the

13   option of pursing their written claims through a confidential process, under which their current

14   managers will not be aware that they are making a claim.  (*Id.* § 5.10.5.)  Under this option, a

15   claimant prevailing on an AGM promotion claim may receive up to $25,000, and a claimant

16   prevailing on a GM promotion may receive up to $50,000.  (*Id.* §§ 5.10.5.5, 5.10.5.6.)

17         Claimants who prevail on written claims are entitled to seek attorneys' fees not to exceed

18   $10,000 per claimant and costs not to exceed $1,000 per claimant.  (*Id.* § 5.10.6.)  The total

19   attorneys' fee award on written claims will not exceed $750,000.  (*Id.*)

20                             **b.      Claims by Formal Arbitration**

21         If a claimant chooses to make a claim by formal arbitration, the claim will be decided

22   through a two-day arbitration at a location near the site of the promotion being challenged.  (*Id.*

23   §§ 5.11.1, 5.11.4.)  The parties are allowed to file pre-arbitration briefs, and will also exchange

24   witness lists.  (*Id.* § 5.11.2.)  Each side may take one deposition not to exceed four hours.  (*Id.*

25   § 5.11.3.)  Documentary evidence will be limited to the claimant's personnel file, the contested

26   male's personnel file, and other documents that the arbitrator finds relevant to the claimant's or

27   the selectee's promotability to the contested position.  (*Id.* § 5.11.2.)  The Federal Rules of

28   Evidence will govern, except the arbitrator has the discretion to admit reliable hearsay and waive

foundational requirements. (*Id.* § 5.11.6.)

Under the arbitration claim procedure, a claimant prevailing on an AGM promotion claim may receive an award of up to a cap of $250,000, and a claimant prevailing on a GM promotion may receive an award of up to a cap of $600,000. (*Id.* §§ 5.11.10, 5.11.11.) Claimants who prevail on arbitration claims will also be entitled to seek reasonable attorneys' fees and costs. (*Id.* § 5.11.12.)

### 5. Adjustment of Awards and Confidentiality

If the awards obtained by successful claimants in the aggregate do not reach the amount of the net settlement fund, then the individual awards will be increased, subject to a second set of caps. (*Id.* § 5.13.2.) With adjustments, awards for AGM promotion claims can reach up to $425,000, and awards for GM promotion claims can reach up to $900,000. (*Id.* § 5.13.2.) To the extent that the total awards or settlements[5] exceed the amount of the net settlement fund, they will be reduced pro rata. (*Id.* § 5.12.)

All outcomes in the claims process will be confidential. (*Id.* § 5.14.1.) The proposed settlement agreement contains detailed procedures through which either party may seek relief for a breach of confidentiality. (*Id.* § 5.14.3.)

### C. Scope of the Release

The proposed settlement agreement gives Costco a release of claims limited to the claims asserted in the Fourth Amended Complaint. In exchange for the relief provided, members of the settlement class will release all claims for systemic injunctive relief for the claims alleged in the case on behalf of the Injunctive Relief Class. (*Id.* § 6.) In addition, class members who submit claims through the monetary claims process shall, upon the date of her claim, release any claim for failure to promote to AGM or GM not pursued through that process. (*Id.*) Each member of the Monetary Relief Class who does not opt out and who does not submit a timely claim will also release any claim that Costco, on the basis of her gender, denied her promotion to AGM or GM at any time since January 3, 2002. (*Id.*)

---

[5] Under the proposed settlement agreement, Costco and the claimant may agree to settle her claim. (Agreement § 5.13.1.)

1

### D.       Resolution of the Named Plaintiffs' Claims

Under the proposed settlement agreement, a Named Plaintiff may choose to resolve all of her claims against Costco by trial in this Court.  (*Id.* § 10.)  Any damages awarded will not be taken from the gross settlement fund.  (*Id.*)  In the alternative, a Named Plaintiff may choose to submit only her promotion claims through the monetary claims process.  (*Id.*)  Under this scenario, any damages awarded will be taken out of the gross settlement fund.  (*Id.*)  The Named Plaintiffs may seek Court-approved service payments of up to $10,000 each, to be paid from the gross settlement fund.  (*Id.*)

### E.       Attorneys' Fees and Costs

Under the agreement, Plaintiffs may apply for an award of reasonable attorneys' fees and costs for the litigation up to the date of final approval of the proposed settlement.  (*Id.* § 11.)  Plaintiffs may also seek an award of reasonable fees and costs for their anticipated services in monitoring the programmatic relief and administrating the monetary claims settlement.  (*Id.*)

### ARGUMENT

### I.       PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.       The Legal Standards for Preliminary Settlement Approval

Strong judicial policy favors settlements, "particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Review of a class settlement proceeds in two steps.  First, "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation (Fourth) § 21.632.  Second, after notice is given to the class, the court holds a final fairness hearing.  *Id.* § 21.634.

Any proposed settlement must be "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The decision to approve or reject a settlement is committed to the sound discretion of the district court, which has been "exposed to the litigants, and their strategies, positions and proof."  *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982)).  In assessing a proposed

- 16 -                       NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL
C04-3341 EMC

1    settlement, the district court balances various factors, including: (1) the strength of the plaintiffs'

2    case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

3    maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

4    extent of discovery completed and the stage of the proceedings; (6) the experience and views of

5    counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members

6    to the proposed settlement.[6]  *Id.* at 1026.

7         "Closer scrutiny [of a class action settlement] is reserved for the final approval hearing."

8    *Harris v. Vector Marketing Co.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).  Preliminary

9    settlement approval should be granted if the proposed settlement was the product of serious,

10   informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

11   preferential treatment to class representatives or segments of the class, and falls within the range

12   of possible approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal.

13   2007) (quoting Manual for Complex Litigation (Second) § 30.44 (1985)); *see also Harris*, 2011

14   WL 1627973, at *7.

15        **B.      The Proposed Settlement Falls Within the Range of Possible Approval and
          There are No Obvious Deficiencies**

16        "To determine whether a settlement falls within the range of possible approval a court

17   must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery

18   balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp.

19   2d at 1080 (internal quotation marks omitted).  Here, the proposed settlement consists of three

20   primary components: (1) programmatic relief; (2) an expedited monetary claims process; and (3)

21   a limited release of class claims.  These elements of the settlement are fair, adequate, and

22   reasonable.  (Larkin Decl. ¶ 29.)

23        First, the programmatic relief provides significant benefits to the Injunctive Relief Class,

24   and will materially advance the goal of equal promotion opportunities for female Costco

25   warehouse employees.  The relief is comprehensive, and addresses the specific employment

26   _____

27   [6] "It is the settlement taken as a whole, rather than the individual component parts, that must be
     examined for overall fairness."  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at

28   628).

- 17 -                        NOTICE OF MOTION AND MOTION FOR
                                                                  PRELIMINARY APPROVAL
                                                                  C04-3341 EMC

practices challenged by the Named Plaintiffs, including the use of subjective decision-making and unwritten, unvalidated criteria, (ECF No. 718 ¶¶ 34-41, 49-54, 60-65), use of "ready now" ratings, "promotable lists," and the "Green Room," (*id.* ¶¶ 36-40), failure to provide females with opportunities to gain merchandising experience, (ECF No. 693 at 33, 38), undue emphasis on willingness to relocate, (*id.* at 33), and lack of a job posting and interview process, (ECF No. 718 ¶¶ 46-48, 57-59).  For instance:

- Subjective Decision-Making and Reliance on Unvalidated/Unwritten Criteria: An industrial organizational psychologist will conduct job analyses, evaluate promotion processes, and develop selection criteria and assessment tools for promotion of AGMs and GMs.  (Agreement §§ 4.1, 4.2.)

- Use of Ready Now Ratings, Promotable Lists, and the Green Room: To the extent that selection criteria take into account performance evaluations, "Ready Now" ratings, or other similar evaluative tools, they will incorporate non-discriminatory, job-related selection criteria.  (*Id.* § 4.2.6.)

- Merchandising Experience: If proposed selection criteria take into account merchandising experience, women will have the same opportunity for merchandising training and experience that are available to similarly situated male employees.  (*Id.* § 4.2.7.)  Costco will also offer a merchandising class for Senior Staff managers.  (*Id.* § 4.3.3.)

- Willingness to Relocate: If proposed selection criteria take into account willingness to relocate, any relocation criteria in a non-discriminatory, job-related manner.  (*Id.* § 4.2.8.)

- Lack of Job Posting and Interview Process: Costco will post each AGM opening, and postings will contain the location of the opening, job description, selection criteria, and the designated minimum qualifications for that opening. (*Id.* § 4.3.1.)  Costco will conduct interviews for AGM promotions, and will maintain records of these promotion decisions. (*Id.* § 4.4.)  Costco will implement a registration of interest system for GM promotions. (*Id.* § 4.3.2.)

Although the proposed agreement gives Costco more latitude with regard to implementation of GM selection criteria and assessment tools, this is reasonable in light of differences in the

1    strength of the AGM and GM claims.  As the Court noted at class certification, in contrast to

2    promotions to AGM, experts for both sides agreed that there was no statistically significant

3    disparity in the rate of promotion from AGM to GM.  (ECF No. 693 at 50.)  Although Class

4    Counsel believes their expert's explanation for the lack of disparity is persuasive (an artificially

5    low GM feeder pool), Plaintiffs faced greater risks associated with GM claims.

6         Second, the monetary relief component is fair, adequate, and reasonable.  The claims

7    process provides members of the Monetary Relief Class with a forum to pursue their claims

8    similar to proceedings that what would take place in the second stage of a pattern-or-practice trial.

9    As the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, employers can insist that each class

10   member's eligibility for back pay be determined through individual hearings as described in

11   *Teamsters v. United States*, 431 U.S. 324, 361 (1977).  *See* 131 S. Ct. 2541, 2560-61 (2011).  Just

12   as in a *Teamsters* hearing, the proposed settlement agreement shifts the burden of proof to Costco

13   to prove by a preponderance of the evidence that gender was <u>not</u> a motivating factor in the

14   employment decision in question.  (*See* Agreement § 5.7.2.)  The claimant need only show that

15   she was interested in and qualified for the promotion.  (*Id.* § 5.7.1.)

16        In addition, the claims process will be less expensive and more convenient.  Rather than

17   appearing for individual Stage II hearings in the Northern District of California, class members

18   will have the choice of either filing their claim through an expedited written claim procedure, or

19   opting for a full two-day arbitration in a venue where the decision at issue took place.  (*Id.*

20   §§ 5.10, 5.11.)  A *confidential* option is available for current employees, which Class Counsel

21   believe will further encourage participation in the claims process.  (*Id.* § 5.10.5; Larkin Decl.

22   ¶ 30.)

23        And the remedies available through the monetary process are substantial.  Class Counsel

24   have obtained an $8 million fund to be dispersed through the claims process.  Prevailing

25   claimants in the written process can obtain awards up to $150,000 for AGM promotions, and up

26   to $300,000 for GM promotions.  (Agreement § 5.10.4.)  Awards in arbitration can be up to

27   $250,000 for AGM claims, and up to $600,000 for GM clams.  (*Id.* § 5.11.10, 5.11.11.)  With

28   upward adjustments, awards for AGM promotion claims can reach up to $425,000, and awards

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL
C04-3341 EMC

1   for GM promotion claims can reach up to $900,000.  (*See id.* § 5.13.2.)

2        Notably, the $8 million fund is non-reversionary.  The bulk of any funds not awarded to

3   claimants will be donated to an educational program or programs addressing the advancement of

4   women to leadership roles in retail management, to be agreed upon by the parties.[7]  (*See id.*

5   § 3.5.)  This use of *cy pres* is reasonable.  The mission of the recipient organizations will be

6   directly tied to the objectives of this lawsuit, and will account for the geographic distribution of

7   the class.  *See, e.g.*, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) (distribution

8   must be guided by the objectives of the underlying statute and the interests of the class members,

9   and must not benefit a group too remote from the class).  (Larkin Decl. ¶ 31.)

10        Finally, the release is limited to the claims asserted in the litigation, and applies solely to

11   the members of the classes as certified by the Court's September 2012 order.  (Agreement § 6.)

12   **C.**        **The Proposed Settlement was the Product of Serious, Informed,**
                    **Non-Collusive Negotiations by Experienced Counsel**

13        The process through which the proposed settlement was reached also favors approval.

14   "An initial presumption of fairness is usually involved if the settlement is recommended by class

15   counsel after arm's-length bargaining."  *Harris*, 2011 WL 1627973, at *8 (quoting *Riker v.*

16   *Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010)).  Moreover, "[t]he assistance of an

17   experienced mediator in the settlement process confirms that the settlement is non-collusive."

18   *Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *7 (N.D. Cal. May 11, 2010)

19   (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

20        Here, the parties reached the proposed settlement after five formal mediation sessions with

21   Mark Rudy, a well-respected neutral with extensive experience mediating complex class actions.

22   *See, e.g.*, *Nielson v. The Sports Authority*, 2013 WL 3957764, at *5 (N.D. Cal. July 29, 2013)

23   (approving the use of Mark Rudy as "a respected employment attorney and mediator").  Between

24   mediations, the parties continued their negotiations through regular conference calls, email

25   correspondence, and in-person meetings.  To avoid any actual or perceived conflict of interest, the

26

27   [7] As of the date of this motion, the parties have not yet agreed on a specific *cy pres* recipient.  The
     parties will come to an agreement before the preliminary approval hearing, and Plaintiffs will
28   supplement their filings accordingly.  (Larkin Decl. ¶ 31.)

1    parties negotiated class relief before discussing the resolution of the Named Plaintiffs' claims or

2    attorneys' fees and costs.

3          Both sides were represented by experienced and well-informed counsel.  Class Counsel

4    are experts in complex employment litigation.  (*See* ECF No. 494 at 21-22 ("Together counsel

5    have decades of class action and employment discrimination experience[.]").)  Their settlement

6    positions were informed by extensive information gathered through discovery and challenged in

7    motion practice.  In the course of discovery, Counsel obtained and reviewed hundreds of

8    thousands of pages of Costco's documents, took the depositions of fifteen witnesses, including

9    three 30(b)(6) witnesses, and defended multiple depositions of each Named Plaintiff.  Class

10   Counsel also retained three expert witnesses, including a statistician, a sociologist, and a labor

11   economist.  Critically, in the course of merits discovery, Costco produced supplemental personnel

12   and payroll data (updated through mid-2013), allowing the parties to reevaluate their respective

13   positions in preparation for settlement talks.

14         Costco was represented by Seyfarth Shaw, a prominent national law firm with an

15   expertise in employment law.  Attorneys from three of Seyfarth Shaw's offices participated in the

16   negotiations, as did in-house attorneys from Costco.  (Larkin Decl. ¶ 24.)  Counsel for Costco's

17   insurance carriers also attended some of the mediation sessions.  (*Id.*)

18         The fact that the proposed settlement was reached by experienced counsel—informed by

19   discovery and aided by an experienced neutral—favors preliminary approval.  *See, e.g.*, *Bond v.*

20   *Ferguson Enters., Inc.*, 2011 WL 284962, at *6 (E.D. Cal. Jan. 25, 2011) (granting preliminary

21   approval where an agreement was reached through mediation after "extensive investigation and

22   discovery allowing [both parties] to assess the strengths and weaknesses of the case."); *Vasquez v.*

23   *Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (granting preliminary

24   approval where the parties "conducted extensive investigation and discovery allowing them to

25   assess the strengths and weaknesses of the case.").

26         **D.    The Proposed Settlement is Reasonable in Light of the Risks, Expense, and
              Delay Inherent in Continued Litigation**

27         A finding that the proposed settlement is reasonable is also warranted in light of the risks,

28   expense, and delay associated with continued litigation and trial.

1       Costco denies that it has discriminated against female warehouse employees through the

2  promotion policies and practices at issue.  (*See, e.g.*, ECF No. 721.)  Indeed, the case was heavily

3  litigated from the start.  Costco immediately filed a motion to transfer venue in response to

4  Plaintiffs' Complaint, and aggressively opposed class certification.  Costco filed approximately

5  200 declarations from current and former employees in opposition to class certification

6  purporting to disclaim any gender discrimination in Costco's warehouses.  Costco also hired four

7  expert witnesses to rebut Plaintiffs' allegations and the opinions of their experts.  Prior to

8  settlement, Costco indicated that it was planning to file multiple dispositive motions and a motion

9  for decertification, and was prepared to proceed to trial.  (ECF No. 747.)

10       Class Counsel believe their case is strong.  However, "[e]ven if Plaintiffs were to prevail,

11  they would be required to expend considerable additional time and resources potentially

12  outweighing any additional recovery obtained through successful litigation."  *Bond. v. Ferguson*

13  *Enters., Inc.*, 2011 WL 284962, at*7 (E.D. Cal. Jan. 25, 2011).  Continued litigation would

14  increase the amount of attorneys' fees incurred, without necessarily improving the likelihood of a

15  favorable resolution and monetary recovery for the class members.  The parties have been

16  litigating this case for almost ten years, including a nearly five-year delay at the appellate level.

17  The presentation of evidence spanning a ten-year period, including changes in Costco's practices,

18  would be daunting for both counsel and the jury.  The passage of time would also undoubtedly

19  affect the quality of percipient witness testimony on both sides.  Moreover, if Plaintiffs prevailed

20  in a stage one trial and obtained an injunction under the Court's current trial plan, (ECF No. 693

21  at 86), there would still have to be countless individual *Teamsters* hearings to determine

22  instatement, back pay, and damages, and to allow Costco to present its individual defenses.  *See*

23  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011).  Further appeals would be

24  inevitable.

25       In sum, any additional recovery that could be obtained through continued litigation is far

26  outweighed by the risk, delay, and expense associated with a stage one pattern-or-practice trial.

27  The proposed settlement allows for immediate implementation of meaningful programmatic relief

28  to address the employment practices at issue in this lawsuit, and allows the class members to

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL
C04-3341 EMC

1    pursue their individual claims through an expedited process.

2         **E.      The Resolution of the Named Plaintiffs' Claims is Reasonable**

3         Under the proposed settlement, the three Named Plaintiffs may choose to adjudicate their

4    claims asserted against Costco in this litigation by trial in this Court.  (Agreement § 10.)  Any

5    damages awarded will *not* be taken out of the class settlement fund.  (*Id.*)  In the alternative, a

6    Named Plaintiff may choose to submit only her promotion claims through the monetary claims

7    process.  (*Id.*)  In this scenario, damages will be taken out of the settlement fund.  (*Id.*)

8         The parties' resolution of the Named Plaintiffs' claims is reasonable.  In addition to the

9    certified class claims, each of the Named Plaintiffs has an individual discrimination claim under

10   the California Fair Employment & Housing Act, Government Code §§ 12940 *et seq.*  (ECF No.

11   718 ¶¶ 131-135.)  Ms. Ellis and Ms. Sasaki also allege individual Title VII retaliation claims.  (*Id.*

12   ¶¶ 136-147.)  In light of their non-class claims, affording the Named Plaintiffs the opportunity to

13   proceed in the district court, instead of the claims procedure, is reasonable.  *See Duling v.*

14   *Gristede's Operating Corp.*, 2013 WL 3146772, at *6-7 (S.D.N.Y. June 19, 2013) (additional

15   payments of $50,000 and $20,000 to named plaintiffs, in addition to service payments, to resolve

16   individual claims); *Jaffe v. Morgan Stanley*, No. 06 Civ. 39303, slip. op. at 7-9 (N.D. Cal. Feb. 7,

17   2008) ($25,000 service award to named plaintiff, plus additional $125,000 for non-class claims)

18   (attached as Exhibit B); *E.E.O.C. v. Morgan Stanley & Co.*, 256 F.R.D. 124, 125 (S.D.N.Y. 2004)

19   ($12 million to resolve individual claims of named plaintiff); *Lo Re v. Chase Manhattan Corp.*,

20   1979 WL 236, at *3, *6 (S.D.N.Y. May 25, 1979) (approving $229,000 paid to named plaintiffs

21   in settlement of their individual claims).

22         **F.      The Proposed Awards of Attorneys' Fees, Costs, and Plaintiff Service**
           **Payments are Reasonable**
23
           The proposed settlement's provision for reasonable attorneys' fees and costs and modest
24
     Named Plaintiff service payments should also be approved.  Fees and costs and service payments
25
     are addressed in separate motions and therefore are not addressed here.  The class settlement is
26
     <u>not</u> conditioned on either an award of attorneys' fees or the service payments.
27

28

1    II.      **THE PROPOSED NOTICE AND NOTICE PLAN SHOULD BE APPROVED**

2           The Court should also approve the proposed notice and notice plan.  Under Rule 23(e)(1)

3    of the Federal Rules of Civil procedure, the Court must "direct notice in a reasonable manner to

4    all class members who would be bound by the proposal."  Notice is satisfactory if it "generally

5    describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

6    investigate and come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

7    575 (9th Cir. 2004).  Notice must also comply with Fed. R. Civ. P. 23(c)(2).  *See, e.g.*, *Evans v.*

8    *Linden Research, Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013).

9           The proposed notice and notice plan are satisfactory.  Under the proposed settlement

10   agreement, a respected claims administrator will mail a notice packet to class members by First

11   Class U.S. Mail.  (Agreement § 7.6.)  The administrator will take reasonable steps to determine

12   the most recent address of each class member.  (*Id.*)

13          The notice packet will contain a Notice of Class Action Settlement and an Opt-Out Form.

14   (*Id.*)  The proposed Notice describes: (1) the nature of the action; (2) the identities of class

15   counsel; (3) the terms and provisions of the proposed settlement; (4) the relief to which the

16   members of each class will be entitled, including detailed summaries of the programmatic relief

17   and claims process; (5) the process by which class members may make a claim for monetary

18   relief if the settlement is approved; (6) how administrative costs, attorneys' fees, and potential

19   service payments will be handled; (7) the procedures and deadlines for submitting objections,

20   and/or requests for exclusion; and (8) the date, time, and place of the final approval hearing.  (*See*

21   Agreement, Ex. 1.)  Under the proposed notice plan, class members will have 60 days to opt out

22   or submit objections.  (*Id.* ¶ 7.6.6.)

23   III.     **THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE**

24          Finally, the Court should set a final approval schedule.  The parties propose:

25

| February 20, 2014 | Notice packet distributed to class members by claims administrator (14 days after preliminary approval) |
|---|---|
| February 20, 2014 | Deadline for filing motions for service awards (14 days after preliminary approval) |
| April 21, 2014 | Last date to postmark objections or exclusions (60 days from notice) |

| April 17, 2014 | Deadline for filing motion for final settlement approval (35 days prior to final approval hearing) |
| May 15, 2014 | Due date for briefs responding to objections |
| May 22, 2014 | Final approval hearing (first hearing date 100 days after preliminary approval) |

## CONCLUSION

For all of the reasons explained above, Plaintiffs respectfully request that their motion for preliminary settlement approval be granted.

Dated: December 17, 2013                  Respectfully submitted,

                                          IMPACT FUND


                                          By:/s/Jocelyn D. Larkin
                                               Jocelyn D. Larkin
                                               Attorneys for Plaintiffs and Certified Classes