THE IMPACT FUND
Jocelyn D. Larkin (SBN: 110817)
Robert Schug (SBN: 249640)
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone:  (510) 845-3473
Facsimile:  (510) 845-3654
jlarkin@impactfund.org

DAVIS, COWELL & BOWE, LLP
Steve Stemerman (SBN: 067690)
Elizabeth A. Lawrence (SBN: 111781)
595 Market Street, #1400
San Francisco, CA 94105
Telephone:  (415) 597-7200
Facsimile:  (415) 597-7201
eal@dcbsf.com

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
Bill Lann Lee (SBN: 108452)
Lindsay Nako (SBN: 239090)
476 9th Street
Oakland, CA 94607
Telephone:  (510) 839-6824
Facsimile:  (510) 839-7839
blee@lewisfeinberg.com

ALTSHULER BERZON LLP
James M. Finberg (SBN: 114850)
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
jfinberg@altshulerberzon.com

LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
Kelly Dermody (SBN: 171716)
Daniel Hutchinson (SBN:  239458)
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
kdermody@lchb.com

*Attorneys for Plaintiffs and Certified Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, et al., | **Case No. C04-3341 EMC** |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** |
| v. | |
| COSTCO WHOLESALE CORPORATION | **Hearing Date:  March 13, 2014** |
| Defendant. | **Hearing Time:  1:30 PM** |
| | **Courtroom:  5 (17th Floor)** |

# TABLE OF CONTENTS

**Page**

I.      NOTICE OF MOTION AND MOTION; RELIEF SOUGHT ........................................... 1

II.     INTRODUCTION ................................................................................................................ 1

III.    STATEMENT OF FACTS ................................................................................................... 2

    A.    Phase 1 - Work Performed Prior to First Class Certification Order ...................... 3

        1.    Pre-Filing Investigation, EEOC Class Charges and Pre-Complaint Settlement Effort ........................................................................................ 3

        2.    Class Action Complaint, Opposition to Venue Motion and First Mediation Effort ....................................................................................... 3

        3.    Pre-Certification Discovery ........................................................................ 4

        4.    Preparation of Expert Testimony ............................................................... 5

        5.    First Motion for Class Certification and Daubert Motions ........................ 5

    B.    Phase 2 - Ninth Circuit Appeal ............................................................................. 6

    C.    Phase 3 - Work After Remand to this Court .......................................................... 8

        1.    Motion for Class Certification .................................................................... 8

        2.    Costco's Rule 23(f) Petition to Appeal Class Certification Order ............. 9

        3.    Post-Certification Discovery and Trial Preparation ................................... 9

        4.    Mediation and Settlement Negotiations ................................................... 10

IV.     ARGUMENT ..................................................................................................................... 11

    A.    Class Counsel are Entitled to Their Lodestar in Attorneys' Fees ........................ 11

        1.    Plaintiffs Meet the "Prevailing Party" Standard ...................................... 11

        2.    The Lodestar Method of Calculating Fees is Appropriate in this Case .... 11

        3.    The Adjusted Lodestar that Class Counsel Request is Reasonable ......... 12

            a.    The Number of Hours Class Counsel Spent Litigating This Case is Reasonable ................................................................................... 13

                i.      Class Counsel Achieved Excellent Results....................... 13

                ii.     Class Counsel Worked on this Complicated Case for More than a Decade, and had to Adapt to an Entirely New Legal Standard Mid-Way Through the Litigation .... 14

                iii.    Class Counsel Used Appropriate Staffing ........................ 15

                iv.     Class Counsel Exercised Billing Judgment Regarding the Number of Hours Worked................................................. 16

            b.    The Hourly Rates that Class Counsel Seek are Reasonable ......... 16

    B.    Class Counsel Should Also be Awarded Fees for Future Work on this Case ...... 18

1.    Class Counsel Should be Awarded Fees for Monitoring the Injunctive Relief and Overseeing the Claims Process.................................................. 18

2.    Class Counsel Will Seek Fees for Successful Arbitrations and Written Submissions at a Later Date........................................................................ 18

C.    Class Counsel Should be Awarded Reasonable Costs........................................... 19

D.    Class Counsel Are Entitled to Attorneys' Fees for Work on this Fee Motion...... 22

V.    CONCLUSION ........................................................................................................... 22

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Ashker v. Sayre,*
   2011 WL 825713 (N.D. Cal. Mar. 7, 2011) ................................................................. 21

6

*ASIS Internet Servs. v. Azoogle.com, Inc.,*
   357 F. App'x 112 (9th Cir. 2009). ............................................................................. 20

7

*ASIS Internet Servs. v. Optin Global, Inc.,*
   2008 WL 5245931 (N.D. Cal. Dec. 17, 2008) *aff'd sub nom.* ................................... 20

8

*Autodesk, Inc. v. Flores,*
   2011 WL 1884694 (N.D. Cal. May 18, 2011). ........................................................... 21

9

*Balla v. Idaho,*
   677 F.3d 910 (9th Cir. 2012) ..................................................................................... 18

10

*Blum v. Stenson,*
   465 U.S. 886 (1984) ............................................................................................. 15, 16

11

*Butler v. Home Depot, Inc.,*
   984 F. Supp. 1257 (N.D. Cal. 1997) .......................................................................... 19

12

*Castaneda v. Burger King Corp.,*
   2010 WL 2735091 (N.D. Cal. July 12, 2010) ............................................................... 4

13

*Cataphora Inc. v. Parker,*
   2012 WL 174817 (N.D. Cal. Jan. 20, 2012) ............................................................... 21

14

*Charlebois v. Angels Baseball LP,*
   2012 WL 2449849 (C.D. Cal. May 30, 2012) ............................................................ 15

15

*Ching v. Siemens Indus., Inc.,*
   2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ............................................................ 15

16

*City of Burlington v. Dague,*
   505 U.S. 557 (1992) ................................................................................................... 11

17

*Create-A-Card, Inc. v. Intuit, Inc.,*
   2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ........................................................... 12

18

*Davis v. City & Cnty. of San Francisco,*
   976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th
   Cir. 1993) .................................................................................................................... 19

19

*Dukes v. Wal-Mart Stores, Inc.,*
   603 F.3d 571 (9th Cir. 2010) (en banc), *rev'd*, 131 S. Ct. 2541 (2011) ....................... 7

20

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011).............................................................................. 2, 8, 15

21

*Ellis v. Costco Wholesale Corp.,*
   285 F.R.D. 492 (N.D. Cal. 2012), *petition for interlocutory reviewed denied*, (9th Cir. Jan. 16,
   2013) ............................................................................................................................. 1

22

*Evans v. Linden Research, Inc.,*
   2012 WL 5877579 (N.D. Cal. Nov. 20, 2012)............................................................ 15

23

*Fleury v. Richemont N. Am., Inc.,*
   2008 WL 3287154 (N.D. Cal. Aug. 6, 2008)............................................................. 14

24

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982).................................................................................................... 19

25

*Goldkorn v. Cnty. of San Bernardino,*
   2012 WL 476279 (C.D. Cal. Feb. 13, 2012)............................................................... 18

26

27

28

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013)......................................................................................... 11

*Grove v. Wells Fargo Fin. California, Inc.*,
   606 F.3d 577 (9th Cir. 2010)..................................................................................... 19, 20

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,
   2013 WL 4647190 (S.D.N.Y. Aug. 29, 2013) ............................................................... 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................................... 12, 18

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994)............................................................................................. 21

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................................................... 13

*Hunt v. Imperial Merch. Servs., Inc.*,
   560 F.3d 1137 (9th Cir. 2009)....................................................................................... 22

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)......................................................................................... 12

*In re High-Tech Employee Antitrust Litig.*,
   2013 WL 5770992 (N.D. Cal. Oct. 24, 2013) ............................................................... 15

*In re Immune Response Secs. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................ 20

*In re Ricoh Co., Ltd. Patent Litig.*,
   2010 WL 8961328 (N.D. Cal. Sept. 29, 2010) ............................................................. 22

*In re S. Cal. Sunbelt Developers, Inc.*,
   608 F.3d 456 (9th Cir. 2010)......................................................................................... 22

*Mahach-Watkins v. Depee*,
   2009 WL 3401281 (N.D. Cal. Oct. 20, 2009) .............................................................. 21

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
   2004 WL 5363614 (N.D. Cal. Nov. 22, 2004)............................................................... 20

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989)...................................................................................................... 17

*Nat'l Fed'n of the Blind v. Target Corp.*,
   2009 WL 2390261 (N.D. Cal. Aug. 3, 2009)................................................... 12, 16, 17

*Parra v. Bashas', Inc.*,
   291 F.R.D. 360 (D. Ariz. 2013) .................................................................................... 15

*Pension Trust Fund for Operating Eng'rs v. Joco Geospatial Cos., Inc.*,
   2011 WL 6303404 (N.D. Cal. Dec. 16, 2011) ............................................................. 21

*Pierce v. Rosetta Stone, Ltd.*,
   2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ....................................................... 20, 21

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010)................................................................................... 11, 18

*Rosenfeld v. U.S. Dep't of Justice*,
   904 F. Supp. 2d 988 (N.D. Cal. 2012) ................................................................... 14, 16

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
   2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) ......................................................... 15, 17

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2001)....................................................................................... 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)................................................................................... 11, 12

*Stonebrae, L.P. v. Toll Bros., Inc.*,
   2011 WL 1334444 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) ........... 14

*Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
    460 F.3d 1253 (9th Cir. 2006)......................................................................... 16, 21

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990)................................................................................ 17

*Van Skike v. Dir., Office of Workers' Comp. Programs*,
    557 F.3d 1041 (9th Cir. 2009).............................................................................. 11

*Vedachalam v. Tata Consultancy Servs., Ltd*,
    2013 WL 3941319 (N.D. Cal. July 18, 2013)..................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................. passim

*Watts v. Allstate Indem. Co.*,
    2013 WL 210059 (E.D. Cal. Jan. 17, 2013)........................................................ 15

*Williams v. Superior Court*,
    2013 WL 6384528 (Cal. Ct. App. Dec. 6, 2013) ................................................ 15

*Woods v. Carey*,
    722 F.3d 1177 (9th Cir. 2013).............................................................................. 21

## Statutes

28 U.S.C. § 1920(2) ....................................................................................................... 20
28 U.S.C. § 1920(3) ....................................................................................................... 20
42 U.S.C. § 2000e-5(k) ......................................................................................... 1, 11, 19

## Treatises

*California Attorney Fee Awards, Third Edition* (2013).................................................. 17

## Rules

Civil Local Rule 54-3(a) ................................................................................................ 21
Civil Local Rule 54-3(c)(1)............................................................................................ 20
Civil Local Rule 54-3(e) ................................................................................................ 20
Civil Local Rule 54-5..................................................................................................... 1
Civil Local Rule 54-5(b)(1) ........................................................................................... 2
Civil Local Rule 54-5(b)(2) ........................................................................................... 13
Fed. R. Civ. P. 23(b)(2).............................................................................................. 6, 8
Fed. R. Civ. P. 23(b)(3).................................................................................................. 8
Fed. R. Civ. P. 30(b)(6)............................................................................................. 4, 6

## Other Authorities

*California Attorney Fee Awards, Third Edition* (2013).................................................. 17

## I.       NOTICE OF MOTION AND MOTION; RELIEF SOUGHT

Please take notice that, on March 13, 2014 at 1:30 p.m. before the Honorable Judge Edward M. Chen, United States District Court, 450 Golden Gate Ave., San Francisco, CA, Plaintiffs will seek an order awarding attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and N.D. Cal. Civil Local Rule 54-5.

Plaintiffs request that the Court award:  (1) reasonable attorneys' fees for work on the case-in-chief and settlement through November 30, 2013, in the amount of $4,304,564;[1] (2) costs in the amount of $633,959.64; (3) fees and costs for monitoring and administering the settlement in the amount of $300,000; and (4) fees for work done on this fee motion, in an amount that Plaintiffs will provide to the Court at a later date.

## II.      INTRODUCTION

The parties have resolved this gender discrimination class action.  Plaintiffs now seek an award of reasonable attorneys' fees and costs.  *See* 42 U.S.C. § 2000e-5(k).

Class Counsel have worked on this case, without compensation, for more than a decade. During that time, Class Counsel vigorously prosecuted the action and succeeded on virtually every motion, including two motions for class certification, as well as two appeals to the Ninth Circuit.  Costco has been represented throughout by the highest caliber defense team from Seyfarth Shaw, a national employment law firm.  Perhaps most significantly, Class Counsel faced an unprecedented change in the governing law midway through the litigation.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  The Supreme Court's decision in *Wal-Mart* substantially changed the legal standards for class certification, requiring Class Counsel to re-litigate the certification under a new legal framework on remand from the Ninth Circuit.  Despite this formidable challenge, Class Counsel again succeeded on Plaintiffs' motion for class certification.  This Court's influential order was one of the first post-*Wal-Mart* Rule 23 analyses of employment policies incorporating subjectivity.  *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 518-19 (N.D. Cal. 2012), *petition for interlocutory reviewed denied*, (9th Cir. Jan. 16, 2013).

---

[1] Plaintiffs will also supplement their request for any work done between December 1, 2013, and the final approval hearing.

1    Class Counsel have now obtained significant relief for the certified classes. The proposed

2 settlement provides extensive programmatic relief, including a program through which an

3 Independent Consultant will develop new job analyses, selection criteria and assessment tools for

4 promotions to Assistant General Manager (AGM) and General Manager (GM) positions, a

5 posting system for AGM openings, a registration of interest system for GM openings, and a

6 merchandising training program. The proposed settlement also provides $8 million in monetary

7 relief that will be available in an expedited claims process. (*See* Mot. for Prelim. Approval of

8 Class Action Settlement.)

9    In order to achieve these excellent results, Class Counsel devoted 9,093 hours to this case

10 over a period of eleven years. The lodestar methodology is the most appropriate means for

11 determining a reasonable fee in a civil rights case like this one. After making substantial

12 reductions for billing judgment and a further across-the-board reduction to account for any

13 unnecessary duplication, Class Counsel now seek $4,304,564 in attorneys' fees and $633,959.64

14 in costs and expenses. Class Counsel also seek $300,000 in fees and costs for monitoring and

15 administering the settlement. [2]

16   **III.    STATEMENT OF FACTS**

17    This was a long and "complicated" case. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

18 974 (9th Cir. 2011). The work that Class Counsel did on the case can be best understood as

19 occurring in three phases. First, a team of attorneys from three law firms—the Impact Fund;

20 Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"); and Davis, Cowell & Bowe, LLP ("Davis

21 Cowell")—investigated, filed, and litigated the case from its inception until the district court first

22 certified the class, in January 2007. (Larkin Decl. ¶ 32; Hutchinson Decl. ¶ 9; Lawrence Decl. ¶

23 15.) In the second phase, the Impact Fund took the lead in defending the certification order on

24 Costco's appeal to the Ninth Circuit, with assistance from attorneys at two other law firms.

25 (Larkin Decl. ¶ 73; Lawrence Decl. ¶ 16; Lee Decl. ¶ 22.) Finally, the same core team of

26 attorneys—now spread among five law firms—worked together to obtain class certification in

27

28 [2] The parties met and conferred as required by Civil Local Rule 54-5(b)(1) and were unable to resolve the motion. (Larkin Decl. ¶ 101.)

2012 and, finally, to achieve the proposed settlement.  (Larkin Decl. ¶ 74.)  The Impact Fund was lead counsel throughout the litigation.  (*Id.* ¶ 35.)

| Work Performed | Time Period | Primary Counsel |
|---|---|---|
| Investigation, EEOC Proceedings, Complaint Filing, Venue Motion, Discovery, First Certification Order | Oct. 2002 – Jan. 2007 | Impact Fund, LCHB, Davis Cowell |
| Rule 23(f) Appeal | Feb. 2007 – Sept. 2011 | Impact Fund, Lewis Feinberg, Davis Cowell |
| Second Certification Motion, Merits Discovery, Trial Preparation, Settlement | Sept. 2011 – Present | Impact Fund, Lewis Feinberg, Davis Cowell, LCHB, Altshuler Berzon |

### A.   Phase 1 - Work Performed Prior to First Class Certification Order

#### 1.   Pre-Filing Investigation, EEOC Class Charges and Pre-Complaint Settlement Effort

Class Counsel began investigating this case in 2002 and filed a class EEOC charge for Named Plaintiff Shirley Rae Ellis ("Ellis") that same year.  (Larkin Decl. ¶ 45; Lawrence Decl. ¶ 15; ECF No. 1 at 18-22.)  Class Counsel researched Costco's organizational structure and promotion policies, retained a statistician to analyze data regarding Costco's promotion rates, commissioned a study by a labor economist, and reached out to and interviewed potential class members.  (See Larkin Decl. ¶ 45; ECF No. 136 ¶ 12.)  During this period, Class Counsel also filed an EEOC charge on behalf of Named Plaintiff Leah Horstman ("Horstman") and a retaliation charge on behalf of Ellis.  (ECF No. 58-1, Ex. B, C.)  Class Counsel attempted to resolve the case with Costco prior to filing a lawsuit, but the parties were unable to reach a settlement.  (See ECF No. 136 ¶ 12.)

#### 2.   Class Action Complaint, Opposition to Venue Motion and First Mediation Effort

Class Counsel filed the initial Complaint in the United States District for the Northern District of California on August 17, 2004.  (ECF No. 1.)  Costco filed a motion to transfer venue on October 15, 2004, arguing that the litigation should be moved to the District of Colorado, the

Western District of Washington, or the Southern District of California.  (ECF No. 6; *see also* ECF Nos. 66, 70.)  The parties litigated this issue through the fall, with Class Counsel submitting a brief in opposition to the motion, as well as a supplemental opposition to the motion after a hearing in November.  (ECF Nos. 65, 74.)  Class Counsel filed an Amended Complaint, adding Horstman as a Named Plaintiff, on October 27, 2004.  (ECF No. 58-1.)  The Court denied Costco's motion to transfer venue without prejudice in December 22, 2004.  (ECF No. 77.)  The parties continued to vigorously litigate Costco's renewed motion to transfer venue in early 2005.  (*See* ECF No. 81.)  Class Counsel also filed an EEOC charge on behalf of Elaine Sasaki and amended the Complaint to add her as the third Named Plaintiff on March 23, 2005.  (ECF No. 83; *see also* ECF No. 537, Ex. D.)  After additional briefing on the venue issue, and after hearing oral argument, the Court definitively rejected Costco's renewed motion to transfer venue on May 31, 2005.  (ECF Nos. 92, 95, 98.)

In the months that followed, the parties attempted to resolve the case through mediation with Mark Rudy, a respected and experienced mediator, on September 21, 2005 and November 10, 2005.  That effort also failed.  (*See* Larkin Decl. 56; ECF Nos. 99, 136 ¶ 13.)

### 3.    Pre-Certification Discovery

Prior to class certification, Class Counsel engaged in extensive discovery.  Class Counsel served six sets of document requests, containing 143 separate requests for production, and nineteen interrogatories.  (Larkin Decl. ¶ 51.)  Costco, in response, produced over 1900 documents, consisting of more than 39,000 pages, as well as electronic personnel and payroll data regarding Costco warehouse employees.  (*Id.*)  Class Counsel spent many hours coding and reviewing these documents.  (*Id.*)  Class Counsel also assisted the Named Plaintiffs in responding to Costco's requests for production, interrogatories, and requests for admissions.  (*Id.* ¶ 52.)

Class Counsel devoted many hours to preparing for, taking, and defending depositions.  (*Id.* ¶¶ 53-54.)  They took a total of eighteen depositions, including twelve depositions of fact witnesses, three depositions of Costco pursuant to Fed. R. Civ. P. 30(b)(6), and three depositions

1   of Costco's expert witnesses.  (*Id.* ¶ 53.)  Class Counsel also defended a total of fourteen

2   depositions, including multiple depositions of the Named Plaintiffs, depositions of five class

3   members, and depositions of all three of Plaintiffs' expert witnesses.  (*Id.* ¶ 54.)  Class Counsel

4   spent many hours preparing class members and experts for these depositions.  (*Id.* ¶ 54.)

5        In addition to this formal discovery, Class Counsel also developed the case through

6   informal investigation.  This work included interviewing class members, maintaining a contact

7   list, updating a class website, and keeping the Named Plaintiffs informed about the case.  (*See id.*

8   ¶ 55; Hutchinson Decl. ¶ 9.)

9                    **4.    Preparation of Expert Testimony**

10       As noted above, Class Counsel retained three experts for the first phase of this case.  First,

11  they retained statistician Dr. Richard Drogin, who analyzed Costco's personnel and payroll data.[3]

12  Dr. Drogin produced a report, in which he concluded, in part, that there was a statistically

13  significant shortfall of women promoted into Assistant General Manager ("AGM") positions at

14  Costco.  (ECF No. 133 at 17.)  Second, Class Counsel retained labor economist Dr. Marc

15  Bendick, who wrote an in-depth report analyzing the expected representation of women among

16  Costco's managers.  (ECF No. 134.)  Finally, Class Counsel retained sociologist Dr. Barbara F.

17  Reskin, who wrote an analysis of Costco's common culture and policies.  (ECF No. 135.)  Dr.

18  Reskin concluded, in part, that Costco's policies and practices have features known to be

19  vulnerable to gender bias.  (*Id.* ¶ 89.)  These three reports were central to Plaintiffs' claim that

20  Costco violated Title VII under both the adverse impact and disparate treatment theories of

21  discrimination.  (*Id.* ¶ 57.)

22       Costco offered four expert witnesses:  Dr. Ali Saad, Dr. Margaret Stockdale, Dr. Casey

23  Mulligan, and Dr. Frank Landy.  (*See* ECF Nos. 151, 152, 153, 154, 155, 156, 158.)

24                    **5.    First Motion for Class Certification and Daubert Motions**

25       Class Counsel filed a motion for class certification on August 28, 2006.  (ECF No. 127.)

26

27  [3] This was an extremely time-consuming process, which required Dr. Drogin and Costco's expert
    to engage in extensive back-and-forth communication to understand and properly interpret the
28  electronic data.  Class Counsel facilitated the communication between Dr. Drogin and Costco's
    expert.  (Larkin Decl. ¶ 57.)

1    Class Counsel attached numerous exhibits, including deposition excerpts, attorney declarations,

2    expert declarations, Named Plaintiff and class member declarations, and numerous Costco

3    documents as exhibits in support of the motion.  (*See* ECF Nos. 128, 130, 130-1, 130-2, 130-3,

4    133, 134, 135, 136, 137, 138, 140, 141, 142, 143.)  Costco opposed the motion.  (ECF No. 433.)

5         In the months that followed, Class Counsel vigorously litigated two key issues.  First,

6    Costco moved to strike the declarations of Drs. Drogin, Bendick, and Reskin.  (*See* ECF Nos.

7    435, 436, 447.)  Class Counsel filed a brief in opposition to the motion, supplemental declarations

8    from the three experts, and numerous other exhibits.  (ECF Nos. 463, 463-1, 463-2, 463-3, 464.)

9    Class Counsel was ultimately successful on this issue:  the Court denied Costco's motion to strike

10   the declarations of Drs. Bendick and Reskin, and struck only a single paragraph and table from

11   Dr. Drogin's declaration.  (ECF No. 494 at 31, 36.)

12        Second, Class Counsel filed a motion to strike approximately 200 declarations from

13   current and former female Costco employees, submitted by Costco in support of its opposition.

14   (ECF No. 469; *see also* ECF No. 389 ¶ 2.)  Plaintiffs argued that Costco had not disclosed the

15   declarations during discovery, and requested that Costco produce a witness under Fed. R. Civ. P.

16   30(b)(6) to explain the circumstances under which they were obtained.  (ECF Nos. 460, 469.)

17   The Court held a telephonic hearing, and ruled that the declarations would be stricken unless

18   Costco produced each of the declarants to testify in person at the hearing.  (ECF No. 482.)

19   Costco subsequently stipulated to withdraw certain portions of the declarations and to limit their

20   use in the litigation.[4]  (ECF No. 486.)

21        The Court heard oral argument on November 7, 2006.  (ECF No. 490.)  It granted

22   Plaintiffs' motion for class certification under Rule 23(b)(2) on January 11, 2007.[5]  (ECF No.

23   494.)

24        **B.    Phase 2 - Ninth Circuit Appeal**

25        Following the first class certification order, Costco filed a Rule 23(f) petition in the Ninth

26   _____

[4] That withdrawn testimony was again a subject of dispute in the 2012 class certification process.
27   (ECF No. 693 at 15-16.)

[5] The Court's order appointed Brad Seligman and Jocelyn Larkin of the Impact Fund, Bill Lann
28   Lee and James Finberg of LCHB, and Steven Stemerman and Elizabeth Lawrence of Davis
Cowell as Class Counsel.  (ECF No. 494 at 21-22.)

1    Circuit.  (Case No. 07-80006, ECF No. 1.)  Class Counsel submitted a brief in opposition to the

2    petition, and also responded to two supplemental letter briefs that Costco filed.  (Case No. 07-

3    80006, ECF Nos. 2, 4, 5.)  The Ninth Circuit granted the petition on May 11, 2007, setting into

4    motion the second major phase of litigation.  (*See* Case No. 07-15838, ECF No. 1.)[6]  The parties

5    agreed to stay discovery during the pendency of the appeal.  (ECF No. 509 ¶ 11.)

6         During the fall, Class Counsel prepared a 64-page legal brief, in which it urged the Ninth

7    Circuit to affirm the certification order.  (*See* Ninth Cir. ECF No. 26.)  They also submitted 282

8    pages of documents as a supplemental excerpt of record.  (Larkin Decl. ¶ 66.)  After briefing was

9    completed, Class Counsel filed two additional letter briefs alerting the Court to new authority.

10   (Ninth Cir. ECF Nos. 33, 43.)  They also responded to two such letter briefs from Costco.  (Ninth

11   Cir. ECF Nos. 37, 46.)  The case attracted significant attention from other organizations:  four

12   groups signed an amicus brief in support of Plaintiffs, and five groups filed amicus briefs in

13   support of Costco.  (*See* Ninth Cir. ECF Nos. 17, 18, 19, 20, 28, 39.)

14        The Ninth Circuit heard oral argument on April 14, 2008.  (Ninth Cir. ECF No. 47.)  In

15   the months that followed, Class Counsel responded to four letter briefs that Costco submitted

16   pursuant to Rule 28(j).  (Ninth Cir. ECF Nos. 51, 55, 60, 62.)  In addition, the Ninth Circuit

17   ordered supplemental briefing from the parties in July 2010, asking them to address the effect of

18   the Ninth Circuit's decision in *Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571 (9th Cir. 2010) (en

19   banc), *rev'd*, 131 S. Ct. 2541 (2011).  (Ninth Cir. ECF No. 65.)  The Ninth Circuit later withdrew

20   and then deferred submission of the case, however, pending the Supreme Court's decision in *Wal-*

21   *Mart Stores, Inc. v. Dukes*.  (Ninth Cir. ECF Nos. 74, 75.)  The Supreme Court decided *Wal-Mart*

22   on June 20, 2011.  131 S.Ct. at 2541.  The Ninth Circuit then ordered yet another round of

23   briefing in June 2011, to address the impact of the Supreme Court's decision in *Wal-Mart*.  (Ninth

24   Cir. ECF No. 76.)

25        The Ninth Circuit issued its opinion on September 16, 2011.  It described this case as

26   "complicated," and explained that *Wal-Mart* was a "new precedent altering [the] existing case

27   _____

28   [6] All further citations to the Ninth Circuit docket refer to Case No. 07-15838, unless indicated
     otherwise.

PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS
CASE NO. C04-3341 EMC

1    law" that governed its decision.  *Ellis*, 657 F.3d at 974.  The Court affirmed in part, vacated in

2    part, and remanded the certification order, directing the district court "to apply the legal standard

3    established in *Wal-Mart*" and to consider if the class could be certified under Rule 23(b)(2) or

4    23(b)(3).  *Id.* at 987.  The Ninth Circuit's mandate issued on October 13, 2011.  (*See* ECF No.

5    529 at 2.)

6            **C.      Phase 3 - Work After Remand to this Court**

7                   On remand, the same core team of attorneys who initially brought this case—now spread

8    among five law firms—re-assembled to continue litigating.[7]

9                           **1.      Motion for Class Certification**

10                  The parties agreed that Class Counsel would file a Third Amended Complaint to reflect

11   the intervening change in the law.  (ECF No. 535 at 5.)  Class Counsel did so on March 23, 2012.

12   (ECF No. 537.)  Costco, in response, filed a motion for an order eliminating class claims.  (ECF

13   No. 543.)  At this stage, Class Counsel were faced with the challenging task of re-litigating class

14   certification in the wake of *Wal-Mart*.  Their efforts culminated in a cross-motion for class

15   certification and opposition to Costco's motion to eliminate class claims, which Class Counsel

16   filed on June 8, 2012.  (ECF No. 664.)  They also re-filed numerous exhibits, including deposition

17   excerpts, internal Costco documents, and declarations from expert witnesses and class members.

18   (*See* ECF Nos. 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677.)

19                  The Court heard oral argument on July 31, 2012.  (ECF No. 683.)  After oral argument,

20   Class Counsel kept the Court apprised of new developments in the law, filing a joint motion for

21   leave to file a statement of recent decision on August 10, 2012, and another such motion on

22   September 7, 2012.  (ECF Nos. 684, 687.)  On September 25, 2012, the Court issued an 86-page

23   order granting class certification.  (ECF No. 693.)  The Court appointed the Impact Fund, Lewis

24   Feinberg, Davis Cowell, LCHB, and Altshuler Berzon as class counsel.  (*Id.* at 84.)

25

26

27   [7] In January 2007, two of the key attorneys took positions at different law firms.  Bill Lann Lee
     moved from LCHB to Lewis, Feinberg, Lee, Renaker & Jackson, P.C. ("Lewis Feinberg").
28   James Finberg moved from LCHB to Altshuler Berzon LLP ("Altshuler Berzon").  (Lee Decl.
     ¶ 1; Finberg Decl. ¶ 1; *see also* Larkin Decl. ¶ 32.)

**2.    Costco's Rule 23(f) Petition to Appeal Class Certification Order**

After the Court certified the class, Costco filed a Rule 23(f) petition in the Ninth Circuit, seeking permission to appeal the order.  (Case No. 12-80188, ECF No. 1.)  Class Counsel filed a brief opposing the petition on October 19, 2012.  (Case No. 12-80188, ECF No. 3.)  The Ninth Circuit denied Costco's petition on January 16, 2013.  (Case No. 12-80188, ECF No. 5.)

**3.    Post-Certification Discovery and Trial Preparation**

While Costco's petition in the Ninth Circuit was pending, Class Counsel began merits discovery and preparation for summary judgment motions and a Stage I trial on the merits, which the Court set for January 2014.  (*See* ECF No. 698.)  In November 2012, the parties negotiated and then submitted a joint motion for approval of class notice and notice plan.  (*See* ECF No. 700.)  Following the Court's approval, Class Counsel retained a claims administration firm, which sent notice to 1258 individuals in December 2012.  (Larkin Decl. ¶ 82.)

Next, the parties submitted a discovery plan for the period leading up to trial, which the Court approved on December 12, 2012.  (ECF Nos. 704, 706.)  Class Counsel subsequently served their seventh request for production of documents on Costco, including updated electronic personnel data.[8]  (Larkin Decl. ¶ 83.)  After lengthy negotiations, the parties also stipulated to an order regarding discovery of electronically stored information, entered on April 2013.  (ECF No. 720; *see also* Larkin Decl. ¶ 85.)  Costco produced several hundred thousand pages of documents, and Class Counsel spent many hours reviewing the documents.  (Larkin Decl. ¶ 86.)

Class Counsel filed Plaintiffs' Fourth Amended complaint on March 28, 2013, adding a retaliation claim on behalf of Sasaki.[9]  (ECF No. 718.)  Plaintiffs replaced one of their experts, who had retired.  (Larkin Decl. ¶ 84.)  Costco designated two new experts, Dr. Philip Tetlock and Dr. Eric Dunleavy, in part to replace Dr. Frank Landy, who had passed away.  (*Id.*)  Class Counsel defended Sasaki's third deposition on August 23, 2013.  (*Id.* ¶ 88.)

---

[8] Again, this electronic production required numerous iterations, with each side's experts going back and forth, until a readable database was finally obtained.  (Larkin Decl. ¶ 83.)

[9] Class Counsel filed an EEOC retaliation charge on behalf of Sasaki on or about March 6, 2013. (Larkin Decl. ¶ 87; *see also* ECF No. 718 ¶ 112.)

### 4.    Mediation and Settlement Negotiations

The parties temporarily suspended their discovery efforts in June 2013 in order to focus on mediation.  (See ECF No. 729 at 2.)  Two members of Class Counsel's litigation team traveled to Costco's headquarters, in Issaquah, Washington, to discuss the possibility of settlement with high-level Costco executives and members of Costco's legal team.  (Larkin Decl. ¶ 89; Lee Decl. ¶ 24.)  Each side then prepared a lengthy mediation brief.  (Larkin Decl. ¶ 89.)  The parties met with Mark Rudy on July 11, 2013, and August 5, 2013, for two full days of mediation.  (*See* ECF Nos. 733 at 2, 737 at 2.)

As the summer ended, settlement negotiations intensified.  Mr. Rudy circulated a mediator's proposal on August 9, 2013.  (Larkin Decl. ¶ 91; ECF No. 737 at 2.)  The parties met again for two days of in-person negotiations on October 1 and October 2, and for a final mediation on October 5.  (Larkin Decl. ¶¶ 93-94.)  In between these meetings, Class Counsel researched and drafted proposed terms, responded to Costco's proposed terms, and negotiated with opposing counsel.  (*Id.* ¶ 92.)  They also spent significant time conferring with the Named Plaintiffs regarding the negotiations.[10]  (*Id.*)

The parties signed a memorandum of understanding on October 11, 2013.  (ECF No. 749.)  The proposed settlement provides for important programmatic relief, including the development of new selection criteria for promotions, new processes for posting open AGM positions and registering interest in GM openings, and a training program.  It also creates a fund of $8 million in monetary relief, which class members can obtain, if successful, through an expedited claims process.  Under the proposed settlement, Class Counsel can seek fees for work done up through final approval, as well as the work they will do monitoring compliance with the settlement and

---

[10] Class Counsel also continued to engage in discovery, anticipating the possibility that mediation might fail.  (Larkin Decl. ¶¶ 96-97.)  They responded to Costco's fourth set of interrogatories, which Costco served in June 2013.  (Larkin Decl. ¶ 96.)  They also served their second set of interrogatories on Costco in August 2013.  (*Id.*)  In addition, the parties litigated two discovery issues:  (1) whether Costco could take further deposition testimony from Named Plaintiffs Ellis and Horstman, (*see* ECF No. 739), and (2) whether Costco was required to produce electronically stored information from certain Costco executives that contained sexist words, (*see* ECF No. 741).  At the time the proposed settlement was reached, both parties were preparing to file multiple summary judgment and *Daubert* motions, and Costco was preparing a motion to decertify the class.  (*See, e.g.*, ECF Nos. 697, 747.)

administering the claims process.  The details of the proposed settlement are described in more

detail in Class Counsel's brief in support of motion for preliminary approval of class settlement.

## IV.    ARGUMENT

### A.    Class Counsel are Entitled to Their Lodestar in Attorneys' Fees

As a prevailing party, Plaintiffs are statutorily entitled to an award of attorneys' fees.  *See*

42 U.S.C. § 2000e-5(k).[11]  Because the lodestar method for calculating fees is appropriate here,

and because Class Counsel's lodestar is reasonable, the Court should grant Class Counsel's

motion for attorneys' fees.

### 1.    Plaintiffs Meet the "Prevailing Party" Standard

In this circuit, "a plaintiff who obtains a legally enforceable settlement agreement

qualifies as a 'prevailing party,' at least when the district court retains jurisdiction to enforce the

agreement."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010); *see also,*

*e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Here, the parties have

entered into an enforceable settlement agreement that expressly allows Plaintiffs to seek

attorneys' fees.  (Larkin Decl. ¶ 95.)  Plaintiffs are therefore entitled to a reasonable award of

attorneys' fees.  *See* 42 U.S.C. § 2000e-5(k).

### 2.    The Lodestar Method of Calculating Fees is Appropriate in this Case

The Court should calculate fees using the lodestar method.  Under the lodestar method,

attorneys' fees are calculated by "multiplying the number of hours the prevailing party reasonably

expended on the litigation by a reasonable hourly rate."  *Staton v. Boeing Co.*, 327 F.3d 938, 965

(9th Cir. 2003) (internal quotation marks omitted).  The Ninth Circuit has adopted this method as

"the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting

point in determining a reasonable attorney's fee."  *Van Skike v. Dir., Office of Workers' Comp.*

*Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlington v. Dague*, 505 U.S.

557, 562 (1992)).  The lodestar method is particularly appropriate "in class actions brought under

---

[11] "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."  42 U.S.C. § 2000e-5(k).

1  fee-shifting statutes," such as this one, "where the relief sought—and obtained—is often

2  primarily injunctive."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

3  2011); *see also, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("In

4  employment, civil rights and other injunctive relief class actions, courts often use a lodestar

5  calculation because there is no way to gauge the net value of the settlement or any percentage

6  thereof.").  Here, much of the relief that Class Counsel have obtained—including the

7  development of new selection criteria for promotions, the implementation of a merchandising

8  training program, the adoption of new procedures for posting AGM job openings, and the

9  creation of a system to register interest in GM positions—is "socially beneficial," but "not easily

10  monetized."  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 941.  The lodestar

11  method is therefore the appropriate means by which to calculate fees.[12]

12  ### 3.    The Adjusted Lodestar that Class Counsel Request is Reasonable

13  Applying the lodestar method, Class Counsel seek $4,304,564 in attorneys' fees.  The

14  following chart reflects the hours, by firm, that Class Counsel reasonably expended on the

15  litigation.[13]  Class Counsel have taken an across-the-board cut of 5% of the full lodestar—totaling

16  $226,556—to offset any billing discrepancies, duplication of work, or time that new attorneys

17  spent getting familiar with the case.  Cf. *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL

18  2390261, at *5 (N.D. Cal. Aug. 3, 2009) (concluding that a five percent voluntary reduction in

19  fees was sufficient to offset insufficiently documented time entries).  That reduction is also

20  reflected in the chart.

21

22

| Law Firm | Hours Worked | Value of Hours Worked |
|---|---|---|
| The Impact Fund | 4740.60 | $2,350,220.00 |

23

24  [12] The alternative method for calculating fees—awarding a "percentage of the fund"—is
    inappropriate here, both because (1) the value of the injunctive relief is impossible to quantify,
25  and (2) this case does not involve a common fund.  *See Staton*, 327 F.3d at 969 (explaining that
    "if the parties invoke common fund principles, they must follow common fund procedures and
26  standards"); *see also, e.g.*, *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *1 (N.D. Cal.
    Sept. 22, 2009) (applying California law, but noting that since "there is no 'common fund' here,
27  the 'percentage-of-the-fund' method is not available as a way to calculate attorney's fees").

[13] The individual hourly rates for each attorney and legal staff member are included in summary
28  form in Larkin Declaration Exhibit C, and, for each firm, in their respective declarations. (Finberg
    Decl. ¶ 16, Hutchinson Decl. ¶ 11, Larkin Decl. ¶ 105, Lawrence Decl. ¶ 20, Lee Decl. ¶ 30.)

| | | |
|---|---:|---:|
| Davis Cowell | 1519.10 | $933,370.00 |
| LCHB | 2177.20 | $866,108.00 |
| Lewis Feinberg | 470.20 | $252,862.00 |
| Altshuler Berzon | 186.00 | $128,560.00 |
| LODESTAR TOTAL | 9093.10 | $4,531,120.00 |
| 5% REDUCTION | | $226,556.00 |
| **ADJUSTED LODESTAR** | **9093.10** | **$4,304,564.00** |

### a.   The Number of Hours Class Counsel Spent Litigating This Case is Reasonable

In order to obtain significant relief for the classes, Class Counsel devoted more than 9,000 hours, over a period of eleven years, to litigating this case.  The number of hours that Class Counsel spent working on the case is reasonable, given the excellent results that Class Counsel achieved, the duration of the litigation, and the complexity of the issues, including the Supreme Court's change in the law mid-way through litigation.[14]

### i.   Class Counsel Achieved Excellent Results

Class Counsel are entitled to a full award of fees because they were wholly successful at every stage of the litigation.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  Here, Class Counsel's results were excellent:  not only did they twice obtain class certification, they also won virtually every significant motion that was litigated before the district court, both before and after the Supreme Court changed the law in *Wal-Mart*.  In addition, Class Counsel went on to obtain a proposed settlement that provides for important programmatic relief, as well as an $8 million fund for successful claims in an expedited process.  (*See* Mot. for Prelim. Approval of Class Action

---

[14] At the Court's request, Class Counsel will submit *ex parte in camera*, under Civ. L.R. 54-5(b)(2), a true and correct copy of detailed billing records of time spent litigating the case-in-chief and settlement of this case, as well as detailed billing records of time spent preparing this Motion for an Award of Attorneys' Fees and Cost.  Class Counsel have not attached such records here because they include material protected by the attorney client privilege and the attorney work product doctrine.  There is particular sensitivity about the contents of Class Counsel's time entries because the parties will continue to litigate the claims of the Named Plaintiffs, as well as the claims of the claimants in the arbitration process.  (Larkin Decl. ¶ 109.)

1   Settlement.)  Having achieved the goals of the litigation, no fee reduction for time spent on

2   unsuccessful claims is necessary.  *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001)

3   (affirming an award of fees to Class Counsel even though "the settlement agreement neither

4   encompasses all the relief that Plaintiffs sought nor requires the . . . Defendants to make all the

5   changes to their program that Plaintiffs contemplated," because the settlement nevertheless

6   "achieved the goal of their class action"); *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444,

7   at *11 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013).

8              ii.      **Class Counsel Worked on this Complicated Case for More than a Decade, and had to Adapt to an Entirely New Legal Standard Mid-Way Through the Litigation**

9

10         In order to achieve such excellent results, Class Counsel had to do thousands of hours of

11   work.  This case was extraordinarily long and complex.  It was twice litigated in the district court

12   and twice appealed to the Ninth Circuit, with a steady stream of motions—to transfer venue, to

13   strike expert testimony, to eliminate class claims, and so on—litigated in each round.  As a result,

14   Class Counsel put in many hours of work on two separate class certification motions, two

15   separate Rule 23(f) petitions in the Ninth Circuit, several rounds of discovery, numerous motions

16   and responses to motions, and a critical appeal—which included supplemental briefing—in the

17   Ninth Circuit.  Put simply, this work took a lot of time.  Courts in the Ninth Circuit have routinely

18   taken into account the long hours of work necessary for such complex and protracted cases when

19   calculating the "reasonable hours worked" component of the lodestar.  *See, e.g.*, *Rosenfeld v.*

20   *U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1004 (N.D. Cal. 2012); *Fleury v. Richemont N. Am.,*

21   *Inc.*, 2008 WL 3287154, at *5 (N.D. Cal. Aug. 6, 2008).  As the Ninth Circuit has explained, "the

22   court should defer to the winning lawyer's professional judgment as to how much time he was

23   required to spend on the case."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

24   2008).  Here, Class Counsel were required to spend a significant amount of time on the case in

25   order to succeed year after year, in phase after phase of litigation.

26         This case was made especially complex by the Supreme Court's unprecedented change in

27   the governing law mid-way through litigation.  *See Wal-Mart Stores, Inc.*, 131 S. Ct. at 2541.

28   After *Wal-Mart* was decided, the Ninth Circuit remanded this case, noting that *Wal-Mart* was a

1  "new precedent altering [the] existing case law." *Ellis*, 657 F.3d at 974.  As a result, Class

2  Counsel found themselves at the forefront of a new wave of post-*Wal-Mart* litigation.  They

3  devoted many hours to analyzing the new requirements set forth in *Wal-Mart*, re-analyzing the

4  facts of this case, and refining their arguments in light of the change in the law.  The importance

5  of the case on remand cannot be over-stated:  the district court's order certifying the class last

6  year was the first opinion on subjective criteria issued after *Wal-Mart*, and it has already been

7  cited in ten other decisions, as well as in multiple briefs and motions around the country.[15]  The

8  number of hours that Class Counsel spent working on this case appropriately reflects the complex

9  and novel legal arguments that they had to develop after *Wal-Mart* was decided.  *See Blum v.*

10  *Stenson*, 465 U.S. 886, 898 (1984) ("The novelty and complexity of the issues presumably were

11  fully reflected in the number of billable hours recorded by counsel . . . .");  *see also, e.g.*, *San*

12  *Francisco Baykeeper v. W. Bay Sanitary Dist.*, 2011 WL 6012936, at *12 (N.D. Cal. Dec. 1,

13  2011) (explaining that "the complexity of CWA litigation and the number of spills at issue" made

14  the number of hours charged by the plaintiffs reasonable).

15                    **iii.    Class Counsel Used Appropriate Staffing**

16            A small team of attorneys drove this litigation for more than a decade.  Five attorneys put

17  in approximately half of the total hours expended on this case.  (*See* Larkin Decl. ¶ 43.)  This is

18  reasonable for a lawsuit of this size.  *Cf. Charlebois v. Angels Baseball LP*, 2012 WL 2449849, at

19  *12 (C.D. Cal. May 30, 2012); *Wren*, 2011 WL 1230826, at *25-27 (approving fees for multiple

20  attorneys from four law firms, each of whom had different primary responsibilities in the

21  litigation).  Plaintiffs' legal team was comparable in size to Costco's legal team, which included

22  lawyers from Seyfarth Shaw's offices in Los Angeles, Chicago, Washington State, and

23

24  _____

[15] *See Ching v. Siemens Indus., Inc.*, 2013 WL 6200190, at *4 (N.D. Cal. Nov. 27, 2013); *Covillo v. Specialtys Cafe*, 2013 WL 5781574, at *6 (N.D. Cal. Oct. 25, 2013); *In re High-Tech Employee*

25  *Antitrust Litig.*, 2013 WL 5770992, at *46 (N.D. Cal. Oct. 24, 2013); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 2013 WL 4647190, at *11 (S.D.N.Y. Aug. 29, 2013); *Parra*

26  *v. Bashas', Inc.*, 291 F.R.D. 360, 391-92 (D. Ariz. 2013); *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 580 (N.D. Cal. 2013); *Watts v. Allstate Indem. Co.*, 2013 WL 210059, at

27  *5 n.5 (E.D. Cal. Jan. 17, 2013); *Evans v. Linden Research, Inc.*, 2012 WL 5877579, at *16-17 (N.D. Cal. Nov. 20, 2012); *Williams v. Superior Court*, 2013 WL 6384528, at *5 (Cal. Ct. App.

28  Dec. 6, 2013); *Strong v. Blue Cross of Cal.*, 2013 WL 241982, at *4 (Cal. Ct. App. Jan. 23, 2013).

PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS
CASE NO. C04-3341 EMC

Washington, D.C., along with numerous in-house attorneys.  In addition, Class Counsel's decision to maintain the same core team of attorneys, even after they had dispersed to five different law firms, was reasonable, in light of the in-depth knowledge of the case that those attorneys had developed over the years.  *See, e.g.*, *Moreno*, 534 F.3d at 1115 (holding that district courts should not speculate about whether "different staffing decisions might have led to a different fee request").[16]

### iv.   Class Counsel Exercised Billing Judgment Regarding the Number of Hours Worked

In calculating their hours worked, Class Counsel exercised sound billing judgment.  First, Class Counsel eliminated any hours billed by time-keepers who worked on the case for less than ten hours.  Second, attorneys at each law firm carefully examined their respective billing records and eliminated certain hours in the exercise of billing judgment.  (*See* Finberg Decl. ¶ 15; Hutchinson Decl. ¶¶ 16-18; Larkin Decl. ¶ 110; Lawrence Decl. ¶ 25; Lee Decl. ¶ 29.)  These reductions eliminated more than 300 hours of work, corresponding to many tens of thousands of dollars in fees.  (Larkin Decl. ¶ 40.)  Finally, Class Counsel reduced their total hours by 5%, so as not to bill for excessive, redundant, or unnecessary hours.  *See Rosenfeld*, 904 F. Supp. 2d at 1003-04.  This 5% reduction reduced the requested fee award by $226,556.  (Larkin Decl. ¶ 42.)

### b.    The Hourly Rates that Class Counsel Seek are Reasonable

The hourly rates that Class Counsel seek are reasonable.  An attorney's hourly rate is reasonable if it is in line with those of attorneys who (1) have "comparable skill, experience and reputation," and (2) practice law in the same legal community—here, the Northern District of California.  *Blum*, 465 U.S. at 895 n.11; *see also, e.g.*, *Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *3.[17]  Where Class Counsel have worked on the case for years without payment, "the courts have regularly recognized the delay factor," and have remedied it "either by basing the

---

[16] As discussed *supra*, three law firms represented Plaintiffs at the time of filing the first complaint.  Filing as co-counsel allowed the law firms to share in the costs and risks of a large, difficult case, for which Class Counsel ultimately did more than a decade of work without any compensation.  (*See* Lawrence Decl. ¶ 15.)

[17] The rates for paralegals and law clerks are likewise determined by "market rates."  *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *see also, e.g.*, *Rosenfeld*, 904 F. Supp. 2d at 1002.

PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS
CASE NO. C04-3341 EMC

1  award on current rates," as Class Counsel request here, "or by adjusting the fee based on

2  historical rates to reflect its present value."  *San Francisco Baykeeper*, 2011 WL 6012936, at *8

3  (internal quotation marks omitted); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284

4  (1989)).[18]

5         Class Counsel in this case represent some of the most highly respected civil rights law

6  firms in the country.  They have decades of litigation experience among them, including major

7  victories in high-profile class action lawsuits.  (*See* Larkin Decl. ¶¶ 7-13; Lee Decl. ¶¶ 6-10;

8  Lawrence Decl. ¶ 5; Finberg Decl. ¶¶ 4-6; Hutchinson Decl. ¶ 6.)  Class Counsel's rates are

9  consistent with the market for attorneys with comparable experience in this district.  (Larkin Decl.

10 ¶ 107; Lee Decl. ¶ 32-33; Lawrence Decl. ¶¶ 20-22; Finberg Decl. ¶¶ 18-21; Hutchinson Decl. ¶¶

11 12-13.)

12        Class Counsel have established that their hourly rates are reasonable by submitting (1)

13 "affidavits [from themselves] and other attorneys regarding prevailing fees in the community,"

14 and (2) evidence of rate determinations in other cases, especially cases where Class Counsel

15 themselves were assigned a reasonable hourly rate.  *United Steelworkers of Am. v. Phelps Dodge*

16 *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  First, the declaration of expert Richard M. Pearl,

17 author of the treatise *California Attorney Fee Awards, Third Edition* (2013), establishes that Class

18 Counsel's rates are reasonable market rates for highly qualified attorneys.  (Pearl Decl. ¶ 8); *see*

19 *also Stonebrae, L.P.*, 2011 WL 1334444, at *2-4, 14-16.  Second, courts in this district have

20 recently awarded Class Counsel fees that are the same or comparable to the rates they are seeking

21 in this case.  (*See* Larkin Decl. ¶ 106; Lee Decl. ¶ 33; Lawrence Decl. ¶ 21; Finberg Decl. ¶ 20;

22 Hutchinson Decl. ¶ 12.)  Based on this evidence, Class Counsel have established that their hourly

23 rates are reasonable.  *See, e.g.*, *San Francisco Baykeeper*, 2011 WL 6012936, at *8; *Nat'l Fed'n*

24 *of the Blind*, 2009 WL 2390261, at *3.

25

26

27 [18] Class Counsel have used current hourly rates for most timekeepers.  However, some firms used
   modified historical rates for timekeepers who left the firm earlier in the case or for attorneys who
28 moved from law clerk or associate status to partner during the pendency of the case.  (*See* Larkin
   Decl. ¶ 42, Hutchinson Decl. ¶ 11.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Class Counsel Should Also be Awarded Fees for Future Work on this Case**

**1.      Class Counsel Should be Awarded Fees for Monitoring the Injunctive Relief and Overseeing the Claims Process**

The Court should also authorize Class Counsel fees of $300,000 for the hours Class Counsel will spend monitoring Costco's compliance with the Settlement, as well as their work overseeing the claims process. *See Balla v. Idaho*, 677 F.3d 910, 916-18 (9th Cir. 2012); *Prison Legal News*, 608 F.3d at 452; *see also, e.g.*, *Goldkorn v. Cnty. of San Bernardino*, 2012 WL 476279, at *10 (C.D. Cal. Feb. 13, 2012).  This work will include meeting with the Independent Consultant and Costco in connection with developing the programmatic relief, reviewing draft proposals, resolving any disputes, and reviewing monitoring reports and compliance processes. (Larkin Decl. ¶ 100.)  For the claims procedure, Class Counsel will select arbitrators, write context briefs, develop and disseminate materials to explain the claims procedure, and consult with class members about claims.  (*Id.*)

It is appropriate for the Court to award Class Counsel these fees at present, rather than requiring Class Counsel to seek them at a later date.  For this work—unlike their work during the individual claims process—Class Counsel will have achieved the relevant relief at the time the settlement is approved.[19]  Such an award is consistent with the case law in this circuit.  *See Hanlon*, 150 F.3d at 1029 (approving a fee award that included "all future services that class counsel must provide" while the injunctive relief was in effect, since counsel would have to "remain available to enforce the contractual elements of the settlement agreement and represent any class members who encounter difficulties").

**2.      Class Counsel Will Seek Fees for Successful Arbitrations and Written Submissions at a Later Date**

The parties have also agreed that Class Counsel may seek fees for their work on successful arbitrations at the end of the claims process.  (Larkin Decl. ¶ 95.)  In addition, the parties have stipulated to a cap of $10,000 for each of the written submission claims on which a class member succeeds.  (Mot. for Prelim. Approval of Class Action Settlement, Larkin Decl., Ex.

---

[19] By the same reasoning, Class Counsel will seek attorneys' fees for the individual arbitrations at a later time, since they have not yet obtained monetary relief for any particular individual class member.

A § 5.10.6.)[20]  Such an agreement is reasonable, given that (1) Class Counsel will certainly have to do substantive work on arbitrations and written submissions, but (2) they do not currently know how many hours they will spend on such work, or how many claims will be successful. Because Class Counsel have agreed to represent all class members who wish to assert a claim, there is a significant likelihood that they will receive no compensation for work on some unsuccessful claims.  (*Id.* at § 1.1.1.)

## C.     Class Counsel Should be Awarded Reasonable Costs

Class Counsel are also entitled to recover their costs.  42 U.S.C. § 2000e-5(k).  In addition to recovering any costs that are taxable under 28 U.S.C. § 1920, Class Counsel are entitled to recover any costs that would normally be charged by an attorney to a fee-paying client.  *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).  Here, Class Counsel request an award of $633,959.64 to cover the costs of experts, attorney and witness travel, mediation services, transcripts, postage, copying and printing, delivery and messenger services, access to online legal databases and research materials, telecommunication costs, filing fees, a jury consultant, and class notice.  The award of costs that Class Counsel seek is reasonable in light of the complex and protracted nature of the case.

Experts.  Class Counsel paid fees to its experts.  Such costs are recoverable under statute. 42 U.S.C. § 2000e-5(k); *see also Davis*, 976 F.2d at 1549.  They are both necessary and reasonable in a case of this nature, where the plaintiffs must rely on social science and statistics to prove their claims.  *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 162 (1982) (Burger, J., concurring in part and dissenting in part) (explaining that the success of "[r]espondent's class claim on behalf of unsuccessful applicants for jobs with petitioner" depended on "an analysis of statistics concerning petitioner's hiring patterns"); *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1265 (N.D. Cal. 1997) (denying motion to exclude expert testimony, and explaining that "[e]xpert

---

[20] The total attorneys' fees award on written claims will not exceed $750,000.  (Mot. for Prelim. Approval of Class Action Settlement, Larkin Decl., Ex. A § 5.10.6.)

1    testimony regarding the interplay of gender stereotyping and subjective employment practices, in

2    addition to the effect of such stereotyping on the gender composition of the workforce" is

3    "relevant to plaintiffs' disparate treatment and disparate impact claims").

4        <u>Travel</u>.  Class Counsel had to travel throughout the United States in order to investigate

5    this national class action, interview class members, and take and defend depositions.  (*See* Larkin

6    Decl. ¶ 53.)  Their travel costs included reasonable expenses for hotels, meals, and coach airfare.

7    The Ninth Circuit has approved the reimbursement of travel costs, and courts in this district have

8    routinely granted such costs.  *See, e.g.*, *Grove*, 606 F.3d 577 at 580-81; *Pierce v. Rosetta Stone,*

9    *Ltd.*, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013).

10       Class Counsel also seek reimbursement for the travel and per diem costs of the witnesses

11   that Costco deposed.  Such costs are recoverable under statute and local rule.  28 U.S.C. §

12   1920(3); Civ. L.R. 54-3(e); *see also, e.g.*, *ASIS Internet Servs. v. Optin Global, Inc.*, 2008 WL

13   5245931, at *3-4 (N.D. Cal. Dec. 17, 2008) *aff'd sub nom. ASIS Internet Servs. v. Azoogle.com,*

14   *Inc.*, 357 F. App'x 112 (9th Cir. 2009).

15       <u>Mediation Services</u>.  Class Counsel incurred costs in mediation services.  Such costs were

16   necessary to resolve the lawsuit and are recoverable.  *See In re Immune Response Secs. Litig.*, 497

17   F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (concluding that "mediation expenses . . . [were] both

18   reasonable and necessary," since the case "involved protracted litigation, which would not have

19   come to an end prior to trial without the assistance of a mediator"); *see also, e.g.*, *Vedachalam v.*

20   *Tata Consultancy Servs., Ltd*, 2013 WL 3941319, at *3 (N.D. Cal. July 18, 2013).

21       <u>Hearing and Deposition Transcripts and Videotapes</u>.  Class Counsel paid for transcripts of

22   court proceedings and depositions.  These costs are allowed by statute.  28 U.S.C. § 1920(2).

23       Class Counsel also paid for the cost of videotaping depositions.  Such costs are

24   recoverable in this district.  Civ. L.R. 54-3(c)(1); *see also, e.g.*, *MEMC Elec. Materials v.*

25   *Mitsubishi Materials*, 2004 WL 5361246, at *3 (N.D. Cal. Oct. 22, 2004), *report and*

26   *recommendation adopted as modified sub nom. MEMC Elec. Materials v. Mitsubishi Materials*

27   *Silicon Corp.*, 2004 WL 5363614 (N.D. Cal. Nov. 22, 2004).

28       <u>Postage</u>.  Class Counsel incurred postage costs, including communicating with the class.

- 20 -

1   Such costs were necessary to the litigation and are routinely reimbursed.  *See, e.g.*, *Pierce*, 2013

2   WL 5402120, at *6.

3   Copying and Printing.  Class Counsel incurred costs on copying and printing.  "The costs

4   of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-

5   paying clients."  *Ashker v. Sayre*, 2011 WL 825713 (N.D. Cal. Mar. 7, 2011).  They are therefore

6   reimbursable under a fee-shifting statute such as Title VII.

7   Delivery and Messenger Services.  Class Counsel incurred delivery and messenger costs.

8   These fees are a recoverable expense.  *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

9   1994); *Pension Trust Fund for Operating Eng'rs v. Joco Geospatial Cos., Inc.,* 2011 WL

10  6303404, at *6 (N.D. Cal. Dec. 16, 2011).

11  Online Legal Databases and Research Materials.   Class Counsel seek costs for access to

12  Westlaw, LexisNexis, and PACER, as well as books and subscriptions.  Such costs are necessary

13  to the litigation, are recoverable, and have been consistently awarded by courts in this district.

14  *Trs. of Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d at 1258-59; *see also, e.g.*,

15  *Pension Trust Fund for Operating Eng'rs*, 2011 Wl 6303404, at *6; *Mahach-Watkins v. Depee*,

16  2009 WL 3401281, at *2 (N.D. Cal. Oct. 20, 2009).

17  Telecommunication Costs.  Class Counsel incurred phone and fax costs, as well as costs

18  associated with maintaining a case website.  These costs were necessary for Class Counsel to

19  communicate with class members, opposing counsel, and the court, and are recoverable.  *See,*

20  *e.g.*, *Woods v. Carey*, 722 F.3d 1177, 1179 n.1 (9th Cir. 2013); *Mahach-Watkins*, 2009 WL

21  3401281, at *2.

22  Filing and Service Fees.  Class Counsel incurred filing and service fees.  Such fees are a

23  necessary expense of litigation, and are therefore recoverable.  *See* Civ. L.R. 54-3(a); *see also,*

24  *e.g.*, *Autodesk, Inc. v. Flores*, 2011 WL 1884694, at *3 (N.D. Cal. May 18, 2011).

25  Jury Consultant.  Class Counsel paid fees to a jury consultant.  Such costs are

26  recoverable.  *See, e.g.*, *Cataphora Inc. v. Parker*, 2012 WL 174817, at *1 (N.D. Cal. Jan. 20,

27  2012) (applying California law).

28  Cost of Class Notice.  Class Counsel incurred costs from mailing out class notice in 2012.

1  Such costs are recoverable.  *See Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th

2  Cir. 2009).

3      Electronic Database.  Class Counsel incurred costs from operating an electronic database.

4  Such costs are recoverable.  *See, e.g., In re Ricoh Co., Ltd. Patent Litig.*, 2010 WL 8961328, at *8

5  (N.D. Cal. Sept. 29, 2010).

6      **D.      Class Counsel Are Entitled to Attorneys' Fees for Work on this Fee Motion**

7      Plaintiffs are also entitled to recover fees for their time spent preparing this motion.  "In

8  statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the

9  entitlement to and amount of the fee is compensable.  This is so because it would be inconsistent

10  to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in

11  establishing their rightful claim to the fee."  *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456,

12  463 (9th Cir. 2010).  Plaintiffs will submit a supplemental declaration with the hours worked on

13  the fee motion prior to the hearing on the motion. [21]

14  **V.      CONCLUSION**

15      For the foregoing reasons, the Court should award Class Counsel:  (1) reasonable

16  attorneys' fees for work on the case-in-chief and settlement through November 30, 2013, in the

17  amount of $4,304,564; (2) costs in the amount of $633,959.64; (3) fees and costs for monitoring

18  and administering the settlement in the amount of $300,000; and (4) fees for work done on this

19  fee motion, in an amount that Plaintiffs will provide to the Court at a later date.

20

21  Dated: December 17, 2013           By:   __/s/ Jocelyn D. Larkin_____

22                                          Jocelyn D. Larkin
                                            IMPACT FUND

23                                          Attorneys for Plaintiffs and Certified Classes

24

25

26

27  _____

28  [21] Plaintiffs will also seek attorneys' fees and costs for any work done between December 1, 2013, and the final approval hearing.  Class Counsel will submit a supplemental declaration demonstrating the hours spent on such work.