THE IMPACT FUND
Jocelyn D. Larkin (SBN: 110817)
Robert Schug (SBN: 249640)
Meredith Johnson (SBN: 291018)
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  (510) 845-3473
Facsimile:  (510) 845-3654
jlarkin@impactfund.org

DAVIS, COWELL & BOWE, LLP
Steve Stemerman (SBN: 067690)
Elizabeth A. Lawrence (SBN: 111781)
595 Market Street, #1400
San Francisco, CA  94105
Telephone:  (415) 597-7200
Facsimile:  (415) 597-7201
eal@dcbsf.com

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
Bill Lann Lee (SBN: 108452)
Lindsay Nako (SBN: 239090)
476 9th Street
Oakland, CA  94607
Telephone:  (510) 839-6824
Facsimile:  (510)  839-7839
blee@lewisfeinberg.com

ALTSHULER BERZON LLP
James M. Finberg (SBN: 114850)
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
jfinberg@altshulerberzon.com

Kelly M. Dermody (SBN: 171716)
kdermody@lchb.com
Daniel M. Hutchinson (SBN: 239458)
dhutchinson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Attorneys for Plaintiffs and Certified Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, et al., | Case No.  C04-3341 EMC |
| Plaintiffs, | Assigned to Hon. Edward M. Chen |
| v. | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | Hearing Date:    May 22, 2014<br>Hearing Time:    1:30 p.m.<br>Courtroom:    5 (17th Floor) |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION; RELIEF SOUGHT ....................................................... 1

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

I.      PROCEDURAL HISTORY ........................................................................................ 2

        A.      The Class Action Complaint ........................................................................ 2

        B.      Discovery and Motion Practice .................................................................... 2

II.     SETTLEMENT AND PRELIMINARY APPROVAL ....................................................... 4

III.    THE NOTICE WAS DISTRIBUTED ACCORDING TO THE PRELIMINARY
        APPROVAL ORDER AND THERE ARE NO OBJECTIONS TO DATE ...................... 5

IV.     THE TERMS OF THE PROPOSED SETTLEMENT ....................................................... 7

ARGUMENT ...................................................................................................................... 9

I.      FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED .................................... 9

        A.      The Legal Standards for Settlement Approval .......................................... 9

        B.      The Relevant Factors Weigh in Favor of Granting Final Approval .................... 10

                1.      Strength of the case .................................................................. 10

                2.      Risk, expense, complexity, and duration of further litigation ................ 11

                3.      Risk of maintaining class status through trial .......................... 12

                4.      Amount offered in settlement versus outcome at trial ............ 12

                5.      Extent of discovery completed and the stage of proceedings ................ 13

                6.      Experience and views of counsel ........................................... 14

                7.      The reaction of the class members ........................................ 14

        C.      The Proposed *Cy Pres* Beneficiary is Reasonable ................................ 15

        D.      The Named Plaintiffs' Request for Service Awards is Reasonable .................... 16

        E.      Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable ...................... 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .......................................................................... 15

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ........................................................................................ 15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......................................................................................... 3

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980),
*aff'd*, 661 F.2d 939 (9th Cir. 1981) ................................................................................. 9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................. 15

*Greko v. Diesel U.S.A., Inc.*,
2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ............................................................. 12

*Hanlon v. Chyrsler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 9, 10

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................. 11

*In re Synocor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 9

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012),
*cert. denied*, 134 S. Ct. 8 (2013) ................................................................................. 15

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) ...................................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir.1982) ..................................................................................... 9, 14

*Officers for Justice v. Civil Serv. Comm'n. of San Francisco*,
473 F. Supp. 801 (N.D. Cal. 1979),
*aff'd*, 688 F.2d 615 (9th Cir. 1982) ................................................................................. 9

*Pierce v. Rosetta Stone, Ltd.*,
2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ............................................................ 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................................ 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Schaffer v. Litton Loan Servicing, LP*,
  2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............................................................... 9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................................ 11

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011),
  *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011) ................................. 15, 16

**Statutes**

California Fair Employment & Housing Act,
  Government Code §§ 12940 *et seq.* ............................................................................ 2

Title VII of the Civil Rights Act of 1964,
  42 U.S.C §§ 2000(e) *et seq.* ...................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 3

Fed. R. Civ. P. 23(e) ................................................................................................. 1, 9

1

## NOTICE OF MOTION AND MOTION; RELIEF SOUGHT

2       Please take notice that, on May 22, 2014 at 1:30 p.m. before the Honorable Judge Edward

3   M. Chen, United States District Court, 450 Golden Gate Ave., San Francisco, CA, Plaintiffs will

4   seek an order granting final class action settlement approval.

5       Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs request that the Court:

6   (1) grant Plaintiffs' Motion for Final Approval of Class Action Settlement; (2) grant Plaintiffs'

7   Application for Service Awards to Class Representatives in the amount of $10,000 each; and (3)

8   grant Plaintiffs' Motion for Attorneys' Fees and Costs in the amount of $3,950,000 for work

9   performed through November 30, 2013, $633,959.64 in expert fees and costs, and $300,000 for

10   future work monitoring and administering the settlement.  (*See* Proposed Order.)

11

## INTRODUCTION

12       Plaintiffs request that this Court grant final approval of the proposed class action

13   settlement.  The settlement is "fair, reasonable, and adequate," as required by Rule 23.  Fed. R.

14   Civ. P. 23(e)(2).  The programmatic relief obtained by Plaintiffs includes substantial changes to

15   Costco's evaluation and promotion processes that will advance the goal of equal promotion

16   opportunities for female Costco warehouse employees.  The $8 million settlement fund will

17   provide adequate and meaningful relief to class members through a streamlined claims process.

18   The proposed settlement is reasonable in light of the strength of Plaintiffs' case, as well as the

19   risk, expense, complexity, and duration of further litigation, including the risk of maintaining

20   class action status through trial.  Class Counsel, who are experienced in complex class action

21   litigation, have conducted significant discovery over nearly a decade of litigation, and are

22   intimately familiar with Plaintiffs' claims and Costco's defenses.  The settlement was obtained

23   after months of extensive negotiations with a well-respected mediator.  Class members have

24   responded positively; as of April 16, 2014, only seventy-seven of more than 1,300 class members

25   have opted out, and no class member has filed an objection.  The settlement has the full support

26   of each of the three Named Plaintiffs.

27       The Court should also approve the Named Plaintiffs' request for service awards, as well as

28   Plaintiffs' request for attorneys' fees and costs.  As explained in Plaintiffs' Application for

1   Service Awards to Class Representatives, the three Class Representatives have devoted

2   substantial time to this case, pursuing it for nearly ten years with no guarantee of success.  (ECF

3   No. 771.)  Service awards of $10,000 each are appropriate.  Likewise, as set forth in Plaintiffs'

4   Motion for Attorneys' Fees and Costs, Class Counsel have worked diligently and efficiently over

5   the course of this litigation, and have obtained an excellent result.  (ECF No. 760.)  Costco does

6   not oppose either of these requests, and the parties have stipulated to the amount of fees and costs

7   as set forth in the parties' joint Stipulation Regarding Motion for Attorneys' Fees and Costs.  (*See*

8   ECF No. 770).  Final approval should be granted.

9                                              **BACKGROUND**

10  **I.       PROCEDURAL HISTORY**

11          A.       **The Class Action Complaint**

12          Plaintiff Shirley "Rae" Ellis filed a class charge of discrimination with the EEOC on

13  October 30, 2002.  (ECF No. 1 at 18-22.)  She filed this lawsuit on August 17, 2004.  (*Id.* at 17.)

14  In the Fourth Amended Complaint, the Named Plaintiffs—Ms. Ellis, Leah Horstman, and Elaine

15  Sasaki—bring claims against Defendant Costco Wholesale Corporation on behalf of themselves

16  and all others similarly situated, alleging violations of Title VII of the Civil Rights Act of 1964,

17  42 U.S.C §§ 2000(e) *et seq.*  (ECF No. 718.)  Plaintiffs allege that Costco discriminates against

18  female employees by using a uniform, corporate-directed system that fails to promote equally or

19  better qualified women into Assistant General Manager ("AGM") and General Manager ("GM")

20  positions.  (*Id.* ¶¶ 115-130.)  In addition to the class claims, the Named Plaintiffs bring individual

21  discrimination claims under the California Fair Employment & Housing Act, Government Code

22  §§ 12940 *et seq.*  (*Id.* ¶¶ 131-135.)  Ms. Ellis and Ms. Sasaki also allege individual Title VII

23  retaliation claims.  (*Id.* ¶¶ 136-147.)

24          B.       **Discovery and Motion Practice**

25          As set forth in detail in Plaintiffs' Motion for Preliminary Approval, the Named Plaintiffs

26  pursued their claims and the claims of the class through extensive discovery.  (ECF No. 755 at 2-

27  3.)  Over nine years of litigation, Class Counsel served a total of ten sets of requests for

28  production, through which they obtained and reviewed several hundred thousand pages of

NOTICE OF MOTION AND MOTION FOR
FINAL SETTLEMENT APPROVAL
C04-3341 EMC

1    documents.  (*Id.*)  Counsel also served twenty-eight interrogatories and took fifteen depositions,

2    including three Rule 30(b)(6) depositions.  (*Id.*)  Class Counsel defended the depositions of the

3    three Named Plaintiffs (twice each) and five class members.  (ECF No. 760 at 4-5.)  Counsel assisted

4    the Named Plaintiffs in responding to document requests, interrogatories, and requests for admissions.

5    (*Id.*)  Plaintiffs also retained three experts, each of whom provided extensive analysis of the

6    employment practices at issue.  (*Id.*)  Costco deposed each of Plaintiffs' experts, and Class Counsel

7    also deposed three of Costco's four experts.  (*Id.*)

8           The parties also engaged in extensive motion practice.  (ECF No. 755 at 3-6.)  On October

9    15, 2004, Costco filed a motion to transfer venue.  (*See* ECF Nos. 6, 65, 66, 70, 74, 77, 81.)  The

10   Court denied the motion on May 31, 2005.  (ECF No. 98.)

11          On August 28, 2006, Plaintiffs filed their motion for class certification.  (*See* ECF No.

12   127, 433, 435, 436, 447.)  On January 11, 2007, the Court granted the motion and certified a class

13   under Fed. R. Civ. P. 23(b)(2) of "all current and former female Costco employees nationwide

14   who have been denied promotion to GM or AGM or denied promotion to Senior Staff positions

15   since January 3, 2002."  (ECF No. 494 at 35-36.)  The parties later stipulated to a slightly

16   narrower class definition.  (ECF No. 509 ¶ 1.)

17          Costco sought and was granted permission to appeal under Fed. R. Civ. P. 23(f).  (Case

18   No. 07-15838, ECF No. 1.)  Oral argument was held on April 14, 2008.  (Case No. 07-15838,

19   ECF No. 47.)  However, the Ninth Circuit's decision was delayed by the appellate proceedings in

20   *Dukes v. Wal-Mart Stores, Inc.*, No. C01-02252 (N.D. Cal.).  (*See* ECF No. 755 at 4-5.)  After

21   several rounds of supplemental briefing, the Ninth Circuit issued its decision on September 16,

22   2011.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011).  The Ninth Circuit

23   affirmed in part, vacated in part, and remanded.  *See id.* at 974-75.

24          On remand, the parties agreed that Plaintiffs would file a Third Amended Complaint to

25   reflect the intervening change in the law.  (ECF No. 535 at 5.)  Costco filed a motion for an order

26   eliminating class claims, and Plaintiffs filed an affirmative motion for class certification.  (ECF

27   Nos. 543, 664.)  On September 25, 2012, the Court granted Plaintiffs' motion and certified an

28   Injunctive Relief Class:

1

2
3

> All women who are currently employed or who will be employed at any Costco warehouse in the U.S. who have been or will be subject to Costco's system for promotion to Assistant General Manager and/or General Manager positions.

4   (ECF No. 693 at 85.)  The Court also certified a Monetary Relief Class (back pay, compensatory,

5   and punitive damages):

6
7

> All women who have been employed at any Costco warehouse store in the U.S. since January 3, 2002 who have been subject to Costco's system for promotion to Assistant General Manager and/or General Manager positions.

8   (*Id.*)  Costco's second petition to appeal under Fed. R. Civ. P. 23(f) was denied.  (Case No. 12-

9   80188, ECF No. 5.)

10          Court-approved notice was issued in December 2012.  (*See* ECF No. 717.)

11   Approximately 100 class members opted out.  (ECF No. 755 at 6.)  The parties subsequently

12   engaged in discovery in preparation for dispositive motions and trial.  At the time the proposed

13   settlement was reached, both parties were preparing to file multiple summary judgment and

14   *Daubert* motions, and Costco was preparing a motion to decertify the classes.  (*See, e.g.*, ECF

15   Nos. 697, 747.)

16   **II.       SETTLEMENT AND PRELIMINARY APPROVAL**

17          As detailed in Plaintiffs' Motion for Preliminary Approval, the parties devoted substantial

18   time and effort over the course of the litigation to reaching the proposed settlement agreement.

19   (ECF No. 755 at 6-8.)  The parties attended five mediation sessions with Mark Rudy, an

20   experienced and respected mediator—two sessions in 2004 and three in 2013.  (*Id.*)  The parties

21   also conducted countless informal sessions—both in person and over the phone—in order to

22   narrow the issues and negotiate the details of the agreement.  (*Id.*)  On October 11, 2013, the

23   parties reached an agreement on the principal settlement terms of a class-wide settlement, which

24   was submitted to the Court *in camera*.  (*See* ECF No. 749.)  A final agreement was signed on

25   December 17, 2013.  (ECF No. 755 at 8.)

26          On December 17, 2013, Plaintiffs filed an unopposed Motion for Preliminary Settlement

27   Approval, as well as a Motion for Attorneys' Fees and Costs.  (ECF Nos. 755, 760.)  On January

28   22, 2014, the Court ordered the parties to submit supplemental briefing addressing various

NOTICE OF MOTION AND MOTION FOR
FINAL SETTLEMENT APPROVAL
C04-3341 EMC

questions about the proposed settlement. (ECF No. 767.) The parties filed a Joint Supplemental Brief on January 30, 2014, addressing the issues identified by the Court, and notifying the Court of the parties' selection of a proposed *cy pres* recipient, the Network of Executive Women, Consumer Products/Retail. (ECF No. 775.) Plaintiffs also filed a Supplemental Application for Service Awards to Class Representatives. (ECF No. 771.)

Prior to the hearing on preliminary approval, the parties filed a stipulation regarding Plaintiffs' Motion for Attorneys' Fees and Costs. (ECF No. 770.) Under the stipulation, Costco agreed not to oppose the motion, and agreed to pay an award equal to or lower than the following: $3,950,000 in attorneys' fees for work performed through November 30, 2013, $633,959.64 in expert fees and costs, and $300,000 for future work monitoring and administering the settlement. (ECF No. 770.)

A hearing on Plaintiffs' Motion for Preliminary Approval was held on February 6, 2014. At the conclusion of the hearing, the Court indicated that the settlement would be preliminarily approved. (Ex. 1 (2/6/14 Hearing Tr.) at 16:17-20.) The Court indicated that the settlement fund was adequate, and provided meaningful relief in light of the litigation risks. (*Id.* at 12:21-13-2.) The Court commended the parties on "a very finely honed settlement that you worked out, and one that I think has appeared, from all appearances, fair and adequate." (*Id.* at 18:1-3.)

The Court granted preliminary approval on February 12, 2014. (ECF No. 780.) The Court concluded that the proposed settlement was the product of extensive, arms' length negotiations by counsel familiar with the strengths and weaknesses of the case. (*Id.* at 1.) The Court found that the proposed settlement had no obvious defects and fell within the range of approval such that notice was appropriate. (*Id.*) The Court also approved the proposed Class Notice and distribution plan. (*Id.* at 2-3.)

## III.   THE NOTICE WAS DISTRIBUTED ACCORDING TO THE PRELIMINARY APPROVAL ORDER AND THERE ARE NO OBJECTIONS TO DATE

Pursuant to the agreement, the notice process is being administered by Settlement Services, Inc. (Am. Agreement § 2.12.) Notice of the proposed class action settlement has been distributed in the form and manner approved by the Court. (*See* ECF No. 780 at 3.)

1    In preparation for mailing notice, Costco generated an updated class list, which was

2    shared with Class Counsel for review. (Larkin Decl. ¶ 3.) The 102 Class Members who had

3    previously opted out of the litigation were excluded, and any other discrepancies, such as

4    outdated addresses, were resolved. (*Id.*) The final list of the Class Members' names and

5    identifying information was provided to Settlement Services on February 20, 2014. (Patton Decl.

6    ¶ 3.) The final class list included 1,318 members. (*Id.*)

7    On February 26, 2014, Settlement Services mailed a notice packet to each of the class

8    members by post-marked First Class U.S. Mail.[1] (Patton Decl. ¶ 4.) Each notice packet

9    contained the Notice of Class Action Settlement and the Opt-Out Form, the form and content of

10   which was approved by the Court. (*Id.* ¶ 2.) Before mailing, Settlement Services used the United

11   States Postal Service National Change of Address Database to verify the addresses of the Class

12   Members. (*Id.* ¶ 3.) Approximately forty-one addresses were updated. (*Id.*) When Notices were

13   returned as undeliverable, they were mailed to updated addresses when possible. (*Id.* ¶ 5.) As of

14   the date of this brief, only thirty-two Notices were returned undeliverable, and all but two were

15   re-mailed to updated addresses. (*Id.*)

16   The reaction of the class members to the proposed settlement has been positive. As of

17   April 16, 2014, only seventy-seven of the 1,318 members have opted out, and no objections have

18   been filed.[2] (*Id.* ¶¶ 6-7.) The deadline for class members to opt out or file objections is April 28,

19   2014.[3] (*See* ECF No. 780 at 3 (setting deadline sixty days from the completion of the first

20   mailing).) Pursuant to the Preliminary Approval Order, the parties will file responses to any

21   objections no later than one week before the final fairness hearing. (*Id.*)

22

23   ---

[1] Plaintiffs are informed that, on February 24, 2014, Costco mailed notice of the proposed
24   settlement to the Attorney Generals of all states where class members reside, as required by the
Class Action Fairness Act.

25   [2] Costco has the right to rescind the agreement at any time up to ten days before the date of final
approval if ten or more class members opt out, or if the United States EEOC initiates an
26   enforcement proceeding alleging gender discrimination in connection with the promotions that
are the subject of this action. (Am. Agreement § 9.)

27   [3] Plaintiffs will supplement this filing after the opt-out deadline to provide the Court with the final
number of opt-outs and their identities for inclusion in the Proposed Order. (*See* Proposed
28   Order.)

IV.     **THE TERMS OF THE PROPOSED SETTLEMENT**

The terms of the settlement are set forth in full detail in Plaintiffs' Motion for Preliminary Approval and the parties' Joint Supplemental Brief.  (ECF No. 755 at 8-16; ECF No. 775.)  The final Settlement Agreement is attached as Exhibit 1 to the Court's Order Granting Preliminary Approval.  (ECF No. 780, Ex. 1 ("Am. Agreement").)  The settlement provides class-wide programmatic relief tailored to the Title VII violations alleged, and also creates a formal claims procedure through which the discrimination claims of the class members may be finally resolved.  (*See id.*)  Costco will receive a release from the settlement class of all claims for individual and class-wide declaratory, injunctive, and monetary relief.  (*See id.*)  The settlement is supported by the Named Plaintiffs.  (*See* ECF No. 757 (Ellis Decl.) ¶¶ 6-8; ECF No. 758 (Horstman Decl.) ¶ 5; ECF No. 759 (Sasaki Decl.) ¶¶ 6-7.)  The core provisions are summarized below:

**Programmatic Relief:** The proposed programmatic relief is designed to address the specific gender promotion issues alleged in this litigation.  (*See* Am. Agreement §§ 4, 13.)  This relief includes:

- use of an industrial organizational psychologist to conduct job analyses, evaluate promotion processes, and develop selection criteria and tools for AGM and GM promotions;
- a posting process for AGM promotions;
- a registration of interest system for GM promotions;
- a merchandising training class for Senior Staff managers;
- a promotion process for AGM positions, including comprehensive records maintenance;
- internal training and communication concerning the implemented programs; and
- compliance procedures, including annual reporting by Costco.

(*See id.*)  None of these business practices, which are critical to discouraging gender discrimination at Costco, were in place prior to the start of this litigation.

**Monetary Relief:** The proposed settlement also provides extensive monetary relief.  (*See id.* §§ 3, 5.)  This includes:

- a claims process to distribute an $8 million settlement fund, with nearly all of any remaining amount going to the Network of Executive Women, Consumer Products/Retail, an

organization dedicated to attracting, retaining, and advancing women in the retail and consumer products industry;[4]

- claims submitted either by written submission or through formal arbitration, with a confidential option for claims made by written submission;

- for successful non-confidential claims by written submission, awards of up to $150,000 for AGM promotion claims, and up to $300,000 for GM promotion claims;

- for successful confidential claims by written submission, awards of up to $25,000 for AGM promotion claims, and up to $50,000 for GM promotion claims;

- for successful claims by formal arbitration, awards of up to $250,000 for AGM promotion claims, and up to $600,000 for GM promotion claims;

- the option of representation by Class Counsel free of charge; and

- attorneys' fees and costs for prevailing claimants.

(*See id.*)

**Scope of Release:** The proposed settlement agreement gives Costco a release of claims limited to the claims asserted in the Fourth Amended Complaint. (*Id.* § 6.) In exchange for the relief provided, members of the settlement class will release all claims for systemic injunctive relief for the claims alleged in the case on behalf of the Injunctive Relief Class. (*Id.*) In addition, a class member who submits claims through the monetary claims process shall, upon the date of her claim, release any claim for failure to promote to AGM or GM not pursued through that process. (*Id.*) Each member of the Monetary Relief Class who does not opt out and who does not submit a timely claim will also release any claim that Costco, on the basis of her gender, denied her promotion to AGM or GM at any time since January 3, 2002. (*Id.*)

**Resolution of Named Plaintiffs' Claims:** A Named Plaintiff may choose to resolve all of her claims against Costco by trial in this Court. (*Id.* § 10.) Any damages will not be taken from the gross settlement fund. (*Id.*) In the alternative, a Named Plaintiff may submit only her promotion

---

[4] The settlement provides that any funds not awarded to class members through the claims process "will be used as follows: (i) the first $100,000, or fraction thereof, will be used to pay the Independent Consultant to the extent that Independent Consultant fees exceed $100,000; (ii) any remainder will be donated" to the proposed *cy pres* beneficiary, the Network of Executive Women. (Am. Agreement § 3.5.)

1   claims through the monetary claims process.  (*Id.*)  Under this scenario, any damages awarded will be

2   taken out of the gross settlement fund.  (*Id.*)  The Named Plaintiffs may seek Court-approved service

3   payments of up to $10,000 each, to be paid from the gross settlement fund.  (*Id.*)

4       **Attorneys' Fees and Costs:**  The settlement permits Plaintiffs to apply for an award of

5   reasonable attorneys' fees and costs for the litigation up to the date of final approval of the proposed

6   settlement.  (*Id.* § 11.)  Plaintiffs may also seek an award of reasonable fees and costs for their

7   anticipated services in monitoring the programmatic relief and administrating the monetary claims

8   settlement.  (*Id.*)

9                                   **ARGUMENT**

10  **I.      FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED**

11          A.      **The Legal Standards for Settlement Approval**

12      Courts in this circuit have long recognized that "'there is a strong judicial policy that

13  favors settlements, particularly where complex class action litigation is concerned.'"  *Schaffer v.*

14  *Litton Loan Servicing, LP*, 2012 WL 10274679, at *7 (C.D. Cal. Nov. 13, 2012) (quoting *In re*

15  *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).  This is especially true in Title VII

16  cases, where "cooperation and voluntary compliance are the preferred means for achieving the

17  statutory goals."  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661

18  F.2d 939 (9th Cir. 1981); *see also, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of San*

19  *Francisco*, 473 F. Supp. 801, 803 (N.D. Cal. 1979) (remaining "mindful . . . of the favored status

20  of settlements in Title VII litigation"), *aff'd*, 688 F.2d 615 (9th Cir. 1982).

21      Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . .

22  only with the court's approval."  Fed. R. Civ. P. 23(e).  To meet the standard for approval, a

23  settlement must be "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*,

24  150 F.3d 1011, 1026 (9th Cir. 1998).  "It is the settlement taken as a whole, rather than the

25  individual component parts, that must be examined for overall fairness."  *Id.*  The district court

26  has "the sound discretion" to approve or reject a settlement, since it has been "'exposed to the

27  litigants, and their strategies, positions and proof.'"  *Id.* (quoting *Officers for Justice v. Civil Serv.*

28  *Comm'n of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982)).  Factors considered by the district

court in assessing a proposed settlement include:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[5]  *Id.*

B.     **The Relevant Factors Weigh in Favor of Granting Final Approval**

1.     **Strength of the case**

The proposed settlement fairly reflects the strength of Plaintiffs' case.  While Plaintiffs believe their claims are meritorious, Costco remains confident that its defenses are strong.  (*See* ECF No. 775 at 7-12.)  As explained in the parties' Joint Supplemental Brief, Plaintiffs contend that they can prove their case by relying on certain evidence, including:  evidence of a uniform system of pre-selection and grooming of AGM and GM candidates, implemented by a small group of senior decision-makers; evidence that some Costco managers held gender-based stereotypes; and evidence that Costco learned about gender-based barriers to promotion as early as 1999, among other evidence.  (*See id.* at 7-9.)  Plaintiffs have also obtained expert testimony and statistical evidence to support their claims.  (*See id.* at 9.)

Costco, meanwhile, contends that it can defeat Plaintiffs' claims by pointing to:  evidence that the statistics from 1999-2004 differ significantly from current statistics; evidence of the need for certain experience in order to be promoted to AGM positions; evidence of anti-discrimination policies and practices; evidence of formal diversity initiatives; and evidence of female employees who succeeded during the relevant time period, among other evidence.  (*See id.* at 9-10.)  In addition, Costco has retained experts who dispute the findings of Plaintiffs' experts, and contend that the statistical evidence supports Costco's position.  (*See id.* at 10-11.)

Although Plaintiffs remain confident of their ability to prevail, they recognize that the statistical evidence is stronger for some time periods than for others.  (*See* Ex. 1 (2/6/14 Hearing Tr.) at 5:2-7.)  They also recognize the risk of loss at trial, as well as the inherent expense and

_____

[5] The seventh factor is inapplicable here because there is no governmental entity involved.

NOTICE OF MOTION AND MOTION FOR
FINAL SETTLEMENT APPROVAL
C04-3341 EMC

1  delay associated with continuing to litigate.  (*See supra*, Part 2.)  In light of these factors, the

2  proposed settlement reflects the strength of Plaintiffs' case and represents a fair and reasonable

3  outcome.

4          2. **Risk, expense, complexity, and duration of further litigation**

5         The risks associated with further litigation also weigh in favor of final approval.  As

6  described in Plaintiffs' Motion for Preliminary Approval, this case has been vigorously litigated

7  from the start.  (*See* ECF No. 755 at 22.)  In addition to aggressively opposing class certification,

8  Costco filed a motion to transfer venue, hired four expert witnesses to rebut Plaintiffs'

9  allegations, and filed approximately 200 declarations from current and former employees

10 purporting to disclaim any gender discrimination in Costco's warehouses.  (*See id.*)  Costco

11 continues to deny that it has discriminated against female warehouse employees.  (*See id.*)  The

12 history of this case suggests that further litigation would continue to be prolonged and difficult.

13        Plaintiffs believe that their case is strong.  However, they also recognize that it would be

14 challenging to present evidence spanning a ten-year period to a jury.  (*See* ECF No. 755 at 22.)

15 The passage of time would undoubtedly affect the quality of percipient witness testimony on both

16 sides.  And if Plaintiffs lost, the class members would get none of the programmatic or monetary

17 relief that they have sought for nearly a decade.  *Cf. In re Heritage Bond Litig.*, 2005 WL

18 1594403, at *7 (C.D. Cal. June 10, 2005) ("[W]hile Plaintiffs are confident of the strength of their

19 case, it is imprudent to presume ultimate success at trial and thereafter.").  Likewise, if Plaintiffs

20 prevailed on their disparate impact claims, but not their pattern or practice claims, their monetary

21 recovery would be limited to lost wages and interest, not compensatory and punitive damages.

22 (*See* ECF No. 693 at 86.)  Even a total victory at trial would not guarantee compensation for the

23 class, because individual class members would still have to appear at Stage II hearings in San

24 Francisco, likely followed by numerous appeals.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

25 2541, 2561 (2011) (discussing Stage II *Teamsters* hearings).

26        Under any of these scenarios, continued litigation would increase the amount of attorneys'

27 fees incurred, without necessarily improving the likelihood of a favorable resolution and

28 monetary recovery for the class members.  (*See* ECF No. 755 at 22.)  In contrast, the proposed

1    settlement allows for immediate implementation of the programmatic relief, as well as an

2    expedited process for pursuing individual claims for monetary relief.  (*See id.* at 22-23.)  In sum,

3    the risks and potential delay of further  litigation—especially in a case that has already been

4    litigated for nearly a decade—outweigh the immediate, concrete relief provided under the

5    proposed settlement agreement.  *See, e.g.*, *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *5

6    (N.D. Cal. Apr. 26, 2013) (approving a final settlement, and noting that "even with a strong case,

7    further litigation would be time-consuming and expensive").

8                    3.      **Risk of maintaining class status through trial**

9           The settlement is also reasonable in light of the risks associated with maintaining class

10   status through trial.  Prior to settlement, Costco indicated that it was planning to file a motion for

11   decertification.  (ECF No. 747 at 3; *see also* ECF No. 755 at 22.)  This would result in a third

12   round of briefing complex class certification issues, as well as substantial delay in obtaining

13   relief.  While Plaintiffs are confident that they would defeat a decertification motion, the risks of

14   engaging in further litigation counsel in favor of approving the proposed settlement agreement.

15   *See Greko*, 2013 WL 1789602, at *4 ("A motion for decertification would, at the very least, entail

16   significant expense, and if successful, would have a dramatic effect on the ability of the absent

17   class members to obtain any monetary recovery whatsoever.").

18                   4.      **Amount offered in settlement versus outcome at trial**

19          The amount offered in the proposed settlement is fair and reasonable.  As explained in

20   detail in Plaintiffs' Motion for Preliminary Approval, the programmatic relief will advance the

21   goal of equal promotion opportunities for female Costco warehouse employees.  (ECF No. 755 at

22   17-19.)  This relief includes: (1) the use of an industrial organizational psychologist to conduct

23   job analyses, evaluate promotion processes, and develop selection criteria for AGM and GM

24   promotions; (2) a posting process for AGM promotions; (3) a registration of interest system for

25   GM promotions; (4) a merchandising training class for Senior Staff managers; (5) a promotion

26   process for AGM positions, including comprehensive records maintenance; and (6) internal

27   training and communication concerning the implemented programs.  (*See* ECF No. 755 at 8-12;

28   *see also* ECF No. 775 at 1-2.)

1    The monetary component is also substantial.  The settlement provides for an $8 million

2    settlement fund, distributed through a litigated claims process.  (ECF No. 755 at 12-15.)  Class

3    members have the option of either submitting written claims or making claims by formal

4    arbitration.  (*Id.*)  Class members who prevail on written claims can obtain up to $150,000 for

5    AGM promotions, and up to $300,000 for GM promotions; class members who prevail in

6    arbitration can obtain up to $250,000 for AGM promotions, and up to $600,000 for GM

7    promotions.  (*Id.* at 19.)  A confidential option is available for current employees submitting

8    written claims.  (*Id.* at 14.)

9        The $8 million fund is more than adequate when compared with a possible litigated

10   outcome.  (ECF No. 775 at 5-7.)  As the parties advised the Court at the preliminary approval

11   hearing, the shortfall in AGM promotions is relatively small, with Costco estimating a shortfall of

12   29.3 promotions, and Plaintiffs estimating a shortfall of 46 promotions.  (Ex. 1 (2/6/2014 Hearing

13   Tr.) at 11:9-21.)  Moreover, there would be no single Stage I verdict on damages if the case went

14   to trial.  (ECF No. 775 at 5.)  Stage II hearings would be required, with the amount of damages

15   awarded depending on various factors such as:  (1) the types of damages available; (2) the

16   specific time period for which Costco is found liable; (3) whether class members could challenge

17   any promotion, or only promotions in regions where there was a shortfall; (4) whether the back

18   pay pool would be limited to the shortfall in promotions to women; and (5) whether prevailing

19   class members would share damages on a pro rata basis.  (*Id.* at 5-7.)

20       In sum, the proposed settlement provides an avenue for obtaining significant monetary

21   relief that is faster, less expensive, and more convenient than a fully-litigated Stage II hearing.  As

22   the Court recognized at the preliminary approval hearing, the fund "represents a fair reflection of

23   the risks" in this case, taking into account "the potential verdict value [discounted] by [the]

24   litigation risks," such that the fund is "fair and adequate in that regard."  (Ex. 1 (2/6/2014 Hearing

25   Tr.) at 12:21-13:2.)

26       **5.    Extent of discovery completed and the stage of proceedings**

27       The proposed settlement was reached after years of thorough investigation into the merits

28   of this case.  Over almost a decade of litigation, the parties conducted extensive discovery that

- 13 -

1    included over twenty depositions, written discovery, the production and review of hundreds of

2    thousands of documents, and significant expert discovery.  (ECF No. 755 at 2-3.)  This thorough

3    investigation allowed both parties to fully understand and evaluate Plaintiffs' claims and Costco's

4    defenses.  The parties further developed their cases through extensive motion practice, including

5    five separate rounds of class certification briefing—two before the district court, two on Rule

6    23(f) appeals, and one before the Ninth Circuit Court of Appeals.

7            The proposed settlement was reached through highly contested negotiations held at arms'

8    length, with the aid of Mark Rudy, a respected mediator, after five separate mediation sessions

9    and numerous rounds of informal negotiation.  At the time of settlement, the litigation was at a

10   stage where both parties had a clear view of the strengths and weaknesses of their positions,

11   which weighs strongly in favor of approving the settlement.  *See, e.g.*, *Officers for Justice*, 688

12   F.2d at 627 (affirming the approval of a consent decree, where the case had been "aggressively

13   litigated . . . for six years," resulting in a large record and many pre-trial orders, assuring the court

14   that the proposed settlement "was not hastily arrived at").

15                   6.    **Experience and views of counsel**

16           The experience and views of Counsel also support approving the proposed settlement

17   agreement.  As set forth more fully in Plaintiffs' Motion for Preliminary Approval and Motion for

18   Attorneys' Fees and Costs, Class Counsel have significant experience in both Title VII

19   discrimination cases and class action litigation.  (*See* ECF No. 755 at 21; ECF No. 760 at 17.).

20   They have worked on this case for almost a decade and are familiar with Plaintiffs' claims and

21   Costco's defenses.  The fact that Counsel believe this settlement is fair, reasonable, and adequate

22   weighs in favor of final approval.  *See, e.g.*, *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at

23   *5 (N.D. Cal. Sept. 26, 2013) ("Given the collective experience of the attorneys involved in this

24   litigation, the Court credits counsels' view that the settlement is worthy of approval.").

25                   7.    **The reaction of the class members**

26           Finally, the reaction of the class members weighs in favor of approving the settlement.

27   On February 26, 2014, notice of the settlement was sent to the 1,318 class members by First Class

28   U.S. Mail, using their last-known addresses.  As of April 16, 2014, only seventy-seven of the

1   class members have opted out, and no objections to the settlement have been filed.  "Courts have

2   repeatedly recognized that the absence of a large number of objections to a proposed class action

3   settlement raises a strong presumption that the terms of a proposed class settlement action are

4   favorable to the class members."  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832,

5   at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks omitted); *see also, e.g.*, *Wren v. RGIS*

6   *Inventory Specialists*, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (same), *supplemented*,

7   2011 WL 1838562 (N.D. Cal. May 13, 2011); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp.

8   2d 848, 852 (N.D. Cal. 2010) (concluding that class members had an "overwhelming positive

9   reaction" to the proposed settlement where "[a] total of zero objections and sixteen opt-outs

10  (comprising 4.86% of the class)" were made from a class of 329 members).

11          C.      **The Proposed *Cy Pres* Beneficiary is Reasonable**

12          The Court should also approve the parties' designated *cy pres* beneficiary.  Under the

13  agreement, excess settlement funds will be used by the Network of Executive Women, Consumer

14  Products/Retail to fund scholarships or otherwise assist women pursuing leadership roles in retail

15  management.  (Am. Agreement § 3.5.)  This organization is comprised of "the next best class of

16  beneficiaries" in this lawsuit.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal

17  quotation marks omitted), *cert. denied*, 134 S. Ct. 8 (2013).  As the Ninth Circuit has explained, a

18  *cy pres* award should "bear[] a substantial nexus to the interests of the class members."  *Id.* at

19  821.  This means that the award should account for "the nature of the plaintiffs' lawsuit, the

20  objectives of the underlying statutes, and the interests of the silent class members, including their

21  geographic diversity."  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *see also*

22  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (stating that a *cy pres* award "must not

23  benefit a group too remote from the plaintiff class" (internal quotation marks omitted)).  The

24  parties' designation of the Network of Executive Women satisfies all of these requirements.  The

25  organization was founded on the belief that there are not enough female leaders in consumer

26  products and retail, and it seeks to attract and advance women in this industry through

27  programming that includes education, events, research, and leadership development programs.

28  (*See* ECF 775 at 13-14.)  It has more than 8,000 members spread all across the United States and

1   Canada.  (*See id.*)  Any funds awarded to the organization will be used specifically to further the

2   advancement of women in retail.  (Am. Agreement § 3.5.)

3             D.      **The Named Plaintiffs' Request for Service Awards is Reasonable**

4           Plaintiffs' request for service awards of $10,000 for each of the three Class

5   Representatives should also be approved.  As set forth in detail in Plaintiffs' Application for

6   Service Awards to Class Representatives, the Named Plaintiffs have risked their reputations and

7   ability to obtain future employment, devoted substantial time to the litigation, and pursued this

8   case for nearly ten years, without any guarantee of success.  (ECF No. 771.)  As such, they are

9   entitled to service awards to compensate them for the work done, to make up for financial and

10   reputational risks taken, and to recognize their willingness to enforce the law in this case.  *See*

11   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Staton v. Boeing Co.*, 327

12   F.3d 938, 977 (9th Cir. 2003); *see also, e.g.*, *Wren*, 2011 WL 1230826, at *31-32. In addition, the

13   service awards are reasonable and appropriate because they were not conditioned in any way on

14   the Named Plaintiffs' support for the Settlement Agreement.  Each Plaintiff maintained the right

15   to separately and independently support, object to, or comment upon any settlement at any point

16   in the litigation, and none of the Named Plaintiffs had any conflicts with the class overall.

17             E.      **Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable**

18           Plaintiffs' request for attorneys' fees and costs is also reasonable.  As explained in

19   Plaintiffs' Motion for Attorneys' Fees and Costs, Class Counsel achieved excellent results.  They

20   twice obtained class certification, won virtually every significant motion that was litigated before

21   this Court, and achieved a proposed settlement with substantial programmatic and monetary

22   relief.  (*See* ECF No. 760.)  In a joint stipulation filed prior to the hearing on preliminary

23   approval, Costco agreed not to oppose Plaintiffs' motion and to pay an award equal to or lower

24   than the following:  $3,950,000 in attorneys' fees for work performed through November 30,

25   2013, $633,959.64 in expert fees and costs, and $300,000 for future work monitoring and

26   administering the settlement.  (ECF No. 770.)  These amounts are reasonable in light of the

27   duration of the litigation, the complexity of the issues, and the excellent results that Class Counsel

28   achieved, including substantial injunctive relief.  As of the date of this brief, no class member has

1    objected to the attorneys' fee application or Costco's stipulation.

2                                    **<u>CONCLUSION</u>**

3            For all of the reasons explained above, Plaintiffs respectfully request that their motion for

4    final settlement approval be granted.

5

6    Dated: April 17, 2014                    Respectfully submitted,

7                                             IMPACT FUND

8                                             By: s/ Jocelyn D. Larkin

9                                                 Jocelyn D. Larkin
                                                  Attorneys for Plaintiffs and Certified Classes

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
FINAL SETTLEMENT APPROVAL
C04-3341 EMC