UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, *et al.*, | No. C-04-3341 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | **(Docket No. 814)** |

Plaintiff Elaine Sasaki asserts, in essence, two claims against Defendant Costco Wholesale Corp.: (1) a claim for disparate treatment based on gender and (2) a claim for retaliation.[1] The thrust of Ms. Sasaki's disparate treatment claim is that she was not promoted – from the position of Assistant General Manager ("AGM") to General Manager ("GM") – because of her gender. The thrust of Ms. Sasaki's retaliation claim is that, after making an internal complaint about gender discrimination in promotions, filing her DFEH complaint based on disparate treatment, and joining in the instant lawsuit, she was retaliated against – again, by not being promoted.

Currently pending before the Court is Costco's motion for summary judgment or, in the alternative, for partial summary judgment. According to Costco, it is entitled to summary judgment on both claims but, if not, at the very least, the Court should grant it partial summary judgment because part of each claim is time barred. Having considered the parties' briefs and accompanying

---

[1] The claims are predicated on Title VII and the California Fair Employment and Housing Act.

submissions, as well as all other evidence of record, the Court hereby **GRANTS** in part and **DENIES** in part Costco's motion.

# I. DISCUSSION[2]

## A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may seek summary judgment on a claim or even part of a claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> The moving party has the burden of establishing the absence of a genuine dispute of material fact. The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . ." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049-50 (9th Cir. 2014).

## B. Time Bar

As noted above, Costco argues that, at a minimum, it is entitled to partial summary judgment because Ms. Sasaki's disparate treatment claim as well as her retaliation claim are partially time barred. The Court addresses each claim separately.

### 1. Disparate Treatment Claim

With respect to disparate treatment, Ms. Sasaki filed a charge of discrimination with the DFEH on or about March 1, 2005. According to Costco, this means that her disparate treatment claim is viable only for events that took place 300 days prior to that date – *i.e.*, May 5, 2004. *See* 42 U.S.C. § 2000e-5(e)(1) (addressing time for filing administrative charge – either 180 or 300 days after the alleged unlawful employment practice); *see also Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th

---

[2] Both parties have submitted evidence in conjunction with the summary judgment motion. Costco, in its opposition brief, has objected to some of Ms. Sasaki's evidence. *See* Reply at 14-15. The objections are effectively moot because the Court has not relied on any of the challenged evidence to make its rulings.

1  Cir. 1990) (noting that § 2000e-5(e) provides for a "judicial statute of limitations . . . , generally barring subsequent suit on discriminatory incidents occurring prior to the 180-day [or 300-day] period"). "[A]ny claim *preceding* May 5, 2004 . . . is time-barred." Mot. at 16 (emphasis added).

Ms. Sasaki disagrees. According to Ms. Sasaki, she "can challenge any GM promotion filed on or after January 3, 2002" because Shirley Rae Ellis, the original named plaintiff who initiated the lawsuit, filed an administrative complaint 300 days after that date. Opp'n at 22 (stating that Ms. Ellis's administrative complaint was filed on October 30, 2002). In other words, Ms. Sasaki's contention is that she can "piggyback" on Ms. Ellis's original charge.

The Court agrees with Ms. Sasaki. As Ms. Sasaki points out, in *Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012), the Ninth Circuit held that, where one class member has timely filed an administrative complaint, then other members of that class may "piggyback" on that administrative complaint, thereby satisfying the exhaustion requirement. Class members are not each required to exhaust their individual claims.[3] *See id.* at 1135-36. And as Ms. Sasaki contends, the instant case is analogous to *Harris*: Ms. Ellis filed a class action and she timely filed an administrative complaint; therefore, other members of the class, including Ms. Sasaki, may piggyback on Ms. Ellis's administrative complaint.

In response, Costco argues that *Harris* is distinguishable because, there, the other class members who sought to piggyback did *not* file their own administrative complaints and, here, Ms. Sasaki did. As an initial matter, this argument would seem to create an ironic result: a class member who does nothing would be in a better position than one who exercises diligence and files an administrative claim.

Nonetheless, as Costco points out, some courts have still held that "[a]n individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge." *Holowecki*

---

[3] "This single filing rule is based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency." *Harris*, 682 F.3d at 1136.

To be sure, as discussed *infra*, some courts have found that where a claimant files an administrative claim but then abandons it, he/she will be barred from bringing suit even when a class member who took no action is not.

*v. Federal Express Corp.*, 440 F.3d 558, 664 (2d Cir. 2006). But notably those courts that have so held have defended this conclusion for the following reason: "As noted by other Circuit Courts of Appeals, allowing an individual who has previously filed a charge to *abandon* that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through information conciliation." *Id.* (emphasis added); *see also Levy v. United States Gen. Acct'g Office*, 175 F.3d 254, 255 (2d Cir. 1999) (cited in *Holowecki* in support of the above quotation; concluding that plaintiffs' claims were time barred because they timely filed charges of discrimination with the General Accounting Office but, after being notified of the Office's final decision on their claims, they did *not* file a complaint within ninety days of that final decision); *Gitlitz v. Compagnie Nationale Air. Fr.*, 129 F.3d 554, 557 (5th Cir. 1997) (indicating that a plaintiff who files an administrative charge and receives a right-to-sue letter "'must file suit within ninety days after receiving that letter to preserve that cause of action'"); *Anderson v. Unisys Corp.*, 47 F.3d 302, 308-09 (8th Cir. 1995) (noting the same). In other words, critical to the courts' assessment was the abandonment of the administrative complaint. Abandoning a filed claim could mislead the defendant.

Here, while Ms. Sasaki did file her own administrative complaint, it cannot be said that she "abandoned" this charge. What happened in the instant case was that Ms. Sasaki filed her administrative complaint (on March 1, 2005) and *then she joined the Ellis lawsuit* (on March 23, 2005), *see* Docket No. 83-1 (second amended complaint), before she ever received notice of her right to sue. *See* Larkin Decl., Ex. 53-1030 (notice of right to sue, issued on June 2, 2005). When Ms. Sasaki did receive her right-to-sue letter, she did not file a lawsuit but, presumably, that was because she had already joined the *Ellis* action and thus initiating a new lawsuit was not necessary. Thus, the reasoning underlying *Holowecki* and similar cases have no application in the instant case.

The Ninth Circuit decision, *Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir. 1977), also provides no support for Costco's position. The case is easily distinguishable on its facts. First, the plaintiffs in *Inda* who sought to piggyback never filed their own administrative complaints. Second, the main issue in *Inda* was whether the plaintiffs could piggyback on an administrative complaint that had been made by another individual who had filed a *separate* lawsuit. *See id.* at 559. Notably,

4

1  the *Harris* court went out of its way to distinguish *Inda* on this basis. *See Harris*, 682 F.3d at 1136-37 (stating that "*Inda* should be limited to its specific facts – 'where a plaintiff sought to rely on an administrative charge [i.e., complaint] of an individual employee in a separate action'"). That is not the situation in the case at bar. Here, Ms. Sasaki and Ms. Ellis are clearly part of the same lawsuit.

Accordingly, the Court rejects Costco's contention that Ms. Sasaki's claim for disparate treatment is partially time barred.[4]

2. <u>Retaliation</u>

Similar to above, Costco also argues that Ms. Sasaki's claim for retaliation is partially time barred. Costco points out that, on March 3, 2013, Ms. Sasaki filed an administrative complaint with the DFEH alleging retaliation. *See* Larkin Decl., Ex. 56 (DFEH charge of discrimination). Thus, according to Costco, any retaliation claim preceding May 7, 2012 (*i.e.*, 300 days before March 3, 2013) is time barred.

Ms. Sasaki disagrees. She argues that Costco is considering only her administrative complaint for retaliation but not her administrative complaint for disparate treatment. According to Ms. Sasaki, because her retaliation claim is reasonably related to her claim for disparate treatment, the operative date for her retaliation claim can be tied to her administrative complaint for disparate treatment – *i.e.*, May 4, 2004 (which is 300 days before she filed her administrative complaint alleging disparate treatment). *See* Opp'n at 24 (arguing that the issue is not how far *back* her administrative complaint for retaliation can go but rather how far *forward* her administrative complaint for disparate treatment and related claims can go).[5] Ms. Sasaki's argument is predicated on case law holding that "[a]llegations of discrimination not included in the plaintiff's administrative charge" may still be considered by a court so long as "the new claims are like or reasonably related to the allegations contained in the [administrative] charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotation marks omitted); *see also Lyons v. England*, 307 F.3d

---

[4] The Court notes, however, that Ms. Sasaki has conceded that any claim based on a failure to promote pre-dating January 3, 2002, is time barred.

[5] According to Ms. Sasaki, even though her administrative complaint for disparate treatment reaches forward to cover her retaliation claim, she decided to file an administrative complaint for retaliation "as a precautionary measure." Opp'n at 25 n.20.

1092, 1104 (9th Cir. 2002); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).[6] This rule is based on the rationale that "forcing an employee to begin the administrative process anew after additional occurrences of [related] discrimination in order to have them considered by the agency and the courts 'would erect a needless procedural barrier.'" *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999), *overruled on other grounds by Morgan*, 536 U.S. at 101; *see also Sitar v. Ind. DOT*, 344 F.3d 720, 726 (7th Cir. 2003) (stating that, "[n]ormally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another" but "[t]hose different claims may be linked . . . where they are 'so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act'"). Applying the rule, several courts – including the Ninth Circuit – have indicated or held that the reasonably related rule is satisfied where a plaintiff claims retaliation *because* she filed an administrative complaint alleging discrimination – *i.e.*, in such a circumstance, the retaliation claim is sufficiently related to the discrimination charge so as to obviate the filing of a new and separate administrative complaint for retaliation. *See, e.g.*, *Vasquez*, 349 F.3d at 645-46 (finding exhaustion requirement satisfied where "[plaintiff] claims that his transfer out of [the] cottage and Berglund's harassment were in retaliation for the grievance he filed [for discrimination]"); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (noting that "[w]e have held for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., that a plaintiff who alleges retaliation for having filed a

---

[6] Two circuit courts appear to have rejected the "reasonably related" test, particularly in the wake of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See, e.g.*, *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851(8th Cir. 2012) ("reject[ing] [the plaintiff's] contention that retaliation claims arising from a charge filed with the EEOC are excepted from the statutory exhaustion requirement" because *Morgan* instructs that statutory text must be followed, "Title VII requires that a complainant must file a charge with the EEOC . . . 'after *the* alleged unlawful employment practice occurred,'" and "[t]he use of the definite article shows that the complainant must file a charge with respect to each alleged unlawful employment practice") (emphasis in original); *see also Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (relying on *Morgan* to conclude that "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted"; adding that this rule applies even "to discrete claims based on incidents occurring *after* the filing of Plaintiff's EEO complaint") (emphasis in original).

charge with the EEOC need not file a second EEOC charge to sue for that retaliation"); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 302 (4th Cir. 2009) (stating that "a claim of 'retaliation for the filing of an EEOC charge as discrimination' is indeed 'like or reasonably related to and growing out of such allegations'"); *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 86 (1st Cir. 2008) (stating that a claim of retaliation for filing an administrative charge with the EEOC "may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the administrative charge and considered by the district court, even though it has not been put through the administrative process"); *Eberle v. Gonzales*, 240 Fed. Appx. 622, 628 (5th Cir. 2007) (endorsing prior precedent holding that "'it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge'"); *Butts v. New York Department of Housing Preservation & Development*, 990 F.2d 1397, 1402 (2d Cir. 1993) (stating that "[t]he second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge"; explaining that "the EEOC charge requirement is not excused because the new claims likely would have been discovered by the EEOC investigation" – "[r]ather, in such situations, we have relaxed the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself").

While the Court acknowledges the above case law, it ultimately does not find in Ms. Sasaki's favor. Although Ms. Sasaki has claimed retaliation in part because she filed her DFEH charge for disparate treatment, there are unique circumstances in the case at hand that counsel against Ms. Sasaki being able to hitch her retaliation claim to her administrative complaint for disparate treatment. More specifically, after Ms. Sasaki filed her administrative complaint for disparate treatment on or about March 1, 2005, she gave no indication for approximately *eight years* that she intended to follow up on or pursue a retaliation claim. For instance, when Ms. Sasaki joined the pending action on March 23, 2005, she did not assert as a cause of action any claim for retaliation – this in contrast to Ms. Ellis who *did* assert a claim for retaliation in the second amended complaint that Ms. Sasaki joined, *see* Docket No. 83 (second amended complaint) and who had been asserting a retaliation claim since the inception of the case. *See* Docket No. 1 (complaint). Also, it is undisputed that, when Ms. Sasaki engaged with Ms. Vadney in 2005, *see* Docket No. 852 (Def.'s

Supp. Br. at 6), Costco's HR manager, and Ms. Vadney told Ms. Sasaki to bring her any concerns to her attention, Ms. Sasaki never mentioned retaliation – indeed, she did not bring any additional concerns to Ms. Vadney at all.  *See* Kadue Decl., Ex. G (Sasaki Depo. at 268); *see also* Kadue Reply Decl., Ex. L (Vadney Depo. at 268) ("I asked [Ms. Sasaki] if there were any new concerns that we hadn't already talked about, and she said no.").  Even in March 2012, when the third amended complaint was filed in this case, Ms. Sasaki still failed to raise a claim for retaliation – again, even though Ms. Ellis was asserting such a claim.  It was not until March 2013 that Ms. Sasaki for the first time raised a claim of retaliation: She finally filed an administrative complaint for retaliation specifically and followed up with a claim for retaliation in the fourth amended complaint.  *See* Docket No. 718 (fourth amended complaint).

One purpose of an administrative charge is to "giv[e] the charged party notice of the claim and narrow[] the issues for *prompt* adjudication and decision."  *B.K.B.*, 276 F.3d at 1099 (emphasis added; internal quotation marks omitted).  Even if Ms. Sasaki could have – at one point – fairly argued that a separate administrative complaint for retaliation would have been a needless procedural barrier (*i.e.*, in light of her administrative complaint for disparate treatment), she effectively waived the benefit of the "reasonably related" rule when she failed to follow up on any retaliation claim for approximately eight years.  The passage of this length of time, if anything, would well have lulled Costco into thinking that no retaliation claim from her would be forthcoming.  In some ways, the conduct here had the same effect of the plaintiffs' effective abandonment of their claims in *Holowecki*, 440 F.3d at 564-65.

While Ms. Sasaki relies on *Anderson*, 190 F.3d at 930, to support her position, the case is distinguishable.  In *Anderson*, it appears that, from the outset, the plaintiff had alleged in her lawsuit a claim for retaliation that took place in 1994 and it was that incident that served as the "reasonably related" hook for a *second* claim of retaliation that took place in 1997 (after the lawsuit had been filed).  *See Anderson v. Reno*, No. C-97-0747-VRW, 1998 U.S. Dist. LEXIS 9311, at *8-9 (N.D. Cal. June 19, 1998) (discussing relevant underlying events); *Anderson*, 190 F.3d at 938 (stating that "the 1997 retaliation is a *direct continuation* of conduct that *had* been properly exhausted and specifically concerns it[;] [u]nder these circumstances, we find no compelling reason to require yet

8

1  another round of administrative activity and the filing of a separate lawsuit, when a lawsuit dealing
2  with these directly related issues was already underway") (emphasis in original).  *Jones v. Calvert*
3  *Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009), is also distinguishable as it involved the issue of whether
4  a *second* claim of retaliation could be deemed reasonably related to a claim for retaliation that had
5  been exhausted.  *See id.* at 299.  In both *Anderson* and *Jones*, the defendant was put on clear notice
6  of a retaliation claim by virtue of the first act of alleged retaliation.

7       Ms. Sasaki protests that, even if she cannot rely on her administrative complaint for disparate
8  treatment and instead were limited to her administrative complaint for retaliation, she could still
9  reach back further than May 7, 2012, because she has alleged a continuing violation based on a
10 pattern or practice.  *See* Opp'n at 25 (arguing that, "to the extent Costco asks the Court to look
11 *backward* from Sasaki's 2013 charge of retaliation, she can challenge retaliatory conduct that was
12 part of Costco's ongoing practice") (emphasis in original).  Ms. Sasaki acknowledges that, in
13 *National Railroad Passenger Corp. v. Morgan*, 536 U.S. at 101, the Supreme Court put limits on the
14 continuing violations theory.  More specifically, the Supreme Court held that "discrete
15 discriminatory acts are not actionable if time barred, even when they are related to acts alleged in
16 timely filed charges."  *Id.* at 113.  The Court went on to note that "[d]iscrete acts such as
17 termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each
18 incident of discrimination and each retaliatory adverse employment decision constitutes a separate
19 actionable 'unlawful employment practice.'"  *Id.* at 114.

20      However, Ms. Sasaki asserts that *Morgan* addressed only whether a plaintiff can establish a
21 continuing violation by showing a series of related acts, one or more of which are within the
22 limitations period.  *Morgan* left open, in other words, whether a plaintiff can establish a continuing
23 violation by showing a systematic policy or practice of discrimination that operated, in part, within
24 the limitations period.  *See id.* at 107.

25      Ms. Sasaki is correct with respect to her interpretation of *Morgan*.  Indeed, in a footnote, the
26 *Morgan* Court expressly stated that "[w]e have no occasion here to consider the timely filing
27 question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue
28 here."  *Id.* at 115 n.9.  Moreover, Ms. Sasaki is correct that, since *Morgan*, the Ninth Circuit has not

foreclosed a continuing violations theory based on a pattern or practice. *See Lyons*, 307 F.3d at 1107 n.8 (stating that "the question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period, has been left unanswered by the Court, and we do not consider it here"). In *Morgan*, the Supreme Court explained that a pattern-or-practice claim constitutes a claim where there is a "systematic policy or practice of discrimination" – *i.e.*, a "systemic violation." *Morgan*, 536 U.S. at 105, 107. And as indicated by the Ninth Circuit opinion which gave rise to the *Morgan* decision, "[s]ystemic violations involve 'demonstrating a company wide policy or practice' and most often occur in matters of placement or promotion." *Morgan v. AMTRAK*, 232 F.3d 1008, 1016 (9th Cir. 2000); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (stating that a pattern-or-practice claim is based on "discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace").

That being said, there is still a fundamental problem with Ms. Sasaki's position. More specifically, even viewing the evidence in the light most favorable to Ms. Sasaki, there is nothing more than a scintilla of evidence to support a pattern-or-practice claim here – especially taking into account that what Ms. Sasaki must show is a pattern or practice of *retaliation* for complaining about gender discrimination rather than a pattern or practice of disparate treatment. At best, Ms. Sasaki has shown that *she* was retaliated against for her complaining about gender discrimination but that is insufficient to show a widespread practice throughout Costco.

Accordingly, the Court agrees with Costco that Ms. Sasaki's claim for retaliation is time barred. Only those failures to promote that took place 300 days prior to her administrative complaint for retaliation (and not disparate treatment) are actionable.

C.     Disparate Treatment Claim

Costco asks not only for partial summary judgment based on a time bar, but also for summary judgment on the merits with respect to the entirety of Ms. Sasaki's claims for disparate treatment and retaliation. As above, the Court addresses each claim separately.

"In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason

10

more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (stating that, "although the *McDonnell Douglas* burden shifting framework is a useful 'tool to assist plaintiffs at the summary judgment stage so that they may reach trial,' 'nothing compels the parties to invoke the *McDonnell Douglas* presumption'").

Under the *McDonnell Douglas* burden-shifting framework,

> an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination . . . . The burden then shifts to the employer to provide a legitimate, nondiscriminatory . . . reason for the adverse employment action. If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual.

*Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).

A plaintiff can make out a prima facie case of discrimination by showing that "(1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).

A plaintiff can establish pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1124. While the Ninth Circuit has held that, "[w]here evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext," it has also noted that "[t]hat standard is 'tempered' by our observation that a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011).

1. "Abandoned" Claims

In its reply brief, Costco contends that the Court should dismiss at least eighteen of Ms. Sasaki's failure-to-promote claims because, as to these promotions, she "offer[ed] no evidence at

all." Reply at 3 & n.6. This argument has no merit. Ms. Sasaki has offered evidence to support a prima facie case and further has offered evidence to support pretext on the part of Costco. *See* Part II.C.2, *infra*. That Ms. Sasaki did not address pretext on a promotion-by-promotion basis is not dispositive, particularly as Costco itself did not structure its opening brief in that manner.[7]

Costco also points out that, for several promotions, Ms. Sasaki questions the qualifications of the men who were promoted by relying (either entirely or in part) on their post-promotion performance. According to Costco, "[p]ost-promotion evidence is irrelevant as to Costco's motive *at the time of the promotion*." Reply at 4 (emphasis added). This argument is problematic as well. While, as a general matter, post-promotion performance may not be as probative as pre-promotion performance, it cannot be said – at least as a blanket proposition – that post-promotion performance is completely irrelevant. Furthermore, Costco fails to take into account that Ms. Sasaki is not required to show that a man who was promoted was not as qualified as her. That is one way of showing discrimination and/or pretext, but not the only way.

2.   Nondiscriminatory Reasons for Denial of Promotion and Pretext

The main thrust of Costco's argument is that it is entitled to summary judgment on the disparate treatment claim because there is no genuine dispute that Costco denied Ms. Sasaki promotion for nondiscriminatory, nonpretextual reasons – *i.e.*, because she was not qualified.[8]

Contrary to what Costco contends, there is a genuine dispute of material fact as to whether Costco's assessment that Ms. Sasaki was not qualified was just a pretext. For example, there is evidence as follows:

---

[7] This is not to say that, at trial, Ms. Sasaki will necessarily be able to prevail at trial without evaluating each promotion on an individual basis or at least a representative sampling.

[8] At the hearing, Costco conceded that Ms. Sasaki's alleged lack of qualifications was relevant at steps two and three of *McDonnell Douglas*, and not step one, because it used subjective (and not objective) criteria in assessing an AGM's qualifications to be GM. *See Nicholson v. Hyannis Air Serv.*, 580 F.3d 1116, 1123 (9th Cir. 2009) (holding that "subjective criteria should not be considered in determining whether a plaintiff is 'qualified' for purposes of establishing a prima facie case under [step one of] *McDonnell Douglas*[;] [i]nstead, '[t]he qualifications that are most appropriately considered at step one [of McDonnell Douglas] are those to which objective criteria can be applied'").

- Even though Ms. Sasaki has never formally been ranked "Ready Now," the "Ready Now"/"Not Ready" system was not implemented until 2007. Before that system was implemented: (1) Ms. Sasaki got strong reviews from one of her GMs, Mr. Berry, and a fairly strong review from another GM, Ms. Loveland); (2) Ms. Sasaki's name appeared on a 2000 "promotable list"; (3) every man on that list was eventually promoted (either soon thereafter or a few years thereafter); and (4) Mr. Hoover insinuated to Ms. Sasaki that she would be promoted within a few years if she were to return to the Bay Area from Texas. After the "Ready Now"/"Not Ready" system was implemented, Ms. Sasaki was ranked by one of her GMs, Mr. Carlisle, as "Ready Soon," and another GM, Mr. Thompson, also gave Ms. Sasaki fairly strong reviews.[9]
- Even though Ms. Sasaki's name did not appear on another Bay Area "promotable list," Mr. Hoover testified in his declaration that Costco "typically do[es] not maintain formal lists of the persons identified as ready now for promotion to GM, because the RVPs already know which AGMs are ready." Hoover Decl. ¶ 28. Moreover, Ms. Sasaki's name may not have appeared on a Bay Area promotable list in 2001 or 2002 because that was the time she was working outside the Bay Area (*i.e.*, in Texas). Finally, while Ms. Sasaki's name did not appear on a Bay Area promotable list after 2003, that may have been because her relationship with Mr. Hoover had soured that year after the van tour incident and the subsequent internal complaint that Ms. Sasaki made to Ms. Vadney, Costco's HR manager.
- Mr. Hoover told Ms. Sasaki that he was holding her to a higher standard. *See* Sasaki Decl. ¶ 33.
- Ms. Sasaki was asked to be acting GM on two different occasions. *See* Larkin Decl., Ex. 3 (Booth Depo. at 252).

---

[9] The Court acknowledges that Ms. Loveland and Mr. Thompson appear to be more critical of Ms. Sasaki in their declarations than in their contemporaneous evaluations. But at this stage, all inferences are to be made in Ms. Sasaki's favor and a reasonable fact finder could discount the declarations as litigation-informed testimony, thus crediting the more favorable performance evaluations.

13

1   • Ms. Sasaki's formal performance evaluations were arguably comparable (roughly
2     speaking) to at least some of the men who were promoted to the GM position (*e.g.*,
3     Mr. Christensen and Mr. Thompson). To the extent Ms. Sasaki's formal performance
4     evaluations suggested that her performance was not particularly strong (instead of
5     just adequate), or was not as strong as some of the men who were promoted, multiple
6     Costco managers downplayed the significance of those evaluations. *See, e.g.*, Larkin
7     Decl., Ex. 4 (Carlisle Depo. at 19-20) (testifying that the evaluations are not produced
8     for the benefit of the VPs above and that they are not provided to anyone else,
9     including the VPs; adding that the evaluations are a teaching tool and that the
10    numbers on the evaluations are not as important as the comments and conversations);
11    Larkin Decl., Ex. 16 (Thompson Depo at 38) (testifying that the fact that two goals of
12    a particular AGM had not been met did not necessarily reflect whether that AGM had
13    had a good year or a bad year); Larkin Decl., Ex. 9 (Hoover Depo. at 4, 49)
14    (testifying that numbers are an important part of an evaluation to maybe highlight an
15    employee's area of strength or weakness but adding that he would not look at one
16    specific number and hold that employee accountable for that number; also testifying
17    that he did not look at performance evaluations to see whether there should be a
18    promotion); *see also* Larkin Decl., Ex. 16 (Thompson Depo. at 10) (testifying that,
19    from year to year, he was not really concerned with whether he received a 3 or a 4 in
20    a particular box from his manager).

21  • Moreover, some of the evaluations of Ms. Sasaki (both formal and informal) might be
22    read as implicating gender stereotypes. *See, e.g.*, Larkin Decl., Ex. 1 (Abadir Depo.
23    at 21) (stating that, "when I go to locations, pretty much, she's nonexistent [–] I don't
24    mean to say a wallflower [b]ut the problem is I think she's happy to be behind the
25    scenes"); Larkin Decl., Ex. 1 (Abadir Depo. at 24) (stating that he would like to see
26    her "[b]e more aggressive"); Kadue Decl., Ex. D (Carlisle Depo. at 41) (stating that,
27    during warehouse walks, "my general assessment would be one of more laid-back
28    and sitting back and taking notes as opposed to leading"); Kadue Decl., Ex. D

14

  (Carlisle Depo. at 156) (stating that "you're asking the same question, aggressiveness, sense of urgency, proactive, – you know, it's – I mean, we're talking about the same thing").

- The qualifications of at least some of the men who were eventually promoted to the GM positions are arguably questionable (*e.g.*, Mr. Brazil).[10]

Because there is a genuine dispute regarding Ms. Sasaki's qualifications, the Court denies Costco summary judgment on the disparate treatment claim.

D. <u>Retaliation Claim</u>

As noted above, the thrust of Ms. Sasaki's retaliation claim is that she was denied further promotions after (1) making an internal complaint to Ms. Vadney (in August/September 2003); (2) filing her DFEH charge for disparate treatment (on or about March 1, 2005); and (3) joining the *Ellis* action (on March 23, 2005). Implicitly, Ms. Sasaki is also asserting that her continued participation in the *Ellis* action has led to retaliation in the form of additional failures to promote. As discussed above, part of the retaliation claim is time barred.

Costco presents three arguments as to why it is entitled to summary judgment on the remaining part of Ms. Sasaki's retaliation claim: (1) Ms. Sasaki simply "speculat[es] that a causal connection exists" between her protected activity and the failure to promote, and "the attenuated timing between her protected activity and any denial of promotion is insufficient to establish causation," Mot. at 22; (2) Ms. Sasaki was not the victim of retaliation since she was not qualified to be promoted; and (3) Ms. Sasaki's "protected activity, coming in 2003 and 2005, came after her name had already disappeared from anything that could remotely qualify as a promotion list, and her protected activity came after successive GMs – Loveland, Prideaux, Marteney, Carlisle – had seen her in action and declined to rate her as promotable." Mot. at 24.

For the reasons discussed above, there is a genuine dispute of material fact regarding Ms. Sasaki's qualifications, and therefore the Court rejects Costco's second argument. As for Costco's

---

[10] Although Costco argues that Ms. Sasaki has engaged in "cherrypicking" – either ignoring the overall review or looking at an evaluation when the man was not ranked "Ready Now" – that is an argument that is best made to the fact finder.

15

third argument, it is essentially the same as or at least derivative of the second argument. Also, Costco ignores evidence that suggests Ms. Sasaki was being considered for a promotion in or around 2002 (*i.e.*, Mr. Hoover's discussion with Ms. Sasaki that led her to transfer back to the Bay Area). *See* Larkin Decl., Ex. 13 (Sasaki Depo. at 103) (testifying that "[Mr. Hoover] said Denny Carlisle was up for relocation soon and I looked – I was looking at one to two years on the outside before being promoted"). The Court therefore focuses on Costco's first argument – *i.e.*, is there evidence suggesting a causal connection between her protected activity and the failure to promote?

Given the Court's ruling on the time-bar issue, there is a significant gap in time between some of the protected activity and the actionable retaliation – *e.g.*, for the protected activity that took place in 2003 and 2005 and the retaliation that took place in 2012 and on. *See generally Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'").[11] Nevertheless, there is still sufficient temporal proximity for the actionable retaliation in 2012 and thereafter because, during that time, Ms. Sasaki was still an active participant in the *Ellis* action. Her protected activity was ongoing, and she relies on evidence of retaliatory motive in addition to the sequence of events (*i.e.*, temporal proximity).

That evidence is sufficient to create a genuine issue of material fact. For example, Mr. Abadir (one of the RVPs and therefore one of the decision makers on promotions) testified at his deposition as follows:

> [W]hat I've learned from with Elaine [Sasaki] is that, as far as we're talking about the job, is that what she needs to do to go to the next level. What I think is that if she really, you know, spent her energy thinking about that, going to the next level, versus pursuing a lawsuit, that you spend all that energy, maybe she'd be successful, because she's been tenacious in doing that. Why not spend the time – you

---

[11] In *Breeden*, the Supreme Court stated that a twenty-month gap between the protected activity and adverse employment action suggested "by itself, no causality at all," *Breeden*, 532 U.S. at 274, and cited two circuit court cases in which even a three- or four-month gap was deemed insufficient. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir.1997) (3-month period insufficient), and *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir.1992) (4-month period insufficient)).

16

> know, spending on your job and your career and put energy into that.
> So if she would kind of use that tenacity, fantastic.

Larkin Decl., Ex. 1 (Abadir Depo. at 55). Costco tries to characterize the statement as a stray remark, but certainly a reasonable fact finder could infer that Mr. Abadir had a retaliatory animus based on that remark.

There is also evidence suggesting a retaliatory animus on the part of Mr. Hoover, the SVP for the Bay Area region whose approval or "blessing" is needed for a promotion (at least there is evidence to support such). More specifically, when Ms. Vadney was investigating Ms. Sasaki's internal complaint, she interviewed Mr. Hoover. During the interview, Ms. Vadney questioned Mr. Hoover about whether he had engaged in inappropriate conduct with respect to Ms. Sasaki. One of Ms. Vadney's questions had to do with an alleged conversation between Ms. Sasaki and Mr. Hoover, during which Ms. Sasaki congratulated Mr. Hoover "for having 6 of 10 buildings on top in executive membership." Larkin Decl., Ex. 37 (CRE0166076).

> Q: Did you respond "I heard you like it that way"? Then say "that's a good exit line" and hung up?
>
> A: Absolutely Not! That's disgusting. I would never say it. The rest of that stuff – I could have said, but I would never say that. *I want her held accountable for that*.

Larkin Decl., Ex. 37 (CRE0166076) (emphasis added). As above, Costco contends that the statement was a stray remark, but a reasonable fact finder need not view it that way. Moreover, a reasonable fact finder could see Mr. Hoover's statement as going beyond holding Ms. Sasaki accountable for that specific claim – *i.e.*, as a statement that Ms. Sasaki should be held accountable for her larger assertion that he had acted inappropriately with respect to her. A retaliatory animus on the part of Mr. Hoover could also be inferred from the fact that, after the internal complaint, it appears that Mr. Hoover has not engaged in any substantive conversation with Ms. Sasaki, including about her performance even though he continued to be one of her superiors and one of the key decision makers on promotions. *See* Larkin Decl., Ex. 10 (Hoover Depo. at 56) ("We have not met. And I don't know if it was 2003, but we have not met. You know, and, again, I didn't initiate those meetings. I'd be more than happy to meet with her."); Larkin Decl., Ex. 10 (Hoover Depo. at 86) ("I

think there's maybe been a conversation where it was short. I don't remember, though. I mean, nothing that was anywhere to the extent that – what was before that time frame."). Although – as Costco argues – a reasonable fact finder could view Mr. Hoover's conduct as prudent given Ms. Sasaki's claim of inappropriate conduct, a reasonable fact finder could also take a different view, *i.e.*, that Mr. Hoover was freezing Ms. Sasaki out in retaliation.

The Court thus declines to dismiss that part of the retaliation claim that is not time barred.

E. <u>Motion to Seal</u>

Finally, there is a motion to file under seal that is pending with the Court in conjunction with the summary judgment motion. The motion to file under seal concerns information about additional complaints made by other women at Costco against Mr. Hoover (*i.e.*, for inappropriate conduct). Ms. Sasaki argues that this information should not be sealed; Costco argues that it should be.

As a preliminary matter, the Court addresses Costco's contention that the Court should evaluate the motion to seal under a "good cause" standard instead of the "compelling reasons" standard because the documents at issue are not part of Costco's motion for summary judgment but rather are part of Ms. Sasaki's opposition only. This argument lacks merit. Before the Court is a dispositive motion; the compelling reason standard applies to all relevant documents that informs the adjudication thereof. Costco cites no authority for the proposition that the standard applies to some briefs and evidence but not others in the context of a dispositive motion. Indeed, Costco ignores the broad language used by the Ninth Circuit in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (stating that "[t]he public policies that support the right of access to dispositive motions, *and related materials*, do not apply with equal force to non-dispositive materials") (emphasis added). Costco also fails to give enough credit to the fact that *Kamakana* ultimately placed a premium on "ensuring the 'public's understanding of the judicial process and of significant public events.'" *Id.* That understanding requires access to arguments and evidence submitted by both sides of the dispute.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal,

circulate libelous statements, or release trade secrets." *Id.* Contrary to what Costco suggests, the information at issue is hardly so irrelevant that one could only infer that there is an improper purpose in Ms. Sasaki tendering the information. Mr. Hoover's views and attitudes toward women are clearly relevant as he is one of the key decision makers identified by Ms. Sasaki as having a discriminatory animus. *See also id.* (stating that "[t]he mere fact that he production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records'"). While Costco fairly notes that Mr. Hoover is technically not a party to this lawsuit, the bottom line is that he is a Costco agent and it is through his alleged discriminatory animus (as well as the animus of other managers) that Ms. Sasaki is seeking to hold Costco liable. The only true nonparties are the women who made the complaints about Mr. Hoover, and therefore the Court shall protect the names of the women who made the complaints but, otherwise, the documents shall be public information.

Accordingly, the Court **GRANTS** in part and **DENIES** in part the motion to seal. Ms. Sasaki shall publicly file the documents at issue, with only the names of the women who made the complaints redacted. The filing shall be made within three days of the date of this order.

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part both the motion for summary judgment and the motion to seal. The following claims shall proceed to trial: (1) the disparate treatment claim and (2) the retaliation claim, but only with respect to failures to promote that took place 300 days prior to the DFEH charge for retaliation specifically (and not disparate treatment).

This order disposes of Docket Nos. 814 and 833.

IT IS SO ORDERED.

Dated: May 22, 2015

EDWARD M. CHEN
United States District Judge