UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY "RAE" ELLIS, *et al.*, | No. C-04-3341 EMC |
| Plaintiffs, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| COSTCO WHOLESALE CORPORATION, | **(Docket Nos. 868-72, 875)** |
| Defendant. | |

Plaintiff Elaine Sasaki has asserted the following claims against Defendant Costco Wholesale Corporation: (1) disparate treatment on the basis of sex in violation of Title VII and (2) retaliation in violation of Title VII.

## I.   TRIAL DATE & LENGTH OF TRIAL

As the parties have agreed, the trial shall be a bench trial.

Trial, including opening statements, shall begin on July 24, 2015, and shall end on August 7, 2015.  Trial days shall last from 8:30 a.m. to 2:00 p.m.  Thursdays are dark.  Closing arguments shall be held on August 17, 2015, at 1:30 p.m.

Trial time shall be split evenly between the parties.  Each side shall have a total of eighteen (18) hours to present its case.  This includes opening statements, closing arguments, direct examination, cross-examination, deposition designations, and so forth.

## II.   WITNESSES

A.   Ms. Sasaki

Ms. Sasaki has identified the following witnesses that she may call to testify at trial (either

live or by deposition) other than solely for impeachment or rebuttal. *See* Docket No. 882-1 (Supp. Joint PTC St., Appendix B, Tab 1).

(1)    Jeff Abadir.

(2)    Guy Berry.

(3)    Chris Bolves.

(4)    John Booth.

(5)    Dennis Carlisle.

(6)    Don Christensen.

(7)    Wendy Davis.

(8)    Richard DiCerchio.

(9)    Frank Farcone.

(10)    Caton Frates.

(11)    Mike Hayes.

(12)    Dennis Hoover.

(13)    Craig Jelinek.

(14)    Richard Martell.

(15)    John Matthews.

(16)    John McKay.

(17)    Amy Oppenheimer.

(18)    Elaine Sasaki.

(19)    Jim Sinegal.

(20)    Jeff Thompson.

(21)    Ron Vachris.

(22)    Judy Vadney.

(23)    Dennis Zook.

(24)    Any individual listed on Costco's witness list.

B.    <u>Costco</u>

Costco has identified the following witnesses that it may call to testify at trial other than

solely for impeachment or rebuttal. *See* Docket No. 882-2 (Supp. Joint PTC St., Appendix B, Tab 2).

(1) Elaine Sasaki.

(2) Jeff Abadir.

(3) John Booth.

(4) Denny Carlisle.

(5) Don Christensen.

(6) Silvia Comunale.

(7) Wendy Davis.

(8) Richard Drogin.

(9) Kathy Fuson.

(10) John Gaherty.

(11) Dennis Hoover.

(12) Tammy Loveland.

(13) John McKay.

(14) Gregory Mitchell.

(15) Mario Omoss.

(16) Ali Saad.

(17) Jeff Thompson.

(18) Judy Vadney.

(19) Ron Vachris.

(20) Guy Berry

(21) Bryan Blank

(22) Chris Bolves

(23) Roger Campbell.

(24) Mike Casebier.

(25) Julie Cruz.

(26) Jerry Dempsy.

1 (27) Anthony Fontana.
2 (28) Frank Farcone.
3 (29) Caton Frates.
4 (30) Darby Greek.
5 (31) Bruce Greenwood.
6 (32) Jim Harris.
7 (33) Dave Harruff.
8 (34) Mike Hayes.
9 (35) Bob Hicok.
10 (36) Bill Koza.
11 (37) Rob Leuck.
12 (38) Jeff Long.
13 (39) Mark Maushund.
14 (40) Bruce Marteney.
15 (41) Dan McMurray.
16 (42) Shawn Parks.
17 (43) Joe Portera.
18 (44) Steve Powers.
19 (45) Paul Pulver.
20 (46) Aldyn Royes.
21 (47) Yoram Rubanenko.
22 (48) Drew Sakuma.
23 (49) Adam Self.
24 (50) Doug Schutt.
25 (51) Kim Brown Silva.
26 (52) Louie Silveira.
27 (53) Tom Walker.
28 (54) Richard Webb.

1 (55) Rich Wilcox.

2 (56) Brenda Weber.

3 (57) Dennis Zook.

4 C. <u>Stipulation re Expert Witnesses</u>

The parties stipulated that, "in lieu of calling Drs. Saad, Martell, and Mitchell to testify at trial, they will instead submit to the Court their Expert Reports." Docket No. 861 (Stip. at 1).

The parties further stipulated that "the Court may consider the previously submitted expert reports of Reskin and Landy (Docket Nos. 135, 151, 152, 463-3) to the extent that the Court finds that consideration necessary to evaluate any Expert Report's reliance on either the Reskin or Landy reports." Docket No. 861 (Stip. at 1).

### III. MOTIONS IN LIMINE

A. <u>Costco's Motion in Limine No. 1 (Docket No. 868)</u>

In its first motion in limine, Costco moves to exclude evidence of how those men who were promoted to the GM position performed after they were promoted. Costco argues that "a comparator's job performance *after* his promotion is categorically irrelevant to whether Costco honestly believed he was qualified for promotion when the promotion occurred." Mot. at 1 (emphasis in original).

The Court is not unsympathetic to Costco's argument that post-promotion evidence is irrelevant. As a general matter, it is what Costco knew (or perhaps even should have known) about an employee's performance at or before the time of promotion that is relevant. *See, e.g.*, *Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999) (stating that the comparator's "unsatisfactory performance months after the reduction in force had no bearing on management's state of mind at the time the decision to terminate [the plaintiff] was made, and thus that evidence is totally irrelevant to a determination of whether [the plaintiff] was terminated in violation of the ADEA") (emphasis in original).

That being said, Ms. Sasaki has pointed to several ways in which post-promotion evidence could be relevant in the instant case – *e.g.*, because it was consistent with the poor performance of the comparator *before* the promotion, which was known or should have been known to decision

makers, and/or because it shed light on what qualifications of the GM position were actually considered by decision makers.[1] *See, e.g.*, *Gordon v. Bay Area Quality Mgt. Dist.*, No. C08-3630 BZ, 2010 U.S. Dist. 48285, at *4-5 (N.D. Cal. Apr. 26, 2010) (excluding "evidence which is relevant *only* to Wiley's post-hiring performance" but not excluding "evidence of post-hiring performance that bears directly on issues about Mr. Wiley's background and experience that were known to the District at the time it made the hiring decision"); *Suggs v. Capital Cities/ABC, Inc.*, 122 F.R.D. 430, 431 (S.D.N.Y. 1988) (noting that "post-promotion evaluations may clarify what was expected o a particular employee when he or she was promoted[;] for example, an evaluation such as 'Smith has not demonstrated the foreign policy expertise his resume has led us to expect' shows that Smith's foreign policy experience was relied upon in deciding to promote him in the first place"). Thus, the Court holds that, if the post-promotion evidence goes to either of these areas, then there is a basis for relevance, although the probative value is likely small. But if not, then the evidence is not relevant at all.

Even if the evidence is relevant, however, the Court does not find at this juncture that it is thereby admissible. There may still be Rule 403 concerns, not only in terms of undue delay and wasting time but also unfair prejudice because of the possibility that Costco will need to engage in extensive rebuttal evidence to respond to the post-promotion evidence. The Court will not engage in extensive mini-trials on points that have little probative value. The Court thus **DEFERS** ruling on the motion in limine. The charts that the parties will provide, *see* Part VIII, *infra*, will guide the Court's decision as to whether any given post-promotion evidence shall be admitted.

B. Costco's Motion in Limine No. 2 (Docket No. 869)

In its second motion in limine, Costco moves to exclude the expert testimony of Ms. Oppenheimer. Ms. Oppenheimer is expected to opine that

> 1) Ms. Vadney's position, vis-a-vis Mr. Hoover, prevented her from having actual and perceived impartiality; 2) her investigation was not reasonably thorough in that it failed to investigate the discriminatory promotion allegations, to interview significant witnesses, and to weigh

---

[1] For example, if post-promotion evidence indicates that a GM did not have a particular skill that Costco claims is critical for a GM to have, and Costco did not do anything in response after that fact is discovered, Ms. Sasaki could argue that that skill is not really a bona fide qualification for the GM position.

> significant witness information; 3) she failed to maintain the confidentiality of the complainant and respondent; and 4) she did not apply a consistent standard in weighing the evidence, and did not explain the basis for her credibility findings. Finally, Ms. Oppenheimer will opine that Costco failed to fully ensure that plaintiff was not subjected to retaliation.

Opp'n at 3.

Costco contends that Ms. Oppenheimer's expert testimony should be excluded because "(i) the subject matter [of her opinion] is irrelevant, (ii) her research is seriously deficient, (iii) her opinion does not reflect demonstrable principles, and (iv) her opinion teems with unsupported speculation." Mot. at 1. The last three arguments are *Daubert* arguments which are not of paramount concern to the Court – at least at this point in the proceedings – as this is a bench trial. *See In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (stating that, "[w]here the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing the testimony is lessened"; "the court can hear the evidence and make its reliability determination during, rather than in advance of, trial"); *FTC v. Neovi, Inc.*, No. 06-CV-1952 JLS (JMA), 2011 U.S. Dist. LEXIS 41491, at *6 (S.D. Cal. Apr. 18, 2011) (indicating that, in a bench trial, a court "'can evaluate the experts' testimony against the Rule 702 standard as they testify'"); *see also Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) (noting that "[t]he 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial"); *Angioscore, Inc. v. Trieme Med., Inc.*, No. 12-cv-03393-YGR, 2015 U.S. Dist. LEXIS 45531, at *64 (N.D. Cal. Apr. 6, 2015) (noting that "'the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial'" because the gatekeeper and the trier of fact are the same).

What is more troubling to the Court is whether Ms. Oppenheimer's testimony will be relevant to the case and/or whether it will be helpful to the Court as the finder of fact. *See* Fed. R. Evid. 402, 702. If Ms. Sasaki had asserted a claim for hostile work environment, then the adequacy of Ms. Vadney's investigation would clearly be relevant under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). But Ms. Sasaki has not raised such a claim, and she has failed to explain how a poor investigation on the part of Ms. Vadney (and thereby Costco) is probative of either the disparate treatment or retaliation claim. For

7

example, Ms. Sasaki argues that, because the investigation was not done properly, her identity was exposed and she was thereby blackballed; also, Mr. Hoover was left in a position to affect her ability to be promoted. But these latter facts – the underlying facts – will come in at trial regardless of what Ms. Oppenheimer testifies. In other words, the facts may exist irrespective of *why* they occurred. Ms. Oppenheimer's contemplated testimony thus will not add anything to the claim at issue. And even if Ms. Oppenheimer's testimony did have some probative value, it would be minimal at best, and such value would be substantially outweighed by the wasting of time devoted to Ms. Oppenheimer's testimony and cross-examination. *See* Fed. R. Evid. 403. Accordingly, Costco's motion in limine to exclude the testimony of Ms. Oppenheimer is **GRANTED**.

C.    Costco's Motion in Limine No. 3 (Docket No. 870)

In its third motion in limine, Costco moves to exclude evidence related to Costco's diversity focus groups, BOLD, or other diversity initiatives.[1] Because there is no longer a disparate impact claim in this case, the Court agrees with Costco that Rules 402 and 403 are obstacles for Ms. Sasaki. Even if the evidence suggests that "Costco's promotion system is susceptible to stereotyping and bias," Opp'n at 3, the question is whether Mr. Hoover, Mr. Booth, and/or Mr. Abadir in particular – the alleged decision makers as identified by Ms. Sasaki – had a discriminatory or retaliatory intent. Thus, the diversity initiative evidence is relevant only if it has a nexus to the state of mind of one or more of these individuals specifically.

At the pretrial conference, Ms. Sasaki indicated that she could make such a showing because Mr. Hoover and/or Mr. Booth at least were active participants in the diversity initiatives. The Court therefore **DEFERS** ruling on the motion. In order for any diversity initiative evidence to be admissible, Ms. Sasaki will need to make the necessary predicate showing – *i.e.*, that there is a nexus

---

[1] In her opposition, Ms. Sasaki explains that BOLD was an initiative that Costco launched in 2001

> to identify barriers to the advancement of its female and minority employees. Costco conducted focus groups, first in 2001 and again in 2005, to solicit the perceptions of the company's senior managers, who used Costco's promotion system on a daily basis and observed its effects first-hand. Numerous participants expressed the view that the promotion system lacked clear and consistent standards, and disadvantaged women and minorities.

Opp'n at 1.

8

to one of the decision makers at issue. Ms. Sasaki will also need to provide evidence to establish that the evidence is not hearsay or falls under one of the hearsay exception rules. *See, e.g.*, Fed. R. Evid. 801(d)(2) (providing that the statement of a party-opponent is not hearsay; this rule covers a statement "made by the party in [a] representative capacity," "made by a person whom the party authorized to make a statement on the subject," and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

D.       Costco's Motion in Limine No. 4 (Docket No. 871)

In its fourth motion in limine, Costco moves to exclude evidence that two other women made claims of unwelcome sexual conduct against Mr. Hoover. The motion is **DENIED**.

The foundation objection lacks merit. As Ms. Sasaki notes, she may question Mr. Hoover himself about the other incidents. Mr. Hoover may deny that the incidents took place or that he acted improperly but that is a different matter from lack of foundation.

Likewise, Costco's contention that the evidence is improper character evidence is not meritorious. Federal Rule of Evidence 404(b) does not permit evidence of a "bad act" to prove a person's character but such "evidence may be admissible for another purpose, such as proving motive [or] intent." Fed. R. Evid. 404(b). Here, the evidence at issue is relevant to motive/intent. As the Court explained in its summary judgment order, "Mr. Hoover's views and attitudes toward women are clearly relevant as he is one of the key decision makers identified by Ms. Sasaki has having a discriminatory animus." Docket No. 854 (Order at 19). "Because hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994). While Costco disputes that Mr. Hoover has been or is a decision maker with respect to Ms. Sasaki's promotions or lack thereof, that is a factual matter to be decided at trial.

Finally, Costco makes a Rule 403 argument but the fact that this is a bench trial addresses the bulk of its concerns.

///

///

E.  Costco's Motion in Limine No. 5 (Docket No. 872)

In its final motion in limine, Costco moves to exclude what it terms "relationship evidence" – *i.e.*, evidence related to relationships that comparators had with other persons within Costco, which purportedly led to favoritism of the comparators. The Court **DEFERS** ruling on the motion and shall address the evidence on a case-by-case basis. However, as guidance to the parties, the Court notes that it will likely admit evidence of personal relationships only where gender-related preferences or biases at issue (*e.g.*, men mentoring other men) and not, for instance, preferences based on familial or romantic relationships which have no obvious systemic adverse effect along gender lines.

F.  Ms. Sasaki's Motion in Limine No. 1 (Docket No. 875)

In her sole motion in limine, Ms. Sasaki asks that, for her claim of disparate treatment, the Court bar Costco from asserting a "same decision" affirmative defense at trial because she "is not pursuing a 'mixed motive' theory of liability" and is instead pursuing "only a 'single-motive' theory of discrimination." Mot. at 1-2. At the pretrial conference, the parties reached agreement. Costco agreed it will not assert a same decision affirmative defense at trial because Ms. Sasaki confirmed that (1) she was pursuing only a single-motive theory of discrimination *and* (2) Costco would not be prevented from introducing any of its evidence at trial on the issue of whether it had gender neutral reasons for its actions.

## IV.  **EXHIBITS**

The parties have submitted bellwether objections that they would like a ruling on in advance of trial. *See* Docket No. 882-4 (Supp. Jt. PTC St., Appendix C, Tab 2) (bellwether objections). At the conference, the Court provided oral rulings and/or guidance, which are memorialized below.

1.  Exhibit No. 751. The Court defers ruling but notes that the exhibit will likely be admitted so long as Ms. Vadney lays the necessary foundation for the document.
2.  Exhibit No. 208. *See* Def.'s Mot. in Limine No. 3.
3.  Exhibit No. 224. Ms. Sasaki has withdrawn this exhibit and the objection is therefore moot.
4.  Exhibit No. 229. *See* Def.'s Mot. in Limine No. 1.
5.  Exhibit No. 236. *See* Def.'s Mot. in Limine No. 1.

6. Exhibit No. 253.  *See* Def.'s Mot. in Limine No. 3.

7. Exhibit No. 221.  The Court defers ruling on the exhibit but notes that, at the conference, Ms. Sasaki made at least a colorable argument of relevance (*i.e.*, that Mr. Jelinek self-evaluated low, just as Ms. Sasaki did).

8. Exhibit No. 256.  The Court defers ruling on the exhibit but notes that it is hard to see the document's relevance given that Ms. Sasaki was no longer working in the Texas region at the time.

9. Exhibit No. 260.  Costco's objections, predicated on the contention that the performance review of Ms. Sasaki is too remote in time, are overruled.

10. Exhibit No. 281.  The Court understands Costco's objection to be predicated on the fact that the Vadney investigation notes refer to complaints about Mr. Hoover made by two other women.  The objection is overruled.  *See* Def.'s Mot. in Limine No. 4.

11. Exhibit No. 291.  The Court defers ruling on this exhibit; it will need context from the trial to determine relevance.  The document appears to be non-hearsay.

12. Exhibit No. 292.  Costco's objections are overruled.  Ms. Sasaki has articulated a basis for relevance – *i.e.*, that the letter sheds light on who are the relevant decision makers with respect to promotions.  As above, the document appears to be non-hearsay.

13. Exhibit No. 401.  Costco's objections, predicated on the contention that the performance review of Mr. Garcia is too remote in time, are overruled.

14. Exhibit No. 440.  *See* Def.'s Mot. in Limine No. 1.

15. Exhibit No. 590.  Costco's objection is sustained.  Ms. Oppenheimer shall be not be permitted to testify.  *See* Def.'s Mot. in Limine No. 2.

16. Exhibit No. 598.  Costco's objection is sustained.  The document is not a summary document for Rule 1006 purposes.  Rather, the document is more in the nature of a demonstrative.

## V. USE OF DISCOVERY RESPONSES

Both parties have designated discovery responses that they intend to use at trial.  *See* Docket No. 876-5 to -6 (Joint PTC, Appendix D).  Only Ms. Sasaki has made objections.

Ms. Sasaki has objected to the designations related to Ms. Sasaki's responses to requests for

1 admission. In the requests, Costco asked Ms. Sasaki to admit that she had no evidence that certain
2 individuals were "less qualified" than her for the GM position they received. Ms. Sasaki objected to
3 the requests for admission but then denied the requests.

4     The Court agrees with Ms. Sasaki that the responses are a waste of time given that Ms.
5 Sasaki denied (*i.e.*, did not admit) the requests for admission. Accordingly, Ms. Sasaki's objection
6 is sustained and the responses to the requests for admission shall not be admitted.

### VI. DEPOSITION TESTIMONY

8     The Court addresses first Costco's "general objection" to the deposition testimony. Costco's
9 blanket request that the Court wait until after the presentation of live evidence before allowing any
10 deposition testimony is denied. This ruling, however, does not preclude Costco from making a Rule
11 403 objection (based on wasting time or needlessly presenting cumulative evidence) on a case-by-
12 case basis if it in good faith believes one is warranted.

13     To the extent there are specific objections to any deposition testimony, as reflected in the
14 parties' chart, see Docket No. 883 (chart on amended deposition designations), the Court shall
15 provide rulings, where possible, in advance of trial.

### VII. DEMONSTRATIVES

17     If a party decides to use a demonstrative, that party should give the opposing party at least
18 one day's notice prior to use of the demonstrative to ensure that any objection may be raised with
19 the Court in advance of use.

### VIII. CHARTS

21     As discussed at the conference, by July 10, 2015, Ms. Sasaki shall file a chart identifying
22 which promotions (totaling seven to ten) she intends to focus on at trial. The chart shall also reflect,
23 for *each* promotion, who the relevant decision makers are and what evidence Ms. Sasaki will use at
24 trial – *e.g.*, identifying witness testimony as well as specific documentary evidence.

25 ///
26 ///
27 ///
28 ///

12

By July 17, 2015, Costco shall file a chart that identifies what rebuttal evidence it intends to submit (as above, either witness testimony or specific documentary evidence) *each* time Ms. Sasaki has relied on post-promotion evidence in support of a claim for failure to promote.

This order disposes of Docket Nos. 868-72 and 875.

IT IS SO ORDERED.

Dated: July 6, 2015

_____
EDWARD M. CHEN
United States District Judge

13